**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MONIQUE KATZ, individually and on behalf of all
others similarly situated,

Plaintiff,

v.

EQUINOX HOLDINGS, INC.

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No.:

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff MONIQUE KATZ ("Plaintiff"), on behalf of herself and all others similarly situated, by and through her attorneys, VALLI KANE & VAGNINI LLP, brings this action for damages and other legal and equitable relief against Defendant EQUINOX HOLDINGS, INC. for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*; the New York Labor Law ("NYLL"); the New York Codes, Rules and Regulations ("NYCRR"); the Family and Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"); the New York City Human Rights Law ("NYCHRL"); and any other cause(s) of action that can be inferred from the facts set forth herein.

<strong>INTRODUCTION</strong>

1.      This is a putative collective and class action brought by Plaintiff challenging acts committed by Defendant against Plaintiff and those similarly situated, which amount to violations of federal and state wage and hour laws.

2.      Defendant owns and operates luxury fitness centers located across the state of New York and the United States.

3.      On December 5, 2019, a New York Times article titled "Working at Equinox: It's Very Hunger Games," proffers that Joe Matarazzo, an Equinox Vice President, stated Defendant

"never requires trainers to put in unpaid overtime: Trainers' per session rates are meant to cover additional time spent preparing for workouts with clients." Throughout the years, however, Defendant has been the subject of several wage-and-hour lawsuits across the country that allege, among other things, Defendant failed to pay its employees statutorily required overtime compensation. *See Skidaneko v. Equinox Holdings, Inc.* No.: 20-CV-01550 (E.D.N.Y. 2020)[1]; *Fodera, Jr. v. Equinox Holdings, Inc.*, 3:19-CV-05072 (N.D. Cal. 2019); *Rosales v. Equinox Holdings Inc.*, No. 3:18-CV-00356 (N.D. Tex. 2018); *Kenon v. Equinox Holdings, Inc., et al.*, No. 1:16-CV-07869 (S.D.N.Y. 2016); *Letta v. Equinox Holdings, Inc.*, Case No. 1:12-CV-00789 (S.D.N.Y. 2012); *Leigh v. Equinox Holdings Inc.*, No. BC 463577, (Cal. Sup. Court L.A. Cnty. 2011).

4.      Defendant employed Plaintiff and all other persons similarly situated as Personal Trainers (collectively, the "Trainers") who provided physical training sessions and services to Defendant's members. Defendant employed the Trainers in various tiers titled: "Tier 1," "Tier 2," "Tier 3," "Tier 3+," and "Tier X." The Trainer's tier was dependent upon their experience and tenure with Defendant and while they were all paid in a similar manner, they were paid different rates relative to their Tier level.  Regardless of level, Trainers performed the same or similar job duties and were uniformly victims of Defendant's violations of the FLSA, the NYLL, and the NYCRR.

5.      In addition to several other wage and hour violations, Defendant paid the Trainers on a per personal training session basis (*i.e.*, a flat fixed rate) that did not adequately account for hours worked and the overtime due them in accordance with the law. While Defendant's policy

---

[1] *Skidaneko* is currently pending and alleges that Defendant failed to pay minimum and overtime wages to Tier 1 and Tier 2 Trainers. It is also alleged as a FLSA collective and NYLL class action, but explicitly excludes Tier 3, Tier 3+, and Tier X Trainers from the proposed collective and class.

regarding these rates contemplates compensating the Trainer for all work related to their personal training session, Defendant knew the rates provided did not.  Moreover, Defendant's pay policy did not include an overtime premium for all hours worked in excess of forty (40) hours per workweek.

6.      Thus, pursuant to 29 U.S.C. § 216(b), Plaintiff brings this action on behalf of herself and a collective of Trainers who are and were employed by Defendant as Tier 3, Tier 3+, and Tier X Trainers within the State of New York during the past three (3) years through the final date of the disposition of this action who were not paid the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek and are entitled to recover: (i) unpaid and incorrectly paid wages; (ii) unpaid overtime wages; (iii) liquidated damages; (iv) interest; (v) attorneys' fees and costs; and (vii) such other and further relief as this Court finds necessary and proper.

7.      Plaintiff additionally brings this action pursuant to Fed. R. Civ. P. 23, on behalf of herself and two (2) classes of persons within the State of New York during the past six (6) years through the final date of the disposition of this action who were: (i) not paid the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek; (ii) not paid all of their earned and due wages on their regularly scheduled paydays/had their wages unlawfully deducted; (iii) not paid the "spread of hours" pay for each day worked in excess of ten (10) hours; and/or (iv) not issued the proper wage statements pursuant to the NYLL, which violates the NYLL and the NYCRR and are entitled to recover: are entitled to recover: (i) unpaid overtime wages; (ii) unpaid and incorrectly paid wages; (iii) unpaid "spread of hours" pay; (iv) liquidated damages; (v) penalties; (vi) interest; (vii) attorneys' fees and costs; and (viii) such other and further relief as this Court finds necessary and proper.

8.      Plaintiff also individually brings this action pursuant to the FMLA for retaliation and leave interference and the NYCHRL for sexual harassment, discrimination, and retaliation and is entitled to recover (i) back pay; (ii) front pay; (iii) emotional damages; (iv) punitive damages; (v) liquidated damages; (vi) interest; (vii) attorneys' fees and costs; and (viii) such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States.

10.     Venue is proper in this Court pursuant to 29 U.S.C. §§ 201 *et seq.*, in as much as this judicial district lies in a State in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendant maintains facilities, conducts business, and resides in this district.

11.     The Court's supplemental jurisdiction is invoked to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

## THE PARTIES

12.     At all relevant times, Plaintiff was an "employee" within the meaning of the FLSA, the NYLL, the NYCRR, the FMLA, and the NYCHRL.

13.     Upon information and belief, Plaintiff worked at least one thousand two hundred and fifty (1,250) hours for Defendant within the twelve (12) months immediately preceding Plaintiff's requests for FMLA leave alleged herein.

14.    Upon information and belief, Defendant is a privately owned corporation organized under the laws of the State of Delaware and has its corporate headquarters located at 895 Broadway, Manhattan, New York 10003.

15.    Defendant transacted and continues to transact business in New York and within New York County by employing Plaintiff and all those similarly situated as Trainers.

16.    Defendant has at all relevant times been an "employer" covered by the FLSA, the NYLL, the NYCRR, the FMLA, and the NYCHRL.

17.    Upon information and belief, the amount of qualifying annual volume of business for Defendant exceeds $500,000.00 and thus subjects Defendant to the FLSA.

18.    Upon information and belief, Defendant is engaged in interstate commerce, independently subjecting Defendant to the FLSA.

19.    Upon information and belief, throughout the relevant time period, Defendant employed at least fifty (50) employees.

20.    Upon information and belief, throughout the relevant time period, Defendant employed at least fifty (50) employees at the worksite where Plaintiff worked.

21.    Upon information and belief, throughout the relevant time period, Defendant employed at least fifty (50) employees within a seventy-five (75) mile radius of the worksite where Plaintiff worked.

22.    At all relevant times, Defendant had knowledge that failing to pay the Trainers overtime for all hours worked in excess of forty (40) per workweek violates the FLSA, the NYLL, and the NYCRR.

23.    Defendant paid the Trainers from their corporate headquarters.

24.    Defendant formulated and issued the Trainers their employment policies.

25.     Defendant formulated the Trainers' employment policies, including but not limited to all pay policies.

26.     The Trainers were required to adhere to Defendant's employment policies and standards.

27.     The Trainers agreed to be employed by Defendant at one or more of its facilities.

28.     Defendant interviewed Plaintiff.

29.     Defendant hired Plaintiff and assigned Plaintiff her worksite.

30.     Defendant had the power to hire and fire the Trainers.

31.     Defendant set the Trainers' rate of pay and their basis of pay.

32.     Defendant maintained the Trainers' employment records.

33.     Defendant disputed Plaintiff's request for unemployment compensation.

34.     Defendant, through its agent Equifax, Inc., represented to the New York Department of Labor that Defendant was her employer.

35.     Upon information and belief, Defendant provided Human Resources related services to its Trainers.

36.     Defendant posts available Trainer positions on its website: www.equinox.com.

## STATEMENT OF FACTS

I.     **General Facts**

37.     Upon information and belief, Defendant owns and operates more than twenty (20) fitness centers throughout the State of New York.

38.     Defendant provides, among other things, physical fitness related services to its members, which includes personal training sessions.

39.     Defendant employed the Trainers to train and assist its members at its more than twenty (20) fitness centers throughout the State of New York.

40.     The Trainers were usually hired as Tier 1 Trainers and were then promoted to other tiers based upon their tenure and/or experience.

41.     The Trainers were paid on both a non-hourly and hourly basis.

42.     The Trainers were paid on a bi-weekly basis either by check or direct deposit.

43.     The Trainers received non-discretionary bonus payments for meeting certain quotas such as retaining members for personal training sessions and for conducting a certain amount of personal training sessions per pay period.

44.     The Trainers had five (5) primary job duties: (i) floor shifts; (ii) Equifit sessions; (iii) personal training ("PT") sessions; (iv) guided sessions; and (v) meetings.

45.     At all relevant times, the Trainers were non-exempt from the statutory provisions of the FLSA, the NYLL, and the NYCRR.

i.     Floor Shifts

46.     The Trainers' floor shift job duties entailed cleaning the workout machines, cleaning the workout sites, answering member questions, and assisting members with workouts who were not engaged in PT sessions.

ii.     Equifit Sessions

47.     Equifit sessions were conducted in two (2) phases.

48.     First, the Trainer met with a member to assess their workout needs by performing tests such as heart rate, blood pressure, functional movement tests, and taking height and weight measurements.

49.     The Equifit assessment typically lasted between one (1) hour and an hour and fifteen (15) minutes.

50.     Second, the Trainer provided the member with a free one (1) hour PT session based upon the Equifit assessment.

51.     Prior to the Equifit training sessions, the Trainers were required to prepare for the free Equifit training sessions by interacting with the member, cleaning the anticipated workout area, creating a workout plan, and gathering the requisite workout equipment.

52.     The Equifit training session preparation work usually took thirty (30) minutes to an hour to complete.

53.     During the Equifit training session, the Trainers provided the members with workout instructions, advice, and coaching.

54.     Following the Equifit training sessions, the Trainers were required to return the workout equipment to their proper locations and clean the area where they performed the training session.

55.     For each Equifit training session, the aforementioned post-Equifit training session work took approximately ten (10) to fifteen (15) minutes to complete.

56.     Trainers typically performed one (1) to five (5) Equifit sessions per workweek.

57.     Throughout the relevant time period, the Trainers were promised New York State's applicable minimum wage for all hours spent performing Equifit sessions.

58.     Defendant, however, did not compensate the Trainers New York State's minimum wage for all hours spent performing Equifit sessions nor did it include all Equifit sessions performed on their paychecks.

59.     Upon information and belief, the purpose of the Equitfit sessions was to entice members to enroll in PT sessions.

60.     Defendant scheduled Trainers for Equifit sessions either by email or by including it on their schedule.

61.     The Trainers were not required to "clock-in" or "clock-out" of Defendant's computerized time recording system for Equifit sessions.

iii.     Personal Training Sessions

62.     Throughout the relevant time period, the Trainers' PT sessions job duties entailed providing one (1) hour ("full session") or thirty (30) minute ("half session") PT sessions to Defendant's members who enrolled in PT sessions.

63.     Prior to each PT session, the Trainers were required to prepare for the PT sessions by creating and updating a PT session calendar, interacting with members, creating a workout program for the member, updating the member's workout plan, cleaning the anticipated workout area, and gathering the requisite workout equipment.

64.     For each PT session, the aforementioned preparation work took approximately thirty (30) minutes to an hour to complete and was typically completed in the same workweek as the PT session.

65.     During the PT session, the Trainers provided Defendant's members with workout plans, instructions, advice, and coaching.

66.     Each full PT session typically lasted between one (1) and one and a half (1½) hours.

67.     Each half PT session typically lasted between thirty (30) minutes to an hour.

68.     Following the PT session, the Trainers were required to return the workout equipment to their proper locations and clean the area where they performed the training session.

69.     For each PT session, the aforementioned post-PT session work took between approximately ten (10) and fifteen (15) minutes to complete.[2]

70.     The Trainers could not perform PT sessions without performing the PT session activities.

71.     The PT session activities were an integral part of the Trainer's job duties and Defendant explicitly required it to be performed.

72.     Trainers are compensated on a fixed per PT session basis. This fixed rate of pay did not change based upon the type of workout provided to the member or the amount of time it took to perform the PT session activities.

73.     Trainers were paid half of their fixed PT session rate for half sessions.

74.     Pursuant to the Defendant's fixed per PT session pay scheme, two (2) half sessions equated to a full session.

75.     It was common knowledge among the Trainers and Defendant's managerial staff (often former Trainers themselves) that Trainers performed well over two (2) to three (3) hours of PT session activities per week.

76.     Defendant had knowledge that the Trainers were performing PT session activities because it required them to do so.

77.     In practice, Defendant did not require the Trainers to record all their time spent performing PT session activities.

78.     Defendant did not discipline the Trainers if they did not record all their time spent performing PT session activities.

---

[2] PT session preparation work and post-PT session work are hereinafter collectively referred to as "PT session activities."

79.     Defendant did not record all time spent by the Trainers performing PT session activities.

80.     Instead, Defendant automatically included on the Trainers' paychecks that they performed (2) hours of PT session activities per pay period or it did not include the PT session activities time at all.

81.     Defendant's fixed per PT session pay basis was implemented corporate-wide.

82.     Upon information and belief, when a Trainer conducted more than forty-two (42) full PT sessions per pay period, they were given an additional incentive "bonus" for the sessions.

83.     This policy was designed to encourage Trainers to conduct as many training sessions per week to generate business for the Defendant.

84.     Trainers were only paid their fixed per PT session pay if the PT session was performed. Thus, Trainers had to perform an hour of work to earn their fixed per PT session pay.

85.     PT sessions were recorded via the Trainers' calendar whereby Defendant paid the Trainers based upon the number of training sessions that were scheduled on their calendar.

86.     If a member canceled their PT session within twenty-four (24) hours of the scheduled session, the member was required to pay for that session.

87.     Defendant, however, highly encouraged Trainers to afford their members who canceled a PT session within twenty-four (24) hours of the PT session with a "make-up" session during that same week or during a subsequent workweek.

88.     Upon information and belief, when a Trainer performed a "make-up" PT session in a subsequent workweek, it was not included in that week's pay.

<u>iv.</u>   <u>Guided Sessions</u>

89.    Defendant provided non-members with free PT sessions called "guided sessions" to entice them to become members.

90.    The Trainers provided the guided session to the non-members.

91.    The Trainers were assigned guided sessions by Defendant's Membership Advisors either via email or by scheduling them on the Trainers' calendars

92.    Guided sessions typically lasted one (1) hour.

93.    To prepare for the guided session, the Trainers were required to interact with the non-member, clean the anticipated workout area, create a workout plan, and gather the requisite workout equipment.

94.    The guided session preparation work usually took approximately (30) minutes to complete.

95.    Following the guided session, the Trainers were required to return the workout equipment to their proper locations and clean the area where they performed the training session.

96.    For each guided session, the aforementioned post-guided session work took approximately ten (10) and fifteen (15) minutes to complete.

97.    Trainers were not required to record their time spent performing guided sessions.

98.    Upon information and belief, Defendant did not record the time spent by the Trainers performing guided sessions.

99.    The Trainers typically performed one (1) to five (5) guided sessions per workweek.

100.    Defendant did not compensate the Trainers anything for their time spent performing guided sessions.

v.     Meetings

101.   Defendant required Trainers to attend weekly update meetings that lasted approximately fifteen (15) minutes.

102.   The weekly update meetings were for the Trainers to meet with their Fitness and/or Personal Training Managers to discuss, among other things, member complaints, member PT session attendance, and PT programs.

103.   Defendant did not compensate the Trainers anything for these weekly update meetings.

104.   Defendant also required Trainers to attend Equinox Fitness Training Institute ("EFTI") meetings when they became a Tier 1 Trainer and each time they ascended to a new tier level.

105.   The EFTI meetings were either one (1) or (2) days per workweek for approximately eight (8) weeks.

106.   The EFTI meetings were designed to educate the Trainers on, among other things, nutrition, physical fitness programs, sales, and client retention.

107.   The EFTI meetings were typically conducted at a facility where the Trainers did not regularly work.

108.   Prior to the EFTI meeting, the Trainers were required to commute from their residence to the facility where they were assigned to work and then to the facility where the EFTI meeting was scheduled to take place.

109.   Following the EFTI meeting, they were required to commute from the facility where the EFTI meeting was conducted back to the facility where they were assigned to work.

110.    The Trainers were not compensated anything for their time spent commuting from one of Defendant's facilities to another.

111.    For example, during the relevant time period, Plaintiff was required to attend EFTI meetings at Defendant's Tribeca facility, which was a twenty (20) minute walk from her assigned facility (Brookfield Place). Plaintiff was not compensated anything for her time spent walking from the Brookfield Place facility to the Tribeca facility and vice versa.

112.    The Trainers were also required to complete "homework," which was either a quiz or program design in conjunction with their EFTI meetings.

113.    The EFTI homework usually took one (1) to two (2) hours to complete.

114.    Defendant did not compensate the Trainers anything for the time spent completing the EFTI homework.

## II.    Defendant's Violations of the FLSA, the NYLL, and the NYCRR

115.    All of the Trainers' time spent attending weekly update meetings, commuting to and from EFTI meetings, completing EFTI homework, performing guided sessions, preparing for/concluding/making-up PT sessions, and performing Equifit sessions (collectively, the "Duties") were not factored into their hours worked per workweek.

116.    All of the Trainers' time spent performing the Duties was compensable.

### a.    Defendant's Failure to Pay Overtime and "Spread of Hours" Pay

117.    When including all of the Trainers' time spent performing the Duties, the Trainers frequently worked above or further above forty (40) hours per workweek and/or ten (10) hours per workday.

118.    Throughout the relevant time period, however, Defendant's failed to factor all of the Trainers' time spent performing the Duties into their hours worked per workweek. As a result

of this failure, the Trainers were deprived of the statutorily required overtime premium of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek and "spread of hours pay" for each day worked in excess of ten (10) hours.

119.    At all relevant times, Defendant had actual knowledge that the Duties brought the Trainers' weekly hours worked above or further above forty (40) hours per workweek.

120.    For example, Defendant's Executive Vice President, Joe Matarazzo's, statement to the New York Times that Defendant does not require Trainers to work unpaid overtime because the fixed per session flat rate is meant to cover all PT session activity work evidences that Defendant knew that the PT session activity work brought the trainers weekly hours worked above or further above forty (40) hours per workweek. It also evidences that Defendant knew that it did not compensate the Trainers one and a half (1½) their hourly rate for all hours worked in excess of forty (40) per workweek as he states they were compensated pursuant to the fixed PT sessions flat rate policy for all hours worked during PT session activities.

121.    As for a further example, on several occasions during the relevant time period, Plaintiff informed her Personal Training Manager, Christopher Szefler ("Mr. Szefler"), that her PT session activities were taking thirty (30) or more minutes to complete per PT session.

122.    Mr. Szelfer was previously employed by Defendant as a Trainer.

123.    At all relevant times, Defendant had constructive knowledge that the Duties brought the Trainers weekly hours worked above or further above forty (40) hours of work per workweek.

124.    For example, although Defendant knew the Trainers were performing PT session activities and the amount of PT sessions they worked per workweek, it did not actually require them to record their time performing said work.

15

125.    As for another example, Defendant willfully recorded two (2) hours of PT session activities work on the Trainers' paychecks each and every pay period or not at all despite the varying numbers of PT sessions performed per workweek.

b.    Defendant's Failure to Timely Pay Wages, Unlawful Deduction of Wages, and Failure to Issue the Requisite Wage Statements

126.    Defendant's employment agreement with the Trainers states that the Trainers were to be paid the applicable hourly minimum wage for all time worked on non-PT session activities, which would include the aforementioned mandatory meetings, Equifit sessions, commuting to and from EFTI meetings, and guided sessions (collectively, the "Hourly Rate Duties").

127.    Defendant, however, did not compensate the Trainers the promised applicable minimum wage for all time spent performing the Hourly Rate Duties.

128.    Defendant also did not issue the Trainers a wage statement with each paycheck reflecting their overtime rate or rates of pay, the accurate number of regular hours worked, the accurate number of overtime hours worked, and Defendant's telephone number.

III.    **Facts Specific to Plaintiff**

129.    In August 2015, Plaintiff began her employment for Defendant as a Tier 1 Trainer at its Brookfield Place, Manhattan, New York facility.

130.    Throughout her employment for Defendant, Plaintiff worked at Defendant's Brookfield Place facility.

131.    In or around January 2016, Plaintiff was promoted to a Tier 2 Trainer.

132.    Tier 1 and 2 Trainers ("Low-Tier Trainers") were scheduled to work approximately five (5) to six (6) days per workweek and eight (8) to ten (10) hours per workday.

133.    Although Low-Tier Trainers performed Equifit sessions and PT sessions, they were primarily required to perform floor shifts.

134.    Low-Tier Trainers usually performed approximately ten (10) to fifteen (15) PT sessions per workweek.

135.    Low-Tier trainers were paid a lower fixed rate for PT sessions than Tier 3, Tier 3+, and Tier X Trainers (collectively, "High-Tier Trainers").

136.    In or around August 2016, Plaintiff was promoted to a Tier 3 Trainer.

137.    High-Tier Trainers' weekly schedules depended on the amount of PT sessions they were required to conduct each workweek.

138.    High-Tier Trainers primarily performed PT sessions.

139.    High-Tier Trainers usually performed approximately twenty (20) to thirty-five (35) Equifit sessions per workweek.

140.    High-Tier Trainers did perform more than twenty-one (21) full PT sessions per week during the relevant time period.

141.    If a High-Tier Trainer did not perform at least forty-two (42) full PT sessions per pay period, they were required to perform floor shifts in the subsequent pay-period to acquire more PT sessions from members.

142.    Throughout her employment for Defendant, Plaintiff was subjected to all of Defendant's unlawful pay policies alleged above.

143.    For example, during Plaintiff's April 29, 2018, to May 12, 2018 pay period, she performed the equivalent of fifty-four (54) full hour-long PT sessions. During this pay period, Plaintiff also spent approximately thirty-six (36) hours performing PT session activities and approximately thirty (30) minutes attending weekly meetings. Thus, Plaintiff worked approximately ninety and a half (90½) hours during this pay period.

144.     Accordingly, for at least one (1) of the two (2) workweeks worked during this pay period, Plaintiff worked in excess of forty (40) hours but was not paid a proper overtime wage.

145.     Instead, Plaintiff was solely paid $1,691.00 as her fixed per PT session pay and, upon information and belief, a non-discretionary bonus of $770.00 for conducting in excess of forty-two (42) PT sessions per pay period.

146.     Throughout the relevant time period, including the April 29, 2018, to May 12, 2018 pay period, Plaintiff was not paid the overtime premium of one and a half (1½) times her hourly rate for all her hours worked in excess of forty (40) per workweek.

147.     Notably, Plaintiff's April 29, 2018, to May 12, 2018 paycheck also failed to include her overtime rate or rates of pay, the accurate number of regular hours worked, the accurate number of overtime hours worked, and Defendant's telephone number.

148.     Plaintiff was also not compensated her promised hourly rate for all time spent performing the Hourly Rate Duties and frequently worked in excess of ten (10) hours per workday without "spread of hours" pay.

149.     For example, Plaintiff estimates that she performed approximately fifty (50) Equifit sessions in 2019, but was only compensated for approximately seven (7).

        i.     Plaintiff's NYCHRL Sexual Harassment Claims

150.     In or around April 2018, Plaintiff's Fitness Manager, Mohammed Said ("Mr. Said"), unwelcomely hugged her from behind and kissed her on the neck.

151.     Plaintiff immediately reported the foregoing to Mr. Szefler and submitted a written complaint to Defendant.

152.     At the time of the unlawful sexual harassment, Mr. Said was a Manager or Supervisor of Plaintiff and, upon information and belief, had power to fire, supervise, and

18

discipline Plaintiff. Mr. Said also, upon information and belief, had the power to issue Plaintiff instructions on how to perform her job according to Defendant's standards and policies or otherwise impact how she performed her job duties.

153.    Upon information and belief, no remedial action was ever taken in response to Plaintiff's complaint of sexual harassment.

ii.    Plaintiff's FMLA Interference/Retaliation and NYCHRL Discrimination and Retaliation Claims

154.    In 2019, Plaintiff was diagnosed with severe depression after her father was diagnosed with Parkinson's disease.

155.    During her employment for Defendant, Plaintiff and her father suffered a disability under the NYCHRL.

156.    During her employment for Defendant, Plaintiff's father suffered a serious health condition under the FMLA.

157.    Plaintiff's father's health conditions requires continual treatment by a physician.

158.    In December 2019, Plaintiff informed Mr. Szefler of her disability and her father's serious health condition and requested leave from December 17, 2019, to January 7, 2020, to care for her disability and for her father who has a serious health condition.

159.    Plaintiff's December 2019 request for FMLA leave was denied. Her leave, however, was approved under the New York State Paid Family Leave Act.

160.    Upon her return on or around January 8, 2020, Plaintiff submitted the leave paperwork that she was issued while out on leave.

161.    Despite submitting the requisite leave paperwork, on January 16, 2020, Defendant issued Plaintiff a final written warning.

162.    On or around January 27, 2020, as a result of his serious health condition, Plaintiff requested additional leave from February 26, 2020, to March 5, 2020, to care for her father.

163.    Mr. Szefler approved the leave request, but before doing so he stated, "You already took time off."

164.    Thereafter, Plaintiff requested Mr. Szefler to amend the start date of her leave from February 26, 2020, to February 25, 2020.

165.    Mr. Szefler approved the amendment and did not require Plaintiff to resubmit a leave request form.

166.    Defendant unlawfully failed to authorize her second leave from February 25, 2020, to March 5, 2020, as FMLA leave.

167.    On March 4, 2020, the day before she was to return from her leave, Defendant terminated Ms. Katz.

168.    Plaintiff was qualified for her position as she was employed by Defendant as a Trainer for approximately four (4) years at the time of her accommodation request.

169.    Plaintiff could perform or more easily perform her job duties with the December 17, 2019, to January 7, 2020 leave accommodation.

170.    Defendant retaliated and/or discriminated against Plaintiff for requesting a disability accommodation in December 2019 pursuant to the NYCHRL by placing her on a final written warning in violation of the NYCHRL.

171.    Defendant discriminated against Plaintiff for her association with her father who has a disability pursuant to the NYCHRL by placing her on a final written warning and/or terminating her in violation of the NYCHRL.

172.    Upon information and belief, Plaintiff was eligible and entitled to take FMLA Leave.

173.    Defendant had knowledge of Plaintiff's father's serious health condition prior to both of her leave requests.

174.    Defendant had knowledge that both of Plaintiff's leave requests were for her to tend to her father's serious health condition.

175.    Defendant interfered with Plaintiff's right to take FMLA leave by refusing to authorize both of her requests for leave as FMLA leave.

176.    Plaintiff's termination was a direct result of Defendant's FMLA leave interference and/or in retaliation for her request for FMLA leave.

177.    Defendant's violations of the FMLA and the NYCHRL were willful.

## FLSA COLLECTIVE ACTION ALLEGATIONS

178.    Plaintiff seeks to bring this suit as a collective action pursuant to 29 U.S.C. § 216(b) on her own behalf as well as those in the following Collective:

> All Tier 3, Tier 3+, and Tier X Trainers employed by Defendant within the State of New York during the past three (3) years through the final date of disposition of this action, who are or were required to work in excess of forty (40) hours per workweek without compensation at the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

179.    At all relevant times, Plaintiff was similarly situated to all such individuals in the FLSA Collective[3] because, while employed by Defendant, Plaintiff and all FLSA Plaintiffs performed similar tasks, were subject to the same laws and regulations, were paid in the same or substantially similar manner, were paid the same or similar rate, were required to work in excess

---

[3] Hereinafter referred to as the "FLSA Plaintiffs."

of forty (40) hours per workweek and were subject to Defendant's policies and practices of willfully failing to pay them at the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

180.    Defendant is and has been aware of the requirement to pay Plaintiff and the FLSA Plaintiffs at a rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek, yet willfully choose not to.

181.    The FLSA Plaintiffs, are readily discernable and ascertainable. All FLSA Plaintiffs' contact information is readily available in Defendant's records. Notice of this collective action can be made as soon as the Court determines it appropriate to do so.

182.    The number of FLSA Plaintiffs in the collective are too numerous to join in a single action, necessitating collective recognition.

183.    All questions relating to Defendant's violation of the FLSA share a common factual basis as set forth herein. No claims under the FLSA relating to Defendant's failure to pay statutorily required rate of one and a half (1½) times the FLSA Plaintiffs' hourly rate for all hours worked in excess of forty (40) per workweek are specific to Plaintiff and the claims asserted by Plaintiff are typical of those of members of the FLSA Collective.

184.    Plaintiff will fairly and adequately represent the interests of the FLSA Collective and have no interests conflicting with the FLSA Collective.

185.    A collective action is superior to all other methods and is necessary in order to fairly and completely litigate violations of the FLSA.

186.    Plaintiff's attorneys are familiar and have experience with collective and class action litigation, as well as employment and labor law litigation.

187.    The public will benefit from the case being brought as a collective action because doing so will serve the interests of judicial economy by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual FLSA Plaintiffs creates a risk for varying results based on identical fact patterns as well as disposition of the collective's interests without their knowledge or contribution.

188.    The questions of law and fact are nearly identical for all FLSA Plaintiffs and therefore proceeding as a collective action is ideal. Without judicial resolution of the claims asserted on behalf of the proposed collective, Defendant's continued violations of the FLSA will undoubtedly continue.

## FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS

### I.    THE HIGH-TIER TRAINER CLASS

189.    Plaintiff seeks to maintain this action as a class action pursuant to FED. R. CIV. P. 23, on behalf of those who, during the previous six (6) years, were subjected to violations of the NYLL and the NYCRR.

190.    The High-Tier Trainer Class which Plaintiff seeks to define includes:

> All Tier 3, Tier 3+, and Tier X Trainers employed by Defendant during the past six (6) years through the final date of disposition of this action, who are or were: (i) not paid the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek; (ii) not paid all of their earned and due wages on their regularly scheduled paydays/had their wages unlawfully deducted; (iii) not paid the "spread of hours" pay for each day worked in excess of ten (10) hours; and/or (iv) not issued the proper wage statements pursuant to the NYLL.

191.    The number of class members protected by the NYLL and the NYCRR who have suffered under Defendant's violations of the NYLL and the NYCRR as set forth herein, are in

excess of forty (40) and thus are too numerous to join in a single action, necessitating class recognition.

192.    All questions relating to the High-Tier Trainer Class's allegations under the NYLL and the NYCRR share a common factual basis with those raised by the claims of Plaintiff. No claims asserted herein under the NYLL and the NYCRR are specific to Plaintiff or any proposed High-Tier Trainer Class member and the claims of Plaintiff are typical of those asserted by the proposed High-Tier Trainer Class.

193.    Plaintiff will fairly and adequately represent the interests of all members of the proposed High-Tier Trainer Class.

194.    A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the High-Tier Trainer Class's allegations that Defendant violated the NYLL and the NYCRR.

195.    The class members of the proposed High-Tier Trainer Class are readily discernable and ascertainable. Contact information for all members of the proposed High-Tier Trainer Class[4] is readily available from Defendant since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under the FED. R. CIV. P. 23 requirements.

196.    Plaintiff asserts these claims on her own behalf as well as on behalf of the HTT Plaintiff through her attorneys who are experienced in class action litigation as well as employment litigation.

---

[4] Hereinafter referred to as the "HTT Plaintiffs."

197.    Plaintiff is able to fairly represent and properly protect the interests of the absent members of the proposed High-Tier Trainer Class and have no interests conflicting with those of the High-Tier Trainer Class.

198.    The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual HTT Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the classes' interests without their knowledge or contribution.

199.    Because of the nature of wage and hour claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiff's willingness to proceed against Defendant. The anonymity inherent in a class action suit further provides insulation against retaliation and/or undue stress and fear for the HTT Plaintiffs' jobs and continued employment.

200.    The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed High-Tier Trainer Class, continued violations of the NYLL and the NYCRR will undoubtedly continue.

201.    Whether Plaintiff and the HTT Plaintiffs were: (i) paid the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek; (ii) paid all of their earned and due wages on their regularly scheduled paydays; (iii) paid the "spread of hours" pay for each day worked in excess of ten (10) hours; and/or (iv) issued the proper wage statements pursuant to the NYLL are common questions which can readily be resolved through the class action process.

25

## II.   THE LOW-TIER TRAINER CLASS

202.   Plaintiff seeks to maintain this action as a class action pursuant to FED. R. CIV. P. 23, on behalf of those who, during the previous six (6) years, were subjected to violations of the NYLL and the NYCRR.

203.   The Low-Tier Trainer Class which Plaintiff seeks to define includes:

> All Tier 1 and Tier 2 Trainers employed by Defendant during the past six (6) years through the final date of disposition of this action, who are or were: (i) not paid the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek; (ii) not paid all of their earned and due wages on their regularly scheduled paydays/had their wages unlawfully deducted; (iii) not paid the "spread of hours" pay for each day worked in excess of ten (10) hours; and/or (iv) not issued the proper wage statements pursuant to the NYLL.

204.   The number of class members protected by the NYLL and the NYCRR who have suffered under Defendant's violations of the NYLL and the NYCRR as set forth herein, are in excess of forty (40) and thus are too numerous to join in a single action, necessitating class recognition.

205.   All questions relating to the Low-Tier Class's allegations under the NYLL and the NYCRR share a common factual basis with those raised by the claims of Plaintiff. No claims asserted herein under the NYLL and the NYCRR are specific to Plaintiff or any proposed Low-Tier Trainer Class member and the claims of Plaintiff are typical of those asserted by the proposed Low-Tier Trainer Class.

206.   Plaintiff will fairly and adequately represent the interests of all members of the proposed Low-Tier Trainer Class.

207.   A class action is superior to all other methods of adjudication and is necessary in order to fairly and completely litigate the Low-Tier Trainer Class's allegations that Defendant violated the NYLL and the NYCRR.

208.   The class members of the proposed Low-Tier Trainer Class are readily discernable and ascertainable. Contact information for all members of the proposed Low-Tier Trainer Class[5] is readily available from Defendant since such information is likely to be contained in their personnel files. Notice of this class action can be provided by any means permissible under the FED. R. CIV. P. 23 requirements.

209.   Plaintiff asserts these claims on her own behalf as well as on behalf of the LTT Plaintiff through her attorneys who are experienced in class action litigation as well as employment litigation.

210.   Plaintiff is able to fairly represent and properly protect the interests of the absent members of the proposed Low-Tier Trainer Class and have no interests conflicting with those of the Low-Tier Trainer Class.

211.   The public will benefit from this case being brought as a class action because it serves the interests of judicial economy by saving the Court's time and effort and by reducing a multitude of claims to a single litigation. Prosecution of separate actions by individual LTT Plaintiffs creates a risk of varying results based on identical fact patterns as well as disposition of the classes' interests without their knowledge or contribution.

212.   Because of the nature of wage and hour claims brought during the course of employment, class members are often fearful of filing claims against their employers and would benefit from Plaintiff's willingness to proceed against Defendant. The anonymity inherent in a

---

[5] Hereinafter referred to as the "LTT Plaintiffs."

class action suit further provides insulation against retaliation and/or undue stress and fear for the LTT Plaintiffs' jobs and continued employment.

213.   The questions of law and fact that are nearly identical for all class members make proceeding as class action ideal. Without judicial resolution of the claims asserted on behalf of the proposed Low-Tier Trainer Class, continued violations of the NYLL and the NYCRR will undoubtedly continue.

214.   Whether Plaintiff and the LTT Plaintiffs were: (i) paid the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek; (ii) paid all of their earned and due wages on their regularly scheduled paydays; (iii) paid the "spread of hours" pay for each day worked in excess of ten (10) hours; and/or (iv) issued the proper wage statements pursuant to the NYLL are common questions which can readily be resolved through the class action process.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
**The Fair Labor Standards Act, 29 U.S.C. § 207, Made by Plaintiff on Behalf of
All FLSA Plaintiffs
(Failure to Pay Overtime)**

215.   Plaintiff and the FLSA Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

216.   Throughout the period covered by the applicable statute of limitations, Plaintiff and other FLSA Plaintiffs were required to work and did in fact work in excess of forty (40) hours per workweek.

217.   Throughout the period covered by the applicable statute of limitations, Defendant knowingly failed to pay Plaintiff and the FLSA Plaintiffs the statutorily required overtime rate for all hours worked in excess of forty (40) per workweek.

218.    Defendant's conduct was willful and lasted for the duration of the relevant time period.

219.    Defendant's conduct was in violation of the Fair Labor Standards Act, 29 U.S.C. § 207.

## AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
### The New York Labor Law Made and the New York Codes, Rules, and Regulations § 142-1.4 by Plaintiff on Behalf of HTT and LTT Plaintiffs
### (Failure to Pay Overtime)

220.    Plaintiff and the HTT and LTT Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

221.    Throughout the period covered by the applicable statute of limitations, Plaintiff and other HTT and LTT Plaintiffs were required to work and did in fact work in excess of forty (40) hours per workweek.

222.    Throughout the period covered by the applicable statute of limitations, Defendant knowingly failed to pay Plaintiff and the HTT and LTT Plaintiffs the statutorily required overtime rate for all hours worked in excess of forty (40) per workweek.

223.    Defendant's conduct was willful and lasted for the duration of the relevant time period.

224.    Defendant's conduct was in violation of the New York Labor Law and the New York Codes, Rules, and Regulations § 146-1.4.

## AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
### The New York Labor Law § 191 Made by Plaintiff on Behalf of
### All HTT and LTT Plaintiffs
### (Failure to Timely Pay Wages)

251.    Plaintiff and the HTT and LTT Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

29

252.     Throughout the period covered by the applicable statute of limitations, every two-weeks Defendant was required to pay Plaintiff and other HTT and LTT Plaintiffs all earned and due wages.

253.     Throughout the period covered by the applicable statute of limitations, Defendant promised Plaintiff and the HTT and LTT Plaintiffs' New York State's applicable minimum wage for each hour spent performing Equifit and guided sessions, attending meetings, commuting to EFTI meetings, and completing Equifit homework.

254.     Throughout the period covered by the applicable statute of limitations, Defendant did not pay Plaintiff and other HTT and LTT Plaintiffs New York State's applicable minimum wage for each hour spent performing Equifit and guided sessions, attending meetings, commuting to EFTI meetings, and completing Equifit homework on their scheduled payday in which the wages were due.

255.     Defendant's conduct was willful and lasted for the duration of the relevant time period.

256.     Defendant's conduct was in violation of the New York Labor Law § 191.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
**The New York Labor Law § 193 Made by Plaintiff on Behalf of**
**All HTT and LTT Plaintiffs**
**(Deduction of Wages)**

257.     Plaintiff and the HTT and LTT Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

258.     Throughout the period covered by the applicable statute of limitations, Defendant promised Plaintiff and the HTT and LTT Plaintiffs' New York State's applicable minimum wage for each hour spent performing Equifit and guided sessions, attending meetings, commuting to EFTI meetings, and completing Equifit homework.

259.     Throughout the period covered by the applicable statute of limitations, Defendant withheld some or all of Plaintiff's and other HTT and LTT Plaintiffs' wages for their time spent performing Equifit and guided sessions, attending meetings, commuting to EFTI meetings, and completing Equifit homework.

260.     Throughout the period covered by the applicable statute of limitations, Defendant unlawfully deducted Plaintiff's and other HTT and LTT Plaintiffs' wages.

261.     Defendant's conduct was willful and lasted for the duration of the relevant time period.

262.     Defendant's conduct was in violation of the New York Labor Law § 193.

### AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF
**The New York Labor Law and the New York Codes, Rules, and Regulations § 142-2.4
Made by Plaintiff on Behalf of All HTT and LTT Plaintiffs
("Spread of Hours" Pay)**

263.     Plaintiff and the HTT and LTT Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

264.     Throughout the relevant time period, Plaintiff and the HTT and LTT Plaintiffs worked in excess of ten (10) hours per day.

265.     Plaintiff and the HTT and LTT Plaintiffs were/are entitled to "spread of hours" pay for each day worked in excess of ten (10) hours.

266.     Defendant knowingly failed to pay Plaintiff and the HTT and LTT Plaintiffs the "spread of hours" pay for each day worked in excess of ten (10) hours.

267.     Defendant's conduct was willful and lasted for the duration of the relevant time period.

268.     Defendant's conduct was in violation of the New York Labor Law and the New York Codes, Rules, and Regulations § 142.2.4.

**AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York Labor Law § 195, Made by Plaintiff on Behalf of**
**All HTT and LTT Plaintiffs**
**(Failure to Provide Proper Wage Statements)**

269.    Plaintiff and the HTT and LTT Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

270.    Pursuant to the NYLL, employers are required to furnish employees with every payment of wages a statement that includes, among other things, their overtime rate or rates of pay, the accurate number of regular hours worked, the accurate number of overtime hours worked, and its telephone number.

271.    Throughout the relevant time period, Defendant's knowingly failed to provide Plaintiff and the HTT and LTT Plaintiffs with the required wage statements and notices pursuant to NYLL.

272.    Defendant's conduct was willful and lasted for the duration of the relevant time period.

273.    Defendant's conduct was in violation of New York Labor Law § 195.

**AS AND FOR A SEVENTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York City Human Rights Law § 8-107**
**(Sexual Harassment)**

251.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

252.    Plaintiff is a female and is thus a member of a protected class pursuant to the NYCHRL.

253.    Plaintiff was sexually harassed by one of her Managers.

254.    Upon information and belief, Defendant failed to take immediate and appropriate action in response to Plaintiff's complaints of sexual harassment.

255.    Defendant's conduct was willful and in violation of the New York City Human Rights Law § 8-107.

### AS AND FOR AN EIGHTH CAUSE OF ACTION FOR A VIOLATION OF
**The Family and Medical Leave Act, 29 U.S.C. § 2615**
**(FMLA INTEFERNCE)**

256.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

257.    Upon information and belief, Plaintiff was eligible for FMLA leave as she worked one thousand two hundred and fifty (1,250) or more hours within the twelve (12) month period immediately preceding her requests for FMLA leave.

258.    In December 2019, Plaintiff informed Defendant of her father's serious health condition and requested FMLA leave from December 17, 2019, to January 7, 2020.

259.    Defendant denied Plaintiff's December 2019 FMLA leave request.

260.    On or around January 27, 2020, Plaintiff requested leave to care for her father's serious health condition from February 25, 2020, to March 5, 2020.

261.    Defendant failed to authorize her second leave request as FMLA leave.

262.    Defendant terminated Plaintiff the day before she was scheduled to return to work from her second leave.

263.    Defendant unlawfully interfered with Plaintiff's right to use FMLA leave by refusing to authorize both leaves as FMLA leave resulting in her termination.

264.    Defendant's conduct was willful and in violation of the Family Medical Leave Act, 29 U.S.C. § 2615.

**AS AND FOR A NINTH CAUSE OF ACTION FOR A VIOLATION OF**
**The Family and Medical Leave Act, 29 U.S.C. § 2615**
**(FMLA Retaliation)**

265.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

266.   In December 2019, Plaintiff informed Defendant of her father's serious health condition.

267.   In December 2019, Plaintiff requested FMLA leave from December 17, 2019, to January 7, 2020.

268.   On or around January 27, 2020, Plaintiff requested leave to care for her father's serious health condition from February 25, 2020, to March 5, 2020

269.   Defendant terminated Plaintiff the day before she was scheduled to return to work from her leave.

270.   Plaintiff's termination was in retaliation for her request for FMLA leave.

271.   Defendant's conduct was willful and in violation of the Family Medical Leave Act, 29 U.S.C. § 2615.

**AS AND FOR A TENTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York City Human Rights Law § 8-107**
**(Retaliation)**

251.   Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

252.   During her employment for Defendant, Plaintiff suffered from severe depression which is a psychological impairment and impaired her mental capabilities and her ability to sleep.

253.   During her employment for Defendant, Plaintiff had a disability under the NYCHRL.

34

254.    In December 2019, Plaintiff requested a disability accommodation consisting of short term definite leave from December 16, 2019, to January 10, 2020.

255.    Plaintiff's request for an accommodation was approved prior to her taking it.

256.    On January 15, 2020, Plaintiff was unlawfully issued a final written warning in retaliation for her request for a disability accommodation.

257.    Defendant's conduct was willful and in violation of the New York City Human Rights Law § 8-107.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION FOR A VIOLATION OF**
**The New York City Human Rights Law § 8-107**
**(Discrimination)**

258.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

259.    During her employment for Defendant, Plaintiff suffered from severe depression which is a psychological impairment and impaired her mental capabilities and her ability to sleep.

260.    During her employment for Defendant, Plaintiff's father suffered from Parkinson's disease, which is, among other things, a physical impairment and impairs his ability to walk, talk, and lift.

261.    During her employment for Defendant, Plaintiff had a disability under the NYCHRL.

262.    During her employment for Defendant, Plaintiff's father had a disability under the NYCHRL.

263.    In December 2019, Plaintiff requested a disability accommodation consisting of short term definite leave from December 16, 2019, to January 10, 2020.

264.    Plaintiff's request for an accommodation was approved prior to her taking it.

35

265.    On January 15, 2020, Plaintiff was unlawfully issued a final written warning on the basis of her disability and/or on the basis of her association with her father who also has a disability.

266.    Defendant unlawfully terminated Plaintiff on basis of her association with her father who also has a disability.

267.    Defendant's conduct was willful and in violation of the New York City Human Rights Law § 8-107

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and all Collective and Class Plaintiffs demand judgment against Defendant as follows:

A.    At the earliest possible time, Plaintiff should be allowed to give notice of the purported Collective, or the Court should issue such notice, to all members of the purported Collective, defined herein. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages and/or benefits;

B.    Designation of Plaintiff as representative of the FLSA Collective defined herein, and Plaintiff's counsel as Collective Counsel;

C.    Designation of Plaintiff as representative of the Fed. R. Civ. P. 23 High-Tier Trainer Class defined herein, and Plaintiff's counsel as Class Counsel;

D.    Designation of Plaintiff as representatives of the Fed. R. Civ. P. 23 Low-Tier Trainer Class defined herein, and Plaintiff's counsel as Class Counsel;

E.      Certification of this action as a collective action pursuant to 29 U.S.C. § 216(b) for the purposes of the claims brought on behalf of all proposed FLSA Collective members under the FLSA;

F.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 for the purposes of the claims brought on behalf of all proposed High-Tier Trainer and Low-Tier Trainer Class members under the NYLL and the NYCRR;

G.      Preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

H.      A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law, the New York Codes, Rules and Regulations, the Family Medical Leave Act 29, U.S.C. §§ 2601 *et seq.*, and the New York City Human Rights Law;

I.      All damages which Plaintiff and all Collective and Class Plaintiffs have sustained as a result of Defendant's conduct, including: (i) back pay for unpaid overtime, unpaid wages, unpaid "spread of hours" pay, (ii) liquidated damages, (iii) penalties, and (iv) general and special damages for lost compensation and job benefits they would have received but for Defendant's improper practices;

J.      All damages which Plaintiff has individually sustained as a result of Defendant's conduct, including back pay, general and special damages for lost compensation and job benefits he would have received but for Defendant's unlawful discriminatory and retaliatory conduct, front

pay, liquidated damages, punitive damages, attorneys' fees, interest, and compensatory damages including for emotional distress humiliation, embarrassment, and anguish;

K.     An award to Plaintiff and all Collective and Class Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

L.     An award to Plaintiff and all Collective and Class Plaintiffs representing Defendant's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

M.     An award to Plaintiff and all Collective and Class Plaintiffs for the amount of unpaid wages, including interest thereon, liquidated damages subject to proof, and penalties;

N.     Awarding Plaintiff and all Collective and Class Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

O.     Pre-judgment and post-judgment interest, as provided by law; and

P.     Granting Plaintiffs and all Collective and Class Plaintiffs other and further relief as this Court finds necessary and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint.

Dated:          November 23, 2020
                Garden City, New York

                                    Respectfully submitted,

                                    /s/ James A. Vagnini
                                    James A. Vagnini, Esq.

38

Alexander M. White, Esq.
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
T: (516) 203-7180
F: (516) 706-0248

*Attorneys for Plaintiffs*