**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MONIQUE KATZ, individually and on behalf of all
others similarly situated,

                        Plaintiff,

      v.

 EQUINOX HOLDINGS, INC.,

                       Defendant.

Case No.: 1:20-CV-09856 (VEC)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 4

STATEMENT OF FACTS ..................................................................................................... 4

LEGAL STANDARD ............................................................................................................ 8

ARGUMENT ......................................................................................................................... 9

I.      Conditional Certification Should Be Granted to Plaintiff and the Putative Collective
Members Should be Notified of the Pendency of this Collective Action. ...................................... 9

   A.      An FLSA Collective of Trainers with the Same Pay Policy in Texas Has Already Been
Conditionally Certified Against Defendant in the Northern District of Texas. ....................... 11

   B.      Plaintiff and the Putative Collective Members Are Similarly Situated. ....................... 12

     B.      The Per Session Rate of Pay Policy Was Implemented Statewide............................ 14

   C.      Individualized and Merit-Based Arguments are Improper. ........................................... 16

   D.      The Proposed Notice is Fair and Accurate..................................................................... 20

     1.      *The Court Should Approve Plaintiff's Proposed Method for Notice Dissemination.* 20

     2.      *The Court Should Authorize the Sending of a Reminder Notice.* .............................. 21

II.     The Proposed Limited Discovery is Essential to Ensure Timely Notice. ............................ 22

III.    Tolling for the Putative Collective Members.................................................................... 22

CONCLUSION ...................................................................................................................... 23

**TABLE OF AUTHORITIES**

**Cases**

*Alvarado v. Villas Mkt. Place Inc.*
 No. 19-CV-4036 (VEC), 2020 WL 91489 (S.D.N.Y. Jan. 8, 2020) .................................. 8-9, 22

*Apolinar v. Fusha 311 W. Inc.*
 No. 15-CV-00196 (VEC), 2016 WL 11710468 (S.D.N.Y. Apr. 14, 2016) ........................... 13

*Braunstein v. E. Photographic Labs., Inc.*
 600 F.2d 335 (2d Cir. 1978) ....................................................................................... 10

*Canelas v. Frank & Nino's Pizza Corp.*
 No. 19-CV-6105 (VEC), 2020 WL 8996702 (S.D.N.Y. May 11, 2020) .......................... 12, 22

*Casanova v. Gold's Texas Holdings Grp., Inc.*
 No. 5:13-CV-1161, 2016 WL 1241548 (W.D. Tex. Mar. 23, 2016) .............................. 17-18

*Chang Yan Chen v. Lilis 200 W. 57th Corp.*
 No. 19-CV-7654 (VEC), 2021 WL 135248 (S.D.N.Y. Jan. 14, 2021) ................................. 22

*Charlot v. Ecolab, Inc.*
 136 F. Supp. 3d 433 (E.D.N.Y. 2015) ....................................................................... 17

*Contrera v. Langer*
 278 F. Supp. 3d 702 (S.D.N.Y. 2017) ................................................................... 9-10, 12

*Encino Motorcars, LLC v. Navarro*
 138 S. Ct. 1134 (2018) ........................................................................................... 18

*Gathmann-Landini v. Lululemon USA Inc.*
 No. 15-CV-6867, 2018 WL 3848922 (E.D.N.Y. Aug. 13, 2018) ................................ 15-16

*Hamadou v. Hess Corp.*
 915 F. Supp. 2d 651 (S.D.N.Y. 2013) ...................................................................... 15

*Hoffmann-LaRoche Inc. v. Sperling*
 493 U.S. 165 (1989) ......................................................................................... 8, 20, 22

*Hwangbo v. Kimganae, Inc.*
 No. 19-CV-6356, 2021 WL 2843839 (E.D.N.Y. June 1, 2021) ................................. 21-22

*Indergit v. Rite Aid Corp.*
 No. 08-CV-9361 (PGG), 2010 WL 2465488 (S.D.N.Y. June 16, 2010) ........................... 11

*Jackson v. Bloomberg, L.P.*
 298 F.R.D. 152 (S.D.N.Y. 2014) ........................................................................... 9, 11, 16

*Johnson v. Mattress Warehouse, Inc.*
  No. 20-CV-891, 2021 WL 4206722 (E.D. Pa. Sept. 16, 2021) ................................. 18

*Knox v. Jones Grp.*
  208 F. Supp. 3d 954 (S.D. Ind. 2016) ................................................................... 21

*Lassen v. Hoyt Livery, Inc.*
  No. 13-CV-1529, 2016 WL 7165716 (D. Conn. Dec. 8, 2016).............................. 19

*Lee v. ABC Carpet & Home*
  236 F.R.D. 193 (S.D.N.Y. 2006) ...................................................................... 10-11

*Leonardo v. ASC, Inc.*
  No. 18-CV-3657 (VEC), 2018 WL 5981996 (S.D.N.Y. Nov. 14, 2018) ................. 9, 16, 22-23

*Lynch v. United Svcs. Auto. Ass'n*
  491 F. Supp. 2d 357 (S.D.N.Y 2007)................................................................. 9, 16

*Martin v. Sprint/United Mgmt. Co.*
  No. 15-CV-5237 (PAE), 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016) ..................... 8, 16

*Myers v. Hertz Corp.*
  624 F.3d 537 (2d Cir. 2010)................................................................................ 8, 11

*Neff v. Flowers Foods, Inc.*
  No. 5:15-CV-254, 2019 WL 10750005 (D. Vt. May 16, 2019) .............................. 19

*Pino v. Harris Water Main & Sewer Contractors Inc.*
  No. 17-CV-5910, 2020 WL 5708889 (E.D.N.Y. Sept. 23, 2020) ........................... 19

*Pippins v. KRMG LLP*
  No. 11-CV-0377 (CM)(JLC), 2012 WL 19379 (S.D.N.Y. Jan. 3, 2012) ................. 21

*Rosado v. Castillo*
  No. 20-CV-3913 (LJL), 2021 WL 1172626 (S.D.N.Y. Mar. 29, 2021) ............................ 18-19

*Rosales v. Equinox Holdings, Inc.*
  No. 3:18-CV-0356, 2019 WL 1753962 (N.D. Tex. Apr. 19, 2019) ...................... 11-12, 17, 19

*Rosario v. Valentine Ave. Disc. Store, Co.*
  828 F. Supp. 2d 508 (E.D.N.Y. 2011) ................................................................... 10

*Summa v. Hofstra Univ.*
  715 F. Supp. 2d 378 (E.D.N.Y. 2010) ................................................................... 10

*Tate v. WJL Equities Corp.*
   No. 13-CV-8616, 2014 WL 2504507 (S.D.N.Y. June 3, 2014) ............................................... 22

*Taylor v. R.J.T. Motorist Serv., Inc.*
   No. 19-CV-01155 (PMH), 2020 WL 4937483 (S.D.N.Y. Aug. 24, 2020) .............. 9, 12, 20-22

*Trawinski v. KPMG LLP*
   No. 11-CV-2978 (PAC), 2012 WL 6758059 (S.D.N.Y. Dec. 21, 2012)............................ 16-17

*Varghese v. JP Morgan Chase & Co.*
   No. 14-CV-1718 (PGG), 2016 WL 4718413 (S.D.N.Y. Sept. 9, 2016)............................. 20-21

*Viriri v. White Plains Hosp. Med. Ctr.*
   320 F.R.D. 344 (S.D.N.Y. 2017) ............................................................................................. 16

*Xiao Ling Chen v. XpresSpa at Terminal 4 JFK LLC*
   No. 15-CV-1347, 2019 WL 5792315 (E.D.N.Y. Aug. 20, 2019) ............................................ 18

*Zhongle Chen v. Kicho Corp.*
   No. 18-CV-7413 (PMH)(LMS), 2020 WL 1900582 (S.D.N.Y. Apr. 17, 2020) ................. 9, 12

**Statutes**

29 U.S.C. §§ 201, *et. seq*……………………………………………………...………... *passim*

29 U.S.C. § 207(i)……………………………………………………………………………16-19

29 U.S.C. 207(a)(1)……………………………………………………………………………19

29 U.S.C. 215(a)(3)…………………………………………………………………….....20-21

**Federal Rules of Civil Procedure**

Fed R. Civ. P. 23………………………………………………………………………....11

**Federal Regulations**

29 C.F.R. § 778.109…………………………………………………...……………………19

## PRELIMINARY STATEMENT

This action is brought by Plaintiff Monique Katz ("Plaintiff") on behalf of herself and all others similarly situated against Equinox Holdings, Inc. ("Equinox" or "Defendant") for, among other things, a violation of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). Plaintiff alleges that Defendant violated the FLSA by failing to pay her and all others similarly situated the statutorily required overtime premium for all hours worked in excess of forty (40) hours per week.

To date, eight (8) persons, excluding Plaintiff, employed by Defendant at various New York locations have filed consent to join forms to "opt-in" to this action. *See* Dkt. Nos. 12, 20, 22-24, 29, 36-37. Accordingly, Plaintiff respectfully moves to conditionally certify the following collective:

> All persons who were employed by Defendant as a Tier 3, Tier 3+, or Tier X Trainers within the State of New York since May 13, 2018[1] who were paid on a flat rate for each personal training session performed and who were required to work in excess of forty (40) hours per workweek without compensation at the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

## STATEMENT OF FACTS

Defendant is a nationwide luxury fitness center with more than forty (40) locations throughout the State of New York.[2] *See* Dkt. No. 1 ("Compl.") ¶ 3. Defendant employs Personal Trainers to provide personal training services to its members. *See id.* at ¶ 39; October 26, 2021 Declaration of Monique Katz ("Katz Decl.") ¶¶ 5-7, annexed to Affirmation of James A. Vagnini, dated October 28, 2021 ("Vagnini Aff."), as Exhibit A; October 23, 2021 Declaration of Claudia

---

[1] The parties entered into a tolling agreement whereby the statute of limitations for the putative collective was tolled for this action from May 13, 2021, to November 30, 2021. Thus, the effective beginning of the statute of limitations period for the putative collective members is May 13, 2018.
[2] *See* https://www.equinox.com/clubs/new-york.

Ramirez ("Ramirez Decl.") ¶¶ 5-9, annexed to Vagnini Aff. as Exhibit B; October 26, 2021 Declaration of Jennifer Carlson ("Carlson Decl.") ¶¶ 5-7, annexed to Vagnini Aff. as Exhibit C; October 24, 2021 Declaration of Quinn Tew ("Tew Decl.") ¶¶ 5, 7, annexed to Vagnini Aff. as Exhibit D; October 22, 2021 Declaration of Colleen Faulkner ("Faulkner Decl.") ¶¶ 6-7, annexed to Vagnini Aff. as Exhibit E; October 22, 2021 Declaration of Harrison Lessans ("Lessans Decl.") ¶ 4-5, 7, annexed to Vagnini Aff. as Exhibit F; October 26, 2021 Declaration of Eric Shipper ("Shipper Decl.") ¶¶ 4, 6, annexed to Vagnini Aff. as Exhibit G. Defendant employs Personal Trainers in five (5) different position levels. *See* Katz Decl. ¶ 6; Carlson Decl. ¶ 6; Tew Decl. ¶ 6; Lessans Decl. ¶ 3; Shipper Decl. ¶ 3. The Tier 1 and Tier 2 trainer positions are entry-level positions and were primarily responsible for working the "gym floor" (where members train without personal trainers) by, among other things, cleaning up weights and answering member questions to acquire more clientele and gain experience. *See* Katz Decl. ¶ 6; Ramirez Decl. ¶ 22; Carlson Decl. ¶ 6; Tew Decl. ¶ 6. The three (3) non-entry level High Tier Trainer positions are Tier 3, Tier 3+, and Tier X (collectively, the "HTTs") who are primarily responsible for conducting personal training sessions with Defendant's members as they have the most experience and a large clientele base. *See* Katz Decl. ¶ 7; Ramirez Decl. ¶¶ 9, 22; Carlson Decl. ¶ 7; Tew Decl. ¶ 7; Faulkner Decl. ¶ 7; Lessans Decl. ¶ 7; Shipper Decl. ¶ 6.

In August 2015, Plaintiff began her employment for Defendant as a Tier 1 Personal Trainer at its Brookfield Place, Manhattan, New York location (225 Liberty St. New York, New York 10281). *See* Compl. ¶ 129. In or around January 2016, Plaintiff was promoted to a Tier 2 Personal Trainer, and in or around August 2016, she was promoted to a Tier 3 Personal Trainer. Plaintiff remained employed as a Tier 3 Personal Trainer until her unlawful termination in March 2020. *See* Compl. ¶¶ 131, 136.

Defendant implements a written corporate-wide pay policy whereby its HTTs: (i) sometimes receive an hourly rate of New York State's minimum wage for any work not related to personal training sessions such as floor shifts or attending meetings ("Non-PT Work"); and (ii) were paid a flat rate of pay for each one (1) hour personal training sessions ("PT session"). *See* Compl. ¶¶ 46-61-68, 89-114; Katz Decl. ¶ 8; Ramirez Decl. ¶ 9; Carlson Decl. ¶¶ 8, 12; Tew Decl. ¶ 7; Faulkner Decl. ¶¶ 8, 11; Lessans Decl. ¶¶ 7, 19; Shipper Decl. ¶ 6, 16; Defendant's Written Corporate Pay Policy, annexed to Vagnini Aff. as Exhibit H ("Ex. H"). Pursuant to Defendant's corporate policy, the flat rate of pay is alleged to have compensated the HTTs for all time spent preparing for, conducting, and concluding the PT session. *See* Compl. ¶ 118; *See* Katz Decl. ¶ 8; Ramirez Decl. ¶¶ 9, 13, 15; Carlson Decl. ¶ 8; Tew Decl. ¶ 7; Faulkner Decl. ¶ 8; Lessans Decl. ¶ 8; Shipper Decl. ¶ 7; Exhibit H.

In addition to the one (1) hour PT session with their clients, HTTs spent approximately a half (½) hour to an hour or more preparing for and concluding each PT Session (the "PT sessions-related work"). *See* Compl. ¶¶ 64, 69; Katz Decl. ¶¶ 9, 11-12; Ramirez Decl. ¶¶ 11-12; Carlson Decl. ¶¶ 9-10; Tew Decl. ¶¶ 9-10; Faulkner Decl. ¶¶ 12-13; Lessans Decl. ¶ 10; Shipper Decl. ¶ 9. They prepared for each session by researching workouts for the member, creating a customized (or tailored) workout plan for the member on Equinox's Google Drive, engaging with the member regarding their workout, cleaning the anticipated workout space, gathering the requisite workout equipment, and interacting with the member. *See* Compl. ¶ 63; Katz Decl. ¶ 10; Ramirez Decl. ¶¶ 11-12; Carlson Decl. ¶¶ 9-10; Tew Decl. ¶¶ 9-10; Faulkner Decl. ¶¶ 12-13; Lessans Decl. ¶ 9; Shipper Decl. ¶ 8. They concluded the session by interacting with the member, cleaning the workout area, returning the workout equipment, and entering the member's workout data. *See*

Compl. ¶ 68; *See* Katz Decl. ¶ 11; Ramirez Decl. ¶ 11; Carlson Decl. ¶ 9; Tew Decl. ¶ 9; Faulkner Decl. ¶ 14; Lessans Decl. ¶ 9; Shipper Decl. ¶ 8.

Accordingly, for each PT session, HTTs performed approximately an hour and one-half (1½) hours to two (2) hours (or more) hours of work. Thus, for example, ***not including the regular Non-PT Work they performed***, when HTTs performed twenty-three (23) or more PT sessions in a single workweek they undoubtedly worked in excess of forty (40) hours.[3] Defendant's flat-rate pay policy, however, did not include an overtime premium of one and a half (1½) times the HTTs' effective hourly rate for those hours worked in excess of forty (40). *See* Compl. ¶ 118; Katz Decl. ¶ 14; Ramirez Decl. ¶ 13,15; Carlson Decl. ¶ 11; Tew Decl. ¶ 10; Faulkner Decl. ¶ 16; Lessans Decl. ¶ 11; Shipper Decl. ¶ 10. Rather, Defendant solely paid them their flat PT session rate of pay in direct violation of the FLSA. *See* Compl. ¶ 118; Katz Decl. ¶ 14; Ramirez Decl. ¶ 13,15; Carlson Decl. ¶ 11; Tew Decl. ¶ 10; Faulkner Decl. ¶ 16; Lessans Decl. ¶ 11; Shipper Decl. ¶ 10. Defendant also paid only the flat PT session rate of pay without the overtime premium even if the HTT performed more than forty (40) hour-long sessions in a single workweek. *See* Lessans Decl. ¶ 10; Shipper Decl. ¶ 9.

Further, the HTTs also regularly performed some non-PT session work almost every week, such as floor shifts, in addition to the PT session-related work, which drove their weekly hours above or further above forty (40) per workweek. *See* Katz Decl. ¶ 15; Ramirez Decl. ¶ 13; Carlson Decl. ¶ 12; Tew Decl. ¶ 10; Faulkner Decl. ¶ 16; Lessans Decl. ¶ 22; Shipper Decl. ¶ 19. However, Defendant still did not pay an overtime premium to them, as it paid only the PT session flat rate for PT sessions and minimum wage at the straight-time rate for the hours spent performing non-PT session work. *See* Katz Decl. ¶ 15; Ramirez Decl. ¶ 13; Carlson Decl. ¶ 12; Tew Decl. ¶ 10;

---

[3] The performance of any non-PT work in connection with PT Session work also brought the HTTs' weekly hours worked above or further above forty (40) per workweek without any overtime compensation.

Faulkner Decl. ¶ 16; Lessans Decl. ¶ 22; Shipper Decl. ¶ 19. No matter the type of work the HTTs performed, the pay basis for the work, and the number of hours they spent working, Defendant's pay policy did not include overtime pay for all hours worked over forty (40) per workweek. *See* Katz Decl. ¶¶ 14-15; Ramirez Decl. ¶¶ 13, 15; Carlson Decl. ¶¶ 11-12; Tew Decl. ¶ 10; Faulkner Decl. ¶ 16; Lessans Decl. ¶¶ 11, 22; Shipper Decl. ¶ 10, 19.

Moreover, pursuant to Defendant's unlawful pay policy, Defendant did not permit the HTTs to record the actual amount of hours they spent on PT session-related activities for every biweekly pay period. *See* Compl. ¶¶ 77-80; Ramirez Decl. ¶ 15; Carlson Decl. ¶ 13; Tew Decl. ¶ 11; Faulkner Decl. ¶ 15. Accordingly, this case is ripe for conditional certification as Plaintiff and the putative collective members were all employed in similar positions, performed the same job duties, were subjected to the same unlawful overtime policy, and were not paid their proper overtime compensation for all hours worked in excess of forty (40) hours per workweek.

## LEGAL STANDARD

"The FLSA provides that an action may be maintained against an employer by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." *Martin v. Sprint/United Mgmt. Co.*, No. 15-CV-5237 (PAE), 2016 WL 30334, at *4 (S.D.N.Y. Jan. 4, 2016). "[D]istrict courts 'have discretion, in appropriate cases, to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (quoting *Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

For plaintiffs to succeed on a motion for conditional certification under 29 U.S.C. § 216(b), they must make "a modest factual showing that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Alvarado v. Villas Mkt. Place Inc.*, No.

8

19-CV-4036 (VEC), 2020 WL 91489, at *1 (S.D.N.Y. Jan. 8, 2020) (citation omitted). "In other words, at this preliminary stage, the focus of the inquiry is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." *Zhongle Chen v. Kicho Corp.*, No. 18-CV-7413 (PMH)(LMS), 2020 WL 1900582, at *5 (S.D.N.Y. Apr. 17, 2020) (citations omitted).

## ARGUMENT

### I.  Conditional Certification Should Be Granted to Plaintiff and the Putative Collective Members Should be Notified of the Pendency of this Collective Action.

Plaintiff's Motion for Conditional Certification of a Collective should be granted and the putative collective members should be issued notice of this pending action. "The Second Circuit has endorsed a two-step approach to FLSA collective actions." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014). "At the notice stage, plaintiffs must establish that other employees may be similarly situated to them." *Leonardo v. ASC, Inc.*, No. 18-CV-3657 (VEC), 2018 WL 5981996, at *1 (S.D.N.Y. Nov. 14, 2018) (citation omitted). "As such, without resolving factual disputes or assessing the merits of the case, the Court's task is to ascertain whether the plaintiff has made the modest factual showing that he and the potential opt-in plaintiffs were victims of a common policy or plan that violated the law." *Taylor v. R.J.T. Motorist Serv., Inc.*, No. 19-CV-01155 (PMH), 2020 WL 4937483, at *2 (S.D.N.Y. Aug. 24, 2020) (citation omitted).

"The burden for demonstrating that potential plaintiffs are 'similarly situated' is very low at the notice stage." *Lynch v. United Svcs. Auto. Ass'n,* 491 F. Supp. 2d 357, 367–68 (S.D.N.Y 2007). "While not every case under section 216(b) may be neatly sorted into categories, case law points to two broad methods by which a plaintiff may show he or she is 'similarly situated' to the group of employees to whom he or she seeks to send notice of a lawsuit." *Contrera v. Langer*, 278

F. Supp. 3d 702, 716 (S.D.N.Y. 2017). "One is a 'top-down' method of proof, in which a plaintiff provides evidence from a central office or from management levels of an employer showing that the employer had a policy or practice of treating all employees in the class similarly with respect to the allegedly illegal labor law practice." *Id.* at 716. "The other form of proof may be called 'bottom-up'—that is, where plaintiffs and sometimes other employees provide affidavits conveying their own experience with the employer, or recount conversations with other employees, and then seek to draw an inference that an illegal policy or practice exists that covered a group of employees broader than the plaintiff or the other employees who provided the affidavits." *Id*.

Furthermore, "under section 216(b) parties may also be similarly situated, despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice." *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 390 (E.D.N.Y. 2010) (citation omitted). A plaintiff is not required to demonstrate that other putative members are interested in joining the collective or that the putative collective members are numerous. *See Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 513–14 (E.D.N.Y. 2011) ("Unlike class certification under Fed. R. Civ. P. 23, no showing of numerosity . . . need be made for certification of a representative action.") (citations omitted); *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1978) ("FLSA plaintiffs are not required to show that putative members of the collective action are interested in the lawsuit in order to obtain authorization for notice of the collective action to be sent to potential plaintiffs.").

If a plaintiff meets the first step's burden, "a court certifies the class as a collective action" and "[p]otential class members are then notified and provided with the opportunity to opt-in to the action." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (citation omitted).

10

"Because the determination that plaintiffs are similarly situated is merely a preliminary one, courts generally grant conditional certification." *Jackson*, 298 F.R.D. at 158-159 (citation omitted).

"At the second stage, after plaintiffs have opted in and there has been discovery, 'courts conduct a more stringent 'second tier' analysis upon a full record to decide whether the additional plaintiffs are similarly situated to the original plaintiffs.'" *Id* at 159 (quoting *Indergit v. Rite Aid Corp.*, No. 08-CV-9361 (PGG), 2010 WL 2465488, at *4 (S.D.N.Y. June 16, 2010)). "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555 (citation omitted).

In the instant motion, Plaintiff is moving for conditional certification to provide notice of this action to the putative collective members. There have been no depositions conducted to date and the parties have not engaged in discovery. Therefore, only the lenient first step of the two-step approach should be utilized. For the reasons set forth below, the Court should find Plaintiff similarly situated to the putative members of the proposed collective:

> All Tier 3, Tier 3+, and Tier X Trainers employed by Defendant within the State of New York since May 13, 2018, who are or were paid on a flat rate for each personal training session performed and who were required to work in excess of forty (40) hours per workweek without compensation at the statutorily required rate of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.

A. <u>An FLSA Collective of Trainers with the Same Pay Policy in Texas Has Already Been Conditionally Certified Against Defendant in the Northern District of Texas.</u>

On April 19, 2019, the United States District Court for the North District of Texas in *Rosales v. Equinox Holdings, Inc.* conditionally certified a § 216(b) collective of Trainers employed in Texas against Defendant for unpaid overtime wages. *See* No. 3:18-CV-0356, 2019 WL 1753962 (N.D. Tex. Apr. 19, 2019). The Northern District of Texas found that many of Defendant's locations nationwide use the same pay policy whereby "no hourly rate was paid when

11

the trainer worked one-on-one with a customer for personal training ("PT sessions")—instead, the trainer would be paid per unit of training she conducted, the value of which depended on the trainer's experience." The *Rosales* Court, as the Court should here, also found Trainers to be similarly situated to other Trainers within the plaintiffs' state of Texas.[4] *See Rosales*, 2019 WL 1753962 at *5. Lastly, it is important to note that Opt-In Plaintiff Claudia Ramirez attests in her declaration that Equinox's pay policy (*i.e.*, per session flat rate with no overtime) is the same in Texas as it is in New York. *See* Ramirez Decl. ¶¶ 7-17.

B. Plaintiff and the Putative Collective Members Are Similarly Situated.

Plaintiff is similarly situated to the putative collective members as they all were subjected to a common policy that violates the FLSA, and Plaintiff provides both "top-down" and "bottom-up" evidence to support this contention. *Contrera*, 278 F. Supp. 3d at 716 ; *see Canelas v. Frank & Nino's Pizza Corp.*, No. 19-CV-6105 (VEC), 2020 WL 8996702, at *1 (S.D.N.Y. May 11, 2020) ("To meet [her conditional certification] burden, the plaintiff need only "make a 'modest factual showing' that they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.") (citation omitted); *Zhongle Chen*, 2020 WL 1900582 at *8 ("[I]n the Second Circuit, courts routinely find employees similarly situated despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice.").

Plaintiff supports her position that she is similarly situated to the putative collective

---

[4] The *Rosales* court limited the collective to only one (1) of Equinox's locations within Texas because the plaintiff failed to show that putative collective members from other locations were interested in opting in—a former requirement in the Fifth Circuit for conditional certification. Such is not a requirement in the Second Circuit. *Compare Rosales*, 2019 WL 1753962 at *4 ("Lastly, although not a statutory requirement, this Court and many others in the Fifth Circuit have required the plaintiff to show a third factor—that other employees desire to opt in.") *with Taylor*, 2020 WL 4937483 at *3 ("[A] single affidavit will suffice [for conditional certification] so long as it is sufficiently detailed about the plaintiff's observations, conversations and experiences involving similarly situated employees.") (citation omitted). Nevertheless, the number of pre-conditional certification opt-ins alone in this case demonstrates that there is an interest by employees to opt-in to this action.

members with "top-down" evidence by providing Defendant's corporate written unlawful pay policy. *See* Ex. H.  First, this policy clearly states that it applies to *all* Personal Trainers "at Equinox Holdings, Inc.," which includes Tier 3, Tier 3+, and Tier X Trainers. *See id.* It is not limited to Defendant's specific locations within New York State. *See* Ex. H. It further evidences a corporate policy that required Plaintiff and all putative collective members to engage in PT session-related activity in addition to the personal training sessions and mandates that they would be paid a "flat rate" for each PT session and the PT session-related activity. *See id.* Notably devoid from this pay policy is any mention of overtime pay, as Plaintiff and the putative collective members were in fact not paid overtime. *See id.* Further, Plaintiff provides evidence that Defendant's Managers stated that the flat per session rate of pay is a corporate policy and also identifies other Tier 3, Tier 3+, and Tier X Trainers who have not yet or very recently opted-in to this action were subject to the same pay policy as her. *See* Katz Decl. ¶ 16-17; Ramirez Decl. ¶ 19-21; Carlson Decl. ¶ 14; Lessans Decl. ¶ 13; Shipper Decl. ¶ 12-15.

Plaintiff, a Tier 3 Personal Trainer, also supports her position that she is similarly situated to the putative collective members with "bottom-up" evidence by providing her own declaration as well as the declarations of six (6) Opt-In Plaintiffs who were either Tier 3, Tier 3+ or Tier X Trainers. *See* Katz Decl.; Ramirez Decl.; Carlson Decl.; Tew Decl.; Faulkner Decl.; Lessans Decl.; Shipper Decl. *Apolinar v. Fusha 311 W. Inc.*, No. 15-CV-00196 (VEC), 2016 WL 11710468, at *6 (S.D.N.Y. Apr. 14, 2016) (granting conditional certification of non-exempt employees paid a flat rate based on declarations submitted by named plaintiffs and opt-in plaintiffs). Plaintiff and each of the Opt-In Plaintiffs attest in their declarations that they were employed by Defendant within the State of New York at different locations as either a Tier 3, Tier 3+, or Tier X Trainers during the relevant time period and performed the same job duties. *See* Katz Decl. ¶ 5; Ramirez

13

Decl. ¶¶ 5-6; Carlson Decl. ¶ 5; Tew Decl. ¶ 5; Faulkner Decl. ¶ 6; Lessans Decl. ¶¶ 4-5; Shipper Decl. ¶ 4.

They further attest that they were subjected to Defendant's corporate policy of paying them a flat rate of pay per PT session. *See* Katz Decl. ¶ 8; Ramirez Decl. ¶¶ 9, 13, 15; Carlson Decl. ¶¶ 8, 12; Tew Decl. ¶ 7; Faulkner Decl. ¶¶ 8, 11; Lessans Decl. ¶ 7-8; Shipper Decl. ¶ 6-7. They also attest that they spent approximately a half-hour (½) to over an hour (or more) of PT session-related work per PT Session and were not permitted to record the amount of time they were performing such work. *See* Katz Decl. ¶¶ 9-12; Ramirez Decl. ¶¶ 11-12; Carlson Decl. ¶¶ 9-10; Tew Decl. ¶¶ 9-10; Faulkner Decl. ¶¶ 12-13. They additionally state that as a result of Defendant's pay policy, they worked in excess of forty (40) hours per workweek and were deprived of the overtime premium of one and a half (1½) times their hourly rate for all hours worked in excess of forty (40) per workweek.  *See* Katz Decl. ¶¶ 14-15; Ramirez Decl. ¶¶ 13-15; Carlson Decl. ¶¶ 11-12; Tew Decl. ¶ 10; Faulkner Decl. ¶ 16; Lessans Decl. ¶¶ 11, 22; Shipper Decl. ¶¶ 10, 19. Lastly, although eight (8) individuals have already joined this action, they still identify eight (8) other individuals who have not yet opted-in and were also paid in the same manner without overtime pay for hours worked in excess of forty (40) per workweek. *See* Katz Decl. ¶ 17; Ramirez Decl. ¶ 20; Carlson Decl. ¶ 14; Shipper Decl. ¶ 13.

Accordingly, Plaintiff demonstrates that she is similarly situated to the putative collective members as they were all had the same job duties and were subjected to the same pay policy that deprived them of overtime compensation for all hours worked in excess of forty (40) per week.

B.     The Per Session Rate of Pay Policy Was Implemented Statewide.

Statewide conditional certification is warranted. "With respect to both statewide certification and certification across a smaller territory, courts consider whether the plaintiffs have

14

made an adequate factual showing to support an inference that such a uniform policy or practice exists and whether the locations share common ownership or management." *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013).

Here, Defendant owns all its fitness centers in New York.  Even if did not, Plaintiff is seeking conditional certification against Defendant only, not against any fitness centers with other owners. *See* Katz Decl. ¶ 5; Ramirez Decl. ¶¶ 5-6; Carlson Decl. ¶ 5; Tew Decl. ¶ 5; Faulkner Decl. ¶ 6; Lessans Decl. ¶¶ 4-5; Shipper Decl. ¶ 4. Furthermore, Plaintiff and the Opt-In Plaintiffs worked at six (6) different locations within New York and all attest that they had the same employer, performed the same job duties, and were subject to the same unlawful per session rate of pay policy—evidencing that Defendant's unlawful pay policy was implemented statewide and not solely at Plaintiff's location. *See* Katz Decl.; Ramirez Decl.; Carlson Decl.; Tew Decl.; Faulkner Decl.; Lessans Decl.; Shipper Decl. Plaintiff also provides Defendant's unlawful written corporate policy that, by its own terms, applies to all Trainers at all Equinox locations (except California Equinox locations) and sets forth the unlawful flat per session rate of pay. *See* Ex. H. Plaintiff additionally provides direct comments from Defendant's Managers that the flat per session rate of pay is a corporate policy. *See* Lessans Decl. ¶; Shipper Decl. ¶.

Additionally, Opt-in Plaintiff Jennifer Carlson attests that she conversed with a Tier 3+ Trainer at a location where no current opt-in worked and that this Trainer also was paid in the same manner without overtime pay. *See* Carlson Decl. ¶ 14. Therefore, the Court should conditionally certify the proposed collective state-wide because Plaintiff has demonstrated that: (i) Defendant's locations within New York are under common ownership; and (ii) Defendant implements a uniform and unlawful pay policy state-wide. *See Gathmann-Landini v. Lululemon USA Inc.*, No. 15-CV-6867, 2018 WL 3848922, at *9 (E.D.N.Y. Aug. 13, 2018) ("Although Plaintiff has not

submitted affidavits detailing every retail store location in the state of New York, she has demonstrated that all Assistant Managers and Key Leaders have similar job duties, are subjected to the same *de facto* policies.").

      C.    Individualized and Merit-Based Arguments are Improper.

Plaintiff anticipates that Defendant will argue that the proposed collective should not be granted conditional certification as individualized inquiries will be required and/or because of merit-based argument such as the unlawful pay policy being a commission, and thus, exempting the putative collective members from overtime pay under 29 U.S.C. § 207(i). These arguments, however, should be rejected by the Court as they are inappropriate at the first step of the two-step certification procedure. *See Leonardo*, 2018 WL 5981996 at *2 ("At this first stage . . . courts do not examine whether there has been an actual violation of law.") (citation omitted); *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 354 (S.D.N.Y. 2017) ("In short, Defendant's arguments regarding the possibility of individualized inquiries are the same arguments routinely rejected by courts in the Second Circuit in similar circumstances."); *Lynch*, 491 F. Supp. 2d at 368 ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations.") (citation omitted); *Martin*, 2016 WL 30334 at *14 n.30 (defendant is "wrong to claim that the potential need for individualized inquiries into whether an FLSA exemption applies precludes conditional certification"); *See Jackson*, 298 F.R.D. at 158 ("If the employees are similarly situated in these material respects, any factual variances that may exist between the plaintiff and the putative class [will] not defeat conditional class certification.") (citation omitted); *Trawinski v. KPMG LLP*, No. 11-CV-2978 (PAC), 2012 WL 6758059, at *4 (S.D.N.Y. Dec. 21, 2012) (concluding that defendant's claim that certain members of a proposed collective action "qualify them for the administrative or professional exemptions to the FLSA" is

"a merits argument . . . inappropriate at this stage of the litigation"). Therefore, the Court should reject any such arguments by Defendant, because the instant motion is for conditional certification.

Assuming Defendant does improperly argue, without the benefit of discovery provided to Plaintiff, that putative collective members are exempt under the FLSA pursuant to 29 U.S.C. § 207(i) or that an individualized inquiry is required, these issues have already been litigated with respect to Personal Trainers.

Regarding the 29 U.S.C. § 207(i) exemption, "Courts in this Circuit have generally identified the following three components present in a commission-based payment policy: (1) the employee's compensation must be tied to customer demand or the quantity of sales; (2) the compensation plan must provide performance-based incentives for the employee to increase his or her income; and (3) there must be proportionality between the value of the goods or services sold and the rate paid to the employee. These components ensure that commission-based compensation is 'decoupled from the actual time worked,' a characteristic that multiple circuit courts of appeals and the DOL have identified as a 'hallmark' of how commissions work *Charlot v. Ecolab, Inc.*, 136 F. Supp. 3d 433, 451 (E.D.N.Y. 2015) (citations omitted).

In *Casanova v. Gold's Texas Holdings Grp., Inc.*, the court held that an "almost identical personal-trainer payment scheme" as Equinox paid Plaintiff and the putative collective members (*i.e.*, a flat rate per one (1) hour personal training session) was not a bona fide commission payment because the flat rate was not "decoupled" from time worked. No. 5:13-CV-1161, 2016 WL 1241548 (W.D. Tex. Mar. 23, 2016); *Rosales*, 2019 WL 1753962 at *5 (stating that the per PT session pay policy in *Casanova* is nearly identical to Defendant's). Specifically, the Court held that the flat rate per personal training session pay policy did not incentivize the Trainers to work more efficiently or effectively because they could only perform one personal training session per

17

hour to acquire the flat rate.  *See Casanova*, 2016 WL 1241548 at \*8; *Xiao Ling Chen v. XpresSpa at Terminal 4 JFK LLC*, No. 15-CV-1347, 2019 WL 5792315, at \*17 (E.D.N.Y. Aug. 20, 2019) ("30 minute massage are clearly tied to the actual time that the massage takes. There is no way to work faster if the customer is paying for a 30 minute massage."). For this same reason, it also held that that the pay policy was not tied to customer demand. *See Casanova*, 2016 WL 1241548 at \*8.

Indeed, Defendant is likely to argue that *Casanova* interpreted the commission test narrowly in violation of *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018), which held that FLSA exemptions are entitled to a "fair reading" as opposed to a narrow interpretation. However, even after *Encino*, "[i]t is [still] the employer that bears the burden to establish the applicability of an exemption under the FLSA." *Flood v. Just Energy Mktg. Corp.*, 904 F.3d 219, 227 (2d Cir. 2018); *see Johnson v. Mattress Warehouse, Inc.*, No. 20-CV-891, 2021 WL 4206722, at \*5 (E.D. Pa. Sept. 16, 2021) (holding that the employer bears the burden of proving an employee is exempt under 29 U.S.C. § 207(i)). Moreover, the requirement that a bona fide commission to be "decoupled" from actual time worked—the determining factor in the *Casanova* court holding that flat rate per personal training session pay was not a commission—"is consistent with the plain language of [29 U.S.C. § 207(i)], fairly read, as [it goes] to the question of whether [the employee] was paid a 'genuine' commission." *Johnson*, 2021 WL 4206722 at \*9. Thus, *Enrico* does nothing to alter the ultimate holding in *Casanova*.[5]

Further, to the extent that Defendant claims the flat rate per personal training session covers all hours worked, it still does not provide the extra "half-time" rate based on a Trainer's effective *regular rate* (*i.e.*, total compensation for the week divided by total hours worked). *See Rosado v.*

---

[5] To the extent that Defendant baselessly argues any other FLSA exemption applies, Plaintiff's and the putative collective members' pay basis (*i.e.*, not a salary or fee basis) and job duties of personally training individuals do not satisfy any exemptions.

18

*Castillo*, No. 20-CV-3913 (LJL), 2021 WL 1172626, at *3 (S.D.N.Y. Mar. 29, 2021) ("Under [the] FLSA, overtime must be paid 'at a rate not less than one and one-half times the regular rate at which [the employee] is employed.'") (quoting 29 U.S.C. § 207(a)(1)) (alteration in original); 29 C.F.R. § 778.109 (explaining the regular rate of pay and its computation under the FLSA).

Regarding Defendant's anticipated and improper individualized inquiry-based defenses, there will be no individualized inquiry required to determine that Plaintiff is similarly situated to the putative collective or that Defendant is liable for violating the FLSA. *See Rosales*, 2019 WL 1753962 at *6 (rejecting Equinox's individualized inquiry arguments). This is because Plaintiff has presented uncontestable proof that a common policy exists whereby she and the putative collective members are paid a flat rate per PT session that does not include an overtime premium for hours worked in excess of forty (40) per workweek. *See Lassen v. Hoyt Livery, Inc.*, No. 13-CV-1529, 2016 WL 7165716, at *17 (D. Conn. Dec. 8, 2016) (denying decertification based on individualized inquiries where a common policy that violates the FLSA is established). Thus, the only individualized inquiry would pertain to damages, which does not warrant decertification. *See McGlone v. Cont. Callers, Inc.*, 49 F. Supp. 3d 364, 369 (S.D.N.Y. 2014) ([I]ndividualized inquiries into damages do not warrant decertification."); *Neff v. Flowers Foods, Inc.*, No. 5:15-CV-254, 2019 WL 10750005, at *10 (D. Vt. May 16, 2019) (same); *Pino v. Harris Water Main & Sewer Contractors Inc.*, No. 17-CV-5910, 2020 WL 5708889, at *7 (E.D.N.Y. Sept. 23, 2020) ("[I]ndividualized inquiries into damages do not necessarily warrant decertification as courts have found opt-in plaintiffs similarly situated in large off-the-clock cases despite the individualized issues such cases present even where individualized testimony into damages is required.") (citation omitted).  Accordingly, no individualized inquires exist to warrant decertification at the second

stage of the certification process especially due to the existence of Defendant's unlawful pay policy.

D.    The Proposed Notice is Fair and Accurate.

Plaintiff's proposed notice is fair and accurate. A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action so that they can make informed decisions about whether to participate." *Hoffman-LaRoche Inc.*, 493 U.S. at 170. The use of court-authorized notice also prevents "misleading communications." *Id.* at 172. Plaintiff's proposed court-approved notice to the putative collective members, which is attached to Vagnini Aff. as Exhibit I (Ex. I"), is "timely, accurate, and informative." *Hoffman-LaRoche*, 493 U.S. at 170. They provide notice of the pendency of the action and the opportunity to opt-in. *See* Ex. I. Plaintiff's legal claims are accurately described. *See id.* Putative collective members are advised that they are not required to participate. *See id.* The notice provides clear instructions on how to opt-in and accurately state the prohibition against retaliation or discrimination for participation in the FLSA action. *See id.*; 29 U.S.C. § 215(a)(3). By consequence, Plaintiff's proposed notice is fair and accurate.

1.    *The Court Should Approve Plaintiff's Proposed Method for Notice Dissemination.*

Plaintiff proposes that the notice and consent forms be mailed by U.S. First Class Mail and electronic mail to all putative collective members and published on a website with a fillable consent form. *See Taylor*, 2020 WL 4937483 at *5 (approving notice dissemination via U.S. mail and email); *Pippins v. KRMG LLP*, No. 11-CV-0377 (CM)(JLC), 2012 WL 19379, at *14 (S.D.N.Y. Jan. 3, 2012) ("[G]iven the realities of communications today . . . the provision of email addresses and email notice in addition to notice by first class mail is entirely appropriate.") (citation omitted); *see Varghese v. JP Morgan Chase & Co.*, No. 14-CV-1718 (PGG), 2016 WL 4718413,

at *9 (S.D.N.Y. Sept. 9, 2016) (authorizing plaintiffs to email notice and post notice on a website). Plaintiff's counsel will oversee the mailing (both regular and electronic mail) of such notices and pay the upfront charges for same (postage, copying, etc.). Plaintiff's counsel further requests that they be permitted to hire a third-party class action administration company to oversee the mailing of the notice and forms and the conducting of skip traces if Plaintiff's counsel deems it appropriate. Those putative collective members interested in participating would be required to return consents to the third-party class action administrator for filing with the Court within sixty (60) days of the mailing. *See Taylor*, No. 2020 WL 4937483 at *6 (approving a sixty (60) day notice period).

Plaintiff further proposes that notice be sent to the putative collective members within twenty-one (21) days of receiving the list of putative collective members from Defendant. Therefore, the Court should permit the sending of notice via U.S. First Class Mail and electronic mail and a sixty (60) day notice period.

### 2. *The Court Should Authorize the Sending of a Reminder Notice.*

The Court should authorize that a second identical notice (*i.e.*, reminder notice) be sent to all putative collective members who did not submit their Consent to Join Forms by the thirtieth (30th) day before the close of the notice period via mail and email as well as a reminder text message. A second notice should be sent because notice is "just as easily ignored as it is read." *Knox v. Jones Grp.*, 208 F. Supp. 3d 954, 964 (S.D. Ind. 2016), *on reconsideration in part,* No. 115-CV-01738, 2016 WL 6083526 (S.D. Ind. Oct. 18, 2016); *See Taylor*, 2020 WL 4937483 at *6 (authorizing a reminder notice). Thus, the Court should authorize the dissemination of a reminder notice via mail, email, and text message to all those who do not submit a Consent to Join Forms within thirty (30) days before the end of the notice period. *See Hwangbo v. Kimganae, Inc.*, No. 19-CV-6356, 2021 WL 2843839, at *9 (E.D.N.Y. June 1, 2021) ("Plaintiffs may also send

21

a reminder notice via mail, e-mail, and text message halfway through the opt-in period.")

## II.      The Proposed Limited Discovery is Essential to Ensure Timely Notice.

Discovery of the contact information of putative class members in a computer-readable format is a necessary component of notice in collective actions as "'[c]ourts in this Circuit have held that disclosure of employee contact information is relevant and appropriate in connection with conditional collective action certification.'" *Taylor*, 2020 WL 4937483 at *5 (quoting *Tate v. WJL Equities Corp.*, No. 13-CV-8616 (JLC), 2014 WL 2504507, at *2 (S.D.N.Y. June 3, 2014)); *see Hoffmann-LaRoche Inc.*, 493 U.S. at 168-169 (granting "discovery of the names and addresses of all similarly situated employees"); *Chang Yan Chen v. Lilis 200 W. 57th Corp.*, No. 19-CV-7654 (VEC), 2021 WL 135248, at *6 (S.D.N.Y. Jan. 14, 2021) (ordering the defendants to provide the plaintiff's counsel contact information and dates of employment for all potential collective members). Thus, Plaintiff respectfully requests that the Court Order Defendant to supply within fifteen (15) days of Preliminary Approval, a computer-readable file with the following information for all putative collective members: names, last known mailing addresses, alternate addresses, all known email addresses (work and personal), phone numbers, and dates of employment for all putative collective members employed since May 13, 2018. *See Chang*, 2021 WL 135248 at *6 (ordering the defendants to produce "names, addresses, email addresses, and telephone number and dates of employment for all potential members of the collective"); *Leonardo*, 2018 WL 5981996 at *3. (same).

## III.      Tolling for the Putative Collective Members.

Plaintiff and her counsel are aware of the speed at which this Court issues decisions on motions for conditional certification. *See Canelas*, 2020 WL 8996702 at *4 (approving a motion for conditional certification in less than two months); *Alvarado*, 2020 WL 91489 at *3 (approving a motion for conditional certification in one month). However, they are also aware of the issues

COVID-19 has created for the courts. Thus, should the Court believe that an unintended delay occurred, prejudicing the putative collective members whose FLSA claims are expiring daily, Plaintiff respectfully requests that the Court toll the statute of limitations for them from the date of the filing of this motion until the Court's decision on it, as Plaintiff was diligent in immediately filing her motion for conditional certification following the unsuccessful collective/class mediation between the parties. *See Leonardo*, 2018 WL 5981996 at *5 (allowing tolling of the putative collective members' claims on a case-by-case basis).

## CONCLUSION

Wherefore, Plaintiff respectfully requests that the Court: (i) conditionally certify the proposed collective; (ii) approve Plaintiff's proposed notice distribution process, including the use of a third-party administrator; (iii) approve Plaintiff's proposed length of the notice period; (iv) order Defendant to supply a computer-readable file of the putative collective members' names, last known mailing addresses, alternate addresses, all known email addresses (work and personal), phone numbers and dates of employment; (v) toll the statute of limitations for the putative collective members should the Court deem it necessary to stop their claims from expiring; and (vi) whatever additional relief the Court deems just and proper.

Dated:          October 28, 2021
                Garden City, New York

                                        Respectfully submitted,

                                        */s/ Alexander M. White*
                                        James A. Vagnini
                                        jvagnini@vkvlawyers.com
                                        Alexander M. White
                                        awhite@vkvlawyers.com
                                        **Valli Kane & Vagnini LLP**
                                        600 Old Country Road, Suite 519
                                        Garden City, New York 11530
                                        T: (516) 203-7180
                                        F: (516) 706-0248

D. Maimon Kirschenbaum
maimon@jk-llp.com
Denise A. Schulman
denise@jk-llp.com
Joseph & Kirschenbaum LLP
32 Broadway, Suite 601
New York, New York 10004
T: (212) 688-5640
F: (212) 981-9587


**ATTORNEYS FOR PLAINTIFF**