UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

..............................................................X

MONIQUE KATZ and YEKATERINA
SKIDANENKO, individually and on behalf
all others similarly situated,

                                    Plaintiff,

                 -against-

EQUINOX HOLDINGS, INC.

                                    Defendant.

..............................................................X

Civ. No.:  20-cv-9856
(VEC)(RWL)

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EQUINOX
HOLDINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED
COMPLAINT</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ................................................................. 2

      A.     Summary of Plaintiffs' Wage-and-Hour Allegations ............................................ 2

      B.     Plaintiff Katz's Individual Claims ........................................................................ 3

ARGUMENT ............................................................................................................................. 4

I.       LEGAL STANDARD .................................................................................................. 4

      A.     Failure to State a Claim ........................................................................................ 4

II.      THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE FLSA ...................... 5

      A.     Plaintiffs' FLSA Overtime Claims Fail Because Both Fail to Identify Overtime
              Hours Worked for Which They Were Not Compensated in Any *Week* ................. 5

      B.     For the Same Reasons, Plaintiff Skidanenko's Minimum Wage Claim Should Be
              Dismissed ............................................................................................................. 9

      C.     Even if Either Plaintiff Has Pled Uncompensated Work (Which They Have Not),
              They Fail to Allege Facts Tending to Show Employer Knowledge of
              Uncompensated Work Time .................................................................................. 10

III.    THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE FMLA .................... 12

IV.    FOLLOWING DISMISSAL OF PLAINTIFF'S FLSA AND FMLA CLAIMS, THE
       COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION AND DISMISS
       THIS ACTION ............................................................................................................ 14

V.     EXERCISE OF SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' PAY
       FREQUENCY CLAIM IS INAPPROPRIATE ............................................................. 15

CONCLUSION ......................................................................................................................... 18

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Albertin v. Nathan Littauer Hosp. & Nursing Home*,
 2021 U.S. Dist. LEXIS 84696 (N.D.N.Y. May 4, 2021) ........................................................17

*Alessi v. Monroe Cty.*,
 2010 U.S. Dist. LEXIS 2746 (W.D.N.Y. Jan. 13, 2010) .......................................................13

*Alfonso v. Mougis Logistics Corp.*,
 2021 U.S. Dist. LEXIS 233344 (S.D.N.Y. Dec. 6, 2021) ..................................................9, 14

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................................................................4

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 554 (2007) .................................................................................................................8

*Bergman v. Kids by the Bunch Too, Ltd.*,
 2018 U.S. Dist. LEXIS 27119 (E.D.N.Y. Feb. 16, 2018) .....................................................13

*Birch v. Pioneer Credit Recovery, Inc.*,
 2007 U.S. Dist. LEXIS 41834 (W.D.N.Y. June 8, 2007) ................................................14, 15

*Bonn-Wittingham v. Project OHR, Inc.*,
 792 F. App'x 71 (2d Cir. 2019) ...............................................................................................4

*Bustillos v. Acad. Bus, LLC*,
 2014 U.S. Dist. LEXIS 3980 (S.D.N.Y. 2004) .....................................................................5, 8

*Centeno-Bernuy v. Becker Farms*,
 564 F. Supp. 2d 166 (W.D.N.Y. 2008) ..................................................................................17

*Colletta v. Northwell Health*,
 2019 U.S. Dist. LEXIS 141338 (E.D.N.Y. Aug. 19, 2019) ..................................................13

*Creative Transp. v. Commissioner of Labor*,
 PR 49-88 (Aug. 9, 1991) ........................................................................................................16

*DeJesus v. HF Mgmt. Servs., LLC*,
 726 F.3d 85 (2d Cir. 2013) ................................................................................................5, 6, 8

*DeSilva v. N. Shore-Long Island Jewish Health Sys.*,
 770 F. Supp. 2d 497 (E.D.N.Y. 2011) ...................................................................................12

*Donahue v. Asia TV USA Ltd.*,
208 F. Supp. 3d 505 (S.D.N.Y. 2016) ....................................................................5

*Farmer v. Patino*,
2019 U.S. Dist. LEXIS 1824 (E.D.N.Y. Jan. 4, 2019) ...........................................4

*Fernandez v. Windmill Distrib. Co.*,
159 F. Supp. 3d 351 (S.D.N.Y. 2016) ....................................................................5

*Grant v. Global Dispatch*,
No. 720074/2019 (Sup. Ct. Queens Cnty. Apr. 20, 2021) .....................................16

*Hudson v. Commissioner of Labor*,
PR 12-034 (Aug. 7, 2014) ......................................................................................16

*Hunter v. Planned Bldg. Servs., Inc.*,
2018 N.Y. Misc. LEXIS 2896 (Sup. Ct. Queens Cty. June 11, 2018) ..................16

*Johnson v. Equinox Holdings, Inc.*,
2014 U.S. Dist. LEXIS 91786 (S.D.N.Y. July 2, 2014) .........................................6

*Knight v. MTA-New York City Transit Auth.*,
2021 U.S. Dist. LEXIS 112082 (S.D.N.Y. June 15, 2021) .................................5, 8

*Krumholz v. Vill. of Northport*,
873 F. Supp. 2d 481 (E.D.N.Y. 2012) ...................................................................15

*Kuebel v. Black & Decker Inc.*,
643 F.3d 352 (2d Cir. 2011) ...................................................................................11

*Limauro v. Consol. Edison Co. of New York, Inc. et al.*,
2021 U.S. Dist. LEXIS 62519 (S.D.N.Y. Mar. 31, 2021) ...................................6, 9

*Local 621, S.E.I.U., AFL-CIO v. City of N.Y.*,
2000 U.S. Dist. LEXIS 14235 (S.D.N.Y. Sept. 29, 2000) ....................................17

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
711 F.3d 106 (2d Cir. 2013) ............................................................................4, 5, 6

*Lusk v. Serve U Brands, Inc.*,
2018 U.S. Dist. LEXIS 22693 (W.D.N.Y. Feb. 12, 2018) ......................................6

*Mabe v. Wal-Mart Assocs.*,
2021 U.S. Dist. LEXIS 50954 (N.D.N.Y. Mar. 18, 2021). ...................................17

*Marciano v. SJN Adjustment Grp.*,
2019 U.S. Dist. LEXIS 172799 (E.D.N.Y. Sept. 30, 2019) ...........................4,5, 7, 8

*Mattern v. Panduit Corp.*,
  2011 U.S. Dist. LEXIS 118057 (N.D. Ill. Oct. 11, 2011)......................................13

*McLearn v. Cowen & Co.*,
  660 F.2d 845 (2d Cir. 1981) ...................................................................15

*Mendoza v. Cornell Univ.*,
  2021 U.S. Dist. LEXIS 44937 (S.D.N.Y. Mar. 10, 2021) .............................6, 9, 14

*Mokrov v. Aeroflot Russian Airlines*,
  2021 U.S. Dist. LEXIS 112066 (S.D.N.Y. June 15, 2021)...............................5, 8

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
  723 F.3d 192 (2d Cir. 2013)....................................................................4, 5

*Paleja v. KP NY Operations LLC*,
  2021 U.S. Dist. LEXIS 8369 (S.D.N.Y. Jan. 15, 2021)...................................5, 6

*Regis Corp. v. Commissioner of Labor*,
  PR 48-86 (Oct. 27, 1987) .......................................................................16

*Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
  659 F.3d 234 (2d Cir. 2011)......................................................................8

*Scott-Robinson v. City of N.Y.*,
  2016 U.S. Dist. LEXIS 177789 (S.D.N.Y. Dec. 15, 2016) ..................................14

*Seabrook v. Jacobson*,
  153 F.3d 70 (2d Cir. 1998)..................................................................15, 16

*Serrano v. I. Hardware Distribs., Inc.*,
  2015 U.S. Dist. LEXIS 97876 (S.D.N.Y. July 27, 2015) ..................................6, 7

*Spiegel v. Schulmann*,
  2006 U.S. Dist. LEXIS 86531 (E.D.N.Y. Nov. 30, 2006)....................................17

*Spiteri v. Russo*,
  2013 U.S. Dist. LEXIS 128379 (E.D.N.Y. Sept. 7, 2013)....................................8

*United Mine Workers v. Gibbs*,
  383 U.S. 715 (1966) ...........................................................................16

*Valencia v. Lee*,
  316 F.3d 299 (2d Cir. 2003)....................................................................15

*Vega v. CM & Assocs. Constr. Mgmt., LLC*,
  175 A.D.3d 114 (1st Dep't 2019) .........................................................16, 17

*Walker v. Time Life Films, Inc.*,
    784 F.2d 44 (2d Cir. 1986)............................................................................................15

*Xue Lian Lin v. Comprehensive Health Mgmt.*,
    2009 U.S. Dist. LEXIS 29779 (S.D.N.Y. Apr. 8, 2009)...............................................12

*Young v. N.Y.C. Transit Auth.*,
    903 F.2d 146 (2d Cir. 1990)........................................................................................16

**Statutes**

28 U.S.C. § 1367..............................................................................................................14

Family and Medical Leave Act ............................................................................... *passim*

Fair Labor Standards Act ......................................................................................... *passim*

New York City Human Rights Law..........................................................................1, 15, 17

New York Labor Law .............................................................................................. *passim*

New York Labor Law § 190(4) ......................................................................................16

New York Labor Law § 191 ..................................................................................2, 16, 17

New York State Human Rights Law ...............................................................................17

New York State Paid Family Leave Law .....................................................................3, 13

**Other Authorities**

Fed. R. Civ. Pro. 12(b)(6) .........................................................................................4, 14

Fed. R. Civ. Pro. 23.........................................................................................................3

## PRELIMINARY STATEMENT

Defendant Equinox Holdings, Inc. ("Equinox") moves to dismiss Plaintiffs Monique Katz's ("Katz") and Yekaterina Skidanenko's ("Skidanenko", together with Katz the "Plaintiffs") Complaint because Plaintiffs still fail to state a claim under federal law, either under the Fair Labor Standards Act ("FLSA") or the Family and Medical Leave Act ("FMLA"), the federal statutes at issue in their Complaint.  Plaintiffs' refusal to describe their alleged overtime work during a particular workweek (the unit of analysis under the FLSA) fails to comply with the requirements to articulate a claim under that law, and Plaintiff Katz's additional allegations do not save her claim under the FMLA for interference or retaliation.

Plaintiff Skidanenko's factual example describing overtime work fails to allege that such general "estimate" actually occurred in one or more workweeks on the general schedule described. Plaintiff Katz declines to plead even that much, continuing to base her allegations on an estimate of the duration of a *task* (personal training sessions) and volume of such sessions, without any description of how that estimate, in practice, resulted in weekly hours above forty.[1]  As concerns Katz's FMLA claims, her revised allegations (including those asserted curiously for the first time on amendment) do not support an FMLA retaliation claim, nor do they state a claim for interference.

In the absence of federal question jurisdiction, the Court should abstain from exercising pendent jurisdiction over Plaintiffs' New York Labor Law ("NYLL") and New York City Human

---

[1] This is not an abstract exercise.  Plaintiff Katz's characterization of her training session-related activities is at loggerheads with Defendant's policies and practices, including Plaintiff's own employment documentation. Defendant is entitled under prevailing law to an exemplary description of the alleged "overtime workweek" schedule Plaintiff Katz asserts she engaged in.

1

Rights Law ("NYCHRL") claims and dismiss this action.[2]  Even if the Court were to retain Plaintiffs' federal claims, it should decline supplemental jurisdiction over unrelated or novel claims of state law, most notably Plaintiffs' misplaced pay frequency claim under NYLL § 191.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Summary of Plaintiffs' Wage-and-Hour Allegations

Equinox is a fitness company with luxury fitness centers located across New York and the United States.  Ex. A ¶ 2.[3]  In August 2015, Equinox hired Katz as a Tier 1 personal trainer at Equinox's Brookfield Place, Manhattan location.  *Id.* ¶ 173.  In or around January 2016, Katz was promoted to a Tier 2 trainer.  *Id.* ¶ 175. Katz was again promoted in or around August 2016, to a Tier 3 trainer.  *Id.* ¶ 177.  Weekly schedules for Tier 3, Tier 3+, and Tier X Trainers ("High-Tier Trainers") depended on the number of personal training sessions they were required to conduct. *Id.* ¶ 178.

In July 2019, Equinox hired Skidanenko as a Tier 1 personal trainer at Equinox's Brooklyn Heights location. *Id.* ¶¶ 226-227. Months later, in October 2019, Skidanenko stopped working for Equinox due to an injury.  *Id.* ¶¶ 228-229.  Personal Training Managers scheduled floor shifts, "EFTI" meetings, and other trainings for Tier 1 and Tier 2 Trainers ("Low-Tier Trainers") which, Skidanenko alleges, forced trainers to remain on Equinox's premises during their "down time" and perform uncompensated floor shifts to recruit new clients.  *Id.* ¶¶ 62, 160 258, 263.

In sum, Plaintiffs assert claims of unpaid minimum wages, spread of hours, and unpaid overtime compensation under the FLSA, NYLL and NYCRR.  Plaintiffs allege Equinox did not properly compensate trainers for all hours spent performing certain types of activities: "Equifit"

---

[2] The current Complaint in this action is Exhibit A to the Declaration of Noel P. Tripp ("Tripp Decl.") submitted contemporaneously herewith in support of this motion, and cited as "Ex. A."

[3] Except where otherwise noted, these factual allegations are taken from Plaintiffs' First Amended Complaint.

sessions or guided sessions, time spent preparing for personal training sessions, post-session activities and make-up personal training sessions, time spent at weekly meetings, time spent commuting to and from "EFTI" meetings, or time spent completing EFTI homework. *Id.* ¶¶ 74, 94, 96, 104, 116, 119, 126-127, 130, 133, 134, 154, 248-249.  However, the only paragraphs in the First Amended Complaint wherein Plaintiffs allege any specifics with regard to hours worked are paragraphs 184, 188-89, 235-36, 238.  Even there, Plaintiffs fail to allege total hours worked in any workweek and only give a general approximation of hours.  *Id.* ¶¶ 184, 188-89 (Katz) and 235-36, 238 (Skidanenko).  On the basis of this allegation, Plaintiffs seek to proceed as a collective action under the FLSA; Katz for herself, and on behalf of "Tier 3, Tier 3+, and Tier X Trainers employed by Defendant within the State of New York", and Skidanenko for herself, and on behalf of "Tier 1 and Tier 2 Trainers employed by Defendant within the State of New York." *Id.* ¶¶ 285, 296.  Plaintiffs also seek to maintain a class action under FRCP 23, based on Defendant's alleged violations of the NYLL and NYCRR, on behalf of themselves and "Tier 1 and Tier 2 Trainers employed by Defendant within the State of New York".  *Id.* ¶¶ 320-321.  Likewise, Katz also seeks to proceed as a class for herself and on behalf of "Tier 3, Tier 3+, and Tier X Trainers employed by Defendant within the State of New York." *Id.* ¶ 307.

### B.   Plaintiff Katz's Individual Claims

In support of her FMLA claims, Katz alleges she requested leave beginning in December 2019, which was denied under the FMLA, but approved under the New York State Paid Family Leave Act. *Id.* ¶¶ 202, 205.  She alleges that upon her return from leave, on or around January 8, 2020, she submitted leave-related paperwork. *Id.* ¶ 203.  On January 15, 2020, she alleges she was issued a final written warning for taking unapproved leave. *Id.* ¶ 204.  On or about January 27, 2020, Katz requested another leave from February 26, 2020 through March 5, 2020. *Id.* ¶ 208. Personal Training Manager Christopher Szefler allegedly told Katz that she "already took time

off" but approved the leave and thereafter approved her request to begin the leave a day earlier than originally requested. *Id*. ¶¶ 209-211. Plaintiff alleges Defendant denied her second leave as FMLA leave.  *Id*. ¶ 214.

On March 4, 2020 General Manager Darnell Serrette allegedly told Katz that her leave was unapproved and that such unapproved leave related to her termination from employment.  *Id*. ¶¶ 212-213.  She claims Defendant interfered with her right to take FMLA leave by refusing to concurrently authorize her leaves as FMLA and that her termination was related to alleged FMLA leave interference and/or retaliation for her request for FMLA leave.  *Id*. ¶¶ 214-216.

## ARGUMENT

## I.     LEGAL STANDARD

### A.     Failure to State a Claim

In reviewing a motion to dismiss an FLSA claim under Federal Rule of Civil Procedure 12(b)(6), the Court assesses whether a plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farmer v. Patino*, 2019 U.S. Dist. LEXIS 1824, at *4, 9 (E.D.N.Y. Jan. 4, 2019) (dismissing the plaintiff's claims where plaintiff failed to specify how many hours in excess of 40 that he worked per week) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The Second Circuit reiterated how it applies this pleading standard in the FLSA context most recently in *Bonn-Wittingham v. Project OHR, Inc.*, 792 F. App'x 71 (2d Cir. 2019), affirming dismissal of an FLSA complaint and instructing that "the district court was under no obligation to accept as true [plaintiffs'] statement, amounting to a bare legal conclusion, that they worked in excess of forty hours." *Id*. at 75;[4] *Marciano v. SJN*

---

[4] *Bonn-Wittingham* compiles and reiterates the Second Circuit's directives regarding FLSA pleading, issued in a series of 2013 decisions, namely that an FLSA Plaintiff must "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Id*. at 75 (quoting *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013). *Also citing Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) ("Allegations that an employee

*Adjustment Grp.,* 2019 U.S. Dist. LEXIS 172799, at *6 (E.D.N.Y. Sept. 30, 2019) (plaintiff's failure to specifically allege how many overtime hours he or she worked each week would require the court to "engage in the impermissible speculation precluded by the Second Circuit in *Lundy*").

To state a claim for FMLA interference, a Plaintiff must plead denial of a benefit under the FMLA. *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 363 (S.D.N.Y. 2016).   Under the statute's retaliation provision, Plaintiff must plead that 1) "[s]he exercised rights protected under the FMLA; 2) [s]he was qualified for [the] position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 513 (S.D.N.Y. 2016) (dismissing FMLA retaliation claim for failure to plead facts supporting inference of retaliatory animus).

## II.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE FLSA

### A.   Plaintiffs' FLSA Overtime Claims Fail Because Both Fail to Identify Overtime Hours Worked for Which They Were Not Compensated in Any *Week*

A properly pled FLSA overtime claim must be based on "sufficient factual allegations . . . rather than a general and conclusory allegation as to the number of hours 'routinely' worked - whereby the Court can reasonably infer that there was indeed one or more particular workweek(s) in which the plaintiff suffered an overtime violation." *Bustillos v. Acad. Bus, LLC,* 2014 U.S. Dist. LEXIS 3980, at *11-14 (S.D.N.Y. 2014) (*citing Lundy, DeJesus* and *Nakahata*).   Courts routinely reject FLSA pleadings which fail to meet this requirement. *See Knight v. MTA-New York City Transit Auth.*, 2021 U.S. Dist. LEXIS 112082 (S.D.N.Y. June 15, 2021); *Mokrov v. Aeroflot*

---

'occasionally' or 'typically' missed breaks provides nothing but low-octane fuel for speculation, not the plausible claim that is required'") *and  DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 (2d Cir. 2013) ("allegations that an employee 'regularly worked' more than forty hours per week are merely legal conclusions that constitute 'little more than a paraphrase of the statute'" and cannot, standing alone, establish a plausible claim).

*Russian Airlines*, 2021 U.S. Dist. LEXIS 112066 (S.D.N.Y. June 15, 2021); *Paleja v. KP NY Operations LLC*, 2021 U.S. Dist. LEXIS 8369 (S.D.N.Y. Jan. 15, 2021); *Mendoza v. Cornell Univ.*, 2021 U.S. Dist. LEXIS 44937 (S.D.N.Y. Mar. 10, 2021); *Limauro v. Consol. Edison Co. of New York, Inc. et al.*, 2021 U.S. Dist. LEXIS 62519 (S.D.N.Y. March 31, 2021).[5]  Plaintiffs' Complaint thus fails because it predominantly contains conclusory allegations about the hours Low-Tier Trainers and High-Tier Trainers were either scheduled or worked assigned tasks. Ex. A ¶¶ 132, 134, 139-42, 153-56.

The only paragraphs specific to Katz's or Skidanenko's work in any period are paragraphs 183-189 for Katz and 234-238, 243-245 and 281-282 for Skidanenko. Katz first relies on the Complaint's allegations that during the *bi-weekly* pay period of April 29, 2018 to May 12, 2018 she worked *approximately* 90.5 hours.  *Id*. ¶ 184.  She bases this "approximation" on the allegation that she "performed the equivalent of fifty-four full hour long PT sessions" and spent an additional "approximately" 36 hours performing personal training session related activity.  These are not allegations of specific work hours on any day (to say nothing of summarizing an overtime week) – they are a bald estimate which is not sufficient to support a "reasonable inference" that Plaintiff, in fact, worked more than forty hours in a given week.[6]  *Serrano v. I. Hardware Distribs., Inc.*, 2015 U.S. Dist. LEXIS 97876, at *7-8 (S.D.N.Y. July 27, 2015) (allegations that plaintiffs "worked

---

[5] Indeed, Judge Berman rejected just such an inadequate FLSA allegation from an Equinox trainer. *Johnson v. Equinox Holdings, Inc.*, 2014 U.S. Dist. LEXIS 91786 (S.D.N.Y. July 2, 2014).

[6] These allegations in Paragraphs 184-186 of specific work activities and specific compensation appear to be references to a biweekly pay summary, which of course does not necessarily reflect an employee's hours of compensable *work* (the relevant inquiry) or even her actual work activities in either or both of the weeks in question. In other words, Plaintiff seems to be contending "that because [her] complaint focuses on the rate [she was] paid for overtime hours, rather than claiming that [she was] not paid at all when [she] worked overtime, [she does] not need to meet the pleading standard set forth in *Lundy* and reiterated in *DeJesus*." *Lusk v. Serve U Brands, Inc.*, 2018 U.S. Dist. LEXIS 22693, at *9 (W.D.N.Y. Feb. 12, 2018).  Judge Telesca squarely rejected this proposition in *Lusk*, noting that "While the primary issue raised by the complaint is indeed how Defendants calculated Named Plaintiffs' overtime rate of pay, it is axiomatic that Named Plaintiffs must plausibly allege that they worked compensable overtime before the issue of their rate of pay becomes relevant." *Id*. at *10.

'an average' of 62 and 60 hours per week" and "'often' worked over ten hours per day" without receiving overtime "over a period of years" failed to state an overtime claim because plaintiffs did "not allege that they worked more than 40 hours in a 'given' work week"); *Marciano,* 2019 U.S. Dist. LEXIS 172799, at *6 (finding plaintiffs' claims to be "bare bones allegations" where plaintiffs alleged they were required to be available to work at least forty hours per week and commonly worked between fifty and sixty hours per week).

The remainder of Katz's allegations and all of Skidanenko's likewise fail to articulate an overtime violation with the requisite specificity required to sustain a claim. Katz relies entirely on self-serving estimations of the amount of time a *task* took to perform and then applies that estimated value to a volume of tasks. *See id.* ¶¶ 188-89. For example, Katz claims that, during the week of January 7, 2018, she worked "approximately forty-five and a half hours ($45^1/_2$) . . . which was comprised of her performing approximately twenty-seven (27) one-hour PT sessions, PT session activities, Equifit sessions, and meetings." *Id.* ¶ 188. She further alleges, "upon information and belief," that she performed guided sessions during this workweek." *Id.* These are not allegations of *specific* work hours on any day or overtime week; they are estimations and best guesses, which cannot support a "reasonable inference" that Katz actually worked more than 40 hours in any given week. *See Serrano* 2015 U.S. Dist. LEXIS 97876, at *7-8.

Yet, Katz's deficient allegations are still far more detailed than those specific to Skidanenko. Skidanenko merely recites what she claims were her usual hours of work without any detail of her tasks in any identified workweek. *See* Ex. A ¶¶ 235, 238, 278. Indeed, Skidanenko only refers to two specific workweeks in the Complaint. For these workweeks, she alleges in conclusory fashion that she "worked at least sixty-five (65) hours during both the workweeks of September 9, 2019, to September 15, 2019, and September 16, 2019 to September

22, 2019" but that she did not receive overtime pay.  *Id.* ¶¶ 281-82.  These barebones and conclusory estimates of hours worked—without further detail—do not constitute actionable allegations of overtime work.  *See Marciano,* 2019 U.S. Dist. LEXIS 172799, at *6.

Plaintiffs' allegations, therefore, fail to "provide some factual context that will 'nudge' [their] claim from conceivable to plausible.'"  *DeJesus*, 726 F.3d at 90 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)); *see also Bustillos*, 2014 U.S. Dist. LEXIS 3980, at *3 (dismissing FLSA pleading based on allegation that plaintiff's schedule "varied" and he "regularly work[ed] from 60 to 90 hours per week"); *Spiteri v. Russo*, 2013 U.S. Dist. LEXIS 128379, at *209-211 (E.D.N.Y. Sept. 7, 2013) (where plaintiff alleged that he "worked approximately fifty (50) to sixty (60) hours per week" but only alleged "the aggregate number of hours worked on [projects] without specifying when those hours were worked," the Court could not "determine which hours were not paid and whether any unpaid hours qualify for overtime payment").

While Plaintiffs will likely point to Judge Kuntz's denial of Equinox's motion to dismiss in Plaintiff Skidanenko's original filed complaint (Exhibit B) as evidence that Plaintiffs satisfy the pleading standard here, such an argument is unavailing.  First, the *Skidanenko* decision's analysis applies, at most, to facets of that pleading reiterated here, and is not binding on this Court.  Second, Equinox's motion to dismiss in *Skidanenko* was fully briefed *prior* to the issuance of several, directly relevant decisions from this District (as opposed to the EDNY, where *Skidanenko* was pending), which further support the instant motion.  *See Knight*, 2021 U.S. Dist. LEXIS 112082, at *8-10 (finding allegations lacked sufficient details about the length and frequency of the alleged unpaid work to state a FLSA overtime claim even though plaintiff alleged specific weeks and time periods when she worked more than 40 hours); *Mokrov*, 2021 U.S. Dist. LEXIS 112066, at *8-9 (granting motion to dismiss FLSA overtime claims because "Plaintiffs do not specify, even

approximately, how many hours in excess of forty that they worked per week or when they were required to do so" and "allegations that a plaintiff 'typically,' 'occasionally,' or 'regularly' worked more than forty hours a week, without more, are insufficient to state a claim."); *Mendoza*, 2021 U.S. Dist. LEXIS 44937, at *7 (finding plaintiff did not set forth a plausible claim for relief under the FLSA when plaintiff's only example of overtime work was inconsistent with other allegations and lacked detail about when or how plaintiff calculated hours worked); *Limauro*, 2021 U.S. Dist. LEXIS 62519, at *4 (granting motion to dismiss NYLL overtime claims because "[t]he allegations lack specificity as to *when* Limauro was required to work more than forty hours a week or the *frequency* with which he did so.") (emphasis in original).  Judge Kuntz's *Skidanenko* opinion—finding Plaintiff Skidanenko's recitation of her hours sufficient pleading—neither cites to nor acknowledges any of these recent SDNY decisions, each of which reinforce the valid grounds for dismissal of Plaintiffs' FLSA claims here, despite those decisions being presented to the Court for consideration.  Ex. B at 7.

## B. For the Same Reasons, Plaintiff Skidanenko's Minimum Wage Claim Should Be Dismissed

Plaintiff Skidanenko's conclusory hours allegations, which as discussed above violate this District's decisions regarding FLSA pleading, also doom her minimum wage claim, as the denominator of alleged hours "worked" necessary to allege such a violation is without basis.  Only by accepting Plaintiff Skidanenko's allegation (without specifics) that she unequivocally worked "at least sixty-five hours" during two specific weeks in September 2019 (Ex. A ¶ 281), does the arithmetic relating to her compensation approach $7.25 per hour under the *Klinghoffer* rule. *Alfonso v. Mougis Logistics Corp.*, 2021 U.S. Dist. LEXIS 233344 (S.D.N.Y. Dec. 6, 2021) (collecting authority applying *Klinghoffer* and rejecting minimum wage claim for failure to properly plead that effective wage rate fell below federal minimum wage).  Judge Kuntz deemed

this allegation sufficient by accepting the bald allegation that Plaintiff Skidanenko "typically 'worked sixty to sixty five hours (or more) a week'" (Ex. B at 5) and by declining to engage with the fact that only by 1) accepting the top of that range of hours for **both** of the weeks in question; 2) accepting it as sufficiently pled; and 3) assuming that it happened to apply in the two weeks where Plaintiff identified compensation, could the Court determine that it were even *possible* that in that biweekly pay period, Plaintiff Skidanenko's effective wage rate fell to $7.16/hour, nine cents below the FLSA minimum wage.  This is exactly the type of speculative pleading that SDNY courts reject.  If Plaintiff Skidanenko purports to have worked in excess of sixty hours in a week, she should describe that week in general terms, and the corresponding compensation.

### C.   Even if Either Plaintiff Has Pled Uncompensated Work (Which They Have Not), They Fail to Allege Facts Tending to Show Employer Knowledge of Uncompensated Work Time

Plaintiffs allege that they performed certain personal training session activities that were not recorded and that resulted in regular work beyond 40 hours in a workweek.  *See, e.g.* Ex. A ¶¶ 144-56.  Plaintiffs allege that it was "common knowledge" that these activities took "well over two (2) to three (3) hours . . . per week," adding that managers were often former trainers. *Id*. at ¶ 92.  Plaintiffs also allege that they informed their managers that their personal training session activities were taking significant time to complete.  For example, Katz alleges that she told her Personal Training Manager, Mr. Szefler, a former trainer, that her personal training session activities were taking 30 or more minutes to complete per session. *Id*. at ¶ 144.  She also alleges, "upon information and belief," that Mr. Szefler knew the amount of time that Katz was spending on session activities because he reviewed her weekly session schedule and client workout spreadsheets. *Id.* ¶¶ 145-48.  Similarly, Skidanenko claims that she complained to her managers, John Jenkins and Emiliano Tramonotozzi, about her "erratic schedule and uncompensated hours"

and that Mr. Tramonotozzi once told her to spend more time on her session activities.  *Id.* ¶¶ 151-52.

Yet, neither Katz nor Skidanenko allege that they specifically informed anyone that their hours worked exceeded 40 in a workweek.  Plaintiffs' conclusory allegations—based upon information and belief—that Defendant had actual or constructive knowledge that the time spent performing certain tasks brought trainers' weekly hours above 40 in a workweek are not sufficient to demonstrate employer knowledge of unpaid overtime.  At best, Plaintiffs allege that Defendant was aware trainers performed personal training session activities, but this does not yield the conclusion that such activities caused trainers to work more than 40 hours per week.

Lastly, Plaintiffs rely on a New York Times article which provides that an Equinox Vice President explained Equinox "never requires trainers to put in unpaid overtime: Trainers' per-session rates are meant to cover additional time spent preparing for workouts with clients."  *Id.* at ¶ 3.  This does not establish that Equinox was aware that Plaintiffs worked overtime hours during any specific workweek and were not properly compensated.  Again, neither Katz nor Skidanenko provide any facts tending to show that Defendant or any agent of Defendant was specifically aware that their time records did not reflect all work activities *and that those activities brought their hours worked to over 40 in any workweek*.  "To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that [she] performed work for which [she] was not properly compensated, *and that the employer had actual or constructive knowledge of that work*."  *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (emphasis added).  To proceed to discovery on such a claim, the plaintiff must plead facts in support of both of these elements.  As with the first element, Plaintiffs' Complaint does not contain sufficient factual allegations regarding this second element of the cause of action.

Plaintiffs' allegations that they informed their respective managers that they were not being compensated for their session activities (but not that they were performing uncompensated overtime work) are exactly the type of aspirational pleading that fail to meet the *Iqbal/Twombly* standard and demand dismissal (particularly given the countless theoretical employees Plaintiffs seek to represent in their sweeping unsupported putative collective action). That Plaintiffs have alleged actual and constructive knowledge of Defendant implicitly acknowledges their burden to establish employer knowledge of uncompensated time worked as a required element of an FLSA claim, but that bare legal conclusions—which is all Plaintiffs offer on this required legal element— are insufficient to satisfy the factual pleading requirements. Plaintiffs' allegations of employer knowledge is not a factual allegation—it is the cause of action itself. *DeSilva v. N. Shore-Long Island Jewish Health Sys.*, 770 F. Supp. 2d 497, 505 (E.D.N.Y. 2011) (allegation that conclusorily-pled overtime work "has been performed in plain sight of defendants' management and also at management's request" insufficiently specific to plead employer knowledge); *Xue Lian Lin v. Comprehensive Health Mgmt.*, 2009 U.S. Dist. LEXIS 29779, at *6-8 (S.D.N.Y. Apr. 8, 2009) (legal conclusions could not support claim of individual "employer" liability under FLSA).

In sum, Plaintiffs' allegations that they performed uncompensated overtime work because they were paid a fixed rate for personal training sessions and associated activity took additional time to perform do not rise to the level of an allegation that (1) they worked uncompensated overtime or that (2) Defendant was aware that the alleged additional session related activities resulted in uncompensated overtime hours.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE FMLA

A plaintiff establishes a *prima facie* case of FMLA interference by showing that (1) she is an eligible employee under the FMLA; (2) the defendant is an employer under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave notice to the defendant of her intention to take

leave; and (5) the defendant denied her benefits to which she was entitled by the FMLA.  *Bergman v. Kids by the Bunch Too, Ltd*., 2018 U.S. Dist. LEXIS 27119, at \*26 (E.D.N.Y. Feb. 16, 2018) (internal citations omitted).  Here, Plaintiff's own allegations defeat her claim, and her efforts to twist ancillary facts in her amended pleading should be viewed by the Court with skepticism under the plausibility standard.  As to the first leave identified in her Complaint (Ex. A ¶ 159), Katz admits she was granted leave under New York's Paid Family Leave Law and thus cannot sustain a claim for FMLA interference.[7]  *Colletta v. Northwell Health*, 2019 U.S. Dist. LEXIS 141338 (E.D.N.Y. Aug. 19, 2019) (dismissing FMLA interference claim because Plaintiff had "not plausibly alleged she was denied benefits under the FMLA"); *Mattern v. Panduit Corp.*, No. 11 C 984, 2011 U.S. Dist. LEXIS 118057, at \*20 (N.D. Ill. Oct. 11, 2011) ("Amended Complaint contains no allegations that she was *denied* FMLA benefits at any time during her employment.") (emphasis in original).  Similarly, Plaintiff alleges she was *granted* a second leave of absence after submitting a request for same only 19 days after returning from her first leave.  Ex. A ¶¶ 203, 208-09.

   As Plaintiff was granted both leaves she requested, she was not denied any benefits and thus does not state a claim for FMLA interference.  *See Alessi v. Monroe Cty.*, 2010 U.S. Dist. LEXIS 2746, at \*22 (W.D.N.Y. Jan. 13, 2010) (dismissing FMLA claims finding "plaintiff did not suffer any diminution of income, and . . . incurred no costs as a result of the alleged violation") (internal citations omitted).  Her new allegation, that a warning for failure to provide appropriate documentation relating to her leave was not "retracted" (Ex. A ¶ 206) is of no moment in this context; it is simply an irrelevant insinuation that she was entitled to some further documentary step (she was not) beyond approval of her leave, which she concedes occurred.

---

[7] An employer may – but is not required to – run a Paid Family Leave-approved leave concurrently with FMLA leave.

Furthermore, Plaintiff's revised allegations purporting to connect her termination to the FMLA are telling by what they don't include: the true reason for her termination or any comments reflecting hostility towards Plaintiff's leaves. Indeed, Paragraph 213 now halfheartedly alleges that a manager cited her 2019 leave (which she acknowledges was granted and from which she returned) as "further justification" for her termination,[8] conceding (correctly) that it was not the basis for same. For a retaliation claim to survive a motion to dismiss, the plaintiff must still plead that "there was a causal connection between the protected activity and the action." *Scott-Robinson v. City of N.Y.*, 2016 U.S. Dist. LEXIS 177789, at *7 (S.D.N.Y. Dec. 15, 2016). Plaintiff pleads no facts connecting her leave to her separation from employment (and indeed purposefully declines to articulate the reasons for her termination to obscure this reality), and her FMLA claims should be dismissed.

## IV.   FOLLOWING DISMISSAL OF PLAINTIFF'S FLSA AND FMLA CLAIMS, THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION AND DISMISS THIS ACTION

Given the failure of Plaintiff's federal claims, the Court should decline to hear her state law claims. *See Mendoza*, 2021 U.S. Dist. LEXIS 44937, at *10 ("the district courts may decline to exercise supplemental jurisdiction over a claim under [28 U.S.C. § 1367] subsection (a) if the district court has dismissed all claims over which it has original jurisdiction." (citing 28 U.S.C. § 1367(c) (internal quotation marks omitted))); *Alfonso*, 2021 U.S. Dist. LEXIS 233344, at *14 (declining to exercise jurisdiction over NYLL claims following dismissal of FLSA minimum age claim). Absent "'exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6), federal courts should 'abstain from exercising pendent jurisdiction.'" *Birch v.*

---

[8] Plaintiff's failure in connection with her approved 2019 leave was to timely subject documentation relating to same, not the taking of the leave.

*Pioneer Credit Recovery, Inc.*, 2007 U.S. Dist. LEXIS 41834, at *15 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).  This case meets none of the relevant factors weighed to assess whether "exceptional circumstances" exist that might warrant the exercise of such jurisdiction, namely "(1) the length of time the matter has been pending before the federal court [in this case, less than three months]; (2) the proximity of the trial date [in this case, a matter of years]; and (3) the predominance of issues of federal, as opposed to local concern [in this case, no federal issues remain upon the dismissal of Plaintiff's FLSA and FMLA claims]." *Id*. at *16 (citing *McLearn v. Cowen & Co.*, 660 F.2d 845 (2d Cir. 1981)).  Even in FLSA cases proceeding to the summary judgment stage, New York federal courts have declined to exercise such jurisdiction where summary judgment disposes of federal claims. *See*, *e.g.*, *Krumholz v. Vill. of Northport*, 873 F. Supp. 2d 481, 492 (E.D.N.Y. 2012) ("[T]he Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claim that survives the summary judgment motion . . . .").

Accordingly, upon the Court's dismissal of Plaintiff's FLSA and FMLA claims, there being no further basis for federal jurisdiction, the Court should decline to exercise pendent jurisdiction over Plaintiff's NYLL and NYCHRL claims and dismiss this action in its entirety.

## V.   EXERCISE OF SUPPLEMENTAL JURISDICTION OVER PLAINTIFFS' PAY FREQUENCY CLAIM IS INAPPROPRIATE

Under Section 1367(c)(1), the exercise of supplemental jurisdiction can be an abuse of discretion if "the resolution of [the] state law claim in [the] case turn[ed] on a question of state law which not only [was] undecided, but which also require[d] a balancing of numerous important policies of state government." *Valencia v. Lee,* 316 F.3d 299, 306-07 (2d Cir. 2003) (quoting *Seabrook v. Jacobson,* 153 F.3d 70, 73 (2d Cir. 1998)). *Accord,* Section 1367(c)(1).  Both the United States Supreme Court and Second Circuit have specifically instructed district courts to

avoid exercising jurisdiction over unresolved issues of state law: "[I]t is fundamental that needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. *Young v. N.Y.C. Transit Auth.*, 903 F.2d 146, 163-64 (2d Cir. 1990) (*quoting United Mine Workers v. Gibbs*, 383 U.S. 715, 715 (1966). Therefore, a "district court ought not reach out for . . . issues, thereby depriving state courts of opportunities to develop and apply state law." *Young*, 903 F.2d at 164. "Where a pendent state claim turns on novel or unresolved questions of state law, . . . principles of federalism and comity may dictate that these questions be left for decision by the state courts." *Seabrook v. Jacobson*, 153 F.3d 70, 72 (2d Cir. 1998).

Plaintiffs' new proposed Tenth Cause of Action, alleging that Defendant violated the NYLL by paying trainers biweekly, is just such a novel issue of state law, which will turn on – as a threshold issue – whether systemic payment of wages on a frequency found to be unlawful violates that statute.[9]  This is an undecided and developing issue of state law, with contrary authority in the state courts. *Compare  Hunter v. Planned Bldg. Servs., Inc.*, No. 715053/2017, 2018 N.Y. Misc. LEXIS 2896, *4 (Sup. Ct. Queens Cty. June 11, 2018); *and Grant v. Global Dispatch*, Queens Cty. Supreme Ct. No. 720074/2019 (Apr. 20, 2021)[10] (both finding no private right of action) *with Vega v. CM & Assocs. Constr. Mgmt., LLC,* 175 A.D.3d 114, 1146 (1st Dep't

---

[9] For avoidance of doubt, Defendant denies Plaintiffs' allegation (Ex. A ¶¶ 265, 270) that they were "manual workers" within the meaning of NYLL 191, and the New York State Department of Labor long ago opined that personal health club trainers do not fall into that category.  *See* Exhibit C. This is because a "manual worker" under NYLL 191 means "a mechanic, workingman or laborer."  NYLL § 190(4).  As the New York Industrial Board of Appeals ("Board") explains, "These types of jobs are typically low-skilled, can be easily trained, and the workers can be easily replaced by other able-bodied workers." *Hudson v. Commissioner of Labor,* PR 12-034, at p. 5 (Aug. 7, 2014). The Board has amplified that employees who serve in healthcare environments, work with people with disabilities, and – most relevant – provide "highly personal services" to other individuals are *not* manual workers. *See, e.g., Hudson,* PR 12-034, at p. 6 (dental assistants); *Creative Transp. v. Commissioner of Labor,* PR 49-88 (Aug. 9, 1991) (bus driver for disabled children); *Regis Corp. v. Commissioner of Labor,* PR 48-86 (Oct. 27, 1987) (cosmetologists).  These Board decisions are collected as Exhibit D.

[10] These decisions are attached as Exhibit E.

2019) (holding NYLL 191 provides a private right of action based on use of an improper frequency).  *See also Albertin v. Nathan Littauer Hosp. & Nursing Home,* 2021 U.S. Dist. LEXIS 84696, at *41 (N.D.N.Y. May 4, 2021) (despite *Vega,* there remains "an active split within this Circuit as to whether [Section 191] affords plaintiffs a cause of action").  Proper resolution of this issue necessarily entails "an expansive review of the legislative history of NYLL §§ 191 and 198 . . . and material purportedly indicating that '[t]ime and again, the Department of Labor has opined that the sanction for a § 191(1)(a) violation is a civil penalty imposed by the Commissioner under N.Y. Lab. Law § 218'" and not a private right of action.  *Mabe v. Wal-Mart Assocs.*, 2021 U.S. Dist. LEXIS 50954, at *18 (N.D.N.Y. Mar. 18, 2021).  Further, the factual issues relating to such a claim – Defendant's payroll frequency and Plaintiffs' designation as "clerical or other" workers – are issues unrelated to Plaintiffs' FLSA allegations of excess client programming and client development.[11]

Thus, this particular State law claim presents a novel and complex issue unresolved by the State's courts.  In the interest of comity and deference, this Court should therefore decline to exercise supplemental jurisdiction over it.  *See Centeno-Bernuy v. Becker Farms*, 564 F. Supp. 2d 166 (W.D.N.Y. 2008) (declining to exercise supplemental jurisdiction over state claim because the parties did not cite any case directly addressing whether a farm worker who performs both farm and non-farm work is entitled to overtime under the New York Labor Law, thus presenting a "novel issue of state law"); *Spiegel v. Schulmann*, 2006 U.S. Dist. LEXIS 86531 (E.D.N.Y. Nov. 30, 2006) (declining to exercise supplemental jurisdiction over complex issue of state law under the New York State Human Rights Law and New York City Human Rights Law, which

---

[11] Though, it should be noted, those allegations reinforce that Plaintiffs performed appropriate trainer duties and were in no way manual workers.

were issues of "first impression"); *Local 621, S.E.I.U., AFL-CIO v. City of N.Y.*, 2000 U.S. Dist. LEXIS 14235 (S.D.N.Y. Sept. 29, 2000) (holding that because state law claims raised novel or complex issues of state law, they were "more properly addressed in state courts").

*Salim Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234 (2d Cir. 2011) is not to the contrary.  In that case, the Second Circuit confirmed that this Court *can* exercise supplemental jurisdiction in appropriate cases and opined that the pendent NYLL claims invoked there (spread of hours and tip misappropriation wage claims of hospitality workers) formed part of the same case and controversy as the underlying FLSA claims and did not raise novel or complex issues of State law.  Consistent with *Smith & Wollensky*, Defendant does not challenge exercise of supplemental jurisdiction over Plaintiffs' NYLL claims which are directly tied to Plaintiffs' FLSA claims and themselves not novel or complex (such as Plaintiffs' claim for spread-of-hours pay under the NYCRR).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs' Complaint still does not state a valid federal claim.  The Court should decline jurisdiction over Plaintiffs' remaining non-federal claims, dismissing them without prejudice and closing this case.  Alternatively, the Court should decline supplemental jurisdiction over Plaintiffs' pay frequency claim, a distinct and novel issue of state law.

Dated: Melville, New York
   January 21, 2022

           Respectfully submitted,

           JACKSON LEWIS P.C.
           *ATTORNEY FOR DEFENDANT*
           58 South Service Rd., Ste. 250
           Melville, New York  11747
           (631) 247-0404

     By: *s/ Noel P. Tripp*
          NOEL P. TRIPP, ESQ.

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2022 the **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EQUINOX HOLDINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT** was electronically filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, the Southern District's Local Rules and the Southern District's Rules on Electronic Service upon the following parties and participants:

James Vagnini, Esq.
Alexander White, Esq.
VALLI KANE & VAGNINI LLP
Attorneys for Plaintiff
600 Old Country Road, Suite 519
Garden City, New York
(516)203-7180

D. Maimon Kirschenbaum, Esq.
Denise Schulman, Esq.
JOSEPH & KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212)688-5640

Jacob Aronauer, Esq.
LAW OFFICES OF JACOB ARONAUER
225 Broadway, 3rd Floor
New York, New York10007
(212)323-6980

Mariya Gonor, Esq.
Kimberley A. Brunner, Esq.
BEATTIE PADOVANO, LLC
200 Market Street, Suite 401
Montvale, New Jersey 076545
(201)799-9736

*s/ Noel P. Tripp*
NOEL P. TRIPP, ESQ.

4881-5894-1194, v. 3