**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MONIQUE KATZ; and YEKATERINA
SKIDANENKO, individual and on behalf of all
others similarly situated

        Plaintiffs,

   v.

EQUINOX HOLDINGS, INC,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No.: 1:20-cv-9856 (VEC)(RWL)

# PLAINTIFFS' MEMORANDUM OF LAW
# IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
# THE FIRST AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

FACTS RELEVANT TO THE MOTION ................................................................................. 1

PROCEDURAL HISTORY ........................................................................................................ 3

STANDARD OF REVIEW ........................................................................................................ 4

ARGUMENT ............................................................................................................................... 5

I.      Katz's FLSA Claims Should Not Be Dismissed ........................................................ 5

   A.   Equinox is Precluded From Seeking Dismissal Of Katz's FLSA Claims...................... 5

      1.   *The First Element of Issue Preclusion is Satisfied* ................................................ 6

      2.   *The Second and Third Elements of Issue Preclusions Are Satisfied* ..................... 8

      3.   *The Fourth Element of Issue Preclusion is Satisfied* ............................................ 8

   B.   Katz Satisfies the FLSA Overtime Pleading Requirement ........................................... 10

   C.   Employer Knowledge of Unpaid Time Worked is Not A Pleading Requirement ......... 15

II.     Equinox's Motion to Dismiss Katz's FMLA Claims Should Be Denied ........................ 18

   A.   Katz's FMLA Interference Claim ................................................................................. 19

   B.   Katz's FMLA Retaliation Claim .................................................................................. 21

III.    The Court Should Not Dismiss Katz's State and/or Local Law Claims............................ 22

IV.     The Court Should Not Decline Supplemental Jurisdiction Over the § 191 Claims........... 23

V.      The Court Should Grant Plaintiffs Leave to Amend .................................................... 25

CONCLUSION ............................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abdul-Matiyn v. City of N.Y.*
    No. 90-CV-7070, 1991 WL 130189 (S.D.N.Y. July 8, 1991) ................................................... 7

*Allen v. McCurry*
    449 U.S. 90 (1980) ................................................................................................................... 10

*Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*
    No. 19-CV-4871 (VEC), 2020 WL 1151313 (S.D.N.Y. Mar. 9, 2020) ................................. 7-8

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ..................................................................................................................... 4

*ATSI Commc'ns, Inc. v. The Sharr Fund, Ltd*
    493 F.3d 87 (2d Cir. 2007) .......................................................................................................... 4

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ..................................................................................................................... 5

*Bonn-Wittingham v. Project O.H.R. (Off. for Homecare Referral), Inc*
    No. 16-CV-541, 2016 WL 7243541 (E.D.N.Y. Dec. 14, 2016) ......................................... 15-16

*Butt v. HF Mgmt. Servs., LLC*
    No. 18-CV-07017, 2020 WL 207393 (E.D.N.Y. Jan. 14, 2020) ............................................. 16

*Campbell v. City of New York*
    No. 16-CV-8719 (AJN), 2020 WL 2792978 (S.D.N.Y. May 29, 2020) ................................. 17

*Caul v. Petco Animal Supplies, Inc.*
    No. 20-CV-3534, 2021 WL 4407856 (E.D.N.Y. Sept. 27, 2021) ....................................... 24-25

*Cooper v. New York State Nurses Ass'n*
    847 F. Supp. 2d 437 (E.D.N.Y. 2012) ..................................................................................... 22

*Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*
    478 F. Supp. 3d 456 (W.D.N.Y. 2020)…………………………………………………………..18

*Dejesus v. HF Mgmt. Servs., LLC*
    726 F.3d 85 (2d Cir. 2013) ................................................................................................. 11, 14

*Fallon v. 18 Greenwich Ave., LLC*
    No. 1:19-CV-9579 (MKV), 2021 WL 1105066 (S.D.N.Y. Mar. 23, 2021) ........................... 13

*Farmer v. United States*
No. 12-CR-758, 2017 WL 3448014 (S.D.N.Y. Aug. 10, 2017) ......................................... 17, 23

*Ferring B.V. v. Serenity Pharmaceuticals, LLC*
391 F. Supp. 3d 265 S.D.N.Y. 2019) ................................................................. 9-10

*Grieve v. Tamerin*
269 F.3d 149 (2d Cir. 2001) .................................................................................. 7

*Gunawan v. Sake Sushi Rest.*
897 F. Supp. 2d 76 (E.D.N.Y. 2012) .................................................................. 11

*Hobbs v. Knight-Swift Transp. Holdings, Inc.*
No. 21-CV-1421 (AT), 2022 WL 118256 (S.D.N.Y. Jan. 12, 2022) ....................................... 12

*In re DDAVP Indirect Purchaser Antitrust Litig.*
903 F. Supp. 2d 198 (S.D.N.Y. 2012)…………………………………………………...18

*Jeffreys v. Teamsters Union Loc. 1150*
28 F. App'x 92 (2d Cir. 2002) ............................................................................. 7

*Lee v. Sony BMG Music Entm't, Inc.*
557 F. Supp. 2d 418 (S.D.N.Y. 2008) ................................................................. 5

*Lummus Co. v. Commonwealth Oil Refining Co.*
297 F.2d 80 (2d Cir. 1961) .................................................................................. 9

*Lundy v. Cath. Health Sys. of Long Island Inc.*
711 F.3d 106 (2d Cir. 2013) ........................................................................ *passim*

*Marvel Characters, Inc. v. Simon*
310 F.3d 280 (2d Cir. 2002) ................................................................................ 6

*McCarthy v. Dun & Bradstreet Corp.*
482 F.3d 184 (2d Cir. 2007) ................................................................................ 4

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*
723 F.3d 192 (2d Cir. 2013) .............................................................................. 13

*Nuno Carrera v. DT Hosp. Grp.*
No. 19-CV-4235 (RA), 2021 WL 1164181 (S.D.N.Y. Mar. 26, 2021) ................................... 11

*O.F.I. Imports Inc. v. Gen. Elec. Cap. Corp.*
No. 15-CV-7231 (VEC), 2016 WL 5376208 (S.D.N.Y. Sept. 26, 2016) ................................ 25

*Perkins v. Bronx Lebanon Hosp.*
  No. 14-CV-1681 (PAE), 2015 WL 3649330 (S.D.N.Y. June 11, 2015) ........................... 11, 14

*Perry v. City of New York*
  No. 13-CV-1015 (VSB), 2019 WL 1146581 (S.D.N.Y. Mar. 13, 2019)................................ 17

*Potenza v. City of New York*
  365 F.3d 165 (2d Cir. 2004)......................................................................................... 20

*Rockman v. USI Ins. Servs. LLC*
  No. 19-CV-5997 (VEC), 2021 WL 3621685 (S.D.N.Y. Aug. 16, 2021) ............................... 23

*Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*
  16-CV-4270 (VM), 2019 WL 3940218 (S.D.N.Y. July 29, 2019)........................................... 9

*Ronzani v. Sanofi S.A.*
  899 F.2d 195 (2d Cir. 1990)......................................................................................... 25

*Skidanenko v. Equinox Holdings Inc.*
  1:20-CV-01550 (E.D.N.Y.) ................................................................................... *passim*

*Smith v. N. Shore-Long Island Jewish Health Sys.*
  286 F. Supp. 3d 501 (E.D.N.Y. 2018) ..........................................................................21-22

*Smith v. Westchester Cty.*
  769 F. Supp. 2d 448 (S.D.N.Y. 2011).........................................................................19-21

*Vega v. CM & Assocs. Constr. Mgmt., LLC*
  175 A.D.3d 1144 (N.Y. App. Div. 2019) ......................................................................24-25

*Zapata v. HSBC Holdings PLC*
  414 F. Supp. 3d 342, 348 (E.D.N.Y. 2019) .................................................................. 6, 8-10

*Zdanok v. Glidden Co.*
  327 F.2d 944 (2d Cir. 1964).......................................................................................9-10

*Zuckerman v. GW Acquisition LLC*
  No. 20-CV-8742 (VEC), 2021 WL 4267815 (S.D.N.Y. Sept. 20, 2021) ................................ 23

## Statutes

28 U.S.C. § 1332(d)…………...……………………………………………………..…22-23

28 U.S.C. § 1367(c)……………………………………………………………………..…23

29 U.S.C. §§ 201 *et seq*……………………………………………………….…………*passim*

29 U.S.C. § 216(b)…………………………………………………………....…1, 3

29 U.S.C. § 211(c)………………………………………………………………11

29 U.S.C. § 2615(a)(1)………………………………………………….……19

New York Labor Law § 191…………...……..……...……...……...……...…..3-4, 23-25

**Federal Rules**

Fed. R. Civ. P. 9………………………………………………………………15

Fed. R. Civ. P. 12(b)(6)……………………………………………………4-5

Fed. R. Civ. P. 41(a)(1)…………………………………………………….4, 6, 10

## PRELIMINARY STATEMENT

This is an action brought by Plaintiffs Monique Katz ("Katz") and Yekaterina Skidanenko ("Skidanenko") (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated against Defendant Equinox Holdings, Inc. ("Equinox"). Specifically, Plaintiffs and all others similarly situated were/are employed by Equinox as Personal Trainers ("Trainers") at its fitness centers across the State of New York. They allege, among other allegations, that Equinox failed to pay them the requisite wages pursuant to the Fair Labor Standards Act ("FLSA") 29 U.S.C. §§ 201 *et seq.*, The New York Labor Law ("NYLL"), and the New York Codes, Rules and Regulations ("NYCRR"). Since the filing of the Original Complaint, **10** other similarly situated Personal Trainers have joined this action claiming unpaid wages against Equinox (*see* dkt. nos. 12, 20, 22-24, 29, 36-37, 41) and Katz has filed a motion for conditional certification of a collective pursuant to 29 U.S.C. § 216(b). Equinox now moves the Court to partially dismiss Plaintiffs' First Amended Complaint (dkt. no. 55) ("FAC"). *See* Dkt. Nos. 58-60 (the "Motion" or "Mot.").

## FACTS RELEVANT TO THE MOTION

Equinox is a billion-dollar fitness company that offers luxury fitness centers to patrons across the United States. *See* FAC ¶ 2. It employed Trainers throughout the State of New York to provide physical training sessions to its New York members. *See id.* at ¶¶ 5, 45-7. The Trainers had different "tier levels" that are based upon their skill level and the number of personal training clients they have. *See id.* The tiers are titled Tier 1, Tier 2, Tier 3, Tier 3+, and Tier X. *See id.* Tier 1 and Tier 2 (collectively, the "LT Trainers") are the entry-level positions, and Tier 3, Tier 3+, and Tier X (collectively, the "HT Trainers") are advanced positions. *See id.* at ¶ 47.

LT Trainers are primarily responsible for conducting "floor shifts," which include cleaning the gym floor, assisting patrons with their workouts, handing out towels, etc. *See id.* They also attend personal training courses (*i.e.*, meetings) and conduct some personal training ("PT")

sessions. *See* FAC ¶¶ 47, 176. HT Trainers, on the other hand, primarily conduct PT sessions and perform few floor shifts. *See id.* at ¶¶ 47, 179.

PT sessions are at least one (1) hour-long (unless it was a half session) and require both preparation work and conclusion work ("PT session activities"). *See id.* at ¶¶ 78, 82-3. The preparation work includes researching and preparing a workout plan, inputting the workout plan and data into a spreadsheet, communicating with the client about the workout, and gathering weights/equipment for the workout. *See id.* at ¶ 79. This preparation work takes anywhere between 30 minutes to one hour per PT session. *See id.* at ¶ 80. The conclusion work includes returning the workout weights/equipment and cleaning the workout area. *See Id.* at ¶ 84. The conclusion work takes anywhere between 10-15 minutes per PT session. *See id.* at ¶ 85. Thus, for each PT session, a Trainer can perform one hour and 45 minutes to two hours and 45 minutes' worth of work.

Throughout the statutory period, Equinox instituted a written corporate-wide pay policy whereby the Trainers were paid a flat rate for each PT session they performed, inclusive of the session related activities, and New York State's ("NYS") minimum wage ("MW") for all time spent performing duties not related to PT sessions. *See id.* at ¶ 8, 88, 163. The policy, however, excluded overtime ("OT") pay for the Trainers who normally worked more than 40 hours per week. *See id.* at ¶¶ 9, 136. Accordingly, they were denied OT pay for all their OT hours. *See id.* at ¶¶ 136-156. Equinox also failed to pay the Trainers for attending meetings and for performing promotional PT Sessions (*e.g.*, guided sessions and Equifit sessions) and required the LT Trainers to work "off-the-clock" resulting in MW violations. *See id.* at ¶¶ 157-164 These rampant wage violations and substandard treatment of its Trainers led to a New York Times investigative report.[1]

---

[1] *See* https://www.nytimes.com/2019/12/05/business/equinox-trainers-hunger-games.html

Plaintiffs further allege that the Trainers were paid bi-weekly despite 25% or more of their working time being manual labor in violation of NYLL § 191 ("§ 191"). *See* FAC at ¶¶ 166-172.

Katz also alleges that: (i) she was sexually harassed and discriminated against on the basis of her disability in violation of the New York City Human Rights Law ("NYCHRL"); and (ii) she was denied leave/retaliated against for using/requesting leave in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq. See id.* at ¶¶ 194-225. Regarding the FMLA claims, Katz requested leave in December 2019 and was denied. She also received leave in February 2020 only to have it revoked and be terminated for it. *See id.* at ¶¶ 198-225.

## PROCEDURAL HISTORY

On March 25, 2020, Skidanenko filed a class/collective wage-and-hour action against Equinox in the Eastern District of New York (the "EDNY Action"). *See Skidanenko v. Equinox Holdings Inc.*, 1:20-CV-01550 (E.D.N.Y.). Skidanenko sought to represent a collective/class of all LT Trainers who were denied OT and MW. Subsequently, on November 23, 2020, Katz filed this action seeking to represent all HT Trainers (the "SDNY Action").

On October 23, 2020, Equinox filed a motion to dismiss in the EDNY Action, which asserted arguments nearly identical to those in the Motion. *See* EDNY Action, Dkt. No. 19, annexed to the March 10, 2022, Affirmation of James A. Vagnini ("Vagnini Aff.") as Exhibit 1 ("Ex. 1"). On June 29, 2021, Judge William Francis Kuntz denied Equinox's motion in its entirety. *See* EDNY Action, Dkt. No. 35, annexed to Vagnini Aff. as Exhibit 2 ("Ex. 2"). Meanwhile, in the SDNY Action, 10 putative collective members filed consents to join, the parties participated in a failed classwide mediation, and a motion for conditional certification of a collective of all HT Trainers pursuant to 29 U.S.C. § 216(b) was filed. *See* Dkt. Nos. 12, 20, 22-24, 29, 36-41. Equinox then sought to dismiss the SDNY Action by claiming that it violated the first-filed rule.

Although Katz vehemently maintains that the first-filed rule was inapplicable, in an effort to preserve the parties' and the Court's resources litigating the issue, Katz broached consolidation via a Rule 41(a)(1)(A)(ii) dismissal in the EDNY Action and an Amended Complaint in the SDNY Action with Equinox and Skidanenko. All parties agreed resulting in the FAC. Equinox then filed the Motion that attempts to re-litigate the FLSA issues already decided by Judge Kuntz in the EDNY Action. Thereafter, Plaintiffs requested that Equinox withdraw its motion to dismiss their FLSA claims pursuant to the doctrine of issue preclusion. Equinox, however, only withdrew the portions of the Motion that sought to dismiss Skidanenko's FLSA claims. *See* Dkt. Nos. 62-63.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a claim must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citation omitted).

Furthermore, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). Although *Twombly* has introduced a "flexible plausibility standard" into motions to dismiss, this standard does not mean a court should weigh competing fact allegations and determine which is more credible. *See ATSI Commc'ns, Inc. v. The Sharr Fund, Ltd*, 493 F.3d 87, 98 (2d Cir. 2007). As the Supreme Court observed in *Twombly*, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts

[alleged] is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). The standard "is heavily weighted in favor of the plaintiff," and the Court must "read a complaint generously." *Lee v. Sony BMG Music Entm't, Inc.*, 557 F. Supp. 2d 418,423 (S.D.N.Y. 2008).

## ARGUMENT

### I.    Katz's FLSA Claims Should Not Be Dismissed

Equinox's motion to dismiss Katz's FLSA claims should be denied. Equinox makes two arguments as to why Katz's FLSA claims should be dismissed: (i) Katz allegedly fails to meet the FLSA's pleading requirements prescribed by the 2nd Circuit in *Lundy v. Cath. Health Sys. of Long Island Inc.*: "[T]o survive a motion to dismiss, Plaintiffs must allege sufficient factual matter to state a plausible claim that they worked compensable [OT] in a workweek longer than 40 hours[;]" and (ii) Katz fails to sufficiently plead that Equinox had knowledge of the uncompensated OT worked by her. 711 F.3d 106, 114 (2d Cir. 2013).

Equinox's two arguments, however, should be rejected because: (i) issue preclusion applies to them; (ii) Katz meets *Lundy*'s FLSA pleading requirements; and (iii) the FLSA's pleading requirements do not require a plaintiff to plead employer knowledge of uncompensated OT worked. Therefore, for the reasons set forth below, Equinox's motion to dismiss Katz's FLSA claims should be denied in its entirety.

#### A.    Equinox is Precluded From Seeking Dismissal Of Katz's FLSA Claims

The Court should find that issue preclusion (also known as collateral estoppel) applies to Equinox's motion to dismiss Katz's FLSA claims. In the EDNY Action, Equinox sought to dismiss the complaint asserting that Skidanenko failed to plead a specific workweek in which she worked more than 40 hours without OT pay. *See* Ex. 1 at 6-7. Equinox also sought to dismiss the EDNY

Action because Skidanenko allegedly failed to plead Equinox's knowledge of the uncompensated OT hours worked. *See* Ex. 1 at 8-11. Judge Kuntz denied Equinox's motion to dismiss in its entirety holding that Skidanenko's complaint satisfied the FLSA's pleading requirements. *See* Ex. 2 at 6-7. His Honor also correctly held that an employer's knowledge of unpaid work is **not** a pleading requirement, but rather an issue reserved for summary judgment. *See* Ex. 2. At 7-8. Equinox now makes the same arguments here as it did in the EDNY Action. Thus, issue preclusion must apply resulting in the denial of the Motion.

"In this [C]ircuit, issue preclusion applies where: '(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party [raising the issue] had a full and fair opportunity to litigate the issue [in the prior proceeding]; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" *Zapata v. HSBC Holdings PLC*, 414 F. Supp. 3d 342, 348 (E.D.N.Y. 2019), *aff'd*, 825 F. App'x 55 (2d Cir. 2020) (applying issue preclusion to an interlocutory order as a result of a Rule 41(a)(1) dismissal) (quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288-289 (2d Cir. 2002)) (alterations added and in original). Each of these elements is met here.

### 1.      The First Element of Issue Preclusion is Satisfied

The first element of issue preclusion is satisfied because the issues before the Court are identical to those decided by Judge Kuntz. In the EDNY Action, Equinox argued that Skidanenko failed to meet *Lundy's* FLSA's pleading requirements and failed to plead employer knowledge of unpaid OT hours worked. *See* Ex. 1 at 6-11. Despite Judge Kuntz finding that Skidanenko's complaint met *Lundy's* FLSA's pleading requirements and that employer knowledge is **not** an FLSA pleading requirement, Equinox now makes the same arguments (**nearly verbatim**) in the Motion. *Compare, e.g.*, Mot. at 12 ("Plaintiffs' allegations that they informed their respective

managers that they were not being compensated for their session activities . . . are exactly the type of aspirational pleading that fail to meet the *Iqbal/Twombly* standard and demand dismissal . . .") *with* Ex. 1 at 8 ("Plaintiff's suggestion that she herself performed such unpaid work with the knowledge or sufferance of unspecified 'managers' is exactly the type of aspirational pleading that fails to meet the *Iqbal/Twombly* standard and demand dismissal."); Ex. 2 at 6-8.

Katz predicts that Equinox will argue that the first issue preclusion element cannot be met for two reasons: (i) Katz was not a party in the EDNY Action; and (ii) Judge Kuntz's decision regarding employer knowledge of unpaid time worked and whether Skidanenko's allegations satisfy *Lundy* are specific to Skidanenko's pleadings.

First, "[i]dentity of both parties is **not** an element of collateral estoppel." *Jeffreys v. Teamsters Union Loc. 1150*, 28 F. App'x 92, 94 (2d Cir. 2002) (emphasis added); *see Abdul-Matiyn v. City of N.Y.*, No. 90-CV-7070, 1991 WL 130189 at *1 n.1 (S.D.N.Y. July 8, 1991) ("[I]ssue preclusion . . . does not require identity of parties in the prior and subsequent litigation.").

Second, Judge Kuntz's decision that employer knowledge of unpaid OT hours is not a pleading requirement patently applies to the Motion. The decision on this issue was not specific to the sufficiency of Skidanenko's allegations, but rather a decision concerning the FLSA pleading standard for any plaintiff. *See* Ex. 2 at 7-8 ("**FLSA [OT] plaintiffs** are not required to plead employer knowledge[.]") (emphasis added). Judge Kuntz did not even evaluate Skidanenko's allegations with respect to this issue. *See id.* Since Equinox raised the employer knowledge issue in the EDNY Action, it cannot now try again to rewrite the well-established *Lundy* FLSA pleading standard via this action. *See Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001) ("The doctrine of collateral estoppel (or 'issue preclusion') bars re-litigation of a specific legal or factual issue in a second proceeding."); *Almazon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 19-CV-4871 (VEC),

2020 WL 1151313, at *12 (S.D.N.Y. Mar. 9, 2020), *appeal dismissed* (Aug. 4, 2020) (same).

Third, Katz agrees that the issue of whether she sufficiently alleges a specific workweek in which she worked uncompensated OT hours was not expressly decided by Judge Kuntz. However, by Equinox's own admission, "Katz's deficient allegations are still far more detailed than those specific to Skidanenko."[2] Mot. at 7. As a result of this admission and Judge Kuntz deeming Skidanenko's allegations sufficient, preclusion must apply to the sufficiency of Katz's allegations.[3] By consequence, the first element of issue preclusion is met.

### 2.    *The Second and Third Elements of Issue Preclusions Are Satisfied*

The second element of issue preclusion is met because the issues were "actually litigated and decided in the previous proceeding." Equinox filed a motion to dismiss asserting the same issues raised in the Motion and fully briefed them. They were then decided against Equinox via a thorough written opinion. *See* Exs. 1-2. The third element is met because Equinox is the party that raised the issues before Judge Kuntz and, as such, had a full and fair opportunity to litigate them. *See id.*

### 3.    *The Fourth Element of Issue Preclusion is Satisfied*

The Fourth element is satisfied because Judge Kuntz's denial of Equinox's motion to dismiss is sufficiently "final" for the purposes of issue preclusion. Although Equinox may argue that a denied motion to dismiss is an interlocutory order preventing it from having preclusive effect, "Chief Judge McMahon and Judge Marrero of the [SDNY] have each [recently] . . . held that preclusion was appropriate" for interlocutory orders. *Zapata*, 414 F. Supp. 3d at 351 (citing

---

[2] Skidanenko's allegations are actually more specific in the FAC then they were in the EDNY Action. *Compare* EDNY Action, Dkt. No. 42, annexed to Vagnini Aff. as Exhibit 3, *with* the FAC.

[3] Dismissal of Katz's claims would lead to an absurd outcome where a plaintiff who pleads less is permitted to remain in a case while the plaintiff with admittedly more sufficient allegations is dismissed. This exactly the type of inconsistency that issue preclusion is designed to prevent.

*Ferring B.V. v. Serenity Pharmaceuticals, LLC*, 391 F. Supp. 3d 265, at 281-90 (S.D.N.Y. 2019) (McMahon, C.J.); *Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 16-CV-4270 (VM), 2019 WL 3940218, at *3-7 (S.D.N.Y. July 29, 2019); *see Zdanok v. Glidden Co.*, 327 F.2d 944, 955 (2d Cir. 1964) ("[C]ollateral estoppel does not require a judgment which ends the litigations and leaves nothing for the court to do but execute a judgment, but includes many dispositions which, though not final in that sense, have nevertheless been fully litigated.").

"[W]hen determining whether to accord an interlocutory order preclusive effect, courts are instructed to consider broad factors such as 'the nature of the decision (*i.e.*, that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review.'" *Zapata*, 414 F. Supp. 3d at 348 (quoting *Lummus Co. v. Commonwealth Oil Refining Co.*, 297 F.2d 80, 89 (2d Cir. 1961).

Here, Judge Kuntz's decision was a "textbook district court opinion—one that identifies and applies binding authority, derives legal principles from persuasive authority, and applies case law to the particulars of the case." *Ferring*, 391 F. Supp. 3d at 286; *see* Ex. 2. His Honor's written decision was not avowedly tentative. *See* Ex. 2. Further, Equinox's EDNY motion to dismiss was "decided upon full briefing by the parties, such that [Equinox] cannot contend that [it] did not have an opportunity to be heard." *See Zapata*, 414 F. Supp. 3d at 351 (citation omitted).

Equinox also had an opportunity to appeal Judge Kuntz's decision but voluntarily forwent that opportunity to consolidate the EDNY and SDNY Actions. This is because a voluntary dismissal renders a matter unreviewable as a matter of law. *See id.* ("Here, however, Plaintiffs' voluntary dismissal of the Texas Action rendered *Zapata I* unreviewable as a matter of law.") (citation omitted). Indeed, "there is support in this [C]ircuit for the proposition that an unappealable order cannot, as a matter of law, be accorded preclusive effect." *Id.* at 351-52 (*citing Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)). However, "[a]s noted [by Chief

Judge McMahon] in *Ferring*, [this proposition in] *Gelb* embraces only those 'decisions that are, by law, unreviewable **by their very nature**.'" *Zapata*, 414 F. Supp. 3d at 351 (quoting *Ferring*, 391 F. Supp. 3d at 285) (emphasis in original). Judge Kuntz's decision "was not 'by its very nature' unreviewable; it only became so because of [Equinox's] deliberate choice to invoke . . . Rule 41(a)(1)[.]" *Zapata*, 414 F. Supp. 3d at 351. Thus, by virtue of the EDNY's Action's voluntary dismissal, the FLSA pleading issues raised by Equinox in the EDNY Action "have . . . been fully litigated." *Zdanok*, 327 F.2d 955.

Notably, had Equinox "wished to seek appellate review of [Judge Kuntz's decision], there were [two] options available to [it]. [It] could have moved [Judge Kuntz] to certify the [EDNY Action] for interlocutory appeal to the [2nd] Circuit [or it] could have litigated [the claims against it] to judgment in the [EDNY] and then appealed [Judge Kuntz's decision] as of right." *Zapata*, 414 F. Supp. 3d at 352. Instead, Equinox voluntarily executed a stipulation of dismissal. Therefore, Judge Kuntz's decision is sufficiently final for the Court to apply "issue preclusion in this case[, which] would further the policies underlying the doctrine, namely . . . 'conserving judicial resources, and, by preventing inconsistent decisions, encouraging reliance on adjudication.'" *Id.* (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). To hold otherwise, would allow Equinox and future litigants a "second bite of the apple" via a Rule 41(a)(1) dismissal. *See Zapata*, 414 F. Supp. 3d at 352 ("Rule 41 is not so broad as to allow Plaintiffs to force Defendants to relitigate, and this court to decide, an issue squarely presented and resolved in the Texas Action."). Accordingly, issue preclusion applies to both of Equinox's arguments to dismiss Katz's FLSA claims.

B.     Katz Satisfies the FLSA Overtime Pleading Requirement

Should issue preclusion not apply, Katz still meets the pleading requirements prescribed by *Lundy* as she alleges a specific workweek in which she worked over 40 hours without OT pay.

As stated above, "to survive a motion to dismiss, a complaint must allege sufficient factual matter to state a plausible claim that they worked compensable [OT] in a workweek longer than 40 hours." *Lundy*, 711 F.3d at 114. "Determining whether a plausible claim has been pled is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. Notably, the 2nd Circuit has "declined to make an approximation of [OT] hours a necessity in all cases. [It did] remark[], however, that an approximation may help draw a . . . claim closer to plausibility." *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88 (2d Cir. 2013) (citation omitted). "The [2nd] Circuit has [also] held that plaintiffs are not required 'to keep careful records and plead their hours with mathematical precision, [but] it is employees' memory and experience that lead them to claim in federal court that they have been denied [OT] in violation of the FLSA in the first place . . . [and they should] draw on those resources in providing complaints with sufficiently developed factual allegations.'" *Nuno Carrera v. DT Hosp. Grp.*, No. 19-CV-4235 (RA), 2021 WL 1164181, at *4 (S.D.N.Y. Mar. 26, 2021) (quoting *Dejesus*, 726 F. 3d at 90)) (alterations added and in original); *see Perkins v. Bronx Lebanon Hosp.*, No. 14-CV-1681 (PAE), 2015 WL 3649330, at *5 (S.D.N.Y. June 11, 2015) ("[A] plaintiff may draw on his own memory and experience to provide developed factual allegations, such as when he worked [OT]; . . . approximately how many extra hours he worked per week; and the types of tasks he performed during his [OT] hours . . . Prior to discovery, however, plaintiffs often will not be able to provide the precise tabular data. . . .") (citation omitted). In fact, it is the employer, not the employee, who is required to preserve records the time worked and wages paid. *See Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 84 (E.D.N.Y. 2012) ("The FLSA provides that an employer must 'make, keep, and preserve' records of employee wages and hours[.]") (quoting 29 U.S.C. § 211(c)).

Here, Katz sufficiently alleges an FLSA claim of unpaid OT wages because she pleads:

- [D]uring Plaintiff Katz's April 29, 2018, to May 12, 2018 pay period, she performed the equivalent of [54] full hour-long PT sessions. During this pay period, Plaintiff Katz also spent approximately [36] hours performing PT session activities and approximately [30] minutes attending weekly meetings. Thus, Plaintiff Katz worked approximately [90½] hours during this pay period. . . . **Accordingly, for at least [1] of the two [2] workweeks worked during this pay period, Plaintiff Katz worked in excess of [40] hours but was not paid a proper [OT] wage**.

- As for another example, **for the workweek of January 7, 2018, to January 13, 2018, Plaintiff Katz worked more than [40] hours. Specifically, she worked approximately [45½] for this workweek**, which was comprised of her performing approximately [27] one-hour PT sessions, PT session activities, Equifit sessions, and meetings. Upon information and belief, Plaintiff Katz also performed guided sessions during this workweek. **Plaintiff Katz, however, was not paid the [OT] premium of [1½] times her hourly rate for all hours worked in excess of [40] for the workweek of January 7, 2018, to January 13, 2018**.

- As for a further example, **for the workweek of March 25, 2018, to March 31, 2018, Plaintiff Katz worked more than [40] hours. Specifically, she worked approximately [50½] hours**, which was comprised of her performing [27] one-hour PT sessions, PT session activities, Equifit sessions, and meetings. Upon information and belief, Plaintiff Katz also performed floor shifts and guided sessions during this workweek. **Plaintiff Katz, however, was not paid the [OT] premium of [1½] times her hourly rate for all hours worked in excess of [40] for the workweek of March 25, 2018, to March 31, 2018**.

FAC ¶¶ 184-85, 188-89. These allegations more than satisfy the FLSA's pleading requirements because she pleads with absolute certainty, not one, but **three** specific weeks where she worked over 40 hours without OT pay, an approximation of the hours worked during these workweeks, and the work she performed during these workweeks. *Lundy* does not require Katz to recall the hours worked down to the tenth of an hour. Katz also pleads that throughout her employment she was subjected to a written corporate policy that did not afford OT pay to the Trainers, including her, and that she regularly worked over 40 hours without OT pay. *See* FAC ¶¶ 136, 183; *Hobbs v. Knight-Swift Transp. Holdings, Inc.*, No. 21-CV-1421 (AT), 2022 WL 118256, at *3 (S.D.N.Y. Jan. 12, 2022) ("[A]llegations that the plaintiff worked over [40] hours a week, every week, clearly satisfy the [2nd] Circuit's edict that a complaint contain specificity as to uncompensated hours worked during a particular week. To hold otherwise would render plaintiffs unable to pursue

claims for FLSA [OT] violations based on allegations that their employer systematically denied them [OT] pay over the course of their entire employment, and the [2nd] Circuit certainly could not have intended such an outcome.") (citations omitted). Thus, Katz's specific workweek allegations and the FAC taken as a whole satisfy the FLSA's pleading requirements.

Equinox's attack that Katz's allegations are deficient because they are approximations or "guesses" of hours worked must be rejected by the Court because it is attempting to have the Court improperly deem the allegations as untrue, which is prohibited on a motion to dismiss. Mot. at 6-7. Nevertheless, "nothing in *Iqbal, Twombly*, or [2nd] Circuit FLSA precedent forbids Plaintiffs from relying on approximations or estimates at the pleading stage." *Fallon v. 18 Greenwich Ave., LLC*, No. 1:19-CV-9579 (MKV), 2021 WL 1105066, at *6 (S.D.N.Y. Mar. 23, 2021) (citation omitted). "[C]ourts [also] routinely hold that estimates of hours worked are sufficient to state a claim[.]" *Fallon*, 2021 WL 1105066 at *6 (collecting cases of 2nd Circuit courts denying motions to dismiss where a plaintiff approximates the hours worked over 40 in a specific workweek). Additionally, even if the approximations may turn out to be incorrect, "generalized allegations that may prove false at trial are not necessarily the basis for dismissal at the pleadings stage." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013).

Moreover, by Equinox's own admission, Katz's allegations regarding her OT hours worked in a specific workweek are "far more detailed than those specific to Skidanenko" Mot. at 7. Since Judge Kuntz already held that Skidanenko met *Lundy's* FLSA pleadings requirements, this Court, by virtue of Equinox's admission alone, should find the same with respect to Katz. Notably, the decisions Equinox cites in urging the Court to ignore Judge Kuntz's decision are inapposite, as the complaints at issue in those cases either outright failed to state any number of OT hours worked in a specific workweek (*see Knight v. MTA-New York City Transit Auth.*, *Mokrov v. Aeroflot Russian*

*Airlines*, and *Limauro v. Consol. Edison Co. of New York, Inc.*), or made a bare allegation of unpaid OT hours that was inconsistent with the other allegations in the complaint (*see Mendoza v. Cornell Univ.*).   In contrast, here, Katz has identified three weeks that she worked unpaid OT and the number of hours that she worked during those weeks.

Katz's OT hours worked are also not alleged as "estimations of time a task took to perform [that are] appli[ed to an] estimated volume of tasks" as Equinox speculates in the Motion. Mot. at 7. Remarkably, Equinox does not provide a single example or calculation of Katz's "estimations of time a task took" to support its baseless assertion. It also does not explain why the alleged hours worked in paragraphs 188 and 189 of the FAC differ despite Katz performing the same number of PT sessions. This is because Katz could not be clearer about the number of hours she worked in the identified workweeks. *See, e.g.*, FAC ¶ 188 ("[F]or the workweek of January 7, 2018, to January 13, 2018, Katz worked more than [40] hours. Specifically, she worked approximately [45½] for this workweek. . . ."). The fact that Katz details the work she performed during these workweeks makes her unpaid OT allegations even more plausible, not less. *See Perkins*, 2015 WL 3649330 at *5 ("[T]he [complaint] does not explain why [the plaintiff] worked so many [OT] hours, or what tasks he completed during that time. But such detail is not required.").

Even if Katz had alleged an estimated volume of tasks as opposed to actual hours worked, her allegations would still satisfy *Lundy*. For example, the 2nd Circuit holds that approximations of hours worked, although helpful, are not required in every case. *See Dejesus*, 726 F.3d at 88. As for another example, Katz's unpaid OT claim would be just as plausible if she alleged that she performed 45 one-hour-long PT sessions in a workweek without OT pay than if she alleged that she worked 45 hours in a workweek without OT pay. *See Lundy*, 711 F.3d at 114 ("Determining whether a plausible claim has been pled is a context-specific task that requires the reviewing court

14

to draw on its judicial experience and common sense."). Equinox also offers no authority for its proposition that alleging an estimated volume of tasks as opposed to hours worked is improper.

Moreover, Equinox contradicts itself by stating, "Katz's deficient allegations are still far more detailed than those specific to Skidanenko. Skidanenko merely recites what she claims were her usual hours of work **without any detail of her tasks in any identified week.**" Mot. at 7 (emphasis added). What does Equinox want? Should Katz detail the work performed during the OT weeks as she does in the FAC, or should she not like Skidanenko? In fact, as described above, Katz has more than adequately alleged that she worked uncompensated OT.

C.     Employer Knowledge of Unpaid Time Worked is Not A Pleading Requirement

Should the Court decline to apply issue preclusion, Equinox's argument that Katz has failed to demonstrate that it knew of her uncompensated OT work is still inappropriate at the pleading stage. As Equinox states in the Motion, "a properly pled FLSA [OT] claim must be based on sufficient factual allegations rather than general and conclusory allegation as to the number of hours routinely worked – whereby the Court can reasonably infer that there was indeed one or more particular workweek(s) in which the plaintiff suffered an [OT] violation." Mot. at 5 (citations omitted). Noticeably missing from Equinox's own recitation of the FLSA's pleading requirements is the requirement that a plaintiff allege employer knowledge of unpaid time worked. This is because *Lundy* and its progeny hold that a sufficiently pled FLSA complaint need only provide a specific workweek of uncompensated OT hours. They do not require employer knowledge of unpaid hours worked to be pled and turn FLSA complaints into Rule 9 pleadings. Instead, the issue of employer knowledge is exclusively reserved for the summary judgment stage after a plaintiff has had an opportunity to engage in discovery. For example, the court in *Bonn-Wittingham v. Project O.H.R. (Off. for Homecare Referral), Inc.* held:

Defendants contend that plaintiffs fail to sufficiently plead violations of the FLSA and NYLL because they do not 'allege that a single employee ever told anyone at Project OHR that [unpaid hours worked were] occurring or that Project OHR knew that it was occurring. However, **the prima facie case for wage and [OT] violations does not require demonstrating employer knowledge**. . . . In support of this argument, defendants cite cases whose holdings rely on the factual record, which is not available at a motion to dismiss. . . . Defendants cite no case—and I am aware of none—requiring plaintiffs alleging FLSA wage and [OT] violations to plead employer knowledge . . .

No. 16-CV-541, 2016 WL 7243541, at *9–10, n.11 (E.D.N.Y. Dec. 14, 2016), *aff'd sub nom.* 792

F. App'x 71 (2d Cir. 2019) (citation omitted) (emphasis added). Likewise, Judge Kuntz held in the

EDNY Action that:

Defendant maintains this Court should dismiss Plaintiff's [OT] claim—even if Plaintiff has plausibly alleged she was not appropriately compensated for [OT]—because she has not demonstrated that Equinox 'had actual or constructive knowledge of that work.' However, the *prima facie* case for wage and [OT] violations does not require demonstrating employer knowledge. FLSA [OT] plaintiffs are not required to plead employer knowledge and Defendant[']s arguments are better suited for a motion for summary judgment.

Ex 2. at 7 (citations omitted); *see Butt v. HF Mgmt. Servs., LLC*, No. 18-CV-07017, 2020 WL

207393, at *3 (E.D.N.Y. Jan. 14, 2020) ("The defendants' argument that the plaintiff must plead

employer knowledge is better suited for a motion for summary judgment. . . . The defendants do

not cite, and I have not found, a case requiring an FLSA [OT] plaintiff to plead employer

knowledge."). Remarkably, despite being aware of *Bonn-Wittingham*, Judge Kuntz's decision, and

*Butt* (cited in Judge Kuntz's decision), Equinox offers no explanation as to why they are incorrect.[4]

Indeed, Equinox cites to *Kuebel v. Black & Decker Inc.* to support its argument. However,

as noted in *Bonn-Wittingham*, *Kuebel* concerned a summary judgment motion and relied upon a

full factual record. *See Bonn-Wittingham*, 2016 WL 7243541 at n.11. Of course, the Motion is a

motion to dismiss where no factual record is available. Additionally, *Kuebel* was decided before

---

[4] Notably, Equinox cites *Bonn-Wittingham* for being how the 2nd Circuit "applies [the FLSA] pleading standard." Mot. at 4.

*Lundy* set forth this Circuit's FLSA's pleading requirements. If the 2nd Circuit wanted to incorporate *Kuebel* into the pleading requirements it certainly could have, but it declined to do so.

Equinox additionally cites *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.* and *Xue Lian Lin v. Comprehensive Health Mgmt., Inc.* in support of its employer knowledge argument. However, neither of those cases held that employer knowledge is a pleading requirement for FLSA claims. Rather, *DeSilva* dismissed a complaint that failed to allege the number of unpaid hours worked, and *Xue Lian Lin* dismissed claims against individual defendants who were not adequately alleged to be employers. Accordingly, Equinox has failed to identify a single case holding that employer knowledge is an FLSA pleading requirement.

Furthermore, even if employer knowledge was a pleading requirement, which it is not, Equinox fails to mention the summary judgment/trial exception: "Plaintiffs need only prove each supervisor's knowledge of the uncompensated work if they fail to prove at trial that they were subject to a policy and or practice that required. . . work for which they were not compensated[.]" *Perry v. City of New York*, No. 13-CV-1015 (VSB), 2019 WL 1146581, at *3 (S.D.N.Y. Mar. 13, 2019); *Campbell v. City of New York*, No. 16-CV-8719 (AJN), 2020 WL 2792978, at *8 (S.D.N.Y. May 29, 2020) (same). Equinox, however, does not argue that Plaintiffs (who are from two different locations) have failed to allege a corporate-wide policy that required they work uncompensated OT and cannot now do so on reply. *See Farmer v. United States*, No. 12-CR-758, 2017 WL 3448014, at *3 (S.D.N.Y. Aug. 10, 2017) ("Courts have repeatedly held that arguments raised for the first time in reply briefs are waived."); FAC ¶¶ 173-74, 226.

Even if this argument was not waived, viewing the FAC (and the record) as a whole, it's more than plausible that Equinox had a corporate-wide policy that deprived Trainers, including Katz, of OT pay. *See* FAC ¶¶ 3, 31-35, 98, 136, 141-43; Dkt. Nos. 39-40, Katz's motion for

conditional certification and declarations from Trainers at different locations who claim they were subjected to the same corporate policy that deprived them of OT pay.[5] Therefore, even if employer knowledge was a pleading requirement in some cases, which it is not, it would not be necessary here, where Katz alleges a corporate-wide policy of failing to pay for OT work.

In any event, Katz in fact pleads that Equinox had actual or constructive knowledge of her hours worked. Specifically, Katz pleads that: (i) her Managers knew she was working uncompensated OT hours; and (ii) that Equinox's Vice President was aware that the Trainers, including Katz, were working OT hours, which were compensated by the flat PT session rate that did not include OT pay. *See* FAC ¶¶ 139-150. For example, Katz pleads that Equinox's written pay policy does not afford OT to Trainers, including her, and that her Personal Training Manager, Christopher Szfler, ("Mr. Szfler") knew the number of PT sessions she performed per week and that she spent at least 30 minutes on PT session activities.[6] *See id.* at 136, 144-45. Thus, when Katz worked 27 or more PT sessions in a single workweek, which she alleges she did, Mr. Szfler knew or should have known that she was working uncompensated OT hours because, at a minimum, it equates to 40.5 hours of work. *See id.* ¶¶ at 136, 144-45, 188-89. Accordingly, taking the FAC as a whole, Katz in fact pleads that Equinox had knowledge of her unpaid hours worked.[7]

## II.     Equinox's Motion to Dismiss Katz's FMLA Claims Should Be Denied

Equinox's motion to dismiss Katz's FMLA claims should be denied. Katz alleges in the FAC that Equinox unlawfully interfered with her FMLA rights and/or retaliated against her for

---

[5] "[I]t is well established that courts may take judicial notice of publicly available documents on a motion to dismiss." *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 208 (S.D.N.Y. 2012).

[6] Mr. Szfler also reviewed Katz's client worksheets that include some of the time spent drafting them. *See* FAC ¶ 146.

[7] "The general rule is that while a plaintiff may plead facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible, such allegations must be accompanied by a statement of the facts upon which the belief is founded." *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 478 F. Supp. 3d 456, 466 (W.D.N.Y. 2020). Katz supports her allegations with facts that form the basis of her belief. *See* FAC ¶ 147.

taking/requesting FMLA leave. "To state an [FMLA] interference claim under 29 U.S.C. § 2615(a)(1), a plaintiff must adequately plead: (1) that [s]he is an eligible employee under the FMLA; (2) that the defendant is an employer as defined in the FMLA; (3) that [s]he was entitled to leave under the FMLA; (4) that [s]he gave notice to the defendant of h[er] intention to take leave; and (5) that [s]he was denied benefits to which [s]he was entitled under the FMLA." *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 465 (S.D.N.Y. 2011) (citation omitted). "To state a claim for retaliation under the FMLA, Plaintiff must allege that: 1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for his position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Id.* at 469 (citations omitted). As set forth below, Katz sufficiently pleads both an FMLA interference claim and an FMLA retaliation claim.

A.   Katz's FMLA Interference Claim

Regarding Katz's FMLA interference claim, Equinox only argues that Katz failed to plead that she was denied FMLA benefits or the fifth prong of a *prima facie* case of FMLA interference. Equinox asserts this argument because she was granted leave under the New York Paid Family Leave Law ("NYPFL") by a third-party with respect to her December 2019 leave ("First Leave") and was granted her February 2020 leave ("Second Leave") prior to taking it.

First, Katz pleads that her "[First L]eave request **was expressly denied by Nicole Fox** . . . a third-party integrated claims examiner for [Equinox]" and that she was subsequently "issued . . . a final written warning for taking **unapproved leave**." FAC ¶¶ 204-05 (emphasis added). It could not be clearer from Katz's allegations that she was denied FMLA leave for her First Leave request. Simply because a third-party integrated claims examiner approved Katz for NYPFL leave does not mean that she was granted FMLA leave by Equinox. *See* 29 C.F.R. § 825.300(d)(1) ("The employer is responsible in all circumstances for designating leave as FMLA-qualifying, and for

giving notice of the designation to the employee as provided in this section. . . . If the employer requires paid leave to be substituted for unpaid FMLA leave, or that paid leave taken under an existing leave plan be counted as FMLA leave, the employer must inform the employee of this designation at the time of designating the FMLA leave."). This is especially true since Katz's FMLA leave was expressly denied to run concurrently with her NYPFL leave. *See Smith*, 769 F. Supp. 2d at 467–68 ("While an employer **may** require an employee to substitute accrued paid leave for unpaid FMLA leave, the employer must inform the employee of this designation at the time of designating the FMLA leave. Defendant DOC's initial approval of Plaintiff's request for FMLA leave did not state that Plaintiff's accrued time would be substituted. Failure to follow the notice requirements set forth in this section may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights.") (citations omitted) (emphasis added). Equinox also offers no legal support for its proposition that an employer complies with the FMLA if it denies FMLA leave but grants NYPFL leave.

Nevertheless, it is pled that "[a]lthough Ms. Fox approved the [First L]eave under the NYPFL, Equinox did not retract the final written warning for . . . Katz's [First L]eave and maintained that her leave was still considered an unapproved absence." FAC ¶ 206. Thus, Equinox never accepted her leave even under the NYPFL despite its third-party representative approving it. Furthermore, at a minimum, the final warning would dissuade an employee from using future leave, which violates the FMLA. *See Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004) ("The regulations promulgated pursuant to the FMLA explain that interfering with the exercise of an employee's rights would include. . . discouraging an employee from using such

leave.") (citation omitted). Therefore, Equinox unlawfully interfered with Katz's First Leave.[8]

Second, Equinox is correct that Katz's Second Leave request was approved at the time she took it. Katz pleads, however, that "[Equinox] claimed that . . . Katz's [Second L]eave, was unapproved (after she already took the leave) and made the decision to terminate [her] for taking unapproved leave" a day before she returned from the Second Leave. FAC ¶ 212. Thus, Katz alleges in the FAC that Equinox revoked her Second Leave, ultimately denying her a "benefit[] to which she was entitled under the FMLA." *Smith*, 769 F. Supp. 2d at 465. Accordingly, Katz states a valid claim for FMLA interference with respect to her Second Leave.

Lastly, Equinox's argument that Katz cannot maintain an FMLA interference claim is illogical. Equinox is essentially asking the Court to find that because it granted leave, but did not honor it upon the employee's return, there is no FMLA violation. To agree with Equinox would permit employers to avoid FMLA liability by granting employees leave and then revoking it at a later date. Such is why Equinox has cited no legal support for this baseless argument.

B.    Katz's FMLA Retaliation Claim

Turning to the FMLA retaliation claim, Equinox only argues that Katz failed to plead the causal connection element. "[A] causal connection can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory actions directed against the plaintiff by the defendant.' *Smith v. N. Shore-Long Island Jewish Health Sys.*, 286 F. Supp. 3d 501, 513–14 (E.D.N.Y. 2018) (citation omitted). "Direct evidence may . . . include evidence of discriminatory

---

[8] To the extent that Equinox asserts a fact that is not in the complaint (Katz was issued a final written warning for not submitting appropriate leave paperwork (*see* Mot. at 13)), Katz pleads that she did submit the paperwork **prior** to her final written warning (*see* FAC ¶¶ 203-04).

statements or actions[.] . . . Indirect evidence may include a showing that the protected activity was closely followed in time by the adverse action." *Smith*, 286 F. Supp. 3d at 514.

Here, Katz pleads both indirect and direct evidence. She asserts that: (i) she was terminated the day before she was to return from her nine-day leave and approximately one month after she requested the Second Leave; and (ii) that Equinox's Managers told her that she "already took time off" after requesting the Second Leave and that the decision to terminate her **was based on her taking the Second Leave**.[9] FAC ¶ 209; *see id.* at ¶ 212.[10] By consequence, the temporal proximity between Katz's termination and her Second Leave (less than two weeks) and/or requesting it (less than two months) is close enough to establish a causal connection. *See Cooper v. New York State Nurses Ass'n*, 847 F. Supp. 2d 437, 448 (E.D.N.Y. 2012) ("[P]laintiff was terminated less than two months after returning from her FMLA leave. The Court finds that plaintiff's evidence of close temporal proximity between her FMLA leave and her termination is sufficient to establish the fourth element of her *prima facie* case.") (citation omitted). The comments by Katz's Managers— claiming that she "already took time off" and that the decision to terminate her was based on her taking the Second Leave—are also direct evidence of Equinox's retaliatory intent further establishing a causal connection. *See* FAC ¶¶ 209, 212. Therefore, Katz pleads a *prima facie* FMLA retaliation claim.

### III.  The Court Should Not Dismiss Katz's State and/or Local Law Claims

Equinox argues that the Court should decline supplemental jurisdiction over the state law claims if Katz's federal claims are dismissed. Katz, however, asserts in paragraph 16 of the FAC that the Court's jurisdiction over the state law claims is also proper pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), which prescribes that a district court shall have

---

[9] Katz was told by her Manager that the Second Leave became unapproved during her termination. *See* FAC ¶ 212.
[10] Equinox fails to mention either of these managerial comments in the Motion.

original jurisdiction over a class action where the amount in controversy is over $5,000,000 and any class member is a citizen of a different state from any defendant.

Since Equinox makes no argument as to why the Court's original jurisdiction under CAFA is improper, the Court should not dismiss Katz's NYLL and NYCRR claims and retain supplemental jurisdiction over Katz's NYCHRL claims.[11] *See Farmer*, 2017 WL 3448014 at *3.

**IV.    The Court Should Not Decline Supplemental Jurisdiction Over the § 191 Claims**

The Court should not decline supplemental jurisdiction over Plaintiffs' § 191 claims because Equinox's 28 U.S.C. § 1367(c)(1) argument fails for three reasons. First, as stated above, Plaintiffs assert, and Equinox seemingly does not oppose, that the Court has original jurisdiction over the § 191 claims under the CAFA. *See* FAC ¶ 16.

Second, this Court has issued two decisions within the past seven months expressly exercising jurisdiction over § 191 claims. *See Zuckerman v. GW Acquisition LLC*, No. 20-CV-8742 (VEC), 2021 WL 4267815, at *14 (S.D.N.Y. Sept. 20, 2021) ("The Court has supplemental jurisdiction over Plaintiff's [§ 191] claims"); *Rockman v. USI Ins. Servs. LLC*, No. 19-CV-5997 (VEC), 2021 WL 3621685, at *8 (S.D.N.Y. Aug. 16, 2021) ("Having dismissed Plaintiff's sole federal law claim, the Court need not exercise supplemental jurisdiction over Plaintiff's [§ 191] claims. Nevertheless, the Court will exercise supplemental jurisdiction because doing so promotes judicial efficiency, given the current posture of the case.") (**citing 28 U.S.C. § 1367(c)**). Thus, this Court is clearly capable of hearing Plaintiffs' § 191 claims.

Third, as the Court suggests by its recent decisions and the abundance of federal caselaw pertaining to § 191, § 191 is not a novel and complex issue of state law. For example, following the issuance of *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144 (N.Y. App. Div.

---

[11] Of the 10 opt-in plaintiffs, two reside in a foreign country and two are citizens of state other than New York.

2019), a 1st Department decision holding that a private right of action exists for § 191 claims, "every court in this Circuit to consider that decision appears to have followed its construction of the [NYLL]." *Caul v. Petco Animal Supplies, Inc.*, No. 20-CV-3534, 2021 WL 4407856, at *3 (E.D.N.Y. Sept. 27, 2021) (collecting cases).

Further, the **two** decisions from the **same** NYS court cited by Equinox do not demonstrate an active split among NYS courts over whether § 191 has a private right of action. *Grant v. Global Dispatch* incorrectly relies upon *IKEA U.S. Inc. v. Indus. Bd. Of Appeals*, 241 A.D.2d 454 (N.Y. App. Div. 1997), a 2nd Department decision that "simply assessed whether the state Commissioner of Labor had proffered substantial evidence that a particular employer violated [§] 191 [and does] not controvert the explicit holding of *Vega*." *Caul*, 2021 WL 4407856 at *3. *Hunter v. Planned Bldg. Services, Inc.*, the other decision cited by Equinox, does not rely upon any state authority.

The federal decisions cited by Equinox, *Albertin v. Nathan Littauer Hosp. & Nursing Home* and *Mabe v. Wal-Mart Assocs., Inc.* are also inapposite. The *Albertin* court, which did not decline supplemental jurisdiction of the § 191 claim, stated that there was an "active split within this **Circuit**" and not within the NYS courts. *Albertin*, 537 F. Supp. 3d at 266 (emphasis added). If anything, *Albertin* demonstrates that federal courts routinely retain jurisdiction over § 191 claims. Likewise, *Mabe* did not decline jurisdiction to hear the plaintiff's § 191 claim and actually issued a decision regarding it. It is also important to note that the *Mabe* quote Equinox utilizes in the Motion is from the defendant's motion papers, not the court. *Compare Mabe*, 2021 WL 1062566 at *6 *with* Mot. at 17. Accordingly, there is hardly an "active split" amongst state courts.

Lastly, Equinox's argument that "proper resolution of [whether § 191 allows a private right of action] entails an expansive review of the legislative history of [§] 191" also fails. Mot. at 17. "In New York, a private right of action may be implied where the plaintiff is one of the class for

whose particular benefit the statute was enacted, the recognition of a private right of action would promote the legislative purpose of the statute, and the creation of such a right would be consistent with the legislative scheme." *Caul*, 2021 WL 4407856 at *3 (citing *Vega*, 175 A.D.3d at 1146). Thus, there is no need for an "expansive review of the legislative history of [§] 191" as *Vega* already found that a private right of action exists because "the purposes of Sections 191 and 198 are to protect employees who are dependent upon their wages for sustenance and deter labor law violations[.]" *Caul*, 2021 WL 4407856, at *3 (citation omitted). Therefore, the Court, as it has done in the recent past, should not decline supplemental jurisdiction over Plaintiffs' § 191 claims.

## V.      **The Court Should Grant Plaintiffs Leave to Amend**

Plaintiffs believe they have set forth sufficient facts to cure the issues raised by Equinox in the first motion to dismiss. Nevertheless, in the event that the Court determines that any of Plaintiffs' claims should be dismissed, Plaintiffs respectfully request that the Court grant them leave to amend to allege additional facts or clarify facts needed to cure any pleading deficiencies. *See Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."). Alternatively, the Court should permit Plaintiffs to respond to an order to show cause as to why they should be granted leave to amend. *See O.F.I. Imports Inc. v. Gen. Elec. Cap. Corp.*, No. 15-CV-7231 (VEC), 2016 WL 5376208, at *8 (S.D.N.Y. Sept. 26, 2016) (allowing Plaintiffs to respond to an order to show cause regarding leave to file an amended complaint even though the Court maintained the amendment was "highly likely" to be futile).

## **CONCLUSION**

Wherefore, Plaintiffs respectfully request that the Court deny Equinox's motion to dismiss in its entirety.

Dated: Garden City, New York
       March 11, 2022

Respectfully submitted,

/s/ Alexander M. White
James A. Vagnini, Esq.
jvagnini@vkvlawyers.com
Alexander M. White, Esq.
awhite@vkvlawyers.com
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
T: (516) 203-7180
F: (516) 706-0248

D. Maimon Kirschenbaum, Esq.
maimon@jk-llp.com
Denise A. Schulman, Esq.
denise@jk-llp.com
**Joseph & Kirschenbaum LLP**
32 Broadway, Suite 601
New York, New York 10004
T: (212) 688-5640
F: (212) 981-9587

Jacob Aronauer, Esq.
jaronauer@aronauerlaw.com
**Law Office of Jacob Aronauer**
225 Broadway, 3rd Floor
New York, New York10007
T: (212) 323-6980
F: (212) 233-9238
jaronauer@aronauerlaw.com

Mariya Gonor, Esq.
mgonor@beattielaw.com
Kimberley A. Brunner, Esq.
kbrunner@beattielaw.com
**Beattie Padovano, LLC**
200 Market Street, Suite 401
Montvale, New Jersey 076545
T: (201) 799-9736
F: (201) 573-9736
(*pro hac vice applications forthcoming*)

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 11, 2022, a true and correct copy of Plaintiffs' Opposition to Equinox's Motion to Dismiss the First Amended Complaint was served via ECF on all counsel of record.

Date:   March 11, 2022

_/s/ Alexander M. White_
_Alexander M. White_