UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

............................................................................X

MONIQUE KATZ and YEKATERINA
SKIDANENKO, individually and on behalf
all others similarly situated,

                                    Plaintiff,

                    -against-

EQUINOX HOLDINGS, INC.

                                    Defendant.

............................................................................X

Civ. No.:  20-cv-9856
(VEC)(RWL)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT EQUINOX
HOLDINGS, INC.'S OPPOSITION TO PLAINTIFF MONIQUE KATZ'S MOTION FOR
CONDITIONAL CERTIFICATION OF A COLLECTIVE**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 1

I.    STATEMENT OF FACTS ................................................................................ 1

    A.  Equinox Fitness ...................................................................................... 1

    B.  Plaintiffs' Respective Employment As Personal Trainers ......................... 2

    C.  The Duties and Compensation of Personal Trainers, Most Particularly Trainers Tier 3 and Above............................................................................................. 3

        1.  Once They Have "Ramped Up," Tier 3 and Tier X Trainers' Duties Consist of Conducting Personal Training Sessions and Limited Ancillary Activities for Which They Are Separately Compensated ...................................................... 3

        2.  Session-Related Compensation (Commissions and Bonuses) Comprises the Bulk of Tier 3 and X Trainer Compensation .................................................. 11

    D.  Procedural History.................................................................................. 12

II.   LEGAL ARGUMENT ................................................................................... 13

    A.  Legal Standard........................................................................................ 13

    B.  Plaintiff Katz's Tortured Pleading of Her FLSA Claim Highlights the Fundamental Flaw in Plaintiffs' Evidence, Which Is Self-Serving and Conclusory .................... 14

    C.  The Holding In *Rosales* Is Inapplicable ................................................. 16

    D.  Plaintiffs Have Not Demonstrated The Existence Of An "Unlawful" Common Policy Or Plan Applicable to Other Higher-Level Trainers ........................................... 16

        1.  Higher Level Personal Trainers Like Plaintiffs Did Not Work Overtime .......... 17

        2.  Successful Trainers Were Compensated in Conformity with the Overtime Compensation Method Found at 29 U.S.C. § 207(i)............................................ 17

    E.  Assuming *Arguendo* Plaintiffs Have Made Any Showing, It Is Limited By Location, and to Trainers Who Have Performed A Sufficient Number of Sessions................. 20

        1.  Notice Must Be Limited to Locations for Which Plaintiffs Have Alleged An Unlawful Practice In Contravention of Written Policy ....................................... 20

        2.  Notice Must Be Limited to Trainers Who, Under Plaintiffs' Own Theory, *Conceivably* Could Have Reached a Weekly Overtime Event ........................... 22

        3.  Discovery Is Appropriate Prior To Considering the Appropriateness Of Any Broader Notice .................................................................................................. 23

    F.  If The Court Grants Plaintiff's Motion, the Parties Must Confer Regarding Any Notice to Ensure It Is Fair and Accurate ................................................................ 23

CONCLUSION........................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ahmed v. T.J. Maxx Corp.*,
  103 F. Supp. 3d 343 (E.D.N.Y. 2015) ....................................................................15

*Akey v. Clinton County*,
  375 F.3d 231 (2d Cir. 2004)...................................................................................24

*Alvarado v. Corporate Cleaning Servs.*,
  782 F.3d 365 (7th Cir. Apr. 1, 2015) .....................................................................18

*Alvino v. Equinox Holdings, Inc.*,
  629 F. App'x 847 (11th Cir. 2015) ............................................................8, 10, 11

*In re American Family Mutual Insurance Co., Overtime Pay Litigation*,
  2009 U.S. Dist. LEXIS 11169 (D. Colo., Feb. 3, 2009) ........................................25

*Apolinar v. Fusha 311 W.*,
  No. 15-CV-00196 (VEC), 2016 U.S. Dist. LEXIS 202692
  (S.D.N.Y. Apr. 14, 2016) ..............................................................................13, 20

*Baoji Zhang v. New Beijing Wok*,
  No. 17-CV-9465 (VEC), 2018 U.S. Dist. LEXIS 243924
  (S.D.N.Y. Apr. 6, 2018).........................................................................13, 14, 15

*Bradescu v. Hillstone Rest. Grp., Inc.*,
  2014 U.S. Dist. LEXIS 150974 (C.D. Cal. Oct. 10, 2014).....................................23

*Casanova v. Gold's Tex. Holdings Grp., Inc.*,
  No. 5:13-CV-1161-DAE, 2016 U.S. Dist. LEXIS 37932
  (W.D. Tex. Mar. 23, 2016) .....................................................................................18

*Craft v. Ray's, LLC*,
  1:08:cv-00627-RLY-JMS, 2008 U.S. Dist. LEXIS 87887
  (S.D. Ind. Oct. 29, 2008).........................................................................................24

*Dioguardi v. Rochester Laborers Pension Fund*,
  317 F. Supp. 2d 216 (W.D.N.Y 2004).....................................................................24

*Ellersick v. Monro Muffler Brake, Inc.*,
  No. 10-CV-6525-FPG-MWP, 2017 U.S. Dist. LEXIS 49841
  (W.D.N.Y. Mar. 31, 2017).......................................................................................19

*Encino Motorcars, LLC v. Navarro*,
   138 S. Ct. 1134 (2018) .................................................................................18

*English v. Ecolab, Inc.*,
   06 Civ. 5672 (PAC), 2008 U.S. Dist. LEXIS 25862
   (S.D.N.Y. Mar. 28, 2008) ..............................................................................17

*Fernandez v. Wells Fargo Bank, N.A.*,
   No. 12-CV-7193 (PKC), 2013 U.S. Dist. LEXIS 124692
   (S.D.N.Y. Aug. 28, 2013) ................................................................................6

*Glatt v. Fox Searchlight Pictures, Inc.*,
   811 F.3d 528 (2d Cir. 2015).............................................................................13

*Gonzalez v. Scalinatella, Inc.*,
   No. 13 CIV. 3629 PKC, 2013 WL 6171311
   (S.D.N.Y. Nov. 25, 2013) ...............................................................................24

*Guillen v. Marshalls of MA, Inc.*,
   841 F. Supp. 2d 797 (S.D.N.Y. 2012)..............................................................20

*Guillen v. Marshals of MA, Inc.*,
   No. 09-cv-9575, 2012 U.S. Dist. LEXIS 91639
   (S.D.N.Y. July 2, 2012) ..................................................................................13

*Guzelgurgenli v. Prime Time Specials Inc.*,
   883 F. Supp. 2d 340 (E.D.N.Y. 2012) .......................................................24, 25

*Hoffman-La Roche Inc. v. Sperling*,
   493 U.S. 165 (1989)........................................................................................13

*Jibowu v. Target Corp.*,
   492 F. Supp. 3d 87 (E.D.N.Y. 2020) ...............................................................20

*Johnson v. Equinox Holdings, Inc.*,
   12-CV-6313 (RMB)(JLC) 2014 U.S. Dist. LEXIS 91786
   (S.D.N.Y. July 2, 2014) ..................................................................................11

*Johnson v. Wave Comm GR LLC*,
   4 F. Supp. 3d 423 (N.D.N.Y. 2014)............................................................18, 19

*Knispel v. Chrysler Grp., LLC*,
   No. 11-cv-11886, 2012 WL 553722 (E.D. Mich. Feb. 21 2012)........................24

*Lanqing Lin v. Everyday Beauty Amore, Inc.*,
   No. 18-cv-729 (BMC), 2018 U.S. Dist. LEXIS 207988
   (E.D.N.Y. Dec. 9, 2018) .................................................................................25

iii

*Leonardo v. ASC, Inc.*,
   No. 18-CV-3657 (VEC), 2018 U.S. Dist. LEXIS 194205
   (S.D.N.Y. Nov. 14, 2018)(Caproni, J.) ............................................................................13, 20

*Lusk, et al. v. Serve U Brands, Inc., et al.*,
   Case No. 17-cv-6451, (W.D.N.Y. Nov. 20, 2018) ................................................................22

*Mendoza v. Casa de Cambio Delgado, Inc.*,
   No. 07-cv-2579, 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008) .................................................23

*Modeski v. Summit Retail Sols., Inc.*,
   No. 20-1747, 2022 U.S. App. LEXIS 5132 (1st Cir. Feb. 25, 2022).....................................19

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)..................................................................................................13

*Nabi v. Hudson Grp. (HG) Retail, LLC*,
   310 F.R.D. 119 (S.D.N.Y. 2015)(Caproni, J.) ......................................................................20

*Reyes v. Picnic Basket, Inc.*,
   No. 18-CV-140 (VEC), 2018 U.S. Dist. LEXIS 199037
   (S.D.N.Y. May 22, 2018)..........................................................................................13, 14, 15

*Rosales v. Equinox Holdings, Inc.*,
   No. 3:18-CV-0356-B, 2019 U.S. Dist. LEXIS 67454
   (N.D. Tex. Apr. 19, 2019)......................................................................................................16

*Rusis v. IBM*,
   No. 18-CV-8434 (VEC), 2020 U.S. Dist. LEXIS 42239
   (S.D.N.Y. Mar. 10, 2020) .......................................................................................................8

*Santos v. Nuve Miguel Corp.*,
   No. 21-CV-1335 (JPO)(RWL), 2021 U.S. Dist. LEXIS 222361 (S.D.N.Y.
   Nov. 16, 2021) ........................................................................................................................8

*Scholtisek v. Eldre Corp.*,
   229 F.R.D. 381 (W.D.N.Y. 2005)..........................................................................................16

*Sharma v. Burberry Ltd.*,
   52 F. Supp. 3d 443 (E.D.N.Y. 2014) .....................................................................................24

*Spagnuoli v. Louie's Seafood Rest.*,
   No. 13-CV-4907 (JMA) (ARL), 2022 U.S. Dist. LEXIS 38735
   (E.D.N.Y. Mar. 4, 2022) ........................................................................................................24

*Stewart v. Hudson Hall LLC*,
   2021 U.S. Dist. LEXIS 230033 (S.D.N.Y. Nov. 29, 2021)....................................................15

iv

*Swales v. KLLM Transp. Servs., L.L.C.*,
    985 F.3d 430 (5th Cir. 2021) ................................................16

*Taylor v. Waddell & Reed, Inc.*,
    2012 U.S. Dist. LEXIS 212 (S.D. Cal. Jan. 3, 2012) ................19

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................13

*Walton v. United Consumers Club*,
    786 F.2d 303 (7th Cir. 1986) ................................................17

*Whiteside v. Hover-Davis, Inc.*,
    995 F.3d 315 (2d Cir. 2021) ................................................9

*Witteman v. Wisconsin Bell, Inc.*,
    2010 WL 446033 (W.D. Wis. Feb. 2, 2010) ................................................25

*Yang v. Asia Mkt. Corp.*,
    No. 17-CV-6886 (VEC), 2018 U.S. Dist. LEXIS 56847
    (S.D.N.Y. Apr. 3, 2018) ................................................13

**Statutes**

29 U.S.C. § 207(i) ................................................10, 17

Fair Labor Standards Act ................................................ *passim*

**Other Authorities**

29 C.F.R. § 778.104 ................................................14

29 C.F.R. § 778.105 ................................................14

<u>**PRELIMINARY STATEMENT**</u>

Named Plaintiff Monique Katz, in her instant motion for conditional certification (the "Motion", Dkt. 38), continues to impliedly insist that she is not required to articulate her Fair Labor Standards Act ("FLSA") claim by describing an overtime workweek, either specifically or even generally.  She does so despite 1) Defendant's clear policies for recording her time worked as a trainer, 2) the (non-overtime) hours that Defendant properly determined based on those contemporaneous records, and 3) the absence of even a passing allegation that she ever availed herself of the provided mechanism for addressing issues regarding work time.  Plaintiff is mistaken, and the instant motion simply highlights the speculative nature of her own FLSA claim, the same claim she now seeks to expand to many others whom she claims are similarly situated. Several additional putative opt-in Plaintiffs join Plaintiff Katz on the instant motion, but their allegations are of the same conclusory ilk, and only serve to highlight that they are individualized descriptions of one facet of Plaintiffs' jobs as trainers, in search of a theory.  Plaintiff's motion should be denied.

I.  **STATEMENT OF FACTS**[1]

A.  <u>**Equinox Fitness**</u>

Equinox is a fitness company with luxury fitness centers located across New York and the United States.  Ex. A ¶ 2.  In addition to Equinox's "basic services" like strength training, cardio training, and group fitness classes, Equinox also provides specialized programs and services, including "personal training."  *Id.* ¶ 46.  Equinox typically employs personal trainers to provide

---

[1] Citations to "Ex. _" refer to the Exhibits to the Declaration of Noel P. Tripp In Support of Defendant's Opposition to Plaintiff Monique Katz's Motion for Conditional Certification of a Collective submitted herewith ("Tripp Decl."). The current operative Complaint is Ex. A.  Notably, as concerns the instant Motion, the claims of the proposed current representative Plaintiff, Plaintiff Katz, are the subject of Defendant's currently-pending motion to dismiss.

professional instruction (including related exercise programming) to the Company's members to maximize the members' health, fitness, and wellness goals.[2]

**B.   Plaintiffs' Respective Employment As Personal Trainers**

In August 2015, Equinox hired Katz as a Tier 1 personal trainer at Equinox's Brookfield Place, Manhattan location.  Ex. A ¶ 173.  She received and signed an employment agreement setting forth Equinox's policy relating to session activities.  In or around January 2016, Katz was promoted to a Tier 2 trainer.  *Id*. ¶ 175.  Katz was again promoted in or around August 2016, to a Tier 3 trainer.   *Id*. ¶ 177.[3]  Thus, the entirety of Plaintiff Katz's putative FLSA claim relates to the time period she was a Tier 3 trainer.   This is also the case for the other opt-in Plaintiffs who submitted evidence in connection with the Motion.  *See* Dkt. 40-1;[4]  Ramirez Decl. ¶ 6; Carlson Decl. ¶ 5; Tew Decl. ¶ 5; Faulkner Decl. ¶ 6; Lessans Decl. ¶4; Shipper Decl. ¶ 4.

---

[2] In early 2020, pandemic-related closure orders and ensuing safety regulations in New York City (where all Plaintiffs worked) created massive disruption for fitness business, including Defendant.  These safety rules, most notably Governor Cuomo's Executive Orders requiring closure of fitness businesses and New York City's ensuing regulations regarding 1) reopening and 2) mandatory vaccination – required the Company to furlough hundreds of workers, including most notably trainers and other in-club personal service providers.  Herrmann Decl. ¶ 6.  Indeed, most of the individuals who have filed Consents to Join this action separated from Equinox (or left its New York operations) during this period.

[3] The other named Plaintiff in this action, Plaintiff Skidanenko, was hired as a Tier 1 personal trainer at Equinox's Brooklyn Heights location in 2019.  *Id.* ¶¶ 226-227.  After only two months of work as a trainer, in October 2019, Skidanenko stopped working for Equinox due to an injury.  *Id*. ¶¶ 228-229.

[4] Hereafter these individuals are referred to as the Plaintiffs and citations to their individual declarations found at Dkt. 40-1 are cited as "**[NAME]** Decl" e.g., "Katz Decl." for Named Plaintiff Katz, "Ramirez Decl." for opt-in Plaintiff Claudia Ramirez, etc.

C. **The Duties and Compensation of Personal Trainers, Most Particularly Trainers Tier 3 and Above**

**1. Once They Have "Ramped Up," Tier 3 and Tier X Trainers' Duties Consist of Conducting Personal Training Sessions and Limited Ancillary Activities for Which They Are Separately Compensated**

Different Equinox personal trainers perform a number of different functions for which they are compensated on different bases and at different points in their evolution. Dkt. 40-1 at 34. At the outset of their employment, *i.e.*, the "ramping period" *before* reaching Tier 3, personal trainers are scheduled to work on the gym floor. Ex. A ¶¶ 47, 54-55. During these "floor shifts," depending on the motivation level of each individual trainer to interact and prospect with potential new clients, personal trainers can spend their floor shift hours passing out towels, racking weights, and ensuring that the gym floor is clean or, in the case of more motivated trainers, interacting with club members and serving as a spotter as appropriate. *Id.* ¶ 52. New personal trainers (Tiers I and II) are scheduled to work approximately 20 hours per week on the floor, though they can request additional such shifts. *Id.* ¶¶ 171 243. After they develop a client base, which can take several months or longer depending on the trainer, the personal trainers are taken off the floor schedule as they promote to higher tier levels. *Id.* ¶¶ 179-182.

Once a trainer has developed a sufficient client base to be removed from the floor schedule, personal trainers spend most of their work time training clients. Ex. A ¶ 47; Ex. K ("Herrmann Decl." ¶ 7). The ultimate goal for a new personal trainer is to build up a client base where the trainer is able to schedule at least 42 training sessions per biweekly pay period (or 21 training sessions per work week) so that the personal trainer no longer needs floor shift hours to fill her schedule, working approximately the same amount of time. Ex. A ¶ 182; Herrmann Decl. ¶ 8. Plaintiff and the additional opt-in Plaintiffs who submitted affidavits generally agree, describing the same progression and confirming that higher tier trainers

3

were employed to conduct training sessions.  Ex. A ¶¶ 47, 179 ("high-tier trainers' primary duty was performing PT sessions"); Dkt. 40-1; Katz Decl. ¶ 6 (Tier 3, 3+ and X were the "highest tier" trainers while Tiers 1 and 2 performed fewer personal training sessions and more floor shifts); Faulkner Decl. ¶ 7; Carlson Decl. ¶¶ 6-7 (higher tier trainers are employed to conduct training sessions); Tew Decl. ¶ 6 (same); Ramirez Decl. ¶ 22 (same).

The trainer compensation policy produced by Plaintiffs in this case expressly sets forth that the various session-related compensation paid to trainers (discussed below) is intended to compensate them for all session-related activity, and defines that activity as:

1. Scheduling the session
2. Creating and updating your calendar
3. Creating and updating of client programs
4. Setting up for the session
5. Performing the session
6. Straightening up/returning equipment following the session
7. Interacting with members (before and after the session) regarding the session
8. Reporting your session related time and information in the Company's timekeeping system (UltiPro)

*See* Dkt.  40-1 at 34 (hereafter "Plan").[5]  Again, apart from the amount of time allegedly spent outside of a session, Plaintiffs' declarations generally recite the same session-related activities.

| Source | Activities | Estimate |
|---|---|---|
| Katz Decl. ¶¶ 10-11. | Preparation included "researching workouts, planning/writing down workouts (called programming), reviewing the client's workout metrics from previous weeks, communicating with the client regarding the personal training session/nutrition, and gathering weights and equipment." Concluding the session required "communicating with the client, recording the client's workout | "more than forty minutes per personal training session and could last for more than an hour" |

---

[5] Page citations refer to the pagination assigned by PACER.

| | gains/losses, and returning the weights and workout equipment." | |
|---|---|---|
| Ramirez Decl. ¶ 11. | "come up with the workouts, research the workouts, enter data into a spreadsheet, communicate with the client, and gather equipment . . .To conclude the personal training session you needed to communicate with the client, input the client's data related to the workout, and return the equipment. | "Preparing for a single personal training session could last anywhere between twenty minutes to an hour and a half . . . The conclusion of the session could last anywhere between ten and fifteen minutes." |
| Carlson Decl. ¶ 9. | "To prepare for a personal training session, I was required to communicate with the client, plan his/her workout, research his/her workout, evaluate the client's metrics, [] create a workout plan [and] gather equipment for the workout." Following the personal training session, "I had to communicate with the client, record the client's workout gains/losses, and return the workout equipment." | "This prep could take twenty minutes to more than forty-five minutes…conclusion work could take anywhere between ten and fifteen minutes." |
| Tew Decl. ¶ 9. | To prepare "you needed to communicate with the client, come up with and research what workouts they should do for the session, evaluate the client's weekly physical gains and losses, write down the client's workout and metrics, and gather all equipment for the workout." After the session "you had to communicate with the client, return the equipment to its proper location, and log the information related to the workout." | "prep and post work could last well over an hour and took no less than thirty minutes" |
| Faulkner Decl. ¶¶ 12, 14. | To prepare, "I had to, among other things, check my client's past workout results, research workouts, come up with a workout plan, write the workout plan, communicate regularly with the client, and prepare the workout area by gathering weights and equipment/setting them up."  To conclude, "I had to return the equipment, communicate with the | Preparing, "could last anywhere between twenty (20) minutes to an hour. It could not take less than 20 minutes." Concluding "could take anywhere between ten (10) and fifteen (15) minutes." |

| | client following the session, and input the client's data." | |
|---|---|---|
| Lessans Decl. ¶ 9; Shipper Decl. ¶ 8.[6] | "creating programs for clients; adjusting the programs based on a client's needs, progress, and circumstances; entering information about clients' programs and progress into Equinox's spreadsheet or app; physically setting up for and cleaning up after each personal training activity and communicating with client between sessions." | (did not provide an estimate per session.) |

Importantly, the policy Plaintiffs cite also provides a clear expectation regarding the amount of ancillary time a trainer should be spending on these activities, instructing that "Generally, T1 – T3 Trainers should spend no more than two (2) hours per pay period on session related activities and T3+ / TX should spend no more than four (4) hours per pay period.  If you feel you need to spend more than the time outlined here, please address this with your [Personal Training Manager]."  *Id.*[7]  In other words, for an upper tier trainer who is operating at a full time (*i.e.*, 21-session-per-week) level, Equinox's communicated expectation is that individual is working either 22 hours (Tier 3) or 23 hours (Tier 3+ and X).  Tellingly, of Plaintiffs' seven affidavits, most of them of them do not even allege they discussed this communicated benchmark with anyone in management at Equinox, potentially putting the Company on notice that more work time might be occurring.  Plaintiffs Lessans and Shipper allege each spoke to Equinox about not being paid separately for session activity.  Lessans Decl. ¶ 13; Shipper Decl. ¶ 14.[8]  However,

---

[6] These two individuals' descriptions of their session-related activity are identical.

[7] Equinox does not just rely on this policy statement to communicate this procedure, notwithstanding that its dissemination to trainers is evidenced by Plaintiff Shipper's retention thereof – each trainer receives and signs an individual agreement which reiterates these expectations.  Ex. E; Ex. 1 to Herrmann Decl. (agreements for Plaintiffs Shipper and Carlson).

[8] Plaintiff Tew alleges she "complained" to unnamed "managers about them not paying me properly for all my hours worked."  Tew Decl. ¶ 12.  This declaration provides no specifics regarding the conversation, the nature of the complaint or who it was discussed with.  *Fernandez v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 124692, at

neither indicates he discussed the volume of session activity or its relationship to the tolerance of 4 hours per pay period allotted for those activities.[9]

Throughout their employment, Tier 3, 3+ and X trainers continue to engage in certain limited, separately compensated activities relating to continuing education, administration and expanding the personal training client base:

- Meeting with new members and conducting Equifit sessions (Equinox's version of a diagnostic fitness assessment).  Lessans Decl. ¶ 20; Shipper Decl. ¶ 17.

- Personal trainers also provide new members with a complimentary training session. Lessans Decl. ¶ 20; Shipper Decl. ¶ 17.  Because Equinox encourages its personal trainers to continue their education so they can provide top-level programming to clients, the Company provides complimentary in-house education to its personal trainers through the Equinox Fitness Training Institute ("EFTI").  Ex. A ¶¶ 120, 122.

- Equinox also schedules monthly Forums—one-hour meetings where the club's personal training managers update the personal trainers on recent club developments and activities. Ex. A ¶ 253.

- The personal training managers also frequently schedule one-on-one meetings with the personal trainers.  Ex. A ¶¶ 117-18.

---

*24 (S.D.N.Y. Aug. 27, 2013)(denying collective action certification because plaintiffs' declarations did not specify key details including "identities of speakers and participants").

[9] Of course, there was no requirement pursuant to the employment terms to "separately" pay for session-related activity beyond the productivity-based pay provided, as discussed below.

Equinox compensates personal trainers for their time spent at *all* of these activities.[10]   Dkt. 40-1 at 34. It is Equinox's policy to pay its employees, including personal trainers, for all hours worked.  *See* Plan ("you will be paid at least the applicable minimum wage for all time worked"). Personal trainers record their worktime for each above-referenced activity either in Equinox's digital timekeeping system, UltiPro, (for floor hours, EFTI, monthly PT Forums, one-on-one meetings with managers, and certain "special events"), or through a voucher system for personal training sessions (whether paid personal training sessions, complimentary personal training session, or Equifit). *See* Plan at 1; Herrmann Decl. ¶ 12.  Given their completely individualized schedules and compensation, Equinox relies on personal trainers (especially upper-level trainers) to accurately self-report their time and work-related activities.  *See* Dkt. 40-1 at 34.  Trainers – fitness professionals all – are free to otherwise make use of Equinox's world class fitness facilities, to whatever extent they choose, for personal purposes.  *See* Ex. K at Ex. 2 ("Club Membership Policy").[11]

Absent some exceptional issue or unique work arrangement, these high-tier trainers do not spend many hours per week on such activities.  *See* Ex. A ¶ 179. Again, Tier 3, 3+ and X trainers are the "highest tier" trainers who, as Plaintiffs note, perform little to no general floor work unless they request to do so or are having productivity related performance issues – in other words, they

---

[10] Certain Plaintiffs make individualized allegations that they were not paid for all such activity.  Shipper Decl. ¶ 18; Lessans ¶ 21.  They do not explain why or how, and certainly those individual deviations from the Company's lawful common practice (to pay for the time performing these activities) do not constitute evidence of a common unlawful policy. *Santos v. Nuve Miguel Corp.*, No. 21-CV-1335 (JPO)(RWL), 2021 U.S. Dist. LEXIS 222361 (S.D.N.Y. Nov. 16, 2021) (denying conditional certification and rejecting conclusory allegations regarding off-the-clock work).

[11] This compensation structure is not only lawful under general FLSA principles (in fact overgenerous by industry standards), it has specifically been upheld by the Eleventh Circuit, in *Alvino* (*supra*).  *See also Johnson v. Equinox Holdings, Inc.*, 12-CV-6313 (RMB)(JLC) 2014 U.S. Dist. LEXIS 91786, at *10 (S.D.N.Y. July 2, 2014).

do not have enough training sessions that would otherwise occupy their time.[12]  Katz Decl. ¶ 6;
Faulkner Decl. ¶ 7.

Indeed, current Plaintiffs' payroll records reflect that they continued to receive non-commission compensation in varying amounts.  Plaintiffs recorded (and were paid) the following number of non-session related work hours within their respective FLSA periods:

| Plaintiff | Earliest Potential FLSA Date[13] | FLSA Period End | Average Weekly Recorded Non-Session Hours |
|---|---|---|---|
| Monique Katz | 11/25/2017 | 2/29/2020 | 2.7 |
| Jennifer Carlson | 3/29/2018 | 4/1/2021 | 3.5 |
| Colleen Faulkner | 2/16/2018 | 1/4/2020 | 0.1 |
| Quinn Tew | 4/14/2018 | 8/1/2020 | 6.8 |

In sum, upper-level trainers are not scheduled or expected to work weekly overtime, or anywhere near it.  Under this system, the schedule of even the busiest, most successful trainers almost never results in a weekly overtime event, even if one takes an overbroad view (or, at its most extreme, Plaintiffs' view) of the amount of "work time" associated with a training session. What's more, trainers make their own schedules and so sessions of course can be and often are

---

[12] Of course, new Named Plaintiff Skidanenko alleges that more *junior* trainers performed additional unaccounted for duties of a totally different ilk (Ex. A ¶¶ 270-274).  This Court has rejected proposed collective actions where, "[t]he universe of former employees to which Plaintiffs wish to provide notice might contain within it one or even several groups of former employees who are similarly situated to each other, but Plaintiffs have not met their burden of tying all former employees who are in their proposed collective to a common policy or plan."  *Rusis v. IBM*, No. 18-CV-8434 (VEC), 2020 U.S. Dist. LEXIS 42239 (S.D.N.Y. Mar. 10, 2020).  The dueling allegations of Katz and Skidanenko make clear that certification of any broad group of trainers is a futile, overbroad proposal, which should be rejected.  Notably, in her prior Complaint, Plaintiff Skidanenko accurately and fairly acknowledged Equinox's policy to pay for various non-session activities.  *See, e.g.*, Ex. G ¶ 80 ("For the EFTI meetings, trainers are paid the New York minimum wage").  These rightful acknowledgements were removed from the current consolidated Complaint, and replaced with a laundry list of alleged additional "work" relating to the sessions.

[13] This date presumes a three-year FLSA look back, notwithstanding that – as discussed herein – Plaintiffs have provided no facts to support that Defendant was aware of their volume of alleged unrecorded work and thus no facts to support a willful violation extending the limitations period from two to three years.  *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021) (Plaintiff obligated to plead facts tending to support a willfulness finding as separate element of FLSA claim, otherwise two-year limitations period applied).

scheduled consecutively, on the hour, for efficiency. Herrmann Decl. ¶ 9. Plaintiffs' Declarations and motion ignore this reality entirely in asserting that each-and-every session corresponded to a window of pre-and-post-session time. Trainers also make use of their free access to Equinox facilities. Ex. 2 to Herrmann Decl. ("Club Membership Policy"). The Court does not need to make granular credibility determinations to note that Plaintiffs' characterizations of their day willfully ignore these realities. *Alvino v. Equinox Holdings, Inc.*, 629 F. App'x 847 (11th Cir. 2015) ("trainers, including Alvino, were given free gym memberships and encouraged to exercise at Equinox when they were not working, and Equinox's trainers spent a lot of time working out").

Indeed, within her FLSA period, adhering to the benchmark of 2 hours per week of session time, Plaintiff Katz never worked overtime. Herrmann Decl. ¶ 10.[14] If that amount of session time is expanded to an unrealistic 15 minutes *per session* (*i.e.*, 5 hours per week on 20 sessions), Plaintiff Katz would have, at most, **three** potential overtime workweeks over the course of the 118 workweeks potentially at issue (2.54%). *Id.* Even utilizing Plaintiffs' candidly ludicrous 23-session benchmark for overtime (P's Motion at 7), the affiants themselves (amongst Equinox's more prolific trainers) potentially worked "overtime" in a small percentage of workweeks. *See* Herrmann Decl. ¶ 11.[15] For other less experienced, less engaged trainers, even accepting Plaintiffs' conclusory contentions, the possibility of overtime dwindles to a practical impossibility.

---

[14] As discussed below and in Defendant's pending motion to dismiss, this is why she has struggled to identify even a single pay period where she could – through gross exaggeration – approach the plausibility pleading standard. (Dkt. 59 at 12-13).

[15] On the rare occasions where such productivity could potentially correspond to weekly overtime, as discussed below the trainer still would not be entitled to any additional overtime because the trainers are paid in conformity with 29 U.S.C. § 207(i) ("7(i)"), because their compensation in such instances would be predominantly commission-based and their regular rate would easily exceed 1.5 times the statutory minimum.

**2.     Session-Related Compensation (Commissions and Bonuses)
Comprises the Bulk of Tier 3 and X Trainer Compensation**

Trainer compensation, based on the above summary of duties and hours, is lawful and is based on simple premises:

- Trainers receive a commission for each session which is intended to compensate them for all activities related to the session. The effective rate for such work is always well above minimum wage – for the trainer levels at issue here (in Level 3 and X), substantially above minimum wage; and

- Trainers are paid hourly at the minimum wage for the ancillary activities relating to continuing education and training.

Plaintiffs' declarations attempt to misleadingly oversimply the compensation plan through repeated use of the term "flat rate," as though they were paid the same amount akin to a piece rate. *See, e.g.,* Katz Decl. ¶ 8; Ramirez Decl. ¶¶ 9, 13, 15; Tew Decl. ¶ 7; Faulkner Decl. ¶ 8, 11; Lessans Decl. ¶¶ 7-8; Shipper Decl. ¶¶ 6-7. In reality, Equinox's Plan explains that personal trainers' "income potential is dependent on several factors, including Tier status and productivity." Plan at 1. Numerous variables impact the amount of compensation that will correspond to a session:

- The five "training tiers" designating the seniority of the trainer and corresponding to different compensation rates. Plan at 2. As a personal trainer progresses through the Tier-system, they earn greater compensation for each session conducted.[16]

- The number of sessions completed within the pay period – those reaching the 42-session biweekly benchmark receive a substantially increased payment for ***each*** session. *Id*.

---

[16] Importantly, these changes also correlate to price charged to the member. Herrmann Decl. ¶ 13

- The number of sessions completed within the month – results in a graduated, accelerated increase in the value of each session performed that month.  *Id*.

In addition, upper-level trainers receive additional incentive compensation based on productivity and sales efforts, as follows:

- Bonus based on the number of sessions completed within the year – results in an additional bonus payment.  *Id*. at 3.
- Bonuses based on the sale of personal training services to new buyers, and retention of existing personal training clients.  *Id*.

Personal trainers' total compensation is calculated by combining their hourly wages and productivity-based compensation, directly session related (Commission) and otherwise (Bonus).  *See* Ex. D (Katz wage statement reflecting session related pay as "PT Commission").[17]  This compensation can be substantial, resulting in a very high effective rate of compensation.  Ex. F (Katz payroll record reflecting total compensation of $2,306.00 and $2,193.50 in consecutive pay periods of 46 and 44 sessions, respectively).[18]

### D.  Procedural History

Plaintiff Katz filed the instant action on November 23, 2020, alleging putative class and collective action allegations on behalf of different overlapping classifications of trainers.  *See* Dkt. 47 at 2-7 (discussing original procedural posture and interplay with the then-separately-pending *Skidanenko* action).  On October 28, 2021, Plaintiff filed her instant application for conditional

---

[17] All trainers, including Plaintiffs, are aware of this structure.  Indeed, Plaintiff Faulkner was terminated for admitting that she entered six personal training sessions from four different members into the Equinox system on December 21, 2019 in order to increase her compensation for that pay period under the Plan, even though none of the six sessions had been performed.  Faulkner admitted this was not an isolated instance.

[18] The corresponding per session rates for these periods (exclusive of bonus compensation) are: $1514.50/46 = $32.93 and 1429.50/44 = $32.49.

certification under the FLSA as to upper tier trainers.  Dkt. 38-40.  On January 7, 2022, by stipulation, Plaintiffs Katz and Skidanenko filed a consolidated Complaint regarding their overlapping class and collective action allegations.  Dkt. 55.  However, Plaintiff Katz confirmed that, notwithstanding the existence of a separate putative collective action representative with separate FLSA allegations, she wished to proceed with the instant motion.  Dkt. 56.

## II.  **LEGAL ARGUMENT**

### A.  **Legal Standard**

District courts may only conditionally certify a collective action in "appropriate cases" where the plaintiffs prove they are "similarly situated" to those they seek to represent.  *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989); *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010); *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528 (2d Cir. 2015).  This Court has written extensively on FLSA conditional certification and notice, granting,[19] denying[20] or limiting[21] a proposed notice application, as appropriate.  Thus, Defendant does not belabor the legal standard here, noting only that the Court can and should consider the entirety of the record presented.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (assessing whether a class should proceed will "frequently" "entail some overlap with the merits of the plaintiff's underlying claim."); *Guillen v. Marshals of MA, Inc.*, No. 09-cv-9575, 2012 U.S. Dist. LEXIS 91639, at *6 (S.D.N.Y. July 2, 2012) (rejecting argument that the court improperly considered the underlying merits, finding an evaluation of the evidence necessary to test whether plaintiffs' presented

---

[19] *Motion at 24-25.*

[20] *Baoji Zhang v. New Beijing Wok*, No. 17-CV-9465 (VEC), 2018 U.S. Dist. LEXIS 243924 (S.D.N.Y. Apr. 6, 2018); *Reyes v. Picnic Basket, Inc.*, No. 18-CV-140 (VEC), 2018 U.S. Dist. LEXIS 199037 (S.D.N.Y. May 22, 2018); *Yang v. Asia Mkt. Corp.*, No. 17-CV-6886 (VEC), 2018 U.S. Dist. LEXIS 56847 (S.D.N.Y. Apr. 3, 2018).

[21] *Leonardo v. ASC, Inc.*, No. 18-CV-3657 (VEC), 2018 U.S. Dist. LEXIS 194205 (S.D.N.Y. Nov. 14, 2018)(Caproni, J.)(limiting notice to locations for which Plaintiffs made evidentiary showing); *Apolinar v. Fusha 311 W.*, No. 15-CV-00196 (VEC), 2016 U.S. Dist. LEXIS 202692 (S.D.N.Y. Apr. 14, 2016)(same).

sufficient evidence to plausibly lead to the inference that putative class members nationwide were performing non-exempt tasks). The Court need not defer to Plaintiffs' statements which are "too vague and too general to support their motion." *Zhang*, 2018 U.S. Dist. LEXIS 243924 at *6; *Reyes*, 2018 U.S. Dist. LEXIS 199037 at *6.[22]

**B.   Plaintiff Katz's Tortured Pleading of Her FLSA Claim Highlights the Fundamental Flaw in Plaintiffs' Evidence, Which Is Self-Serving and Conclusory**

As set forth in Defendant's pending motion to dismiss Plaintiff's FLSA claim, Plaintiff here (and, by extension, the additional Plaintiffs) seeks to dispense entirely with the FLSA's *workweek* basis of analysis. 29 C.F.R. § 778.104 (under the FLSA, each workweek stands alone); 29 C.F.R. § 778.105 (the workweek is the regularly recurring 168-hour period).   Simply put, in her Complaint and now her Declaration, Plaintiff fails entirely to describe the hours she allegedly worked in any particular work week, instead presenting an elaborate end-around where she describes an expected value estimate per task, and loosely applies that estimate to all such tasks. Katz Decl. ¶¶ 10-11.  *See also* Dkt. 59 at 11-15.

Plaintiffs double down on this format in the instant motion, which requires an *evidentiary* showing of overtime work.  Plaintiffs Faulkner, Ramirez, Carlson and Tew provide even less than Katz's complaint and affidavit, in that their allegation is essentially "we worked more than 40 hours," without any specificity, and notwithstanding that the allegation is belied by their own admissions and Defendant's records of their session and non-session activity. Katz Decl. ¶ 15 ("there were weeks when [] I worked over forty (40) hours"); Ramirez Decl. ¶¶ 13, 15 ("I often worked over 40 hours per workweek"); Tew Decl. (none); Faulkner Decl. ¶8, 11; Lessans Decl. ¶

---

[22] For the Court's convenience, samples of the declarations submitted in connection with these rejected notice applications are included as Ex. H.

10 ("I usually worked more than 40 hours a week"); and Shipper Decl. ¶ 9 (same).   These declarations are thus less rigorous than ones this Court has found insufficient to support certification of far narrower groups in *Zhang* and *Reyes*.   Ex. H at 2 (¶¶ 10-13) and 8 (¶ 6) (descriptions of overtime work).

The further detail the declarations provide serves only to highlight differences and inconsistencies in how this small self-selected group of trainers handled their sessions, a veritable guarantee that these omissions and contradictions undercut any evidentiary value that the declarations would otherwise have.   *See Korenblum*, 195 F. Supp. 3d 475, 485 (S.D.N.Y. 2016) (denying certification after noting that fourteen sworn declarations from named and opt-in plaintiffs directly contradicted their testimony); *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343 (E.D.N.Y. 2015) (holding that plaintiffs failed to show actual evidence of a link between them and class members across the nation where plaintiffs testified inconsistently with regard to the level of discretion and independent judgment they exercised).

Even if any of these individual Plaintiffs can (through testimony based on these declarations), nudge his or her claim over the summary judgment line, it would be only that: an isolated allegation of a claim based on deviation from lawful policy. Such claims cannot be certified.[23]

---

[23] It should not be lost on the Court that the named Plaintiff and affiants Tew and Faulkner here, contemporaneously while alleging that they are "similarly situated," all also have alleged that they were subject to *disparate* treatment. Ex. A ¶¶ 198-225 (Plaintiff Katz's allegations of discrimination); Ex. I (putative class action discrimination Complaint filed by Opt-in Plaintiffs Tew and Faulkner in this District, SDNY Case No. 22-cv-242).  Equinox's defenses to these claims based on different business decisions relating to their respective separations from employment are specific to each and relate to time and attendance (Katz) and falsification of training session records (Faulkner).  This, too, militates against certification.  *Stewart v. Hudson Hall LLC*, 2021 U.S. Dist. LEXIS 230033, at * 14 (S.D.N.Y. Nov. 29, 2021)(even in the absence of separate race discrimination claim, wage Plaintiff's allegations of racially disparate treatment rendered him unsuitable as representative).

### C.     __The Holding In *Rosales* Is Inapplicable__

Plaintiffs make much of the ruling in *Rosales v. Equinox Holdings, Inc.*, No. 3:18-CV-0356-B, 2019 U.S. Dist. LEXIS 67454 (N.D. Tex. Apr. 19, 2019) (P's Mot. at 11-12), where that Court granted conditional certification as to the single location in question in that case.[24]  *Rosales* does not support Plaintiffs' sweeping certification request here.  *Rosales* conditionally certified a collective at the subject location based on its finding of a "policy of underreporting hours," which Plaintiffs have not shown here – again, most of these Plaintiffs do not allege that they told Equinox they spent more hours on ancillary activities than their agreements and company policy called for; they have provided no basis for a conclusion that Equinox should have relied on anything other than the work activities submitted in paying them.  Even in certifying that single-location group, the *Rosales* Court acknowledged that the "complexities" relating to a trainer's individualized work habits and compensation thereunder would militate against multi-location certification.  *Id*. at *15 (because certification "limited" to the location, did not implicate complexities relating to off-the-clock work, varying rates of pay).

### D.     __Plaintiffs Have Not Demonstrated The Existence Of An "Unlawful" Common Policy Or Plan Applicable to Other Higher-Level Trainers__

Not only have Plaintiffs failed to make a "factual showing," to the extent they have made one at all it is not "sufficient to demonstrate that [they and putative members of the collective action] together were victims of a common policy or plan that *violated the law*." *Hoffmann,* 982 F. Supp. at 261 (emphasis added); *Scholtisek v. Eldre Corp.,* 229 F.R.D. 381, 387 (W.D.N.Y. 2005).  It does not colorably tend to establish that higher-level trainers generally worked overtime. To the extent Plaintiffs' Motion seeks to highlight the small subset of higher tier trainers who

---

[24] The *Rosales* Court also relied on a formulation of the conditional certification test the Fifth Circuit has since rejected in *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021).

worked substantially more than the benchmark 42 sessions per pay period, in so doing it demonstrates the difference between those individuals and a trainer working 20-some-odd sessions per week, whose putative weekly "overtime" claim is premised on his or her conclusory estimate of barely-described ancillary session activity.

### 1. Higher Level Personal Trainers Like Plaintiffs Did Not Work Overtime

At the risk of redundancy, Equinox's common policy for higher-tier trainers was a work schedule corresponding to considerably fewer than 30 hours per week.  Even accepting that Plaintiffs could establish the plausibility overtime work without reference to the hours of service during which the work was performed (which the Court should not do), most Plaintiffs here have not attested (even as to themselves), that they performed enough sessions in a workweek to trigger weekly overtime, and indeed data confirms they have not.  Herrmann Decl. ¶¶ 10, 11, *supra*.

### 2. Successful Trainers Were Compensated in Conformity with the Overtime Compensation Method Found at 29 U.S.C. § 207(i)

Further militating against a finding that Plaintiffs have provided factual evidence of an unlawful FLSA policy is the clear applicability to successful trainers of the compensation method set forth at 29 U.S.C. § 207(i)("7(i)").[25]  Section 7(i) has three requirements, that an employee: "(1) must earn at least one and one-half times the federal minimum wage; (2) must earn more than half of his compensation in commissions for a representative period not less than one month; and (3) must be an employee of a retail or service establishment."  *English v. Ecolab, Inc.*, 06 Civ. 5672 (PAC), 2008 U.S. Dist. LEXIS 25862, at *7 (S.D.N.Y. Mar. 28, 2008).  As noted above, Plaintiffs earned a substantial income, well in excess of $10.88/hour (1.5x the current federal

---

[25] 7(i) is not an exemption to overtime, applicability of which Defendant would bear the burden of proof to establish. It is an alternative method of paying the overtime authorized by the FLSA. *Walton v. United Consumers Club*, 786 F.2d 303, 307 (7th Cir. 1986) ("Section 7(i) is not an affirmative defense that should have been raised in the pleadings. It is a method of complying with the [FLSA], part of § 7 that states the Act's general rules").

minimum wage).  *See* Plan at 2 (reflecting session rates well in excess of $10.88); Ex. F (sample Katz payroll).  All Plaintiffs confirm that more than half of their income was in the form of session-related commissions.  Katz Decl. ¶ 8; Ramirez Decl. ¶¶ 9, 13, 15; Tew Decl. ¶ 7; Faulkner Decl. ¶ 8, 11; Lessans Decl. ¶¶ 7-8; Shipper Decl. ¶¶ 6-7.

Equinox is a "retail establishment" because its services are provided to the general public and the fitness customer who purchases services from Equinox is the very individual who ultimately consumes the services.  *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 423, 442 (N.D.N.Y. 2014).  The Company unequivocally is not a wholesaler.  Even business-to-business entities have been found to be retail provided their goods are not for resale.  *Alvarado v. Corporate Cleaning Servs.*, No. 13-3818, 782 F.3d 365, 369 (7th Cir. Apr. 1, 2015) (Defendant window washing company "is probably best described as a retail service establishment.  It sells its window-cleaning services to building owners and managers; they are the ultimate customers; they do not resell the window cleaning, and therefore [Defendant] is not a wholesaler").

Plaintiffs correctly note that a trainer compensation paradigm distinct from the one at issue here was found not to qualify for the 7(i) method of overtime payment. P's Motion at 20 *citing Casanova v. Gold's Tex. Holdings Grp., Inc.*, No. 5:13-CV-1161-DAE, 2016 U.S. Dist. LEXIS 37932 (W.D. Tex. Mar. 23, 2016).  Plaintiffs also correctly note that the *Casanova* opinion not only failed to identify that 7(i) is not an exemption, it expressly applied the now-abrogated "narrow construction" doctrine courts previously applied to FLSA exemptions.  *Id*. at *10.[26]  Again, 7(i) is not an exemption – it is a method of paying the overtime owed under the Act.  Equinox's multi-tiered compensation plan which compensated trainers with progressive incentives not only for

---

[26] *See Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134 (2018) (rejecting narrow construction doctrine and holding exemptions part of the FLSA entitled to a "fair reading").

conducting more sessions, but for progressing as trainers, retaining clients and selling them additional services, clearly has the hallmarks of a commission system, *i.e.*, one where "(1) the employee's compensation [is] tied to customer demand or the quantity of sales; (2) the compensation plan must provide performance-based incentives for the employee to increase his or her income; and (3) there must be proportionality between the value of the goods or services sold and the rate paid to the employee." *Johnson*, 4 F. Supp. 3d at 442.

Plaintiffs are correct that the Court need not rule on this issue absent a full record.  P's Motion at 11.[27]   However, as with a traditional exemption, individualized discovery is clearly necessary as to issues such as hours worked, the ultimate blend of compensation and the nature of that compensation.  This also militates against certification.  *Ellersick v. Monro Muffler Brake, Inc.*, No. 10-CV-6525-FPG-MWP, 2017 U.S. Dist. LEXIS 49841 (W.D.N.Y. Mar. 31, 2017) (application of 7(i) would turn on blend of compensation on a workweek-by-workweek basis to determine whether bona fide commission paid and blend of compensation, thus FLSA collective decertified).

---

[27] As a general matter, Equinox does not believe that other FLSA overtime exemptions apply to the instant Motion. However, to the extent any Plaintiff (or any trainer) urges that his or her primary duty was seeking the enrollment of new members and/or new personal training clientele – as Plaintiff Skidanenko alleges (Ex. A ¶ 271) – and a Court makes such finding, that individual would thus be exempt pursuant to the outside sales exemption, which requires only that such sales employee's "selling or sales related activity outside the office 'one or two hours a day, one or two times a week' satisfie[s] the test for th[at] exemption."  *Taylor v. Waddell & Reed, Inc.*, 2012 U.S. Dist. LEXIS 212, at *11 (S.D. Cal. Jan. 3, 2012) (citing DOL Opinion Letter FLSA 2007-2, at 3-4 (Jan. 25, 2007).  *Modeski v. Summit Retail Sols., Inc.*, No. 20-1747, 2022 U.S. App. LEXIS 5132 (1st Cir. Feb. 25, 2022).

**E.** **Assuming _Arguendo_ Plaintiffs Have Made Any Showing, It Is Limited By Location, and to Trainers Who Have Performed A Sufficient Number of Sessions**

**1.** **Notice Must Be Limited to Locations for Which Plaintiffs Have Alleged An Unlawful Practice In Contravention of Written Policy**

As noted above, this Court has – where granting notice – conformed the scope of the class to that which can be reasonably inferred from the evidence submitted, and rejected overbroad applications from FLSA Plaintiffs. *See Nabi v. Hudson Grp. (HG) Retail, LLC*, 310 F.R.D. 119, 123 (S.D.N.Y. 2015)(Caproni, J.) (denying certification and collecting authority authorizing more limited certification based on localized practice). *See also Leonardo*, 2018 U.S. Dist. LEXIS 194205, at *7-8 (limiting notice to locations for which Plaintiffs made evidentiary showing); *Apolinar*, 2016 U.S. Dist. LEXIS 202692, at *15-16 (same). This approach is also consistent with the prior and subsequent decisions of other SDNY and EDNY courts. *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 125 (E.D.N.Y. 2020) (collecting authority and noting that eight sworn statements in approximately six states as to Defendant's purportedly unlawful unofficial policy" insufficient to support nationwide certification, limiting certification to "the particular Target stores at which Plaintiffs have proffered firsthand evidence of Defendant's *de facto* policy" and collecting authority in support); *Guillen v. Marshalls of MA, Inc.*, 841 F. Supp. 2d 797, 803 (S.D.N.Y. 2012) (courts deny approval of broad collective classes in misclassification cases "where evidence [is] provided only as to persons being assigned duties inconsistent with their exempt classification at stores in . . . a 'geographically concentrated cluster.'") *quoting Vasquez v. Vitamin Shoppe Indus.*, 2011 U.S. Dist. LEXIS 74376, at *10 (S.D.N.Y. July 11, 2011).

Plaintiffs worked for limited durations within the FLSA period (*see* chart at page 9) at six of Equinox's New York City locations. Katz Decl. ¶ 5 (Brookfield Place); Shipper Decl. ¶ 4 (Gramercy); Lessans Decl. ¶ 5 (Gramercy, Flatiron); Tew Decl. ¶ 5 and Carlson Decl. ¶ 5

(Tribeca); Faulkner Decl. ¶ 5 (Printing House); Ramirez Decl.  ¶¶ 5-6 (Columbus Circle).  P's Motion at 15.  Their limited averments regarding their purported conversations with other trainers who reported excessive non-session work should be disregarded as conclusory.  Katz Decl. ¶ 17 (spoke to identified individuals at Brookfield Place location about being "paid on a personal training session basis, how we were working over 40 hours a week, and that we were not getting paid the proper wages"); Ramirez Decl.  ¶ 20-21 (alleges having "frequent conversations [] about the number of hours [trainers] were working without overtime"); Carlson Decl.  ¶ 14 (spoke to another trainer on one occasion about "not getting paid any overtime despite working overtime hours"); Tew Decl.  ¶ 12 (no discussions other than non-specific complaints to unnamed "managers"); Faulkner Decl. (none); Lessans Decl. ¶ 13 (conversation with "regional manager" regarding not receiving separate compensation for session related activity); Shipper Decl. ¶ (non-specific complaints made to unnamed "managers" and "the other trainers").  This is a fraction of the forty (40) state-wide locations, who are presided over by different managers. Herrmann Decl. ¶ 5.

As discussed above, whatever Plaintiff Katz might have perceived, data reflects that even accepting her own exaggerated estimate at **face value**, she would almost never have worked an overtime schedule.  Based on Equinox's application of its lawful policy to her reported work, she never did work one.   Plaintiff does not even attempt to aver that she discussed with these individuals the role her alleged "preparation work" played in her conclusion that she worked 40 hours per week, thus her allegation that she spoke to others about her work begs the question of what they discussed, and how that possibly related to overtime work.  The same holds true for Plaintiff Carlson. Herrmann Decl. ¶¶ 10, 11.

21

Given this degree of speculation, Plaintiffs provide no basis to issue notice to locations other than the "localized" New York City locations at which they worked, and where they allege (thinly) that they performed excess session-related work.

       **2.**    **Notice Must Be Limited to Trainers Who, Under Plaintiffs' Own Theory,** ***Conceivably*** **Could Have Reached a Weekly Overtime Event**

As discussed herein and in the Motion, the parties do not dispute that Trainers record their time performing sessions and additional paid activities. Thus, even if the Court were inclined to grant certification based on Plaintiffs' assertions relating to productivity, there is no basis to send notice to any Tier 3 or X trainer who did not perform a baseline number of sessions in any workweek within the applicable FLSA period, because it is not plausible even under Plaintiffs' view that such an individual suffered an FLSA violation. *Lusk, et al. v. Serve U Brands, Inc., et al.*, No. 17-cv-6451, (W.D.N.Y. Nov. 20, 2018); (Ex. C at 8-10) (excluding from notice delivery drivers whose compensation level placed them far enough away from minimum wage such that it was not plausible based on Plaintiffs' showing that such individuals suffered an FLSA minimum wage violation) *citing Meetz v. Wis. Hosp. Grp. LLC*, No. 16-C-1313, 2017 U.S. Dist. LEXIS 138380, at *15 (E.D. Wis. Aug. 29, 2017) (excluding from conditionally certified group "earned higher base wages and were therefore less likely to receive total wages below the federal minimum").

As set forth above, Defendant respectfully submits that the Court should reject as exaggerated, indeed implausible, and self-serving Plaintiffs' "estimates" regarding ancillary activities, at least for purposes of imputing such alleged activity to any trainer other than themselves. To the extent the Court determines that Plaintiffs have made some showing of additional (though unreported) work by trainers at the subject locations, such group must be limited to providing notice only to those upper-level trainers whose hours in at least one workweek prior

22

to adding such alleged time were at a sufficient level such that an overtime event plausibly would be created.  Defendant submits that a trainer who never recorded a blend of work time above 35 hours (*i.e.*, the sum of sessions conducted and recorded compensable time) should be excluded from any notice.

### 3.    Discovery Is Appropriate Prior To Considering the Appropriateness Of Any Broader Notice

To the extent Plaintiffs insist on proceeding with an application for statewide certification of the collective to dozens of locations where Plaintiffs did not work and make no proffer regarding the practices there, this Court should permit limited discovery to properly assess the question of similarly situatedness, before considering such application, as it has ordered previously.  Ex. J (Court's Order in putative FLSA collective action instructing parties to "proceed with limited discovery relevant to plaintiffs' desire to proceed as a collective action pursuant to the Fair Labor Standards Act").

### F.    **If The Court Grants Plaintiff's Motion, the Parties Must Confer Regarding Any Notice to Ensure It Is Fair and Accurate**

Plaintiffs' Motion contains a proposed form of notice (as is common).  Dkt. 40-1 at 48-52. Even if the Court were to authorize any notice, and it should not, the parties should be ordered to confer and present to the Court a mutually acceptable and accurate notice and plan for dissemination. *See Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07-cv-2579, 2008 WL 938584, at *4 (S.D.N.Y. Apr. 7, 2008) ("notice should be jointly prepared"); *Bradescu v. Hillstone Rest. Grp., Inc.*, 2014 U.S. Dist. LEXIS 150974 (C.D. Cal. Oct. 10, 2014) ("If the Court does ultimately grant conditional certification of the FLSA opt-in class, [Defendant] requests an opportunity to more meaningfully address Plaintiff's proposed notice . . . In such a situation, the Court would

order briefing targeted to that particular issue").[28]  Plaintiffs' proposed notice plan is improper

because, *inter alia*:[29]

- The notice should only be disseminated by first-class mail, "which is generally accepted as the 'best notice practicable'" and entitled to a presumption of reliability and receipt under Second Circuit law.[30]  *Sharma v. Burberry Ltd.,* 52 F. Supp. 3d 443, 463 (E.D.N.Y. 2014) ("first-class mail is an adequate means to disseminate the Notice"); *Gonzalez v. Scalinatella, Inc.*, No. 13 CIV. 3629 PKC, 2013 WL 6171311, at *5 (S.D.N.Y. Nov. 25, 2013) (authorizing notice by mail and noting "The Court will revisit the issue of email addresses and/or telephone numbers as to mailings returned by the United States Postal Service as undeliverable."); *Spagnuoli v. Louie's Seafood Rest.*, No. 13-CV-4907 (JMA) (ARL), 2022 U.S. Dist. LEXIS 38735 (E.D.N.Y. Mar. 4, 2022) (reiterating presumption of receipt based on mailing).  A mechanism can be established to address returned mail;

- A reminder notice should not be issued, as there is no reason why a single notification of this case is not adequate.  *See, e.g.,* Ex. B ("A recipient could misinterpret a second mailing as the Court's endorsement of the collective action or a preference that putative collective members opt in"); *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 358 (E.D.N.Y. 2012) (denying plaintiffs' request to send a reminder notice); *Witteman v.*

---

[28] *See also Knispel v. Chrysler Grp., LLC*, No. 11-cv-11886, 2012 WL 553722, at *8 (E.D. Mich. Feb. 21 2012) (ordering counsel to meet and confer on an appropriate notice and consent form); *Craft v. Ray's, LLC*, 1:08:cv-00627-RLY-JMS, 2008 U.S. Dist. LEXIS 87887, at *8-9 (S.D. Ind. Oct. 29, 2008) (affording FLSA defendant separate opportunity to address plaintiff's proposed form of notice, following briefing on merits of plaintiff's notice motion).

[29] In light of the parties' tolling agreement (Dkt. 31), Defendant does not dispute that the anchor date for any FLSA notice should be May 13, 2021.

[30] *Akey v. Clinton County,* 375 F.3d 231, 235 (2d Cir. 2004) ("Where . . . the County provides evidence that the notices of foreclosure were properly addressed and mailed in accordance with regular office procedures, it is entitled to a presumption that the notices were received."); *Dioguardi v. Rochester Laborers Pension Fund*, 317 F. Supp. 2d 216, 219 (W.D.N.Y 2004) (Larimer, J.) (notice of plan time-period for commencing suit presumed received by plaintiff where plan produced direct testimony of mailing to plaintiff's correct mailing address.

*Wisconsin Bell, Inc.,* 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010) ("the reminder is unnecessary and potentially could be interpreted as encouragement by the court to join the lawsuit");

- A third-party administrator should mail the notice (as Plaintiffs' model notice acknowledges, Dkt. 40-1 at 49). *Lanqing Lin v. Everyday Beauty Amore, Inc.*, No. 18-cv-729 (BMC), 2018 U.S. Dist. LEXIS 207988 (E.D.N.Y. Dec. 9, 2018); *In re American Family Mutual Insurance Co., Overtime Pay Litigation*, 2009 U.S. Dist. LEXIS 11169, *11 (D. Colo., Feb. 3, 2009) ("I find that use of a third-party administrator is appropriate to protect the integrity of the process"). Plaintiffs' request for production of sweeping contact information for putative collective members should be denied as cumulative, with leave to request contact information for represented individuals as necessary.

For these and other reasons, if the Court permits notice, it should reject Plaintiffs' proposed notice and direct the parties to confer and submit a mutually agreeable notice plan.

## CONCLUSION

As set forth herein, all Plaintiffs' instant motion establishes is that they did not utilize or challenge Equinox's facially lawful policy for recording their work time and activities. They were well-compensated trainers who worked non-overtime schedules. The occasional trainer with productivity so robust he or she potentially might have worked overtime (such as Plaintiff Lessans) was a handsomely compensated individual for whom the requirements of 7(i) were met. Their motion should be denied. Alternatively, it should be limited to the finite group of individuals at Plaintiffs' locations whose productivity data reflects the possibility of overtime work. That such a collective group excludes the named Plaintiff demonstrates that her Motion is not well taken and should be denied.

25

Dated: Melville, New York
       March 11, 2022

                                     Yours, etc.,

                                     JACKSON LEWIS P.C.
                                     *ATTORNEYS FOR DEFENDANT*
                                     58 South Service Rd., Ste. 250
                                     Melville, New York 11747
                                     (631) 247-0404

By: _____
                                    NOEL P. TRIPP, ESQ.

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 11, 2022 DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO <u>MONIQUE KATZ'S MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE</u> was electronically filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, the Southern District's Local Rules, and the Southern District's Rules on Electronic Service upon the following parties and participants:

James Vagnini, Esq.
Alexander White, Esq.
VALLI KANE & VAGNINI LLP
Attorneys for Plaintiff
600 Old Country Road, Suite 519
Garden City, New York
(516)203-7180

D. Maimon Kirschenbaum, Esq.
Denise Schulman, Esq.
JOSEPH & KIRSCHENBAUM LLP
Attorneys for Plaintiff
32 Broadway, Suite 601
New York, NY 10004
(212)688-5640

Jacob Aronauer, Esq.
LAW OFFICES OF JACOB ARONAUER
Attorneys for Plaintiff
225 Broadway, 3rd Floor
New York, New York 10007
(212)323-6980

Mariya Gonor, Esq.
Kimberley A. Brunner, Esq.
BEATTIE PADOVANO, LLC
Attorneys for Plaintiff
200 Market Street, Suite 401
Montvale, New Jersey 076545
(201)799-9736

_____
NOEL P. TRIPP, ESQ.