**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MONIQUE KATZ; and YEKATERINA SKIDANENKO, individual and on behalf of all others similarly situated

                        Plaintiffs,

      v.

EQUINOX HOLDINGS, INC,

                        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Civil Action No.: 1:20-cv-9856 (VEC)(RWL)

**PLAINTIFF KATZ'S REPLY IN FURTHER SUPPORT OF HER MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE**

Plaintiff Katz ("Katz") submits this Reply in support of her motion for conditional certification of a collective of all Tier 3, Tier 3+, and Tier X Trainers ("Trainers") employed by Defendant Equinox Holdings, Inc. ("Equinox") in the state of New York from May 13, 2018, to present who worked over 40 hours per week without proper overtime ("OT") pay (the "Motion" or "Mot."). As this Court has instructed, a plaintiff seeking conditional certification must "establish that other employees may be 'similarly situated' to [her by making] a modest factual showing that [she] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Taveras v. LSTD, LLC*, No. 18-CV-903 (VEC), 2018 WL 4103493, at *1 (S.D.N.Y. Aug. 28, 2018) (citations omitted). As this Court has also instructed, this is not the stage of litigation where the court "examine[s] whether there has been an actual violation of law" or "make[s] credibility determinations[.]" *Id.* at *1, *3 n.2. In the Opposition Brief ("Opp."), however, Equinox inappropriately asks the Court to do just that. Specifically, it requests denial of the Motion because it asserts its policy was lawful and that the Trainers did not work OT. Notably, it does not dispute that the Trainers had the same job duties and were all subject to the same corporate written policy. For the reasons set forth in the Motion and below, conditional certification should be granted.

**I.      Equinox's Unlawful Overtime Policy**

Equinox does not, and cannot, assert that the Trainers were not subject to the same written compensation policy. Rather, it (barely) contests the policy's lawfulness, which the Court should not/has not determined at this stage. *See id.* at *1; *Conte v. Metro. Transp. Auth.*, No. 21-CV-2516 (VEC), 2022 WL 35474, at *2 (S.D.N.Y. Jan. 4, 2022) ("At the second stage, when the court has a more developed record . . . plaintiffs must prove that the . . . opt[-]in[s] are in fact 'similarly situated' to . . . plaintiffs and that they were all subject to an illegal wage practice."). Katz has adequately made a factual showing that she is similarly situated to the collective via the written

1

corporate policy (*see* dkt. no. 40-1 at 41-5) (the "Policy"), her declaration, and the declarations of eight other individuals. *See* Affirmation of James A. Vagnini ("Vagnini Aff. II), Exhibits J-K.

Again, Equinox does not deny that all the Trainers statewide are subject to the Policy, which Katz contends is unlawful. The Policy states that Trainers are "paid a fixed rate [*i.e.*, flat[1] or piece rate] for the session-related activities for each [PT] Session [they] teach." Since it is a fixed/flat rate, no OT is paid under this Policy despite the fact that the Trainers are entitled to it. *See Martin v. Sprint/united Mgmt. Co.*, No. 15-CV-5237 (PAE), 2016 WL 30334, at *13 (S.D.N.Y. Jan. 4, 2016) (certifying an NYC-wide collective of employees who were paid a fixed $10.00 per customer application without OT). Notably, **Equinox does not claim anywhere within the four corners of the Opp. that the Policy affords OT pay to Trainers or that it pays OT pay if they do work OT**. The Policy also does not restrict how many hours per week a Trainer can work, how many PT sessions he or she can perform, or provide any discipline for working OT hours.

While the Court should not reach the merits of Plaintiff's claims at this early stage (*see Taveras*, 2018 WL 4103493 at *1), the same type of compensation policy at issue here has also already been deemed unlawful by other courts. *See Casanova v. Gold's Texas Holdings Grp., Inc.*, No. 5:13-CV-1161, 2016 WL 1241548, at *6 (W.D. Tex. Mar. 23, 2016) (holding that a per PT session fixed rate without OT violates the FLSA); *cf. Rosales v. Equinox Holdings, Inc.*, No. 3:18-CV-0356-B, 2019 WL 1753962, at *5 (N.D. Tex. Apr. 19, 2019) (stating that Equinox's pay policy for Trainers is "almost identical" to Gold's gym in *Casanova v. Gold's*). Thus, Katz has shown she is similarly situated to the collective members via the Policy that only pays a fixed/flat rate for all things related to PT sessions and a straight rate for non-PT work without OT.

---

[1] Equinox plays semantics by questioning Katz's use of the term "flat rate" instead of "fixed rate." They both mean the same as piece rate, which is defined by Merriam-Webster: "the price per unit of production paid to a pieceworker." Trainers were paid the rate only if they completed a PT session, *i.e.*, a unit of production. The rate only increased based on Tier level or if a Trainer hit their benchmark 42 sessions. It still, however, remained fixed.

2

While the admittedly common Policy is sufficient to satisfy the conditional certification standard, Katz's showing is strengthened by her declaration and the declarations from eight other Trainers which show that others similarly situated from varying locations were subject to the Policy in the same manner as Katz. They all attest that they worked over 40 hours per week performing PT sessions, session-related activity, and sometimes non-PT work like floor shifts. *See* Dkt. No. 40-1 at 1-39; Ex. J; Ex. K (collectively, "Decls."). They also all attest that they were solely paid in the manner that the Policy prescribes when they worked over 40 hours: a fixed/flat rate for PT sessions and session-related activity and sometimes a straight time hourly rate for non-PT work. *See id.*; Dkt. No. 55 ¶¶ 184-89 ("FAC").  They further all assert that they were not paid OT under the Policy. *See id*. It is no coincidence that Equinox's written policy prescribes a fixed and straight time rate only and that Trainers from several locations are all claiming that the Policy was carried out in that exact manner. Thus, Katz is similarly situated to the collective members.

## II.     Trainers Working Overtime

Since Equinox cannot effectively argue that Katz and the Trainers were not subject to the same policy that violates the FLSA, it makes denying OT work the crux of its opposition.[2] Again, this is a merits argument and requires the Court to make a credibility determination, which is not proper at this stage. *See Taveras*, 2018 WL 4103493 at *3 n.2 ("The Court also rejects Defendants' frivolous attempt to dispute the factual underpinnings of Taveras's affidavit through affidavits of their own.  . . . [T]he court does not resolve factual disputes . . . at [this] stage."); *see also Chang Yan Chen v. Lilis 200 W. 57th Corp.*, No. 19-CV-7654 (VEC), 2021 WL 135248, at *4 (S.D.N.Y. Jan. 14, 2021) (citing *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 59 (E.D.N.Y. 2011) ("[C]ourts in this Circuit 'regularly rely on [conclusory allegations and hearsay] to determine the

---

[2] Equinox is attempting to incorporate *Lundy v. Catholic Health* (plead a *specific* workweek of OT) into the conditional certification standard. As the Court is well aware, this pleading standard is completely inapplicable to the Motion.

3

propriety of sending . . . notice.'") (alterations in original)); *Zamora v. L Plus L Prods. LLC*, No. 19-CV-1506 (GBD)(RWL), 2019 WL 5460559, at *4 (S.D.N.Y. Oct. 15, 2019) ("[A] plaintiff's allegations and factual assertions need not contain a high level of specificity[.]"); *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 70 (E.D.N.Y. 2016) ("[T]o the extent Defendants allege that Plaintiff's 'boilerplate allegations' and 'bare bones' declarations cannot provide the basis for conditional certification . . . such arguments are unavailing."). This is likely why Equinox has not cited a single decision requiring that a plaintiff must make "an evidentiary showing of [OT] work." Opp. at 14.

*Bayne v. NAPW* further illustrates why Equinox's argument must be rejected. *See* No. 18-CV-3591, 2021 WL 4822426, at *5 (E.D.N.Y. Aug. 10, 2021). In *Bayne*, the defendants, like Equinox, argued that the plaintiffs must "prove that they performed work for which they were not properly compensated" for the court to grant Rule 23 class certification, which as the Court is aware, has a much more stringent standard than 29 U.S.C. § 216(b). The court rejected this argument by holding: "Defendants' argument puts the proverbial cart before the horse. . . . While it is true that Plaintiffs must eventually prove liability, they need not do so now. And while the Court's class-certification analysis must be rigorous and may entail some overlap with the merits, Rule 23 grants courts no license to engage in free-ranging merits inquires at the certification stage." *Id.* (citation omitted); *see Spencer v. No Parking Today, Inc.*, No. 12-CV-6323 (ALC)(AJP), 2013 WL 1040052, at *7 (S.D.N.Y. Mar. 15, 2013) (**granting certification despite the plaintiff not providing a single "affidavit [from a putative collective member] swearing to have worked more than [40] hours per week without [OT] pay.**") (emphasis added).

Nevertheless, Katz has made an evidentiary showing that she and those similarly situated did work over 40 hours. *See* Decls.; FAC ¶¶ 137. She and the other declarants also describe why they worked over 40 hours per week (*e.g.*, the session-related activities and other work). *See id.*

4

Moreover, **Equinox admits that it is plausible that Katz and some of the Opt-Ins worked unpaid OT**. *See* Dkt No. 68-2 at 193 ¶¶ 10-11. Notably, its admittance is based on 15 minutes of session-related activities per PT session, which is about half of what Katz and the Opt-Ins allege they did. *See id.*; Mot. at 6; Decls. Equinox, of course, is silent as to the number of OT weeks when using what the Trainers claim they worked per session (about 30 minutes) and also is silent as to whether Opt-Ins Shipper and Lessans worked OT weeks without OT pay. *See* Decls. Thus, Katz has shown that she and others similarly situated worked 40+ hours per week without OT.

Equinox's position that the declarations are "less rigorous than ones this Court has found insufficient to support certification . . . in *Zhang* and *Reyes*" is baseless. Opp. at 15. These decisions say nothing of a requirement to prove hours worked over 40 at this stage. Rather, the Court in *Zhang v. New Beijing Wok* denied certification because only the named plaintiffs submitted affidavits that failed to sufficiently identify any other employee by name who was subjected to an unlawful OT policy. Certification in *Reyes v. The Picnic Basket* was denied for the same reason. Here, Katz submits declarations from eight non-named plaintiffs who claim they were denied OT pay and identifies other non-opt-ins by their name who were subject to the Policy and provides details about the conversations. *See* Decls. Moreover, unlike the instant case, neither *Zhang* nor *Reyes* involved a written compensation policy that indisputably applied to all collective members.

Similarly, Equinox's self-severing statement that Katz's evidence is "conclusory" also fails. Opp. at 14-15. In both *Alvarado v. Villas Mkt. Place Inc.*, No. 19-CV-4036 (VEC), 2020 WL 91489, at *2 (S.D.N.Y. Jan. 8, 2020) and *Leonardo v. ASC, Inc.*, No. 18-CV-3657 (VEC), 2018 WL 5981996, at *3 (S.D.N.Y. Nov. 14, 2018), this Court denied certification because the plaintiffs' declarations were conclusory: "Plaintiff simply asserts that 'other employees' were subject to time-shaving and rounding policies, without specifying these employees' identities or

5

the basis for Plaintiff's alleged knowledge. These conclusory allegations are insufficient to meet Plaintiff's burden." Katz's evidence is not conclusory under this standard because she identifies others similarly situated by their opt-in forms/declarations. She and the Opt-Ins also identify others who did not opt-in by name and/or position and they give the basis of their knowledge. *See* Decls.

In *Taveras*, however, the Court granted certification based on a single affidavit from the named plaintiff ("Taveras") that, like Katz, identified others who were not paid OT and the basis of that knowledge. *See Taveras*, 2018 WL 4103493 at *1; Vagnini Aff, Exhibit L, Taveras's Affidavits. Unlike Katz, Taveras provided nothing from the collective members themselves. Nor did he state the specific coworker(s) he observed complaining of unpaid OT. Thus, Katz provides the Court with more than Taveras. Taveras also did not "describe the hours that [he] worked in any particular week" as Equinox baselessly claims is required at this stage. Opp. at 14.

Additionally, in *Conte v. Metro. Transp. Auth.*, the Court recently granted certification based on declarations from the named plaintiffs and opt-ins even though they did not identify other similarly situated persons by name. *See* 2022 WL 35474 at *1. This is likely because opt-in declarations are sufficient to evidence the existence of persons similarly situated to a named plaintiff(s). Like the *Conte* plaintiffs, Katz demonstrates that similarly situated employees exist via the Opt-Ins' declarations and, unlike the *Conte* plaintiffs, by identifying non-opt-ins by name.

Lastly, Equinox's claim that the Trainers did not work OT because it was not reported or that Trainers only performed two or three hours of session-related activity per week is the epitome of an improper merits argument. In any event, the Policy states that a Trainer "**generally** should spend no more than two to three hours per week on [PT] session-related activities." [3] This equates

---

[3] According to Equinox's two hour limit, a Trainer had to review a client's physical metrics, research workouts, plan/create workout spreadsheet, gather weights/equipment for a one hour workout, clean/return weights equipment, and socialize with the client pre/post workout in under three minutes if she performed the benchmark 42 sessions.

to less than three minutes per session if a Trainer hit their benchmark 42 sessions per pay period. In reality, Trainers spend approximately 30 or more minutes per session. *See* Decls. This time, along with performing the PT session and their other work (floor shifts), resulted in them working 40+ hours per week. *See supra* at 5 (Equinox admits that Katz and the Opt-Ins did work 40+ hours if they spent 15 minutes on session-related activities). Further, the Trainers could not record their session-related activity time. *See* FAC ¶¶ 77, 94, 113; Decls. In fact, Equinox's averment that PT session time is "based on a voucher system" conflicts with how the Policy states the time should be recorded (UltiPro). *Compare* Opp. at 8 *with* Dkt. No. 40-1 at 41. Equinox's unawareness of how this time is recorded further shows that Trainers were provided no method of recording it and Equinox's intent to avoid any such evidence to support a possible OT claim. Rather than allow the Trainers to record the time, Equinox defaulted to automatically entering two or four hours of session-related activities on their paystubs whether they completed 10 sessions or 50. Of course, there should be a correlation between the number of sessions and the session-related activity. The Trainers' paystubs, however, do not reflect any correlation. *See, e.g.*, Vagnini Aff., Exhibit M.

### III. Statewide Certification

Equinox's argument that certification must be limited to where Katz and the Opt-Ins worked fails. "Courts in this Circuit frequently authorize notice to employees . . . where the named plaintiffs did not work, even in the absence of any declaration by an employee who worked at that location." *Kucher v. Domino's Pizza, Inc.*, No. 16-CV-2492 (AJN), 2017 WL 2987214, at *6 (S.D.N.Y. Feb. 13, 2017). As stated in the Motion, statewide certification is warranted if there is a showing of a uniform policy and there is common ownership or management. *See* Mot. at 14-5.

Here, Equinox admits that it operates all of its NY locations. *See* Dkt. No. 68-2 at 193 ¶ 5. As stated above, Katz has also demonstrated the existence of an unlawful written corporate policy.

*See Vasto v. Credico (USA) LLC*, No. 15-CV-9298 (PAE), 2016 WL 2658172, at *13 (S.D.N.Y. May 5, 2016) ("Courts in this Circuit frequently find corporate documents of this nature probative of a common policy that justifies conditional certification of a company-wide collective.").

If this were not enough, Katz presents comments by Managers that the Policy was corporate-wide and evidence of its implementation from eight[4] locations out of Equinox's 40 (20%). *See* Decls. Courts have certified multi-locations on a similar or less of a showing *See Gathmann-Landini v. Lululemon USA Inc.*, No. 15-CV-6867, 2018 WL 3848922 (E.D.N.Y. Aug. 13, 2018) (certifying 25 locations based on two declarations from the same location); *Kucher*, 2017 WL 2987214 (granting multi-location certification with declarations from one location); *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508 (E.D.N.Y. 2011) (certifying 27 locations based on declarations from only eight). Furthermore, Equinox's NY locations are **all within about a 30-mile radius** of Manhattan (the most northern location is in Armonk/the most eastern is Woodbury) and only six are outside NYC. *See* Vagnini Aff., Exhibit N. Thus, this is not a massive collective spanning from Montauk to Buffalo. Rather, it is fairly localized.

Katz also provides declarations from California Trainers and a Texas Manager that demonstrate the Policy was corporate-wide and that non-NY and NY Trainers had the same job duties and worked over 40 hours without OT pay. *See* Vagnini Aff. II, Exhibits O-P.

The decisions Equinox cites to limit the scope of the collective are inapposite. As the Court is aware, the scope of the collectives in *Nabi v. Hudson Grp. (HG) Retail, LLC* and *Leonardo v. ASC, Inc.* were limited because the named plaintiffs presented **no evidence** that employees from other locations had similar job duties or were subject to the same policies. *Guillen v. Marshalls of MA, Inc.* had certification denied for the same reason. Conversely, Katz provides Equinox's

---

[4] The current Opt-Ins worked at seven (7) different locations. Opt-In Carlson identifies a Trainer who was deprived of OT pay in the same manner at a location where neither Katz nor any Opt-In worked. *See* Dkt. No. 40-1 at 14 ¶ 14.

unlawful corporate policy and evidence of it being implemented at no less than 20% of Equinox's locations, all of which are located within 30 miles of each other. For this reason, *Jibowu v. Target Corp.* is also distinguishable as the plaintiff only presented evidence from eight out of Target's 1,800 stores (.004%) across all 50 states. Therefore, statewide certification is warranted.

### IV. Equinox's Miscellaneous Arguments

**First**, Equinox attempts to deem *Rosales* inapplicable by asserting that the court acknowledged complexities relating to the Trainers' work. In reality, however, the court held:

> Although Equinox's compensation scheme incorporates multiple variables, the same general formula applies to each [T]rainer. And as for variations in potential plaintiffs' off-the-clock hours, the Court is confident that a uniform scheme to estimate these hours could be applied such that it would not be unduly burdensome to address these FLSA claims as a collective[.]

*Rosales*, 2019 WL 1753962 at *6. Such also defeats any argument by Equinox that variation of uncompensated work weighs against conditional certification. Thus, *Rosales* is applicable.

**Second**, Equinox's claim that Katz is required to show at this stage that it knew of the unpaid OT hours must be rejected. Employer knowledge of unpaid OT is a summary judgment issue and even then, it is not required if an unlawful corporate OT policy is proven. *See* Dkt. No. 66 at 15-17. Nevertheless, this argument is meritless as Katz alleges that Equinox did not permit the Trainers to record all their hours worked. *See* FAC ¶¶ 77, 94, 113; Decls.

**Third**, Equinox arbitrarily asks for the collective to be only those who worked 35+ recorded hours per week. This must be rejected because it provides no basis for this threshold, including why it is impossible for a Trainer to work OT if they worked less than 35 recorded hours. The argument also pertains to the merits and can be revisited at the second stage or summary judgment. For example, even if there is a minimum number of sessions for OT to occur, which is disputed, that number cannot be found without discovery. Further, nothing prevents a collective judgment where there are some members who are not entitled to damages. *See Bouaphakeo v.*

*Tyson Foods, Inc.*, 214 F. Supp. 3d 748, 753 (N.D. Iowa 2016), *on remand,* 577 U.S. 442 (2016).

**Fourth,** Equinox's claim that the Trainers were paid "in conformity with the [OT] compensation method found at 29 U.S.C. § 207(i)" is improper and incorrect. *See* Mot. at 17-19. Interestingly, it proffers that § 207(i) is not an exemption but a "method of [OT] payment." Opp. at 18. Assumingly, it makes this outlandish argument with the hopes that the Court considers it at this stage. § 207(i) is an OT exemption as both the Supreme Court and the USDOL acknowledge. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 223 (2016); Vagnini Aff. II, Exhibit Q. However, as Equinox correctly alludes, a decision on § 207(i) is an improper merits-based issue. *See* Mot. at 6-7 (collecting cases). Additionally, the issue of individualized discovery that Equinox raises, which will not be required, is also not proper at this stage. *See* Mot. at 6-7.[5]

**Fifth,** Equinox's second stage argument that not every Trainer worked OT is not grounds for denial. *See Edwards v. Univar Solutions USA Inc.*, 3:20-CV-00778, (N.D. Tex. 2021) (granting certification despite employees attesting that they never worked unpaid OT); *Jones v. SuperMedia Inc.*, 281 F.R.D. 282, 291 (N.D. Tex. 2012) ("Defendants' claim that unlike . . . Plaintiffs, other employees properly adhered to the OT and record-keeping policies. . . . [T]his claim does not obviate the existence of other individuals who may want to opt-in."); *See Bouaphakeo*, 214 F. Supp. 3d at 753 (not apportioning the judgment to members who did not suffer damages).

**Sixth,** the Motion should not be denied the declarations slightly vary. *See Holbrook v. Smith & Hawken, Ltd.*, 246 F.R.D. 103, 106 (D. Conn. 2007) ("The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated.") If the Opt-Ins had the same declarations, Equinox would certainly deem them boilerplate.

Wherefore, the Court should grant conditional certification of Katz's proposed collective.

---

[5] Equinox argues that Katz's discrimination claims militates against certification and relies upon *Stewart v. Hudson Hall LLC*. *Stewart* concerned the adequacy of a Rule 23 class representative, which is not a § 216(b) requirement.

Dated: Garden City, New York
March 23, 2022

Respectfully submitted,

/s/ *Alexander M. White*

James A. Vagnini, Esq.
jvagnini@vkvlawyers.com
Alexander M. White, Esq.
awhite@vkvlawyers.com
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
T: (516) 203-7180
F: (516) 706-0248

D. Maimon Kirschenbaum, Esq.
maimon@jk-llp.com
Denise A. Schulman, Esq.
denise@jk-llp.com
**Joseph & Kirschenbaum LLP**
32 Broadway, Suite 601
New York, New York 10004
T: (212) 688-5640
F: (212) 981-9587

Jacob Aronauer, Esq.
jaronauer@aronauerlaw.com
**Law Office of Jacob Aronauer**
225 Broadway, 3rd Floor
New York, New York10007
T: (212) 323-6980
F: (212) 233-9238
jaronauer@aronauerlaw.com

Mariya Gonor, Esq.
mgonor@beattielaw.com
Kimberley A. Brunner, Esq.
kbrunner@beattielaw.com
**Beattie Padovano, LLC**
200 Market Street, Suite 401
Montvale, New Jersey 076545
T: (201) 799-9736
F: (201) 573-9736
(*pro hac vice applications forthcoming*)

*Attorneys for Plaintiffs*

11

## **CERTIFICATE OF SERVICE**

    I hereby certify that on March 23, 2022, a true and correct copy of the foregoing document on all counsel of record via ECF.

    Date:   March 23, 2022

                                            */s/ Alexander M. White*
                                            *Alexander M. White*