UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/29/22

MONIQUE KATZ, *individually and on behalf of all others similarly situated*, and YEKATERINA SKIDANENKO,

Plaintiffs,

-against-

EQUINOX HOLDINGS, INC.,

Defendant.

20-CV-9856 (VEC)

MEMORANDUM OPINION AND ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiffs Monique Katz and Yekaterina Skidanenko bring this action against Defendant Equinox Holdings, Inc. ("Equinox") for failure to pay wages pursuant to federal, state, and city law, among other claims. On October 28, 2021, Ms. Katz moved for conditional certification of a collective of personal trainers who allegedly worked without proper compensation; on January 21, 2022, Defendant moved to dismiss Ms. Katz's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the following reasons, Defendant's motion is DENIED, and Plaintiff Katz's motion is GRANTED.

**BACKGROUND**

Equinox is a nationwide fitness company with gyms throughout the State of New York. Am. Compl., Dkt. 55 ¶¶ 2, 22, 45. Equinox employs personal trainers at different tiers: Tier 1 and Tier 2 trainers ("Low-Tier Trainers"), who primarily perform floor shifts, including cleaning, demonstrating workouts, and recruiting members for private training; and Tier 3, Tier

[1] Although Defendant initially moved to dismiss Ms. Skidanenko's claims as well, it has withdrawn the portions of its motion that pertain to her claims. Def. Reply, Dkt. 71 at 1 n.1.

3+, and Tier X trainers ("High-Tier Trainers"), who primarily perform private personal training sessions. *Id.* ¶¶ 5, 47, 52.

Equinox hired Monique Katz as a Tier 1 personal trainer in August 2015; by August 2016 she had been promoted to Tier 3. *Id.* ¶¶ 173, 177. Equinox hired Yekaterina Skidanenko as a Tier 1 personal trainer in July 2019; she stopped working due to an injury in October of that same year. *Id.* ¶¶ 226–29. Ms. Katz and Ms. Skidanenko assert claims of unpaid minimum wages, spread of hours, and unpaid overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and New York state and city laws. *Id.* ¶¶ 333–360, 251–300.[2] Ms. Katz also asserts that Defendant violated the Family and Medical Leave Act, 29 U.S.C. § 2615 *et seq.*, by denying her benefits under the act and then retaliating against her for exercising her rights under the act. *Id.* ¶¶ 306–320.

This action was brought by Ms. Katz in the Southern District of New York on November 23, 2020. *See generally* Compl., Dkt. 1. At the time Ms. Katz filed her lawsuit, Ms. Skidanenko had a previously-filed lawsuit pending in the Eastern District of New York. After Judge Kuntz denied Equinox's motion to dismiss Ms. Skidanenko's action, *see Skidanenko v. Equinox Holdings Inc. et al.*, No. 20-CV-01550, Dkt. 35 (E.D.N.Y. June 29, 2021); Tripp Decl., Ex. B, Dkt. 60-2, the parties agreed to consolidate the actions in the Southern District. Pls. Opp., Dkt. 66 at 4. Plaintiff Katz thereafter filed a motion to conditionally certify a collective, *see* Not. of Mot., Dkt. 38, which Defendant opposes, *see* Def. Opp., Dkt. 68. On January 21, 2022, Defendant moved to dismiss portions of Plaintiffs' Amended Complaint, *see* Not. of Mot., Dkt. 58; Plaintiffs oppose the motion, *see* Pls. Opp, Dkt. 66.

---

[2] After paragraph 360 of the Amended Complaint, likely due to a typographical error, the numbering of the paragraphs restarts at 251. The Court has nonetheless cited to the numerals listed in the Amended Complaint throughout this opinion.

## DISCUSSION

### I. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "[T]o survive a motion under Rule 12(b)(6), a complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). When considering a Rule 12(b)(6) motion to dismiss, the Court draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013) (citation omitted).

### II. Ms. Katz Has Stated a Claim Under the FLSA

In order to state a claim under the FLSA for unpaid overtime work, "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Bonn-Wittingham v. Project OHR, Inc.*, 792 F. App'x 71, 75 (2d Cir. 2019) (cleaned up). Plaintiffs must "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than [40] hours in a given week." *Id.* (citing *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013)).

Defendant argues that Ms. Katz's FLSA overtime claim must be dismissed for failing to identify uncompensated overtime hours worked in a particular workweek. Def. Mem., Dkt. 59 at

5–9. Plaintiffs assert that Judge Kuntz's prior denial of Equinox's motion to dismiss Ms. Skidanenko's original complaint precludes this Court's analysis of this claim, but that, even if Judge Kuntz's decision does not have a preclusive effect, Ms. Katz has properly stated a claim.[3] Pls. Opp. at 5–15. The Court finds that issue preclusion does not apply, but that Ms. Katz has sufficiently pled an overtime violation.

Issue preclusion applies when (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party raising the issue had a full and fair opportunity to litigate the issue in that previous proceeding; and (4) the resolution of the issue was necessary to support a valid, final judgment on the merits. *Zapata v. HSBC Holdings PLC*, 414 F. Supp. 3d 342, 348 (E.D.N.Y. 2019), *aff'd,* 825 F. App'x 55 (2d Cir. 2020) (citation omitted). Ms. Katz's claim founders on the very first element: that the identical issue was raised in the prior proceeding. *Id.* Ms. Katz, who worked at a different tier than Ms. Skidanenko, alleges different workweeks in which she worked overtime without compensation, and alleges different kinds of unpaid activities that made up that overtime work; she has made entirely different factual allegations, even if her allegations give rise to the same type of legal claim. Def. Reply, Dkt. 71 at 1.[4] The Court therefore turns to the merits of Defendant's motion.

---

[3] Equinox does not contest that issue preclusion applies to Ms. Skidanenko's claim, although in its original motion, Equinox argued that Judge Kuntz's decision was rendered prior to the issuance of several relevant decisions from this District that require the Court to revisit whether Ms. Skidanenko has properly pled her claim. Def. Mem. at 8–9 (citations omitted); Def. Reply at 5 n.3. Equinox has since abandoned that argument. *See* Pls. Opp. at 4; Stipulation, Dkt. 63; Def. Reply at 1 n.1. Similarly, although Equinox originally argued that Ms. Skidanenko's minimum wage claim should be dismissed, Def. Mem. at 9–10, it has abandoned that argument as precluded, *see* Pls. Opp. at 4; Def. Reply at 1 n.1.

[4] Plaintiffs' suggestion that Judge Kuntz's decision "was not specific to the sufficiency of [Ms.] Skidanenko's allegations, but rather a decision concerning the FLSA pleading standard for any plaintiff," Pls. Opp. at 7 (citation omitted), would suggest that any FLSA decision in any district court on a FLSA overtime case is binding on this Court.

Ms. Katz pleads that during the April 29, 2018 to May 12, 2018 pay period, she worked 54 hour-long personal training sessions; spent 36 hours performing personal training session activities; and spent 30 minutes attending weekly meetings, totaling 90.5 hours during a two-week period. That means that, for at least one of the two weeks in the pay period, she worked in excess of 40 hours. Am. Compl. ¶¶ 184–85. She also alleges that for the workweek of January 7, 2018 to January 13, 2018, she worked approximately 45.5 hours without overtime pay, and that for the workweek of March 25, 2018 to March 31, 2018, she worked 50.5 hours without overtime pay. *Id.* ¶¶ 188–89. Equinox makes much of the fact that Ms. Katz's first allegation is for a bi-weekly pay period, and that all of her hours worked are approximations. Def. Mem. at 6–7. But, as Plaintiffs note, Ms. Katz has pled three specific weeks during which she worked more than 40 hours without receiving overtime pay, Pls. Opp. at 12, and approximations are not fatal to an overtime claim under the FLSA at the motion to dismiss stage, *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 88–90 (2d Cir. 2013) (citations omitted). To the extent that Equinox has records reflecting the hours Ms. Katz worked and the wages she was paid that undermine her claims, Equinox will be free to rebut her claims on a summary judgment motion or at trial. At the pleadings stage, however, Ms. Katz has clearly stated a claim.[5]

---

[5] Equinox also argues that Ms. Katz's failure to allege that Defendant had actual or constructive knowledge of her alleged overtime work sinks her claim. Def. Mem. at 10–12. Employer knowledge is clearly not a pleading requirement under the FLSA. *Bonn-Wittingham*, 792 F. App'x at 75 (listing pleading requirements). In urging the Court to rewrite a well-established standard, Defendant relies on: (1) a case that was decided at the summary judgment stage, Def. Mem. at 11 (citing *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011)); (2) a case that merely acknowledges in passing that the plaintiffs pled that management knew of their alleged overtime work, *id.* at 12 (citing *DeSilva v. N. Shore-Long Island Jewish Health Sys.*, 770 F. Supp. 2d 497, 505 (E.D.N.Y. 2011)); and (3) a case that contains no discussion whatsoever of employer knowledge, *id.* (citing *Xue Lian Lin v. Comprehensive Health Mgmt.*, No. 08-CV-6519, 2009 WL 976835, at *2–*3 (S.D.N.Y. Apr. 9, 2009)). The Court has no basis to insert an employer knowledge requirement where none exists and declines to do so here.

## III. Ms. Katz Has Stated a Claim Under the FMLA

Defendant next argues that Ms. Katz has failed to state a claim for interference or retaliation under the FMLA. Def. Mem. at 12–14. To state a claim for FMLA interference, a plaintiff must plead, *inter alia*, denial of a benefit to which she is entitled under the FMLA. *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 363 (S.D.N.Y. 2016) (citation omitted). To state a claim for retaliation under the FMLA, a plaintiff must plead that: (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of retaliatory intent. *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 513 (S.D.N.Y. 2016).

Ms. Katz alleges that she requested leave beginning in December 2019 that was approved under the New York State Paid Family Leave Act but denied under the FMLA. Am. Compl. ¶¶ 205–07. After she returned to work, she requested a second period of leave, from February 26, 2020 until March 5, 2020. *Id.* ¶ 208. This request was granted, as was a request to amend the start date of her leave to February 25, 2020. *Id.* ¶¶ 209–10.

Ms. Katz maintains that her employer violated her rights under the FMLA in the following ways: by failing to retract a written warning for the December 2019 leave and improperly treating it as an unapproved absence, and by firing her on March 4, 2020 in part for taking purportedly unapproved leave, even though the leave had, in fact, been approved. *Id.* ¶¶ 206–07, 212–16.

### A. Ms. Katz Has Stated a Claim for Interference Under the FMLA

Defendant argues that Ms. Katz cannot establish a *prima facie* claim of FMLA interference because she was not denied any benefits under the FMLA, given that she was granted both periods of leave that she requested. Def. Mem. at 12–13 (citation omitted).

With respect to the first leave period, Ms. Katz has clearly pled that she was denied FMLA leave, regardless of whether she was granted leave under some other law; she has also clearly pled that she was issued a written warning for taking unapproved leave. Am. Compl. ¶¶ 204–06. Although Ms. Katz's second leave period was approved under the FMLA, she was terminated a day before her leave ended, with that leave being retroactively disapproved. *Id.* ¶ 212.

Defendant provides no basis for its argument that being granted an entirely different form of leave precludes a claim that the plaintiff was denied FMLA leave, citing instead inapposite cases where plaintiffs alleged specifically that they had been granted FMLA leave. Def. Mem. at 13 (citing cases). Certainly, denial of FMLA leave is a denial of its benefits.[6] As to the first leave period, Defendant argues in its reply brief that Ms. Katz suffered no injury-in-fact because she was granted leave under state law. Def. Reply at 6–7. Perhaps a more comprehensive version of this argument would succeed, but, as written, it is unavailing. It is true that Ms. Katz must establish that, to the extent there was an FMLA violation, she was actually harmed by that violation. *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 467 (S.D.N.Y. 2011) (citations omitted). But the Amended Complaint alleges more than just a procedural violation: Ms. Katz alleges that she was issued a warning for taking leave without permission and that, despite her leave eventually being approved under state law, the warning was never withdrawn, and

[6] Even when an employer substitutes a different type of leave for FMLA leave, the employer must inform the employee of that substitution. *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 467–68 (S.D.N.Y. 2011).

thereafter the leave was treated as an unapproved absence. Am. Compl. ¶¶ 204–07. At the very least, the potential for this to discourage her from taking FMLA leave in the future — an established form of interference under the FMLA — allows the claim to proceed past the pleadings stage. *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004) (citation omitted).

Although Ms. Katz's second leave period was initially granted under the FMLA, it was retroactively disapproved. Am. Compl. ¶ 212. As a result, she was no longer granted FMLA leave. *Smith*, 769 F. Supp. 2d at 467–68. At a minimum, Ms. Katz was deprived of at least one day of that leave, given that her termination occurred on the day before the last day of that leave period. Am. Compl. ¶ 212. But the more severe outcome of the retroactive disapproval of FMLA leave — coupled with the warning associated with the prior leave — was her termination, *see id.*; there can be no question that termination is actual harm.

In sum, Ms. Katz's claim for interference under the FMLA survives the pleadings stage.

**B. Ms. Katz Has Stated a Claim For Retaliation Under the FMLA**

Defendant also argues that Ms. Katz fails to state a claim for retaliation under the FMLA. Def. Mem. at 14. Ms. Katz alleges that Defendant cited the warning she received regarding her 2019 leave and her taking leave in 2020 without permission as reasons for her termination. Am. Compl. ¶¶ 212–13. Defendant argues that Ms. Katz's manager's alleged reliance on her 2019 and 2020 leaves as a basis for terminating her does not establish a causal connection between the protected activity — seeking FMLA benefits — and the alleged adverse action of termination. Def. Mem. at 14. Defendant will be free to dispute the veracity of what occurred at a later stage, but on the face of the pleadings, Ms. Katz has adequately pled a causal connection between her taking FMLA leave and her termination. Even without the alleged comments of Ms. Katz's

manager, the temporal proximity of her leave and termination is sufficient to survive a motion to dismiss. *Cooper v. New York State Nurses Ass'n*, 847 F. Supp. 2d 437, 448–49 (E.D.N.Y. 2012) (finding temporal proximity between leave and termination is sufficient for a *prima facie* causal connection). On top of that, the statements of Ms. Katz's manager citing her leave as part of the reason for her termination, *see* Am. Compl. ¶¶ 209, 212–13, clearly establish a causal connection sufficient to survive a motion to dismiss.

**IV. It Is Appropriate for the Court to Exercise Supplemental Jurisdiction**

Because the Court declines to dismiss Plaintiffs' FLSA and FMLA claims, it need not address Defendant's argument that the Court should decline supplemental jurisdiction over the related state and city law claims. Def. Mem. at 14–15.[7] Defendant also argues, however, that even if the Court denies its motion to dismiss, the Court should not exercise supplemental jurisdiction over Plaintiffs' pay frequency claim under New York Labor Law § 191(1)(a). *Id.* at 15–18. Equinox argues that whether a private right of action exists under § 191(1)(a) is "an undecided and developing issue of state law, with contrary authority in the state courts." Def. Mem. at 16–17 (citations omitted). Notwithstanding the findings of a handful of lower state courts that no private right of action exists, federal courts have consistently held that there is a private right of action under § 191(1)(a) pursuant to the First Department's finding in *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (1st Dep't 2019). *See*, *e.g.*, *Beh v. Cmty. Care Companions Inc.*, No. 19-CV-1417, 2021 WL 3914297, at *2–3 (W.D.N.Y. Feb. 1, 2021), *report and recommendation adopted*, No. 19-CV-1417, 2021 WL 3914320 (W.D.N.Y. June 23, 2021); *Marvin Williams v. Miracle Mile Properties 2 LLC*, No. 20-CV-3127, 2022 WL 1003854, at *9 (E.D.N.Y. Feb. 1, 2022); *Caul v. Petco Animal Supplies, Inc.*, No. 20-CV-3534,

[7] This argument is moot as to any state or city law claims related to Ms. Skidanenko's federal claims; Defendant withdrew the portion of its motion to dismiss with respect to her allegations. *See supra* notes 1, 3.

2021 WL 4407856, at *3 (E.D.N.Y. Sept. 27, 2021) (collecting cases); *Sorto v. Diversified Maint. Sys., LLC*, No. 20-CV-1302, 2020 WL 7693108, at *2–3 (E.D.N.Y. Dec. 28, 2020); *Mabe v. Wal-Mart Assocs., Inc.*, No. 20-CV-00591, 2021 WL 1062566, at *5–*6 (N.D.N.Y. Mar. 18, 2021). The § 191(1)(a) claim does not present a novel and complex question of state law; it is, therefore, appropriate for the Court to exercise supplemental jurisdiction over it.

**III. Conditional Certification Is Appropriate**

Having determined that Plaintiffs' Amended Complaint survives Defendant's motion to dismiss, the Court turns to Plaintiff Katz's motion for conditional certification of a collective. The FLSA permits employees to maintain an action for and on "behalf of . . . themselves and other employees similarly situated." 29 U.S.C. § 216(b). In determining whether to certify a collective action, courts in the Second Circuit use a two-step process. *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010).

At the notice stage, a plaintiff must establish that other employees "may be 'similarly situated'" to her. *Id.* at 555. To meet this burden, the plaintiff need only "make a 'modest factual showing' that [she] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* (citation omitted). Although that burden is modest, "it is not non-existent," *Fraticelli v. MSG Holdings, L.P.*, No. 13-CV-6518, 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014) (internal quotation marks and citation omitted), and generally cannot be satisfied by "'unsupported assertions,'" *Myers*, 624 F.3d at 555 (citation omitted). Courts nonetheless employ a "low standard of proof because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Id.* (citation omitted) (emphasis in original). Courts do not examine "whether there has been an actual violation of

law." *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citing *Krueger v. N.Y. Tel. Co.*, No. 93-CV-178, 1993 WL 276058, at *2 (S.D.N.Y. July 21, 1993)).

At the second stage, when the court has a more developed record, the named plaintiffs must prove that "the plaintiffs who have opted in are *in fact* 'similarly situated'" to the named plaintiffs and that they were all subject to an illegal wage practice. *She Jian Guo v. Tommy's Sushi Inc.*, No. 14-CV-3964, 2014 WL 5314822, at *2 (S.D.N.Y. Oct. 16, 2014) (quoting *Myers*, 624 F.3d at 555) (emphasis in original). The action may be "'de-certified' if the record reveals that [the opt-in plaintiffs] are not [similarly situated], and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555 (citation omitted).

**A. Ms. Katz Meets the Notice-Stage Burden**

Ms. Katz moves to conditionally certify a collective of all persons employed by Equinox in New York State as High-Tier Trainers since May 13, 2018 who were paid a flat rate for personal training sessions and who worked in excess of 40 hours per workweek without overtime compensation. Pl. Mem., Dkt. 39 at 4. Ms. Katz argues that she is similarly situated to the putative collective members because the written pay policy at Equinox applies to all High-Tier Trainers, *see* Vagnini Decl., Ex. H, Dkt. 40-1, and because both Ms. Katz and six Opt-In Plaintiffs have provided declarations showing that they had similar job duties and were subjected to the same policy of a flat rate of pay per session, Pl. Mem. at 13–14; Vagnini Aff., Exs. A–G, Dkt. 40-1.

In response, Equinox describes at length the trainer compensation policy and how it defines session-related activity, *see*, *e.g.*, Def. Opp., Dkt. 68 at 4, 15, and focuses its energy on demonstrating that the policy clearly states how much ancillary time a trainer should spend on certain activities, *id.* at 6. Because Equinox does not deny that all trainers are subject to the same

policy, Pl. Reply, Dkt. 69 at 2, and because the declarations of the trainers filed in support of the motion support the proposition that the policy applied uniformly to High-Tier Trainers, *see* Exs. A–G, Dkt. 40-1, the Court finds that Ms. Katz is similarly situated to the other members of the proposed collective.[8]

Because courts do not examine "whether there has been an actual violation of law" at this stage, *Young*, 229 F.R.D. at 54 (citation omitted), the Court does not address Equinox's lengthy argument that Ms. Katz has not proven that its policy is unlawful. Def. Opp. at 16–19.

**B. The Proposed Notice Is Fair and Accurate**

Ms. Katz proposes notifying members of the putative collective via mail and e-mail, as well as publication of the notice on a website with a fillable consent form. Pl. Mem. at 20. Although the Court has some editorial changes that must be made to Ms. Katz's proposed notice to the putative collective members, *see* Vagnini Aff., Ex. I, Dkt. 40-1, the notice is generally appropriate.[9] The Court also finds that providing the proposed notice via mail, email, and website is appropriate. *Douglas v. Anthem Prods., LLC*, 18-CV-5789, 2019 WL 78988, at * 5 (S.D.N.Y. Jan. 2, 2019). The 60-day notice period requested by Plaintiff is also appropriate. Pl. Mem. at 21. Finally, Plaintiff's request to send a reminder notice and to disseminate that reminder via mail, email and text, *id.* at 21–22, is also granted.

Equinox argues that notice should be limited only to specific locations for which Plaintiffs have alleged an unlawful practice and to trainers who could conceivably have reached a weekly overtime event — in Equinox's view, trainers who recorded working more than 35

---

[8] The Court finds that Defendant's request for limited discovery on the issue of whether other High-Tier Trainers are similarly situated, *see* Def. Opp. at 23, is not sufficiently supported in its memorandum. It is, therefore, denied. Such discovery can be taken as part of merits discovery.

[9] An edited version of the notice that the Court has approved for dissemination will be emailed to the parties separately. To the extent either party objects to the Court's edits, that party must file a letter on the Docket explaining its objection not later than Friday, May 6, 2022.

hours per week. Def. Opp. at 20–23. There is no basis to cabin notification only to those locations mentioned in the declarations, as Equinox is the common owner of all New York locations and applies a uniform pay policy to all employees in New York State. *Kucher v. Domino's Pizza, Inc.*, No. 16-CV-2492, 2017 WL 2987214, at *6 (S.D.N.Y. Feb. 13, 2017) (finding common policy for chain restaurant employees allowed statewide certification); *Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 WL 2658172, at *13 (S.D.N.Y. May 5, 2016) (finding common policy allowed company-wide collective). The Court also agrees with Plaintiff Katz that the 35-hour minimum is a baseless threshold. Pl. Reply at 9–10. Both of Equinox's requests are therefore denied.[10]

**C. The Proposed Discovery Is Appropriate**

In order to disseminate notice of the collective action, Plaintiff Katz seeks limited discovery of employee contact information. Pl. Mem. at 22. Defendant does not contest the validity of the request; the Court therefore orders Defendant to produce, not later than **May 13, 2022**, a computer-readable file with the names, last known mailing addresses, alternate addresses, all known email addresses (work and personal), telephone numbers, and dates of employment for all putative collective members employed since May 13, 2018.

**D. Tolling Will Be Evaluated on a Case-by-Case Basis**

Finally, Plaintiff Katz requests that the Court toll the statute of limitations for any putative collective members whose claims may have expired during the period between the filing of the motion and the Court's opinion. Pl. Mem. at 22–23. Whether tolling is appropriate is best addressed on an individual basis, *see Leonardo v. ASC, Inc. et al.*, No. 18-CV-3657, 2018 WL

---

[10] The Court does not see a need to order the parties to meet and confer regarding the proposed notice and denies Equinox's request that they be ordered to do so. Def. Opp. at 23–25.

5981996, at *5 (S.D.N.Y. Nov. 14, 2018) (citations omitted); the Court therefore declines to toll the statute of limitations for potential plaintiffs without prejudice to prospective members of the collective moving for tolling on an individual basis. The Court notes, however, that this motion is being decided roughly five weeks after it became fully briefed. That fact significantly undercuts the likelihood that tolling will be appropriate.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is DENIED, and Plaintiff Katz's motion for conditional certification of a collective is GRANTED. The Clerk of Court is respectfully directed to close the open motions at Dockets 38 and 58.

**SO ORDERED.**

**Date: April 29, 2022**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**