# Valli Kane & Vagnini

## Employee Rights Attorneys

600 Old Country Road    Tel: (516) 203-7180
Suite 519    Fax: (516) 706-0248
Garden City, NY 11530    www.vkvlawyers.com

October 30, 2023

**VIA ECF**
The Honorable Dale E. Ho
United States District Court - Southern District of New York
40 Foley Square, Room 905
New York, New York 10007

      **Re:**    *Katz, et al. v. Equinox Holdings, Inc.* **- Case No.: 1:20-CV-09856-DEH**

Dear Judge Ho:

      We, along with our co-counsel, represent Plaintiffs and the current opt-in plaintiffs in the above-captioned matter. We jointly write with Defendant's counsel to respectfully request a decision on the propriety of the communication of Defendant's ADR Program, which includes an arbitration agreement (the "Program"), to absent putative class members of the uncertified class in this case who have not opted in. The parties are mindful of the Court's individual practices limiting letter-motions requesting relief to three pages. In the interest of time, the parties have included both side's positions in this letter, limited to three pages per side.

      The parties are of course respectful of the Court's busy schedule and, subject to it, Defendant Equinox Holdings, Inc. respectfully requests a conference this week, if possible. Equinox, a world-wide fitness club owner and operator, is slated to distribute its ADR Program (in connection with the annual roll-out of its Employee Handbook) to all of its 10,000+ US employees on November 1, 2023.

      **I.**    **Plaintiffs' Position**

      This action has been pending for almost three years and involves a conditionally certified collective action of personal trainers against their employer under the Fair Labor Standards Act for unpaid overtime wages. It also involves a putative Rule 23 class action for unpaid overtime wages, unpaid straight-time wages, and frequency of pay violations pursuant to the New York Labor Law ("NYLL"). The parties are currently engaged in representative discovery with Plaintiffs' motion for class certification due in three months on February 7, 2024.

      On October 25, 2023, Defendant informed Plaintiffs' counsel of the Program and that it anticipated that it would be distributed to its employees seven days later on or about November 1, 2023.[1] *See* Exhibit 1, the Program. The Program is to be disseminated to the employees via email. The Program's arbitration agreement contains a class action waiver and goes into effect

---

[1] Although the required advanced warning of the Program was short, Plaintiffs and their counsel do sincerely appreciate it. Nevertheless, simply providing advance notice of an ADR program during the pendency of a class action does not alone make it proper.

automatically within 30 days of continued employment. The Program does not require employee execution or even acknowledgment of receipt. Since the Program impacts the rights of putative class members in this action who are currently employed by Defendant ("PCMs"), the parties seek a determination of its lawfulness.

Plaintiffs are not challenging that in ordinary employment circumstances, a self-executing arbitration agreement is improper. Instead, they are bringing this joint motion in the context of a putative class action where **a self-executing arbitration agreement is forfeiting the rights of the PCMs**. This is because, pursuant to Rule 23(d), a court has a "managerial responsibilities in [class] action cases is the protection of class members from misleading communications from the parties or their counsel." *OConner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 601 (S.D.N.Y. 2020) (citation omitted). "This duty extends to communications that threaten the 'choice of remedies' available to putative plaintiffs, including [class] action waivers." *Id.* at 601 ("supervisory authority exists even before a class is certified") (citations omitted). Here, the PCMs become subject to the Program automatically 30 days after its dissemination. There is no affirmative action or acknowledgment required of the PCMs for them to forfeit their rights as potential class members. If the PCMs do want to retain their rights, they must affirmatively opt-out and potentially have to re-confirm their opt-out via email (two steps to opt-out and no steps to be bound). Such a self-executing arbitration agreement with an opt-out procedure for putative class members is improper.

For example, a similar opt-out ADR procedure implemented during a pending class action was rejected in *Tomkins v. Amedisys, Inc.* because the arbitration agreement was self-executing within 30 days of issuance. *See* No. 3:12-CV-01082, 2014 WL 129401, at *1 (D. Conn. Jan. 13, 2014). Indeed, as Defendant argues, the notice of pending class action was also deficient in *Tomkins*. The court, however, highlighted that "the primary issue of concern is the implementation of an arbitration agreement during ongoing litigation combined with the waiver of rights to proceed in the litigation without affirmative agreement by putative class members." *Id.* at *2 ("[T]he Court is troubled that defendant unilaterally issued a self-executing arbitration agreement that substantively affects the rights of putative members in this litigation[.]"). The "primary issue" was not the notice. The Court also did not permit the opt-out procedure if the notice was corrected. Instead, it issued a protective order that prevented the arbitration agreement from being binding on the putative class members. *See* Exhibit 2, *Tomkins* protective order. There is good reason for this concern as any PCM who, *e.g.*, does not open an email, the email is sent to their spam box, accidentally deleted, etc. will have their rights in this action unknowingly forfeited.

Moreover, by requiring the PCMs to opt-out of the Program rather than affirmatively agree to arbitration, Defendant is essentially mandating that they assent to joining the class, if certified (*i.e.*, complete a form so they can be included in any certified class). It is well settled, however, that, "[m]embers of an opt-out class, of course, are not required to take any steps to be included in th[e] class[.]" *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 100 (S.D.N.Y. 2007), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016); *see Kern v. Siemens Corp.*, 393 F.3d 120, 124–25 (2d Cir. 2004) ("Courts have generally . . . view[ed] that 'opt in' provisions are contrary to Rule 23.") (citation omitted); *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir.1974) ("**[T]he requirement of an affirmative request for inclusion in the class is contrary to the express language of Rule 23[.]**") (emphasis added); *Morales v. Rochdale Vill., Inc.*, No. 15-CV-502-SJB, 2019 WL 9197991, at *1 (E.D.N.Y. Dec. 6, 2019) ("Rule 23 class actions

2

brought under the NYLL do not require the affirmative consent of class members. Rather, all NYLL class members are included as parties unless they affirmatively 'opt-out'"). Notably, Defendant can just as easily make the Program compliant with Rule 23 by asking the PCMs to opt-in to it by affirmatively agreeing to arbitration, which was suggested by Plaintiffs prior to the filing of this letter motion. The only logical reason for not doing so is to increase the number of PCMs excluded from the class. Tellingly, Defendant does not include herein its reason for using a self-executing arbitration agreement with an opt-out procedure as opposed to simply an opt-in.

Further, the only decision from this Circuit that Defendant relies upon to support the Program's opt-out procedure is *Chen-Oster*.[2] *Chen-Oster*, however, is inapposite as it involved an arbitration agreement that, unlike the Program, required affirmative assent. *See, e.g.*, *Salazar v. Driver Provider Phoenix LLC*, 532 F. Supp. 3d 832, 838 (D. Ariz. 2021) ("Unlike in *Chen-Oster* where part of agreements offered to, and individually accepted by, employees provided them 'valuable promotions, compensation, and severance arrangements,' here, employees got nothing in return for their execution of the Agreement besides the pleasure of remaining employed[.]"). Likewise, the Northern District of California decision cited by Defendant, *O'Connor*, also required affirmative assent of the arbitration agreements by the putative class members. While *Devries*, another decision from outside this Circuit cited by Defendant, did concern a self-executing arbitration agreement, such was not challenged by the plaintiffs. *See* Exhibit 3, the *Devries'* plaintiffs' motion. Instead, they only challenged whether the notice of pending class action to the employees was sufficient. Thus, unlike the *Tomkins* court (a decision from this Circuit), the *Devries* court did not consider or address whether an opt-out procedure for a self-executing arbitration agreement was proper in the context of a class action lawsuit.

Lastly, "the notice of pending class action" is misleading and lacks relevant information. *See* Exhibit 1. For example, it says nothing about: (i) the PCMs being entitled to damages or protected from retaliation by Defendant should they opt-out; (ii) who Plaintiffs' counsel is should they wish to contact them for more information; (iii) the exact position titles of who the Plaintiffs seek to represent as part of the class; (iv) the temporal scope of the class; and (v) what overtime, frequency of pay, and wage statement claims are or the damages they are entitled to. Defendant, however, has indicated a willingness to work with Plaintiffs to correct the notice, to toll the statute of limitations for any putative class member who does not opt-out, and not apply the arbitration agreement to any PCM currently working outside of New York State. Therefore, Plaintiffs respectfully request that the Court deem the Program as applied to the PCMs only as improper and Order the parties to confer within seven days regarding it and submit a revised version for approval. See *Li v. Fleet New York Metro. Reg'l Ctr. LLC*, No. 21-CV-5185, 2022 WL 1666963, at *10 (E.D.N.Y. May 25, 2022) ("[I]t is well established that when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization.").

## II.     Defendant's Position

Plaintiffs instant request is wholly unprecedented, and contrary to applicable authority, as set forth below.   Nor is there a factual basis for the Court to issue a prior restraint precluding Equinox from

---

[2] Defendant's other cited decisions from this Circuit do not involve arbitration agreements acquired from putative class members during a pending class action.

announcing its ADR Program to the putative class members of the uncertified class (who did not opt into the case previously), particularly because such employees have the unilateral right to opt out of the application of the Program to this case.

Equinox made a business decision to adopt an ADR Program that includes arbitration for all of its 10,000+ US employees. Equinox decided to apply the Program to any claims to which the Program could apply. Equinox has *expressly excluded* from the Program the claims of the named plaintiffs and opt-ins in this case. The Program does apply, however, to absent putative class members of the uncertified Rule 23 class who are current employees and who previously elected not to opt into this case (and thus have not asserted any claim and are not represented by Plaintiffs' counsel), subject to their right to opt out. Unlike every defendant in every case cited by Plaintiffs, however, Equinox did not unilaterally send out notice of its ADR Program to the putative class. Instead, Equinox was transparent with its intentions and provided notice to Plaintiffs' counsel of the Program, provided a draft of the agreement, and invited a meet-and-confer discussion should Plaintiffs' counsel have any concerns. *See* Exhibit 1.

In *Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981), the Supreme Court held as follows: "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties. . . . In addition, such a weighing—identifying the potential abuses being addressed—should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 101–02 (footnotes omitted). A defendant has the right to communicate with absent members of an uncertified class, even to settle their claims without court approval. *See Weight Watchers of Philadelphia, Inc. v. Weight Watchers Int'l., Inc.*, 455 F.2d 770 (2d Cir. 1972) (defendants had the right to settle with absent class members of an uncertified class without court approval; "[a]s we have, in essence, already noted, plaintiff has no legally protected right to sue on behalf of other franchisees who prefer to settle; F.R.Civ.P. 23(e), requiring court approval of the dismissal or compromise of a class action, does not bar non-approved settlements with individual members which have no effect upon the rights of others."). Under the ADR Program here, however, every putative class member who does not exclude this case from its application will retain their full individual claims and remedies in arbitration.

It is settled law that even with *no opportunity to opt out*, continued employment following notice that arbitration is a term and condition of employment is legally sufficient assent to arbitration. *See Manigault v. Macy's E., LLC*, 318 F. App'x 6, 8 (2d Cir. 2009) ("New York . . . has found that continued employment, without more, is sufficient to manifest assent" to arbitration). Although Equinox could have proposed a program in which continued employment alone was assent to the application of the ADR Program to this case, it has not done so. Instead, Equinox has provided such employees with the opportunity to opt-out of the application of the Program to this case by means of a simple electronic click.[3] And the ADR Program includes a robust

---

[3] Plaintiffs claim that employees would "potentially have to re-confirm their opt-out (two steps to opt-out and no steps to be bound)," but that is not accurate. An individual can opt out with one click, and they will then receive electronic confirmation that they have successfully opted out. In the unlikely event that they do not receive that email confirming their opt out, they are

4

description of this case in the Notice of Pending Class Action to ensure that current employees are aware of the case, and their right to exclude this action from the ADR Program. *See* Ex. 1.

New York courts have likewise found that continued employment without opting out of arbitration is sufficient assent to arbitration. *Lockette v. Morgan Stanley*, No. 18-CV-876 (JGK), 2018 WL 4778920, at *5 (S.D.N.Y. Oct. 3, 2018) (compelling arbitration where assent was continued employment and employees could opt out by timely submitting opt-out form); *Pelligrino v. Morgan Stanley Smith Barney LLC*, No. 17-CV-7865 (RA), 2018 WL 2452768, at *4 (S.D.N.Y. May 31, 2018) (same).

As such, the manner of assent Equinox has proposed for the application of the ADR Program to this case – continued employment without opting out (instead of just continued employment) – is a valid means of assent. Notably, and contrary to what has been asserted by Plaintiffs, the process for notifying Equinox employees of the ADR Program is robust. Employees will, as an initial matter, receive an email notifying them of the Program and of the updated Employee Handbook. Employees are then instructed to acknowledge and agree to the ADR Program (and acknowledge receipt of the Handbook) by clicking on a link that will take the employee to Equinox Connect, an intranet page that employees regularly use for employee agreements, acknowledgements, policies, and training programs. If the employee has not acknowledged and agreed to the ADR Program, they will see a notice to that effect each time they access Equinox Connect. In addition, a reminder email will be sent around 15 days after the original email.

This Court has previously confirmed that continued employment without opting out is a valid means of assent to apply an arbitration agreement to absent class members of a pending uncertified class action. In *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216 (S.D.N.Y. 2020), *objections overruled*, No. 10CIV6950ATRWL, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021), the Court broadly upheld the employer's right to obtain arbitration agreements with putative class members of an uncertified class and apply them to the pending litigation— even without mentioning the case. For the one agreement that the court found was obtained "using a new electronic procedure that obfuscated the expanded scope of arbitration," the court found that the appropriate remedy *was to allow those subject to the agreement the right to opt- out* – exactly the procedure that Equinox has built into the ADR Program. *Id.* at 271.

In finding the opt-out procedure appropriate, the *Chen-Oster* court cited to *Devries v. Morgan Stanley & Co. LLC*, 2015 WL 11237669, at *3 (S.D. Fla. Aug. 18, 2015), which permitted the employer to distribute an arbitration agreement with an opt-out procedure to putative class members after revising the description of the case.

Similarly, the *Chen-Oster* court cited to *O'Connor v. Uber Technologies, Inc.*, 2013 WL 6407583, *7 (N.D. Cal. Dec. 6, 2013), which permitted the defendant to disseminate arbitration agreements to putative class members so long as they provided "clear notice of the arbitration provision, the effect of assenting to arbitration on their participation in this lawsuit, and *reasonable means of opting out of the arbitration provision within 30 days of the notice*." *Id.* (emphasis added).

---

asked to follow up to ensure their opt out was successful.

5

Equinox's arbitration communications comply with the standards in all of these cases—clear notice of the arbitration agreement, clear notice of the effect of the agreement on the pending litigation, and reasonable electronic means of opting out. Even more, Equinox is proposing to give until December 22—over 7 weeks from the anticipated November 1 rollout—for employees to opt out.

Plaintiffs' cases are distinguishable. Plaintiffs cite to cases that generally stand for the proposition that, if a case is certified under Rule 23, notice is provided to the class with an opportunity to opt out, which is undisputed. None of those cases, however, address the situation of the Court placing a prior restraint upon a party distributing an arbitration agreement, which requires the most "carefully drawn order that limits speech as little as possible." *Gulf Oil Co.*, 452 U.S. at 101-02. Because this Court has found that providing individuals a reasonable opportunity to opt out of the program adequately protects the rights of individuals to participate in an uncertified class action, that is the order that limits speech as little as possible.

In terms of the opt-out procedure, the case in *Tomkins v. Amedisys, Inc.*, No. 3:12-CV-01082, 2014 WL 129401 (D. Conn. Jan. 13, 2014), is distinguishable because the defendant in that case disseminated the arbitration agreement without any notice to plaintiffs or the court, and although the agreement referenced the name of the court case, it provided no other information about it. In that context, the court was additionally troubled that the agreement required an opt-out. The court then authorized plaintiffs to issue corrective notice and required defendant to obtain court authorization before disseminating additional related communications to the class. The court, however, was not presented with the issue of whether an arbitration agreement that was not misleading could be binding unless the individual opted out, nor did the court rule that a future arbitration agreement issued with court authorization could not include an opt-out. The decision in *Li v. Fleet New York Metro. Reg'l Ctr. LLC*, No. 21-CV-5185, 2022 WL 1666963 (E.D.N.Y. May 25, 2022), involved unauthorized communications to "scare investors out of pursuing meritorious claims" that are not even alleged to have occurred here.

Equinox has shared its ADR Program documents with Plaintiffs' counsel (and now the Court) prior to disseminating them to the absent putative class members – unlike any defendant in any case cited by Plaintiff. The only case cited by either party that presented this same posture is the decision in *Devries*, in which the court approved of the communication of an arbitration agreement to absent class members with an opt-out approval process after the court required some revisions to the description of the case. *Devries,* 2015 WL 11237669, at *3. Equinox's ADR Program provides robust notice of this case in the Notice of Pending Class Action (consistent with what the court required in *Devries*). Ex. 1. Although Equinox could have provided that employees assent to application of the ADR Program by continued employment alone under applicable Second Circuit authority, Equinox has given the employees the unilateral right to opt out with a simple electronic click. As such, there is no basis for issuing an order precluding Equinox from disseminating the ADR Program as proposed, subject to reasonable revisions to ensure that the disclosure and description of this case are clear.

      The parties thank the Court for its time and consideration in this matter.

                                                       Respectfully submitted,

                                                       <u>*/s/ Alexander M. White*</u>
                                                       Alexander M. White

cc:     all counsel of record <via ECF>