**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MONIQUE KATZ and YEKATERINA
SKIDANENKO, individually and on behalf of all
others similarly situated,

                        Plaintiffs,

      v.

EQUINOX HOLDINGS, INC.,

                      Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No.:
1:20-CV-09856 (DEH)(RWL)


# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS/COLLECTIVE SETTLEMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

PROCEDURAL HISTORY ................................................................................................ 2

STATEMENT OF FACTS .................................................................................................. 2

I.    EQX's Pay Policy And Alleged Violations ............................................................. 3

SUMMARY OF THE SETTLEMENT ............................................................................. 4

I.    Definition of Class ................................................................................................. 4

II.    Claims Administration ........................................................................................... 4

III.    Notice Plan and Release......................................................................................... 4

IV.    Qualified Settlement Fund ..................................................................................... 6

    A.    Plan of Allocation ............................................................................................ 7

V.    Service Awards ...................................................................................................... 8

ARGUMENT ..................................................................................................................... 10

I.    Preliminary Class Certification Is Appropriate.................................................... 11

    A.    The Standards and Procedures for Preliminary Approval............................... 13

    B.    The Prerequisites of Rule 23(a) Are Satisfied................................................ 14

        1.    *The Class Is Sufficiently Numerous.* ...................................................... 15

        2.    *There Are Common Questions of Law or Fact.* ...................................... 15

        3.    *The Claims Or Defenses Are Typical.* .................................................... 16

        4.    *Class Counsel and The Class Representatives Are Adequate.* ............... 18

    C.    The Prerequisites of Rule 23(b)(3) Are Satisfied........................................... 18

        1.    *Common Issues Predominate.* ................................................................ 19

        2.    *Class Settlement is Superior to Other Methods.* .................................... 20

    D.    Rule 23(g) Is Satisfied.................................................................................... 20

II.    The Settlement Is Non-Collusive, Fair, Adequate And Reasonable..................... 21

III.    The Proposed Form of Notice Satisfies Due Process. .......................................... 27

IV.    The Attorneys' Fees and Costs Should be Preliminarily Approved. ..................... 29

V.    The Service Awards Should Be Preliminarily Approved. ..................................... 30

VI.    A Final Approval Hearing Should be Scheduled................................................... 31

CONCLUSION.................................................................................................................. 31

## **TABLE OF AUTHORITIES**

**Cases**

*Amchem Prods. v. Windsor*
  521 U.S. 591 (1997)..................................................................................... 13, 19

*Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*
  133 S. Ct. 1184 (2013)......................................................................................... 19

*Attenborough v. Const. and Gen. Bldg. Laborers' Local 79*
  238 F.R.D. 82 (S.D.N.Y.2006) ............................................................................ 17

*Barrows v. Becerra*
  24 F.4th 116 (2d Cir. 2022). ................................................................................ 17

*Beckman v. Keybank, N.A.*
  293 F.R.D. 467 (S.D.N.Y. 2013) .................................................................11-12, 20

*Caridad v. Metro-North Commuter R.R.*
  191 F.3d 283 (2d Cir. 1999)................................................................................. 17

*Carnero v. Bagel Mentsch, Inc.*
  No. 1:21- CV-0781, 2022 WL 3446335 (E.D.N.Y. Aug. 17, 2022) ....................... 27

*Castagna v. Madison Square Garden, L.P.*
  No. 09-CV-10211 (LTS)(HP), 2011 WL 2208614 (S.D.N.Y. June 7, 2011)................... 11, 16

*Chambery v. Tuxedo Junction Inc.*
  10 F. Supp. 3d 415 (W.D.N.Y. 2014) .............................................................11-12, 16

*Cheeks v. Freeport Pancake House, Inc.*
  796 F.3d 199 (2d Cir. 2015)................................................................................. 21

*Clem v. Keybank, N.A.*
  No. 13-CV-789 (JCF), 2014 WL 2895918 (S.D.N.Y. June 20, 2014) ............................ 29-30

*Cohen v. J.P. Morgan Chase & Co.*
  262 F.R.D. 153 (E.D.N.Y. 2009) .......................................................................... 12

*Consol. Rail Corp. v. Town of Hyde Park*
  47 F.3d 473 (2d Cir. 1995).................................................................................. 15

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*
  502 F.3d 91 (2d Cir. 2007).................................................................................. 18

*Del Rio v. 257 SGPizza Corp.*
  No. 19-CV-3426 (OTW), 2023 WL 4583652 (S.D.N.Y. July 18, 2023) ............................... 26

*Diaz v. E. Locating Serv. Inc.*
  No. 10-CV-2082 (JCF), 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010)....................... 11, 22-24

*Dodge v. County of Orange*
  208 F.R.D. 79 (S.D.N.Y. 2002) ...................................................................................... 16

*Durett v. Hous. Auth. of City of Providence*
  896 F.2d 604 (1st Cir. 1990).................................................................................... 13-14

*Garcia v. Atlantico Bakery Corp.*
  No. 13-CV-1904 (JCF), 2016 WL 3636659 (S.D.N.Y. June 29, 2016) ....................... 22-23, 29

*Gen.Tel. Co. of Southwest v. Falcon*
  457 U.S. 147 (1982)...................................................................................................... 17

*Grande v. 48 Rockefeller Corp.*
  21-CV-1593, 2023 WL 5162418 (S.D.N.Y. Aug. 11, 2023)................................................. 16

*Green v. Wolf Corp.*
  406 F.2d 291 (2d Cir. 1968)........................................................................................... 20

*Hernandez v. Merrill Lynch & Co., Inc.*
  No. 11-CV-8472 (KBF)(DCF), 2012 WL 5862749 (S.D.N.Y. Nov. 15, 2012) ................ 11, 17

*In re Austrian and German Bank Holocaust Litig.*
  80 F. Supp. 2d 164 (S.D.N.Y. 2000)................................................................................ 11

*In re Drexel Burnham Lambert Group, Inc.*
  960 F.2d 285 (2d Cir. 1992)........................................................................................... 18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*
  No. 05-CV-10240, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ................................... 10, 22

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*
  55 F.3d 768 (3rd Cir. 1995) ...................................................................................... 12, 14

*In re Painewebber Ltd. P'ships Litig.*
  171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................... 21, 24

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*
  148 F.3d 283 (3d Cir. 1998)........................................................................................... 14

*In re Top Tankers, Inc. Sec. Litig.*
   No. 06-CV-13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ........................................... 22

*Joel A. v. Giuliani*
   218 F.3d 132 (2d Cir. 2000) ....................................................................................... 11, 21

*Levitt v. J.P. Morgan Secs., Inc.*
   710 F.3d 454 (2d Cir. 2013) ............................................................................................. 12

*Lizondro-Garcia v. Kefi LLC*
   300 F.R.D. 169 (S.D.N.Y. 2014) ................................................................................. 22-23

*Long v. HSBC USA Inc.*
   No. 14-CV-6233, 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015) ........................................ 17

*Massiah v. MetroPlus Health Plan, Inc.*
   No. 11-CV-5669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ........................................ 30

*Maywalt v. Parker & Parsley Petroleum Co.*
   67 F.3d 1072, 1074 (2d Cir. 1995) ................................................................................... 12

*Steinberg v. Nationwide Mut. Ins. Co.*
   224 F.R.D. 67 (E.D.N.Y. 2004) ....................................................................................... 12

*McMahon v. Olivier Cheng Catering and Events, LLC*
   No. 08-CV-8713 (PGG), 2010 WL 2399328 (S.D.N.Y. March 3, 2010) ............................... 30

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*
   No. 06-CV-4620, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ........................................ 16

*Morales v. City Scrap Metal, Inc.*
   No. 19-CV-6682, 2022 WL 20539979 (E.D.N.Y. Nov. 16, 2022) ........................................ 27

*Morris v. Affinity Health Plan, Inc.*
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ............................................................................ 16-17

*Noble v. 93 Univ. Place Corp.*
   224 F.R.D. 330 (S.D.N.Y. 2004) ................................................................................. 15, 19

*Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey*
   698 F.2d 150 (2d Cir. 1983) ........................................................................................... 15

*Prasker v. Asia Five Eight LLC*
   No. 08-CV-5811 (MGC), 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010) ................................... 16

*Protective Comm. For Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*
    390 U.S. 414 (1968) ................................................................................ 12

*Reyes v. Buddha–Bar NYC*
    No. 08-CV-02494, 2009 WL 5841177 (S.D.N.Y. May 28, 2009) ........................... 16

*Riedel v. Acqua Ancien Bath New York LLC*
    No. 14-CV-7238 (JCF), 2016 WL 3144375 (S.D.N.Y. May 19, 2016) ................ 12, 15, 22, 24

*Robidoux v. Celani*
    987 F.2d 931 (2d Cir. 1993) ...................................................................... 15

*Sand v. Greenberg*
    No. 08-CV-7840 (PAC), 2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ..................... 29-30

*Santos v. YMY Mgmt. Corp.*
    No. 20-CV-1992 (JPC), 2021 WL 431451 (S.D.N.Y. Feb. 8, 2021) ..................... 27

*Seijas v. Republic of Argentina*
    606 F.3d 53 (2d Cir. 2010) ......................................................................... 19

*Sewell v. Bovis Lend Lease, Inc.*
    No. 09-CV-6548 (RLE), 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ................... 19

*Spann v. AOL Time Warner, Inc.*
    No. 02-CV-8238, 2005 WL 1330937 (S.D.N.Y. June 7, 2005) ........................ 10, 22

*Trief v. Dun & Bradstreet Corp.*
    144 F.R.D. 193 (S.D.N.Y. 1992) ................................................................ 16

*Viafara v. MCIZ Corp.*
    2014 WL 1777438 (S.D.N.Y. May 1, 2014) .................................................. 29

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*
    623 F.3d 82 (2d Cir. 2010) ......................................................................... 29

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
    396 F.3d 96 (2d Cir. 2005) .......................................................... 10-11, 21-22, 28-29

*Weinberger v. Kendrick*
    698 F.2d 61 (2d Cir. 1982) ......................................................................... 28

*Yuzary v. HSBC Bank USA, N.A.*
    No. 12-CV-3693 (PGG), 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013) ................... 30

*Zivkovic v. Laura Christy LLC*
   329 F.R.D. 61 (S.D.N.Y. 2018) .................................................................................. 16, 19-20

*Zorn-Hill v. A2B Taxi LLC*
   No. 19-CV-1058 (KMK), 2020 WL 5578357 (S.D.N.Y. Sept. 17, 2020) ............................. 27


**Rules**

Fed. R. Civ. 23(a) ........................................................................................................... 15, 18

Fed. R. Civ. P. 23(a)(1) ........................................................................................................ 15

Fed. R. Civ. P. 23(a)(2) ........................................................................................................ 15

Fed. R. Civ. P. 23(b)(3) ................................................................................................... 19-20

Fed. R. Civ. P. 23(d) ............................................................................................................ 22

Fed. R. Civ. P. 23(e) ....................................................................................................... 13, 21

Fed. R. Civ. P. 23(g)(1)(A) .................................................................................................. 21


**Other Authorities**

*See* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 13.14, at 172-73 (2004).. 13-14, 28

## PRELIMINARY STATEMENT

Plaintiffs Monique Katz and Yekaterina Skidanenko (collectively, "Named Plaintiffs"), including the opt-in Plaintiffs and all members of the Class[1] (together with Named Plaintiffs, "Plaintiffs") by and through their counsel, hereby move the Court for preliminary approval of the proposed class and collective actions settlement ("Settlement") set forth in the Settlement Agreement ("Agreement") which is annexed hereto as Exhibit 1 ("Ex. 1"). Specifically, the Plaintiffs respectfully request that the Court enter the proposed order, consented to by Defendant Equinox Holdings, Inc. ("EQX"), annexed hereto as Exhibit 2 (the "Preliminary Approval Order") which includes the following terms:

1. Certifying, for the purposes of settlement, a Rule 23(b) class action as defined below;

2. preliminarily approving the Settlement, as set forth in the Agreement, as the Settlement falls within the legally acceptable range of reasonableness, and may be adjudicated fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and the Class Action Fairness Act of 2005 ("CAFA");

3. appointing Named Plaintiffs Monique Katz and Yekaterina Skidanenko class representatives and their counsel as class counsel who shall be authorized to act on behalf of all members of the Class with respect to the claims asserted against EQX;

4. approving, as to form and content, the Notice, Claim Form, and Reminder Notices, attached as Exhibits 1-A, 1-B, and 1-C to the Agreement, and authorizing the first-class mailing, the sending of emails, text messaging, and online posting of the Claim Forms to all members of the Class;

5. approving and appointing Simpluris Inc. ("Simpluris") (the "Claims Administrator") as the third-party claims administrator who will administer the implementation of the Settlement;

6. setting a 90-calendar day deadline (from the date the Notice is postmarked) for the execution and return of fully completed Claim Form;

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed in the Agreement.

7. setting a 45-calendar day deadline (from the date the Notice is postmarked) for requests to object to the Settlement;

8. approving the mailing of a Reminder Postcard 45 days prior to the end of the Claim Period to members of the Class who have not filed a Claim Form as of that date; and

9. setting the final approval hearing date.

## PROCEDURAL HISTORY

This action was commenced on November 23, 2020. *See* Dkt. No. 1. On October 18, 2021, the parties engaged in a mediation that did not lead to a resolution, and on April 29, 2022, the Court conditionally certified this action as a collective action pursuant to the Fair Labor Standards Act ("FLSA"). *See* Dkt. No. 72. Thereafter 333 Trainers joined this action claiming unpaid overtime wages. Currently, there are 315 Trainers who are a part of this action. The parties then engaged in voluminous representative discovery consisting of discovery, including depositions of 48 Trainers and their supervisors from 19 of EQX's 40 clubs. On April 3, 2024, the parties engaged in a second mediation. While the second mediation was initially unsuccessful, over the next several months the parties continued their settlement negotiations and were ultimately able to reach an agreement to resolve this matter. The party's agreement to resolve this case is set forth in the written settlement agreement attached to this Motion. *See* Ex. 1.

## STATEMENT OF FACTS

EQX is a nationwide luxury fitness center with more than forty (40) locations throughout the State of New York. *See* Dkt. No. 79-1 ¶ 2. EQX employed Personal Trainers in five Tier levels (Tier 1, Tier 2, Tier 3, Tier 3+, and Tier X) to provide personal training services to its members. *See id.* at ¶ 5. Their job duties consist of, among other things, performing thirty minute or one-hour personal training (PT) sessions for EQX's members and to engage in session related activity ("SRA"). *See id.* at ¶ 50. The SRA consisted of researching workouts for the member, creating a

2

customized (or tailored) workout plan for the member called "programming", updating the programming after each personal training session, engaging with the member regarding their PT session, setting up the anticipated workout space before a PT session, gathering/returning the requisite workout equipment for each PT session, scheduling the session, interacting with the member immediately before/after the PT session and reporting SRA time. *See* Dkt. No. 79-1 ¶ 79. They also performed: (i) "floor shifts," which consisted of screening the gym floor for safety reasons, "spotting" EQX's members, answering member questions to acquire more clientele and gain experience, demonstrating workouts for them, lifting, moving, and cleaning weights and equipment; (ii) client prospecting; (iii) Equifit sessions or a free PT evaluation session for EQX's members; (iv) complimentary sessions or free PT session after the Equifit; programming; (v) guided sessions or free PT sessions for EQX's non-members; (vi) programming for Equifit, complimentary, and guided sessions; and (vii) weekly 15-minute update meetings with their manager(s); and (viii) Equifit (training) meetings. *See id.* at ¶¶ 52, 63-66, 105, 117, 120.

I.    **EQX's Pay Policy And Alleged Violations**

EQX paid Trainers on a bi-weekly basis and at an hourly rate for floor shifts, meetings, and Equifit meetings. *See id.* at ¶ 162, 165. It also paid them a set flat rate for each PT session, Equifit, and complimentary session they performed. *See id.* at ¶ 8. Plaintiffs allege that because of this pay policy, they were deprived of overtime pay for all hours worked over 40 because the flat rate for PT sessions, Equifits, and complimentary sessions did not include an overtime premium. They further allege that they were denied payment at their hourly rate for prospecting for clients while not clocked in and commuting to and from their gym to the Equifit meetings. As a result of the foregoing, they also allege that they received incorrect paystubs in violation of NYLL § 195. Moreover, Plaintiffs assert they were manual laborers as defined by NYLL § 191 requiring them to be paid on a weekly basis. EQX has consistently denied and continues to deny Plaintiffs'

allegations.

## SUMMARY OF THE SETTLEMENT

### I.    Definition of Class

To effectively obtain resolution of Plaintiffs' claims, the proposed Settlement encompasses both claims arising under the FLSA, in the form of a collective action resolution, and claims arising under the NYLL, in the form of a Rule 23 class action resolution.  Thus, the parties seek preliminary certification of the following class:  All individuals who have worked for Equinox Holdings, Inc. in New York as personal trainers in any tier level at any time from March 25, 2014, through July 31, 2024.

### II.    Claims Administration

If approved by the Court, the settlement documents and funds would be administered by an independent and experienced third-party settlement administrator, Simpluris ("Claims Administrator") who will handle the management and distribution of the settlement documents and funds.  Simpluris is a reputable administrator that has substantial experience and expertise carrying out these duties which include, but are not limited to, the determination of awards for valid claims, compliance with all applicable tax reporting, and payment of taxes on such awards. *See* www.simpluris.com/class-action-administration.

### III.    Notice Plan and Release

The Agreement provides for each Class Member who is not a current Opt-in Plaintiff to submit a Claim Form to participate in the Settlement. *See* Ex. 1 ¶ (C). Any Class Member who does not timely submit a Claim Form shall not be included in the Settlement, but also shall not release any claims against EQX. *See id.* at ¶¶ 4(F), 10(A) The Agreement also provides for automatic inclusion in the Settlement of any Opt-in Plaintiff as they have already filed a consent to join. *See id.* at ¶ 4(F). The Opt-in Plaintiffs, however, will be afforded an opportunity to opt-out

of the Settlement should they desire to do so and preserve their claims against EQX. *See* Ex. 1 ¶ 4(F).

The notice plan pursuant to the Agreement comports with best practices regarding notice and claim administration to make participation as easy as possible for the Class Members. For example, the claims administrator is required to, *inter alia*, finalize, mail, and email the Notice Forms to Class Members; send a text message (to the extent such contact information is in EQX's possession) advising Class Members of the settlement and maintain a website where the Notice and Claim Form can be downloaded; and referring to Class Counsel all inquiries of claimants not within the Settlement Administrators duties. *See id.* at ¶ 3. If a Notice is returned by the post office as undeliverable, the claims administrator will use best efforts to ascertain the current address and addressee information, and promptly re-mail the Notice and Claim Form to the Class Members for whom a new address is found. *See id.* at ¶ 4(D). Any Class Member whose notice is returned undeliverable shall have until the later of the claim form submission deadline or 30 days from the date of remailing to submit their claim form or opt-out form. *See id.*

The Agreement provides that the claims administrator shall send a Notice Form to each person who is a member of the Class. *See id.* at ¶ 4(C). Upon receipt, Class Members may timely submit a fully completed Claim Form so that it is received by the claims administrator no later than 90 calendar days after the postmark date on which the claims administrator sends the Notice. *See id.* at ¶ 4(F). Opt-in Plaintiffs may timely opt-out so that it is received by the claims administrator no later than 90 calendar days after the postmark date on which the claims administrator sends the Notice. *See id.* at ¶ 5(D). For Class Members who timely submit fully completed Claim Forms or are Opt-in Plaintiffs and do not opt out ("Participating Class Members"), EQX will obtain a release of all wage-and-hour claims identified in paragraph 10 of

the Agreement. *See* Ex. 1 at ¶ 10.  There shall be no release of any claims by a Class Member who is not a Participating Class Member. *See id*. EQX will also obtain a release of all wage-and-hour claims identified in paragraph 10 of the Agreement for any Opt-in Plaintiffs who do not timely opt-out. *See* Ex. 1 ¶ 10. There shall be no release of any claims by any Opt-in Plaintiff who timely opts-out. *See id.*

Using the Class List, which will be provided by EQX, the claims administrator will make reasonable efforts to ensure that each member of the Class receives a Notice and accompanying Claim Form, which shall set forth: the material settlement terms; instructions on how Class Members may participate in the Settlement; instructions on how Class Members and Opt-in Plaintiffs may exclude themselves from, or submit objections to, the Settlement; and when and where to appear at the final approval hearing, among other important information.  *See id.* at ¶¶ 3(C), 4(C)-(D).

## IV.    Qualified Settlement Fund

Pursuant to the Agreement, each Class Member who submits a Claim Form or Opt-in Plaintiff who does not opt-out is eligible to and will receive a pro-rata share of the Maximum Settlement Amount – after deductions for the Court-approved Attorneys' Fees and Lawsuit Costs for Class Counsel up to one third (1/3), Court-approved Service Awards, and costs of the claims administrator. *See id.* at ¶¶ 1(1.24), F(i).  The Maximum Settlement Amount does not include EQX's portion of payroll taxes, which shall be additionally paid by EQX. *See id.* at ¶ 8(A). To maximize participation, the Agreement provides for the claims administrator to engage in several layers of outreach to the potential Class Members, including providing the Notice and Claim Form via email, mail, and on the website, with a text informing the Class Member about the Notice and where to locate it, as well as a Reminder Notice sent via email, text message, and mail. *See id.* at ¶ 4(C)-(E).

A.  Plan of Allocation

The QSF shall be funded based on the Final Settlement Amount which is the total of: (i) all allocated settlement shares from the Net Settlement Fund to Participating Class and Collective Members; (ii) the Settlement Administrator's fees and costs; (iii) Court- approved Service Awards; and (iv) Court-approved attorneys' fees and costs for Class Counsel. *See* Ex. 1 ¶ 1(1.19). The QSF shall be funded through four payments by EQX as follows: (i) 15% of the Final Settlement Amount or $1,000,000.00, whichever is greater, within 7 days after the Effective Date or January 15, 2025 whichever is later; (ii) 40% of the Final Settlement Amount on or before January 15, 2026; (iii) 22.5% of the Final Settlement Amount on or before January 15, 2027; and (iv) 22.5% of the Final Settlement Amount on or before January 15, 2028. *See id.* at ¶ 1(1.14), ¶ 8(B).

The Agreement includes a proposed plan of allocation based on a formula that is explicitly fair to each Class Member based on the number of weeks worked, and personal training sessions performed in excess of 24 sessions in a single week. *See id.* at ¶ F(i). Each Class Member who timely submits a fully completed Claim Form or Opt-in Plaintiff who does not timely opt-out will become Participating Class/Collective Members and receive a share of the Net Settlement Fund. *See id.*

Setting aside a portion of the Maximum Settlement Fund sufficient to pay Court-approved attorneys' fees and costs and claims administrator fees and costs approved by the Court – as described more fully herein, the claims administrator will calculate a Net Settlement Amount. *See id.* at ¶ 3(C). Each Class Member will be informed of the proposed amount of their *pro rata* share of the Net Settlement Amount in their Notice. *See id.* at ¶ 4(B).

As Plaintiffs' class claims seek the recovery of both wages, liquidated damages and penalties, each Settlement Payment issued to Participating Class Members will be divided into two parts: 18% will be deemed payment in settlement of wage claims (from which payroll withholding

and deductions will be taken), and 82% will be deemed payment in settlement of claims for liquidated damages, penalties, interest and any other non-wage amounts (from which no withholding or deductions will be taken). *See* Ex. 1 ¶ 9(A).

## V.    Service Awards

Plaintiffs intend to apply to this Court for a one-time Service Award to Named Plaintiffs for $15,000.00 each. *See id.* at ¶ 8(E). Plaintiffs also intend to apply to this Court for one-time Service Award of $1,000.00 to each of the following Opt-In Plaintiffs for their participation in collective discovery that included a deposition and document production: Delaney Anderson, Adam Cannedy, Jennifer Carlson, Jennifer Cintron, Amanda Clark, Myles Cooper, Ranah Farkhondeh, Felix Ferreira, Nicholas Ferrer, Tatiana Gregory, Benjamin Guzi, Olivia Hensal, Kelly Hibbard, Ashley Iannacone, Madjena Joseph, Francis Kilinski, Harrison Lessans, Thomas Manning, Eric O'Brien, Jillian O'Neil, Joel Painson, Claudia Ramirez, Paris Ramos, Junil Rodriguez, Angel Sanchez, Eric Shipper, Dannette Stephens, Donald Tagorda, Warner Washington II, and Saba Yehia (collectively, "Participating Opt-Ins"). *See id.* These payments are intended to recognize the time and effort that these individuals have expended on behalf of the Class in assisting Class Counsel with the prosecution and settlement of their and the Class Members' claims, and the consequent value they have conferred to the Class Members. *See id.*

## D.    Attorneys' Fees and Costs

Pursuant to the Agreement, Class Counsel will petition for attorneys' fees up to one-third (1/3) of the Maximum Settlement Amount and costs up to $100,000.00. *See id*. at ¶ 8(D). The attorneys' fees and costs application will be filed in conjunction with a Final Approval Motion with respect to the Agreement. If this Court reduces the attorneys' fees and lawsuit costs sought for any reason, only the reduced amount will be deemed to be class counsel's attorneys' fees and costs, and any remaining amount shall become part of the Net Settlement Amount. *See id.*

**E.    Proposed Schedule for Preliminary and Final Approval**

Plaintiffs request that, along with granting preliminary approval of the Settlement Stipulations, the Court adopt the schedule set forth below and more fully in the Settlement Stipulations, for the Parties to effectuate the various steps in the settlement approval process under the Settlement Stipulations:

| Event | Dates Proposed in Settlement Stipulations |
|---|---|
| EQX Provide Claims Administrator Class List | Within 7 calendar days of the Court's Issuance of Preliminary Approval Order |
| Claims Administrator to calculate Estimated Settlement Payment | 10 days after receipt of Class List |
| Counsel review calculations | 5 days after provided calculations |
| Claims Administrator to finalize Estimated Settlement Payments | 5 days after receiving comments from Counsel |
| Claims Administrator to Mail out Notice | 30 days after Preliminary Approval |
| Reminder Notice/Postcard | 45 days after Notice sent out |
| Objections Deadline | 45 days after Notice is mailed or up to 50 days for those who had Notice re-mailed |
| Claim/Request for Exclusion Deadline | 90 days after Notice mailed out or up to 80 days for those who had Notice re-mailed |
| Fed. R. Civ. P. 23 (e)(2) Final Approval Hearing | Date Determined by the Court (no less than 165 days after Preliminary Approval) |
| Order Granting Final Approval of the Class Action Settlement | Date Determined by Court |
| Effective Date | 31 days after Final Order (or if Appeal filed, the appeal has been dismissed or Final Order Affirmed or time to petition for review or certiorari with respect to appellate decision affirming Final Order has expired, if petition filed it has been denied or dismissed or affirms final order) |

| EQX to transfer Final Settlement Amount to QSF | EQX Shall Deposit 15% of the Final Settlement Amount or One Million Dollars and Zero Cents (whichever is greater) within 38 days after final approval or January 15, 2025 whichever is later; (ii) 40% of the Final Settlement Amount on or before January 15, 2026; (iii) 22.5% of the Final Settlement Amount on or before January 15, 2027; and (iv) 22.5% of the Final Settlement Amount on or before January 15, 2028. |
|---|---|
| Claims Administrator to make Payments to Participating Class Members (including Service Awards) (via check), Class Counsel & Claims Administrator (via wire) | 14 days from the funding of each of the four settlement payment installments |

Plaintiffs submit that the Settlement satisfies all the criteria for preliminary settlement approval under federal and state law in that it falls well within the range of possible approval, and is fair, reasonable, and adequate. Class Counsel believes that resolution of the class's claims is in the best interest of Class Members in light of all known facts and circumstances, including the significant risks and delays of litigation that are presented by the defenses and potential pre-trial and appellate issues EQX may assert. A resolution of the Claims at this stage – rather than following a year or more of Rule 23 certification motions and briefing, potential post-certification further discovery, summary judgment pretrial proceedings and potential trial, and the costs attendant upon and likely to be incurred through such activities – most certainly greatly inures to the benefit of Class Members. In addition, the Named Plaintiffs approve of and consent to the Settlement. Thus, Plaintiffs request that this Court grant this Unopposed Motion for Preliminary Approval of the Class and Collective Action Settlement.

## **ARGUMENT**

Plaintiffs respectfully seek preliminary approval of the Settlement. The settlement of class action cases is strongly encouraged by the courts. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-117 (2d Cir. 2005); *see also In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-CV-10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *Spann v. AOL Time*

*Warner, Inc.,* No. 02-CV-8238, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013). To approve a class action settlement, the Court must find that the settlement agreement is "fair, adequate, and reasonable, and not a product of collusion." *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000).  Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to the agreement.  *See Wal-Mart*, 396 F.3d at 116.

"Most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them."  *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2d Cir. 2001).  Settlement also spares the litigants the uncertainty, delay, and expense of trial while simultaneously reducing the burden on judicial resources.  *See Hernandez v. Merrill Lynch & Co., Inc.*, No. 11-CV-8472 (KBF)(DCF), 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (endorsing settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09-CV-10211(LTS)(HP), 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, No. 10-CV-2082 (JCF), 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case).

As discussed below, there is clear evidence that the Settlement is both fair, adequate and reasonable, and well within the range of possible outcomes and, thus, should be preliminarily approved.

## I.    Preliminary Class Certification Is Appropriate.

The Court should preliminarily grant class certification. To approve the class-wide settlement of Plaintiffs' claims, the Court must certify the Class, and here only for settlement purposes.  *See, e.g.*, *Chambery v. Tuxedo Junction Inc.*, 10 F. Supp. 3d 415, 419 (W.D.N.Y. 2014)

(granting conditional certification of classes for settlement purposes); *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 158 (E.D.N.Y. 2009) (same). The ultimate determination of whether a proposed class action settlement warrants approval resides in the court's discretion. *See Protective Comm. For Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). District courts have broad discretion in deciding whether to certify a Rule 23 class or FLSA collective. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1074, 1079 (2d Cir. 1995); *Chambery*, 10 F. Supp. 3d at 419; *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 72 (E.D.N.Y. 2004); *Cohen*, 262 F.R.D. at 158; *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3rd Cir. 1995) (holding that in a class action, the ".court plays the important role of protector of the [absent members'] interests, in a sort of fiduciary capacity.").

Pursuant to the Agreement, the Parties have stipulated, for settlement purposes only, to the following class: All individuals who have worked for Equinox Holdings, Inc. in New York as personal trainers in any tier level at any time from March 25, 2014, through July 31, 2024. This action has also already been conditionally certified as an FLSA collective action and federal Courts routinely certify such hybrid FLSA collectives and state law Rule 23 classes for settlement. *See, e.g.*, *Beckman*, 293 F.R.D. at 476 (certifying a federal collective under the FLSA and state law settlement classes under Rule 23 at preliminary and final approval stages); *Riedel v. Acqua Ancien Bath New York LLC*, No. 14-CV-7238 (JCF), 2016 WL 3144375, at *8 (S.D.N.Y. May 19, 2016) (certifying a federal collective under the FLSA and state law settlement class under Rule 23, and granting preliminary approval of the settlement agreement).

The Second Circuit has established that where common issues exist, courts should err in favor of granting class-action certification. *See Levitt v. J.P. Morgan Secs., Inc.*, 710 F.3d 454,

464 (2d Cir. 2013) (on appellate review, less deference given to decisions denying class certification than to decisions granting certification).

A. The Standards and Procedures for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides the mechanism for settling a putative Rule 23 class action, including, as here, through Rule 23 classes certified for settlement purposes only:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> (4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
>
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e); *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997); *Durett v. Hous. Auth. of City of Providence*, 896 F.2d 604 (1st Cir. 1990).

In determining whether preliminary approval is warranted, the primary issue before the Court is whether the proposed settlement is within the range of what might be found fair, reasonable, and adequate, so that notice of the proposed settlement should be given to class members, and a hearing scheduled to determine final approval. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 13.14, at 172-73 (2004) ("MANUAL FOURTH") (at the preliminary approval

stage, "The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). Preliminary approval permits notice of the hearing on final settlement approval to be given to the class members, at which time class members and the settling parties may be heard with respect to final approval. *See* MANUAL FOURTH at 322. Preliminary approval is therefore the first step in a two-step process required before a class action may be finally settled. *See id.* at 320. In some cases, this initial assessment can be based on information already known to the court and then supplemented by briefs, motions, and an informal presentation from the settling parties. *See id.* at 320-21.

In deciding whether a settlement should be preliminarily approved under Rule 23, courts look to whether there is a basis to believe that the final approval standard will be satisfied. *See id.* at 321 ("Once the judge is satisfied as to the certifiability of the class and the results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members.") The standard for final approval of a settlement consists of showing that the settlement is fair, reasonable, and adequate. *See, e.g.*, *Durett*, 896 F.2d at 604; *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 316-17 (3d Cir. 1998); *In re Gen. Motors Corp.*, 55 F.3d at 785. All the elements of Rule 23 are met with respect to the proposed Settlement. Therefore, class certification of this action for settlement purposes under Rule 23 is warranted.

## B.  The Prerequisites of Rule 23(a) Are Satisfied.

To maintain a lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure, a named plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

One or more members of a class may sue or be sued as representative parties on behalf

of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a).  All four elements are satisfied here.

> 1.    *The Class Is Sufficiently Numerous.*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "Impracticable does not mean impossible."  *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993).  Rather, it refers to the burden that would be imposed by joinder. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004). Generally, a potential class of forty members is presumed sufficiently numerous. *See Consol. Rail Corp.*, 47 F.3d at 483 ("[N]umerosity is presumed at a level of 40 members. . . .").

Numerosity is not disputed. To date, EQX has identified over two thousand individuals who would be members of the Class.  The joinder of these individuals is impracticable.  The more efficient use of judicial resources counsels in favor of class certification.  Therefore, the numerosity requirement is met.  *See Riedel*, 2016 WL 3144375 at *3 (numerosity requirement was met where parties asserted that there were approximately 130 class members).

> 2.    *There Are Common Questions of Law or Fact.*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The claims by each individual need not be identical, but there must be common questions of fact or law.  *See Port Authority Police Benev. Ass'n, Inc. v. Port Authority of New York and New Jersey*, 698 F.2d 150, 153-54 (2d Cir. 1983); *see also Riedel*, 2016 WL 3144375 at *3 ("Commonality is established where the claims share a common issue of law or fact").  Thus, commonality is established where "the disputed issue of law or fact occupies essentially the same

degree of centrality to the named plaintiffs' claims as to that of the other members of the proposed class." *Chambery*, 10 F. Supp. 3d at 420 (quoting *Dodge v. County of Orange*, 208 F.R.D. 79, 88 (S.D.N.Y. 2002)).  Courts have generally construed the commonality requirement liberally, requiring only one issue be common to all class members. *See Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992).

Here, commonality is met for settlement purposes because the claims of the Named Plaintiffs and those of the Class are predicated on common issues of alleged fact and law, including but not limited to whether: (i) EQX failed to pay Plaintiffs and the Class Members for all the overtime hours they worked; (ii) EQX failed to pay Plaintiffs and the Class Members for all the non-overtime hours they worked; (iii) EQX failed to issue Plaintiffs and the Class Members accurate wage statements; and (iv) Plaintiffs and the Class Members were manual laborers as defined by NYLL § 191.  *See*, *e.g.*, *Grande v. 48 Rockefeller Corp.*, 21-CV-1593, 2023 WL 5162418 (S.D.N.Y. Aug. 11, 2023) (commonality satisfied where plaintiffs and Class Members share common issues of fact and law, including whether defendants failed to pay proper overtime pay); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 66, 69-70 (S.D.N.Y. 2018) (same); *Prasker v. Asia Five Eight LLC*, No. 08-CV-5811 (MGC), 2010 WL 476009, at *2 (S.D.N.Y. Jan. 6, 2010) (same); *Reyes v. Buddha–Bar NYC*, No. 08-CV-02494, 2009 WL 5841177, at *2 (S.D.N.Y. May 28, 2009) (same); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-CV-4620, 2009 WL 5851465, at *3 (S.D.N.Y. Mar. 31, 2009) (same); *Castagna*, 2011 WL 2208614 at *3 (same); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (same).

### 3.    *The Claims Or Defenses Are Typical.*

Rule 23(a)(3) requires that a representative plaintiff's claims or defenses be "typical" of

those other class members.[2] A representative party establishes typicality when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022). Typicality does not require that the "'factual predicate of each claim be identical to that of all class members'; rather, it 'requires that the disputed issue of law or fact'" be considered equally central in both named class representative's claims as it is in the claims of the class members. *Attenborough v. Const. and Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 94 (S.D.N.Y.2006) (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)).

Here, typicality is satisfied because all Plaintiffs and Class Members worked for EQX in New York, performed the same job duties, were employed in substantially similar positions, were subject to the same pay policy/practices, and alleged wage-and-hour violations as a result. Thus, Plaintiffs' claims are "typical" of those in the Class. Further, the typicality requirement is met because the Plaintiffs' claims arise from an alleged common course of conduct by EQX in allegedly failing to pay them for overtime and straight-time hours worked, in violation of state law. *See, e.g.*, *Long v. HSBC USA Inc.*, No. 14-CV-6233, 2015 WL 5444651, at *7 (S.D.N.Y. Sept. 11, 2015) (typicality requirement satisfied where class members "were all employed by defendants[] to do similar work and . . . did not receive overtime pay under the same policy"); *Hernandez*, 2013 WL 1209563 at *3 (typicality satisfied where "[p]laintiffs' [overtime] claims arose from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris*, 859 F. Supp. 2d at 616 (same). Thus, for purposes of settlement, Plaintiffs contend that the case each Class Member would present would essentially be the same

---

[2] The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen.Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

(hence, commonality) and the Named Plaintiffs themselves would put on that case (hence, they contend their claims are typical).

### 4.    *Class Counsel and The Class Representatives Are Adequate.*

The final requirement of Rule 23(a) set forth in subsection (1)(4), requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In the Second Circuit, the requirement of adequate representation is met when two factors are met: (1) class counsel is qualified and able to conduct the proposed litigation, and (2) the class representative must not have interests antagonistic to those of the other class members. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

Here, both factors are satisfied. Plaintiffs' attorneys, proposed Class Counsel, are experienced and competent in complex litigation, specifically including the litigation and settlement of wage and hour cases, and have and will continue to act as vigorous advocates for their clients. *See* November 29, 2024 Affirmation of Robert J. Valli, Jr. ("Valli Aff."), annexed hereto as Exhibit 3, ¶¶ 33-34. In addition, the Named Plaintiffs contend that they have no interests antagonistic to the Class and have demonstrated allegiance to the litigation of the claims and Class through their patience and active participation in the litigation and settlement process on behalf of the Class.

### C.    The Prerequisites of Rule 23(b)(3) Are Satisfied.

Under Rule 23(b)(3) a class action may be maintained if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members

of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R Civ. P. 23(b)(3).

When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only. *See Amchem*, 521 U.S. at 618-620. A showing of manageability of trial is not required. *Id*. The test is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. at 623.

> 1. *Common Issues Predominate.*

Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues. *See, e.g.*, *Noble*, 224 F.R.D. at 345. Thus, Plaintiffs are not required to prove that each "elemen[t] of [their] claim [is] susceptible to classwide proof." *Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (quotations marks and citations omitted).

The Second Circuit recognizes that the need for some individualized determinations as to liability and/or damages do not defeat class certification. *See Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). To be sure, Rule 23(b)(3) does not require that all questions of law or fact be common. *See, e.g.*, *Sewell v. Bovis Lend Lease, Inc.*, No. 09-CV-6548 (RLE), 2012 WL 1320124, at *5 (S.D.N.Y. Apr. 16, 2012).

Here, all members of the Class are unified by common factual allegations—*i.e.*, that class members were subjected to the same allegedly unlawful wage and hour policies, which resulted in the non-payment of overtime and straight-time wages. The class members are also unified by a common legal theory—*i.e.*, that EQX's wage and hour policies allegedly violate the FLSA and NYLL. These common issues predominate over any issues affecting only individual class members. *See*, *e.g.*, *Zivkovic*, 329 F.R.D. at 75 ("Where plaintiffs' claims arise from a common

19

policy and rely on a common legal theory, the predominance requirement is satisfied because the need for individualized determinations of the putative class members' damages does not, without more, preclude class certifications.") (internal quotation marks omitted)

### 2. *Class Settlement is Superior to Other Methods.*

The superiority requirement is also satisfied. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in a particular forum. *See* Fed. R. Civ. P. 23(b)(3).

Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for Class Members, particularly those who lack the resources to bring their claims individually. Furthermore, settling as a group gives Class Members an opportunity to obtain prompt, predictable, and certain relief, whereas individualized litigation carries with it great uncertainty, risks, and costs. Class settlement would also relieve judicial burdens that would be caused by adjudication of the same issues in multiple trials. *See Beckman*, 293 F.R.D. at 473-74 ; *see also*, *e.g.*, *Zivkovic*, 329 F.R.D. at 76. Finally, concentrating the litigation in this Court is desirable because the wrongful conduct alleged occurred within this jurisdiction.

Accordingly, Plaintiffs contend that the Class should be preliminarily certified under Rule 23(b)(3) for settlement purposes.

### D. Rule 23(g) Is Satisfied.

Rule 23(g) requires a court that certifies a class to appoint class counsel, taking into consideration four factors: (i) the work counsel has done in identifying or investigating potential

claims in the action; (ii) the counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Proposed Class Counsel, Valli Kane & Vagnini LLP, Joseph & Kirschenbaum LLP, Norris McLaughlin, P.A., Law Office of Jacob Aronauer, and Beattie Padovano, LLC satisfy these criteria, which will be further illuminated in their Motion for Final Approval. First, Plaintiffs' counsel has spent thousands of hours litigating this complex wage-and-hour case, including engaging in extensive collective discovery. *See* Valli Aff. at ¶¶ 11-12. Second, Plaintiffs' counsel has experience in prosecuting and litigating large-scale wage and hour collective and class actions such as this. *See id*. at ¶ 33-34. Third, Plaintiffs' counsel has extensive knowledge of this area of the law, having collectively prosecuted hundreds of wage and hour actions on behalf of workers in the past. *See id*. Fourth, Plaintiffs' counsel has the resources to effectively prosecute this action as demonstrated by four years of litigation and the settlement.

## II.     The Settlement Is Non-Collusive, Fair, Adequate And Reasonable.

The Court should approve the settlement as non-collusive, fair, adequate, and reasonable. Court approval is required for settlements of FLSA claims. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Similarly, Rule 23(e) requires court approval of settlement of class actions. *See* Fed. R. Civ. P. 23(e). There is a "strong judicial policy in favor of settlements, particularly in the class action context," and a settlement should be approved if it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (quoting *In re PaineWebber Ltd. Partnerships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998); *Joel A.*, 218 F.3d at 138. In deciding whether to approve a settlement, a court must look at both "the settlement's terms and the negotiating process leading to the settlement." *Id*.

21

Because a collective action under the FLSA requires individuals to opt in before they are bound (rather than opt-out in order not to be bound, as in the Rule 23 class action context), "settlement of a collective action does not implicate the same Due Process concerns as the settlement of a class action," and therefore is subject to less searching scrutiny. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014). In most cases, a settlement that meets the standards of Rule 23 will also "reflect a fair and reasonable compromise of disputed issues" under the FLSA. *Id*. The Court should "therefore focus on the standards of Rule 23" when deciding whether to approve a class settlement agreement. *Riedel*, 2016 WL 3144375 at *6.

Under Rule 23, before granting final approval of a proposed class action settlement, the Court will be asked to find that the settlement is fair, reasonable, and adequate. *See, e.g.*, Fed. R. Civ. P. 23(d); *Diaz v. E. Locating Serv. Inc.*, No. 10-CV-2082 (JCF), 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010). Courts examine procedural and substantive fairness considering the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *see also Spann*, 2005 WL 1330937 at *6 ("[P]ublic policy favors settlement, especially in the case of class actions."). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177 at *4; *see In re Top Tankers, Inc. Sec. Litig.*, No. 06-CV-13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Courts in the Second Circuit "determine whether the settlement's terms are fair, adequate and reasonable per the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)." *Diaz*, 2010 WL 5507912 at *3; *see also Riedel*, 2016 WL 3144375 at *7. The "*Grinnell* factors" include, among others: (1) the plaintiff's range of possible recovery, (2) the extent to which settlement will enable the parties to avoid the burdens and expenses of trial, (3) the

seriousness of the litigation risks faced by the parties, (4) the settlement agreement is the product of arms-length bargaining between experienced counsel, and (5) the possibility of fraud or collusion. *Grinnell Corp.*, 495 F.2d at 463.

Here, all the *Grinnell* factors that can be examined at this stage demonstrate that the proposed Settlement is fair, adequate, and reasonable, and should thus be preliminarily approved. First, with respect to the Plaintiffs' range of possible recovery, Plaintiffs believe that the value of the Settlement is fair and reasonable given the various challenges facing Plaintiffs and the risk of recovery. Specifically, based upon the multiple risks continued litigation would entail, including the dispute between the parties as to whether or not the Class Members were exempt from overtime pay pursuant to the commissioned sales employee exemption or whether or not EQX had knowledge of any unpaid off-the-clock work, as well as the risk that Plaintiffs and the putative class could recover nothing in light of representations made by EQX as a result of its post-COVID-19 financials[3], Plaintiffs believe the proposed Settlement is fair and reasonable. *See Diaz*, 2010 WL 5507912 at *5 (finding that settlement was within range of reasonableness given various challenges, risks, and costs continued litigation would entail); *Lizondro-Garcia*, 300 F.R.D. at 180 (explaining that "the [settlement] award compensates plaintiffs almost immediately and removes the uncertainty that litigation necessarily entails"). Thus, this factor weighs in favor of approving the Settlement.

---

[3] To resolve the matter, Plaintiffs were willing to consider EQX's financial status as a factor in determining what would constitute a reasonable settlement, but made clear that they could not compromise Plaintiffs' recovery on the grounds of limited funds unless counsel conducted thorough due diligence to confirm that additional assets were truly not available. The parties engaged in numerous discussions about EQX's financial condition over the course of several months via phone and emails. Plaintiffs determined that it was in the best interest of all class members to reach a settlement that would allow for distribution of EQX's available assets before they were potentially encumbered by numerous other creditors and lenders. In November 2024, for settlement purposes only and pursuant to the Confidentiality Agreement between the parties, EQX permitted Plaintiffs' counsel to inspect its financial records for the last two years, including its quarterly cash flow statements, income statements and balance sheets. As a result of Plaintiffs' review of the financial documents made available to them, as well as Plaintiffs own research into EQX's assets, Plaintiffs are confident in EQX's representations regarding its financial condition.

Second, with respect to the extent to which settlement will enable the parties to avoid the burdens and expense of trial, the prosecution of this case would be lengthy and expensive. If this Settlement is not approved, the Parties face an extended and costly battle regarding potential decertification of the claims asserted under the FLSA and class certification of the claims asserted under the NYLL. The Parties would have to conduct additional expensive discovery (including expert discovery), engage in summary judgment motion practice, and potentially prepare for a trial that would likely be lengthy and costly. Further, if the Parties do not settle the Plaintiffs' claims, it would likely take additional years and substantial legal fees before reaching final resolution of those claims, including exhaustion of all appeals. Thus, these factor weighs in favor of approving the Settlement. *See Diaz*, 2010 WL 5507912 at *4 (concluding that this factor weighs in favor of approving the settlement because "[l]itigation through trial would be complex, expensive, and long"); *Riedel*, 2016 WL 3144375 at *7 (noting that settlement would avoid additional expense and delay consequent to motion practice and a fact-intensive trial).

Third, with respect to the risks faced by the Parties, litigation—and especially class actions—inherently involve risks. *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. at 126. While Plaintiffs believe they would be successful in obtaining a Rule 23 class on their claims/defeat any motion for FLSA collective decertification and would prevail on the merits of these claims, EQX believes otherwise. This indicates that it could certainly mount a strong challenge. In addition, while Plaintiffs believe they could establish that EQX's actions were in willful violation of the FLSA, and would thus extend the limitations period to three years, EQX has vigorously challenged such an allegation. Consequently, "the fact-intensive nature of Plaintiffs' claims and Defendant's affirmative defenses presents risk," whereas, "[t]he settlement eliminates this uncertainty." *Diaz*, 2010 WL 5507912 at *5. Accordingly, this factor weighs in favor of approving the Settlement.

24

Fourth, with respect to the Settlement being the product of arms-length bargaining between experienced counsel and fifth not the product of fraud or collusion, the Settlement is the result of protracted, good-faith negotiations between experienced and informed counsel on both sides. The proposed Settlement was not the product of collusive dealings, but, rather, was the result of vigorous litigation and multiple rounds of negotiations over three years by experienced and qualified counsel, including months of negotiations following the second failed mediation with Michael Russell, an experienced employment law mediator.[4] Specifically, Plaintiffs' counsel successfully defended a motion to dismiss and won a motion for conditional collective certification, reviewed thousands of pages of payroll data, reviewed thousands of electronic communications, reviewed hundreds of pages of policy-related documents, took/defended over 30 depositions, and engaged in two full-day mediations. Thus, Plaintiffs contend the Settlement was reached as the result of good-faith, arms-length dealings (and there is no evidence or argument to the contrary). Both Plaintiffs and EQX are represented by experienced and competent counsel recognized as skilled practitioners of class-action wage-and-hour litigation. *See* Valli Aff. ¶¶ 33-34. Class Counsel has obtained significant court-approved settlements of similar class action wage and hour cases. *See* Valli Aff. ¶ 33. Thus, these factors weigh in favor of approving the Settlement.

For these reasons, Plaintiffs believe that the Settlement is a fair and reasonable outcome, and will result in a reasonable payment to each Class/Collective Member who becomes a Participating Class Member. The potential individual payments to members of the Class will be calculated based upon an allocation formula that considers the number of individuals included in the Class and their number of weeks worked, as well as PT sessions performed, so that fairness in potential payments will result. Further, no Participating Class Member shall receive less than

---

[4] The first mediation was conducted by Ruth Raisfeld who is also an extremely knowledgeable well practiced mediator with both class and individual employment and wage and hour law experience.

$25.00. *See* Ex. 1 ¶ 8(F)(i)(d).

The result of the proposed Settlement is also well within the reasonableness standard. Plaintiffs' counsel also believes that the result is appropriate when considering the difficulty and risks of litigating collective and/or class claims that involve allegations of the failure to pay overtime under the FLSA and applicable state laws. Such is coupled with the possibility that EQX would be unable to pay a judgment if one was award that encompassed the entirety of the best-case recovery Plaintiffs would potentially seek at trial given its secured debt, which would result in a dramatically reduced recovery, if any recovery would then be feasible at all, for the Class members.

According to Plaintiffs' counsel's calculations based upon collective discovery, the Class Members' estimated unpaid wages equate to $11,738,064.00. With liquidated damages, the total damages for Plaintiffs' and the Class Members' unpaid wage claims are $23,476,128.00. The penalties for the NYLL § 195 and the liquidated damages for the NYLL § 191 claims are well into the hundreds of millions.

Class Counsel and Plaintiffs believe that the Settlement Amount is reasonable given the circumstances. Specifically, while in Plaintiffs' view, the recovery could possibly be greater if the Class were to fully succeed on their claims at trial and survive an appeal, there is, of course, the possibility of zero recovery should EQX prevail on its defenses and the certain possibility that a judgment on the NYLL § 195 and NYLL § 191 could lead to no recovery for the unsecured Class Members.

The value of the Settlement, approximately 102% of the Class Members' estimated back pay and 66% of their back pay after attorneys' fees, costs, and service awards, exceeds that which is typically recovered in other approved wage and hour settlements. *See Del Rio v. 257 SGPizza*

26

*Corp.*, No. 19-CV-3426 (OTW), 2023 WL 4583652, at *1 (S.D.N.Y. July 18, 2023) ("Of the total settlement amount, Plaintiff would receive . . . approximately 16% of his owed back wages, not including any liquidated damages or penalties. Courts in this district have approved settlement amounts within this range."); *Zorn-Hill v. A2B Taxi LLC*, No. 19-CV-1058 (KMK), 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020) (approving a settlement amount equal to 12.5% of the plaintiff's best-case scenario recovery); *Santos v. YMY Mgmt. Corp.*, No. 20-CV-1992 (JPC), 2021 WL 431451, at *1 (S.D.N.Y. Feb. 8, 2021) (approving settlement agreement equal to 18% of Plaintiff's total alleged damages); *Morales v. City Scrap Metal, Inc.*, No. 19-CV-6682, 2022 WL 20539979, at *3 (E.D.N.Y. Nov. 16, 2022) (approving a total settlement representing 21% of the plaintiff's estimated recovery with one third being allocated towards attorneys' fees); *Carnero v. Bagel Mentsch, Inc.*, No. 1:21- CV-0781, 2022 WL 3446335 (E.D.N.Y. Aug. 17, 2022) (approving a total settlement representing 29% of the plaintiff's estimated recovery with one third being allocated towards attorneys' fees).

There is also an additional level of protection for the Class Members not typically afforded in a claims-made class settlement. Here, the Class Members will be informed of their individual settlement amount when they receive the Notice. Should they disagree with their amount, they may elect not to return a Claim Form and not release any claims against EQX. Or, if they are Opt-in Plaintiffs, they may opt-out and not release any claims against EQX. Thus, they may file their own individual action against them should they wish to do so. This alleviates any concern that Class Members are automatically bound to a settlement they may disagree with.

## III.    The Proposed Form of Notice Satisfies Due Process.

Under Fed. R. Civ. P. 23(e), settlement class members are entitled to notice of any proposed settlement before it is ultimately approved by the Court.

A settlement notice must "fairly apprise the prospective members of the class of the terms

of the proposed settlement and of the options that are open to them in connection with the proceedings." *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982). It must also be "understood by the average class member." *Wal-Mart*, 396 F.3d at 114 (internal citations omitted).

Here, the proposed Notice, attached hereto as Exhibit 1-A, provides clear and accurate information as to the nature and principal terms of the Settlement, including the approximate amount of monetary relief the Settlement will provide members of the Class should they become a Participating Class Member (as well as an explanation of the method for allocating the settlement funds to Class Members and of the claims process), the procedures and deadlines for opting-in and submitting a Claim Form, the process for opting-out if they are an Opt-in Plaintiff,[5] how to submit objections, and the consequences of taking or foregoing the various options available to members of the Class. The Notice provides details on the date, time and place of the final approval hearing. *See* MANUAL FOURTH at § 21.312. The proposed Notice also sets forth the service awards and maximum amount of attorneys' fees and costs which may be sought by Class Counsel.

The Parties have agreed in the Settlement that the Notice and accompanying Claim Form will be sent via first class U.S. Mail, email, and a text message notification about where to locate the Notice to the Class Members' last known addresses/email addresses and telephone numbers (to the extent EQX is in possession of email and telephone numbers). The Parties have also agreed to post the Notice online. If a Notice is returned by the post office as undeliverable, the claims administrator will perform a computerized skip trace search. The claims administrator will then promptly re-mail the Notice and accompanying Claim Form to the Class Members for whom a Notice was returned and a new address is found. There will be a reminder postcard sent and the Claim Form may be submitted via email, U.S. mail, or via the website. Accordingly, the proposed

---

[5] There is no opt-out process for non-Opt-in Plaintiffs because non-Opt-in Plaintiffs will not release any claims against EQX unless they submit claim forms.

form of notice complies with the Second Circuit's standard of "reasonableness" required of a settlement-class notice disseminated under the authority of the Court.  *See Wal-Mart*, 396 F.3d at 113-14.

**IV.    The Attorneys' Fees and Costs Should be Preliminarily Approved.**

The Court should preliminarily approve the attorneys' fees and costs. "Under the common fund doctrine, attorneys who create a fund for the benefit of a class of plaintiffs are entitled to reasonable compensation from that fund." *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 84 (2d Cir. 2010).  An attorneys' fee award of one-third of the fund "is the customary percentage in FLSA cases." *Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904 (JCF), 2016 WL 3636659 (S.D.N.Y. June 29, 2016) (collecting cases); *see also Clem v. Keybank, N.A.*, No. 13-CV-789 (JCF), 2014 WL 2895918, at *9 (S.D.N.Y. June 20, 2014) ("Class Counsel's request for 33% of the [$3,500,000] fund is reasonable and consistent with the norms of class litigation in this circuit.") (internal quotations and citations omitted).

Although a Court may use the lodestar calculation to calculate fees in a common fund case, the trend in the Second Circuit in class action cases is to apply the percentage method because it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation."  *Wal-Mart*, 396 F.3d at 121 (internal citations and quotations omitted); *see also Viafara v. MCIZ Corp.*, 2014 WL 1777438, at *9 (S.D.N.Y. May 1, 2014) (explaining that in wage and hour class action lawsuits, public policy favors using a percentage of the common fund to calculate the attorneys' fees); *Clem*, 2014 WL 2895918 at *9 (same).

Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg,* No. 08-CV-7840 (PAC), 2010 WL 69359, at *3 (S.D.N.Y.

Jan. 7, 2010).  Moreover, the FLSA and state wage and hour statutes are remedial statutes, the

purposes of which are served by adequately compensating attorneys who protect wage and hour

rights. *See Sand*, 2010 WL 69359 at *3; *Clem*, 2014 WL 2895918 at *8.

      Plaintiffs' Counsel will fully brief the issue of fees in its application to the Court at the time

of the application for Final Approval of the Settlement.

**V.     The Service Awards Should Be Preliminarily Approved.**

      Service awards are common in class action cases and serve to "compensate plaintiffs for

the time and effort expended in assisting the prosecution of the litigation, the risks incurred by

becoming and continuing as a litigant, and any other burdens sustained by the plaintiff[s]." *Yuzary*

*v. HSBC Bank USA, N.A.*, No. 12-CV-3693 (PGG), 2013 WL 5492998, at *12 (S.D.N.Y. Oct. 2,

2013) (quoting *McMahon v. Olivier Cheng Catering and Events, LLC*, No. 08-CV-8713 (PGG),

2010 WL 2399328, at *9 (S.D.N.Y. March 3, 2010)) (internal quotation marks omitted). "Service

awards fulfill the important purpose of compensating plaintiffs for the time they spend and the

risks they take." *Yuzary*, 2013 WL 5492998, at *12 (citing *Massiah v. MetroPlus Health Plan,*

*Inc.*, No. 11-CV-5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012)).  The Second Circuit

recently affirmed that service awards are permissible in class action settlements.  *Moses*, 79 F.4th

at 245, 253-56.  In fact,

> the equitable-treatment requirement [of Rule 23(e)(2)(D)] protects the interests of
> class representatives who play an active role in the litigation – often providing the
> background information that forms the basis of the lawsuit, engaging in fact
> discovery, and devoting considerable time and effort into the settlement process –
> "from having absent class members free ride on their efforts."

*Id*. at 245.

      Here, the Service Awards further both purposes.  First, the Named Plaintiffs have met with

counsel, provided and reviewed documents, participated in forming the theory of the case,

participated in discovery (including attending full-length depositions), and attended the mediation.

Second, Named Plaintiffs undertook this role without regard to the possibility of any risk of retaliation and impact on future employment prospects. Participating Opt-Ins, who are to receive a nominal Service Award, participated in collective discovery, including producing documents (which in some cases were voluminous) and sitting for a deposition, all of which aided in the litigation and settlement of this action.

For these reasons, Plaintiffs will request reasonable Service Awards for Named Plaintiffs and Participating Opt-Ins, which will be set forth in the Final Approval Motion.

**VI.     A Final Approval Hearing Should be Scheduled.**

The Court should schedule a final approval hearing to determine whether final approval of the Settlement is proper.  The final approval hearing will provide a forum to explain, describe, or challenge the terms and conditions of the Settlement, including fairness, adequacy, and reasonableness of the Settlement.  At that time, Class Counsel will present their final application for their fees pursuant to Rule 23(h) as well as for the proposed Service Awards. Accordingly, Plaintiffs request that the Court schedule the final approval hearing for no earlier than 165 calendar days from the date of this motion, as required by 28 U.S.C. 1715(d).

<u>**CONCLUSION**</u>

For the foregoing reasons, the Plaintiffs respectfully request that this Court enter a Preliminary Approval Order, which, *inter alia*: (i) asserts jurisdiction over the claims alleged, the Parties in this action, and the implementation and administration of the Settlement; (ii) approves notice of the Settlement set forth in the Agreement as the Settlement falls within the range of reasonableness, and may be adjudicated to be fair, reasonable, and adequate within the meaning of Fed. R. Civ. P. 23 and the Class Action Fairness Act of 2005 ("CAFA"), upon final consideration thereof at the Final Approval Hearing; conditionally certifies the Rule 23 Class for settlement purposes pursuant to Rule 23 of the Federal Rules of Civil Procedure; (iii) appoints the

31

Named Plaintiffs as class representatives who, together with Class Counsel (as defined in the Settlement Stipulations), shall be authorized to act on behalf of the Class with respect to the claims asserted in the litigation and the Agreement; (iv) approves, as to form and content, the Notice, Claim Form, and Reminder attached as Exhibits 1-A, 1-B, and 1-C to the Agreement and authorizes the first-class mailing, texting, emailing, and website posting of the Claim Forms to all members of the Class; (v) appoints Valli Kane & Vagnini LLP, Joseph & Kirschenbaum LLP, Norris McLaughlin, P.A., Law Office of Jacob Aronauer, and Beattie Padovano as Class Counsel for the Class pursuant to Federal Rule of Civil Procedure 23; (vi) approves and appoints Simpluris as the third-party claims administrator who will administrate this Settlement; (vii) sets a 90 calendar day deadline (from the date Notice is postmarked to members of the Class) for the execution and return of fully completed Claim Forms, requests for exclusion, and 45 days for objections; (viii) approves the mailing of a Reminder thirty days prior to the end of the Claim Period to members of the Class who have not filed a Claim Form; and (ix) sets the final approval hearing for a date no earlier than one hundred sixty five (165) calendar days after preliminary approval is granted by this Court.

Dated:         November 29, 2024
               Garden City, New York

                                        Respectfully submitted,

                                        */s/ Alexander M. White*
                                        James A. Vagnini
                                        jvagnini@vkvlawyers.com
                                        Alexander M. White
                                        awhite@vkvlawyers.com
                                        **Valli Kane & Vagnini LLP**
                                        600 Old Country Road, Suite 519
                                        Garden City, New York 11530
                                        T: (516) 203-7180
                                        F: (516) 706-0248

                                        D. Maimon Kirschenbaum, Esq.

32

maimon@jk-llp.com
Denise A. Schulman, Esq.
denise@jk-llp.com
**Joseph & Kirschenbaum LLP**
32 Broadway, Suite 601
New York, New York 10004
T: (212) 688-5640
F: (212) 981-9587

Jacob Aronauer, Esq.
jaronauer@aronauerlaw.com
**Law Office of Jacob Aronauer**
225 Broadway, 3rd Floor
New York, New York10007
T: (212) 323-6980
F: (212) 233-9238
jaronauer@aronauerlaw.com

Mariya Gonor, Esq.
mgonor@beattielaw.com
Kimberley A. Brunner, Esq.
kbrunner@beattielaw.com
**Beattie Padovano, LLC**
200 Market Street, Suite 401
Montvale, New Jersey 076545
T: (201) 799-9736
F: (201) 573-9736

**ATTORNEYS FOR PLAINTIFFS**