**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MONIQUE KATZ and YEKATERINA
SKIDANENKO, individually and on behalf of all
others similarly situated,

                    Plaintiffs,

     v.

EQUINOX HOLDINGS, INC.,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No.:
1:20-CV-09856 (DEH)(RWL)

#### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR CERTIFICATION OF THE SETTLEMENT CLASS, FINAL APPROVAL OF CLASS AND FLSA COLLECTIVE ACTION SETTLEMENT, APPROVAL OF PAYMENT OF SERVICE AWARDS, ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT .................................................................................. 1

PROCEDURAL HISTORY......................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 2

I.    EQX's Pay Policy and Alleged Violations ....................................................... 3

SUMMARY OF THE SETTLEMENT ....................................................................... 4

I.    Definition of Class .......................................................................................... 4

II.   Claims Administration ..................................................................................... 4

III.                    Notice ................................................................................... 4

IV.                     Release ................................................................................. 8

V.    Qualified Settlement Fund .............................................................................. 8

VI.                     Plan of Allocation ............................................................... 9

VII.                    Service Awards .................................................................. 10

VIII.                   Attorneys' Fees and Costs ................................................. 10

ARGUMENT ............................................................................................................. 11

I.    Legal Standards for Final Approval of Class Action Settlements ................... 11

II.   APPROVAL UNDER **FED. R. CIV. P.** 23......................................................... 12

   A.                   Rule 23(a) Is Satisfied.......................................................... 13

        *1.*              *The Class Is Sufficiently Numerous* ................................ 13

        *2.*              *There Are Common Questions of Law or Fact*............... 13

        *3.*              *The Claims or Defenses Are Typical* .............................. 15

        *4.*              *Class Counsel and The Class Representatives Are Adequate* ...... 16

   B.                   The Prerequisites of Rule 23(b)(3) Are Satisfied ......................... 16

        *1.*              *Common Issues Predominate*.......................................... 17

        *2.*              *Class Settlement is Superior to other Methods*............... 18

III.  The Settlement is Non-Collusive, Fair, Adequate and Reasonable ................... 19

   A.                   Procedural Fairness....................................................... 20

   B.                   Substantive Fairness....................................................... 21

IV.                     APPROVAL OF THE FLSA SETTLEMENT ........................ 30

V.    REQUESTS FOR AN AWARD OF ATTORNEY'S FEES, EXPENSES, AND
      ADMINISTRATION FEES SHOULD BE APPROVED ................................. 31

   A.                   Attorneys' Fees and Expenses ....................................... 31

i

| | | | |
|---|---|---|---|
| 1. | | *The time and labor expended by counsel* | *34* |
| 2. | | *The magnitude and complexities of the litigation* | *36* |
| 3. | | *The risk of the litigation* | *37* |
| 4. | | *The Quality of Representation* | *37* |
| 5. | | *The requested fee in relation to the settlement* | *39* |
| 6. | | *Public Policy Considerations* | *40* |
| 7. | | *Lodestar Cross-Check* | *41* |
| B. | | Administrative Fees | 43 |
| Conclusion | | | 43 |

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ai Lin v. Benihana Inc.*
No. 18-CV-11226, 2020 WL 13996865 (S.D.N.Y. Feb. 20, 2020)..........................................30

*A.H. Phillips v. Walling*
324 U.S. 490 (1945)...........................................................................................................41

*Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*
133 S. Ct. 1184 (2013).......................................................................................................18

*Ansoumana v. Gristede's Operating Corp.*
201 F.R.D. 81 (S.D.N.Y.2001)...........................................................................................13

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*
522 F. 3d 182 (2nd Cir. 2008)............................................................................................40

*Attenborough v. Const. and Gen. Bldg. Laborers' Local 79*
238 F.R.D. 82 (S.D.N.Y.2006)...........................................................................................16

*Barrentine v. Arkansas-Best Freight Systems, Inc.*
*450 U.S. 728 (1981)*..........................................................................................................37

*Barrows v. Becerra*
24 F.4th 116 (2d Cir. 2022.) ..............................................................................................16

*Beckman v. Keybank, N.A.*
293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................13, 19, 33, 36-37, 41, 43

*Blum v. Stenson,*
465 U.S. 886 (1984)...........................................................................................................33

*Boeing Co. v. Van Gemert*
444 U.S. 472, (1980)..........................................................................................................33

*Brown et. al v. Medicis*
13-CV-01345 (D.D.C., July 11, 2016).................................................................................38

*Calle v. Elite Specialty Coatings Plus, Inc.*
No. 13-CV-6126 (NGG)(VMS), 2014 WL 6621081(E.D.N.Y. Nov. 21, 2014).....................35

*Caridad v. Metro-North Commuter R.R.*
191 F.3d 283 (2d Cir. 1999)...............................................................................................16

*Carnero v. Bagel Mentsch, Inc.*

No. 1:21- CV-0781, 2022 WL 3446335 (E.D.N.Y. Aug. 17, 2022) ........................................ 27

*Castagna v. Madison Square Garden, L.P.*
    No. 09-CV-10211 (LTS)(HP), 2011 WL 2208614 (S.D.N.Y. June 7, 2011)..................... 12, 15

*Cheeks v. Freeport Pancake House, Inc.*
    796 F.3d 199 (2d Cir. 2015)................................................................................................. 21

*Clem v. Keybank, N.A.*
    No. 13-CV-789 (JCF), 2014 WL 2895918 (S.D.N.Y. June 20, 2014) ..................................... 34

*Consol. Rail Corp. v. Town of Hyde Park*
    47 F.3d 473 (2d Cir. 1995)................................................................................................... 14

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*
    502 F.3d 91 (2d Cir. 2007)................................................................................................... 17

*Damassia v. Duane Reade, Inc.*
    250 F.R.D. 152 (S.D.N.Y. 2008) ........................................................................................... 32

*D'Amato v. Deutsche Bank*
    236 F.3d 78 (2d Cir.  2001).................................................................................................. 20

*D'Angelo v. Hunter Bus. Sch., Inc.*
    No. 21-CV-3334, 2023 U.S. Dist. LEXIS 131029 (E.D.N.Y. July 28, 2023)................... 27, 40

*Deas v. Alba Carting & Demolition Inc.*
    No. 17-CV-3947, 2021 U.S. Dist. LEXIS 38803 (S.D.N.Y. Mar. 2, 2021) ............................ 30

*Del Rio v. 257 SGPizza Corp.*
    No. 19-CV-3426 (OTW), 2023 WL 4583652 (S.D.N.Y. July 18, 2023) ................................. 27

*Delijanin v. Wolfgang's Steakhouse Inc.*
    No. 18-CV-7854, 2021 U.S. Dist. LEXIS 27462 (S.D.N.Y. Feb. 12, 2021)...................... 27, 40

*Denney v. Jenkens & Gilchrist*
    230 F.R.D. 317 (S.D.N.Y. 2005) ........................................................................................... 29

*Diaz v. E. Locating Serv. Inc.*
    No. 10-CV-2082 (JCF), 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010)...... 12, 20, 23-25, 33, 43

*Dodge v. County of Orange*
    208 F.R.D. 79 (S.D.N.Y. 2002) ............................................................................................. 15

*Emeterio v. A&P Rets. Corp.*
    No. 20-CV-970, 2022 U.S. Dist. LEXIS 14598 (S.D.N.Y. Jan. 26, 2022) ............................. 27

iv

*Febus v. Guardian First Funding Group, LLC*
   870 F. Supp. 2d 337 (S.D.N.Y. 2012).................................................................................. 35

*Flores v. CGI Inc.*
   No. 22-CV-350, 2022 U.S. Dist. LEXIS 192572 (S.D.N.Y. Oct. 21, 2022) ............... 22, 30, 44

*Frank v. Eastman Kodak Co.*
   228 F.R.D. 174 (W.D.N.Y. 2005).................................................................................... 12, 29

*Garcia v. Atlantico Bakery Corp.*
   No. 13-CV-1904 (JCF), 2016 WL 3636659 (S.D.N.Y. June 29, 2016) ................................. 34

*Gen. Tel. Co. of Southwest v. Falcon*
   457 U.S. 147 (1982)............................................................................................................ 16

*Gilliam v. Addicts Rehab. Ctr. Fund*
   05-CV-3452 (RLE), 2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008)...................... 12

*Goldberger v. Integrated Resources, Inc.*
   209 F.3d 43 (2d Cir. 2000)............................................................................................. 35, 42

*Grande v. 48 Rockefeller Corp.*
   21-CV-1593, 2023 WL 5162418 (S.D.N.Y. Aug. 11, 2023)................................................ 15

*Green v. Wolf Corp.*
   406 F.2d 291 (2d Cir. 1968)............................................................................................... 19

*Guippone v. BH S&B Holdings, LLC*
   No. 09-CV-01029 (CM) 2011 U.S. Dist. LEXIS 126026 (S.D.N.Y. Oct. 28, 2011) .............. 29

*Guthrie v. Rainbow Fencing Inc.*
   113 F.4th 300 (2d Cir. 2024) ............................................................................................. 23

*Hernandez v. Immortal Rise, Inc.*
   306 F.R.D. 91 (E.D.N.Y. 2015) ...................................................................................... 7, 26

*Hernandez v. Merrill Lynch & Co., Inc.*
   No. 11-CV-8472, 2013 WL 1209563 (S.D.N.Y. Mar. 21, 2013) ...................................... 16, 41

*Hicks v. Morgan Stanley & Co.*
   2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 19, 2005) ..................................................... 42

*Hines v. CBS Television Studios*
   15-CV-07882 (RWL) (S.D.N.Y. Feb. 05, 2019) ............................................................. 31, 38

*In re Austrian and German Bank Holocaust Litig.*
  80 F.Supp.2d 164 (S.D.N.Y.2000) ........................................ 12

*In re Boesky*
  888 F. Supp. 551 (S.D.N.Y. 1995) ........................................ 42

*In re Drexel Burnham Lambert Group, Inc.*
  960 F.2d 285 (2d Cir. 1992)................................................ 17

*In re LinkedIn User Privacy Litig.*
  309 F.R.D. 573 (N.D. Cal. Sept. 15, 2015)............................... 8

*In re Global Crossing Sec. & ERISA Litig.*
  225 F.R.D. 436 (S.D.N.Y. 2004). ......................................... 38

*In re Tyco International MDL Litigation*
  535 F. Supp. 2d 249 (D.N.H. 2007).................................. 33, 42

*In re Volkswagen*
  784 F. Supp. 2d 35 (D. Mass. 2011) ................................. 34, 42

*In re Tenaris S.A. Sec. Litig.*
  No. 18-CV-7059, 2024 U.S. Dist. LEXIS 72980 (E.D.N.Y. Apr. 22, 2024) ......................... 22

*In re Top Tankers, Inc. Sec. Litig.*
  No. 06-CV-13761, 2008 WL 2944620 (S.D.N.Y. July 31, 2008) ........................................ 20

*Indergit v. Rite Aid,*
  293 F.R.D. 632 (S.D.N.Y. 2013)……………………………………………...38

*Joel A. v. Giuliani*
  218 F.3d 132 (2d Cir. 2000)................................................ 21

*Khait v. Whirlpool Corp.*
  No. 06-CV-6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ....................... 31, 35

*Lizondro-Garcia v. Kefi LLC*
  300 F.R.D. 169 (S.D.N.Y. 2014) .................................. 21, 24, 31

*Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*
  No. 13-CV-5008 (RJS) (S.D.N.Y. Dec. 22, 2015) ....................... 39

*Long v. HSBC USA Inc.*
  No. 14-CV-6233, 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015)............................ 16

*Maley v. Dale Global Techs. Corp.*
186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................... 23, 40

*Massiah v. MetroP/us Health Plan, Inc.*
No. 11-CV-5669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ........................... 29

*McDaniel v. County of Schenectady,*
595 F.3d 411 (2d Cir. 2010)........................................................................... 33

*McMahon v. Olivier Cheng Catering & Events, LLC*
No. 08-CV-8713, 2010 WL 2399328 (S.D.N.Y. Mar. 3, 2010) ........................ 33, 41

*Meza v. 317 Amsterdam Corp.*
No. 14-CV-9007 (VSB), 2015 WL 9161791 (S.D.N.Y. Dec 14, 2015)................... 35

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*
No. 06-CV-4620, 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ........................... 15

*Morales v. City Scrap Metal, Inc.*
No. 19-CV-6682, 2022 WL 20539979 (E.D.N.Y. Nov. 16, 2022) ........................ 27

*Morris v. Affinity Health Plan, Inc.*
859 F. Supp. 2d 611 (S.D.N.Y. 2012)............................................................16-17

*Murphy v. Lajaunie*
No. 13-CV-6503, 2018 U.S. Dist. LEXIS 221462 (S.D.N.Y. Feb. 2, 2018).......... 39

*Noble v. 93 Univ. Place Corp.*
224 F.R.D. 330, 338 (S.D.N.Y. 2004) ......................................................... 14, 18

*Orlando v. Liberty Ashes, Inc.*
No. 15-CV-9434 (S.D.N.Y. Sept. 4, 2020)...................................................... 39

*Parker v. Jekyll & Hyde Entm't Holdings, LLC*
No. 08-CV-7670 (BSJ)(JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ............. 43

*Pickard v. Onsite Facility Servs., LLC*
No. 22-CV-207, 2023 U.S. Dist. LEXIS 191242 (N.D.N.Y. Oct. 25, 2023) ........... 27

*Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of New York and New Jersey*
698 F.2d 150 (2d Cir. 1983)........................................................................... 15

*Prasker v. Asia Five Eight LLC*
No. 08-CV-5811 (MGC), 2010 WL 476009 (S.D.N.Y. Jan. 6, 2010)..................... 15

*Protective Comm. For Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*
  390 U.S. 414 (1968) ................................................................................................ 13

*Raniere v. Citigroup Inc.*
  310 F.R.D. 211 (S.D.N.Y. 2015) ....................................................................... 29-30

*Rangel v. 639 Grand St. Meat & Produce Corp.*
  No. 13-CV-3234 (LB), 2013 WL 5308277 (E.D.N.Y. Sept. 19, 2013) .................. 35

*Reyes v. Altamarea Grp., LLC*
  No. 10-CV-6451 (RLE), 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ..................37, 40

*Reyes v. Buddha–Bar NYC*
  No. 08-CV-02494, 2009 WL 5841177 (S.D.N.Y. May 28, 2009) ......................... 15

*Riedel v. Acqua Ancien Bath New York LLC*
  No. 14-CV-7238 (JCF), 2016 WL 3144375 (S.D.N.Y May 19, 2016) ........ 8, 13-15, 21, 25, 31

*Roberts et. al. v. TJX*
  13-CV-13142, Dkt. No. 172 (D. Mass. Sept. 30, 2016) ........................................ 39

*Robidoux v. Celani*
  987 F.2d 931 (2d Cir. 1993) ................................................................................. 14

*Sand v. Greenberg,*
  No. 08-CV-7840, 2010 WL 69359 *(S.D.N.Y. Jan. 7, 2010)* .................................. 41

*Savoie v. Merchants Bank*
  166 F.3d 456 (2d Cir. 1999) ................................................................................. 42

*Santos v. YMY Mgmt. Corp.*
  No. 20-CV-1992 (JPC), 2021 WL 431451 (S.D.N.Y. Feb. 8, 2021) ..................... 27

*Seijas v. Republic of Argentina*
  606 F.3d 53 (2d Cir. 2010) ................................................................................... 18

*Sewell v. Bovis Lend Lease, Inc.*
  No. 09-CV-6548 (RLE), 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) .......... 18, 30, 36, 42-43

*Sheppard v. Consol. Edison Co. of N.Y., Inc.*
  No. 94-CV-0437, 2002 U.S. Dist. LEXIS 16314 (S.D.N.Y. Aug. 1, 2002) ............... 29

*Spann v. AOL Time Warner, Inc.*,
  No. 02-CV-8238 (DLC), 2005 WL 1330937 ........................................................ 20

*Taft v. Ackermans*
 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007)............................................ 38

*Torrisi v. Tucson Elec. Power Co.*
 8 F.3d 1370 (9th Cir. 1993) ........................................................................... 8

*Trief v. Dun & Bradstreet Corp.*
 144 F.R.D. 193 (S.D.N.Y. 1992) ...................................................................... 15

*United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307* v.
 *G&M Roofing & Sheet Metal Co., Inc.*
 732 F.2d 495 (6th Cir. 1984) ......................................................................... 41

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*
 396 F.3d 96 (2d Cir. 2005).......................................................8, 13, 20-21, 33-34

*Weinberger v. Kendrick*
 698 F.2d 61 (2d Cir.1982)............................................................................. 8

*Williams v. First Nat'l Bank*
 216 U.S. 582 (1910)...................................................................................... 12

*Yuzary v. HSBC Bank USA, N.A.,*
 2013 WL 5492998(S.D.N.Y. October 2, 2013)................................... 29, 33, 40, 43

*Zivkovic v. Laura Christy LLC*
 329 F.R.D. 61, 66 (S.D.N.Y. 2018) ............................................................ 15, 19, 39

*Zorn-Hill v. A2B Taxi LLC*
 No. 19-CV-1058 (KMK), 2020 WL 5578357 (S.D.N.Y. Sept. 17, 2020) ............................ 27

**Statutes**

29 U.S.C. § 216(b) ................................................................................... 11

**Rules**

FED. R. CIV. P. 23(a)……………………………………………………………………..16

FED. R. CIV. P. 23(a)(1)……………………………………………………………………13

FED. R. CIV. P. 23(a)(2)……………………………………………………………………14

FED. R. CIV. P. 23(b)(3)……………………………………………………………………18

FED. R. CIV. P. 23(e)……………………………………………………………………...19-20

ix

FED. R. CIV. P. 23(g)…………………………………………………………………...……...31

**Other Sources**

2 McLaughlin on Class Actions § 6:24 (8th ed.)……………………………………………6

MANUAL FOURTH at § 21.312………………………………………………………………..8

## PRELIMINARY STATEMENT

Plaintiffs Monique Katz ("Katz") and Yekaterina Skidanenko ("Skidanenko") (collectively, "Named Plaintiffs"), including the opt-in Plaintiffs and all members of the Class[1] (together with Named Plaintiffs, "Plaintiffs") by and through their counsel, hereby move the Court for final approval of the class and collective action settlement ("Settlement") set forth in the Settlement Agreement ("Agreement"). The Agreement is annexed as Exhibit 1 ("Ex. 1").

Plaintiffs respectfully request that the Court enter the proposed order for final approval of the parties' class/collective settlement, which is annexed hereto and unopposed by Defendant Equinox Holdings, Inc. ("EQX"). Plaintiffs respectfully submit this Memorandum of Law, the accompanying Declarations of Robert J. Valli, Jr. ("Valli Decl."), Denise A. Schulman ("Schulman Decl."); Jacob Aronauer ("Aronauer Decl."), and Mariya Gonor ("Gonor Decl."), and the Declaration of Arron Weisel ("Simpluris Decl."), which is annexed to the Valli Dec. As Exhibit A, in Support of Plaintiffs' Motion.

## PROCEDURAL HISTORY

This action is the consolidated matter of two putative class actions. The first was filed in the Eastern District of New York on March 25, 2020, by Skidanenko on behalf of a class of certain trainers. The second action was commenced in this Court on November 23, 2020 by Katz. *See* Dkt. No. 1. On October 18, 2021, Katz and EQX had an unsuccessful mediation. The matters were then consolidated on January 7, 2022. On April 29, 2022, the Court conditionally certified this action as a collective action pursuant to the Fair Labor Standards Act ("FLSA"). *See* Dkt. No. 72. Thereafter 333 Trainers joined this action claiming unpaid overtime wages. There were 315 Opt-

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed in the Agreement.

in Trainers prior to Preliminary Approval of the class/collective settlement.[2] The parties then engaged in representative discovery which consisted of 48 Trainers and their supervisors from 19 of EQX's 40 clubs in New York. On April 3, 2024, the parties participated in a second mediation. This mediation was unsuccessful but progress was made. Over the next several months the parties continued to engage in direct settlement negotiations and ultimately reached a resolution.

On December 3, 2024, this Court granted Preliminary Approval of the Class/Collective Settlement on December 3, 2024. *See* Dkt. No. 218. Following the Court's Preliminary Approval Order, the parties and the Claims Administrator complied with the Court approved notice plan. The Notice and Claim Forms informed each member of the Settlement Classes of: (i) their specific anticipated award should the Court finally approve the Settlement; (ii) the amount of fees, costs and expenses sought by Class Counsel; (iii) the amount of Service Payments sought by Class Counsel on behalf of the Class Representatives; and (iv) that administration costs and fees will be deducted from the Settlement Fund. *See* Exhibit A-C of Ex. 1. Class Members have responded favorably to the settlement. Notably, 1, 609 have returned claim forms and no Opt-In Plaintiff has opted out of the Settlement, nor have any objections been lodged by the Settlement Class Members. *See* Simpluris Decl. ¶¶ 16-18. In light of the significant risks posed by continuing litigation and the possibility of no recovery at all on behalf of the Class, the Settlement is fair, reasonable and adequate, and accordingly, should be finally approved.

## STATEMENT OF FACTS

EQX is a nationwide luxury fitness center with more than 40 locations throughout the State of New York. *See* Dkt. No. 79-1 ¶ 2. EQX employed Personal Trainers in five Tier levels (Tier 1, Tier 2, Tier 3, Tier 3+, and Tier X) to provide personal training services to its members. *See id.* at

---

[2] Some Opt-Ins either were dismissed by the Court for failing to participate in collective discovery or voluntarily opted out so as to not participate in collective discovery.

¶ 5. Their job duties consisted of, among other things, performing thirty minute or one-hour personal training ("PT") sessions for EQX's members and to engage in session related activity ("SRA"). *See* Dkt. No. 79-1 at ¶ 50. The SRA consisted of researching workouts for the member, creating a customized (or tailored) workout plan for the member called "programming", updating the programming after each personal training session, engaging with the member regarding their PT session, setting up the anticipated workout space before a PT session, gathering/returning the requisite workout equipment for each PT session, scheduling the session, interacting with the member immediately before/after the PT session and reporting SRA time. *See* Dkt. No. 79-1 ¶ 79. Trainers also performed: (i) floor shifts; (ii) client prospecting; (iii) Equifit sessions or a free PT evaluation session for EQX's members; (iv) complimentary ("Comp.") sessions or a free PT session after the Equifit; programming; (v) guided sessions or free PT sessions for EQX's non-members; (vi) programming for Equifit, Comp., and guided sessions; and (vii) meetings with their manager(s); and (viii) EFTI (training) meetings. *See id.* at ¶¶ 52, 63-66, 105, 117, 120.

I.    **EQX's Pay Policy and Alleged Violations**

EQX paid Trainers on a bi-weekly basis and at an hourly rate for floor shifts, meetings, and Equifit meetings. *See id.* at ¶ 162, 165. EQX also paid them a set flat rate for each PT session, Equifit, and Comp. session they performed. *See id.* at ¶ 8. Plaintiffs allege that as a result of this pay policy, they were deprived of overtime pay for all hours worked over 40 because the flat rate for PT sessions, Equifits, and Comp. sessions did not include an overtime premium. Trainers further allege that they were denied payment at their hourly rate for client prospecting while not clocked in and commuting to and from their gym to the Equifit meetings. As a result of the foregoing, they also allege that they received incorrect paystubs in violation of NYLL § 195. Finally, Plaintiffs assert they were manual laborers as defined by NYLL § 191 requiring them to be paid on a weekly basis. EQX denies and continues to deny each and every one of Plaintiffs'

allegations and denies that it violated the law in any manner. *See* Valli Decl. ¶ 6.

<u>SUMMARY OF THE SETTLEMENT</u>

## I.      Definition of Class

In order to effectively obtain resolution of Plaintiffs' claims, the Settlement encompasses both FLSA claims, in the form of a collective action resolution, and NYLL claims, in the form of a Rule 23 class action resolution. As the Court has already granted conditional FLSA collective certification and EQX has not moved to decertify that collective, to finalize the Settlement, the parties seek Final approval/certification of the collective, defined as: all personal trainers who worked for Equinox in New York as a Tier 3, 3+ and Tier X personal trainer between May 13, 2018 and June 26, 2022 or as a Tier 1 or 2 personal trainer between February 5, 2019 and June 26, 2022. The parties also seek to define the class as: All individuals who have worked for Equinox Holdings, Inc. in New York as personal trainers in any tier level at any time from March 25, 2014, through July 31, 2024.

## II.     Claims Administration

If approved by the Court, the funds will be administered by Simpluris, Inc., an independent and experienced third-party settlement administrator, ("Claims Administrator" or "Simpluris"), who already handled the management and distribution of the settlement documents. *See* Simpluris Decl. ¶¶ 2-3. Simpluris is a reputable administrator that has substantial experience and expertise carrying out these duties which include, but are not limited to, the determination of awards for valid claims, compliance with all applicable tax reporting, and payment of taxes on such awards. *See id.* at ¶ 4.

## III.    Notice

Pursuant to this Court's Preliminary Approval Order (*see* dkt. no. 218), each Class Member was sent, by first-class U.S. mail and emailed (if an email address was available), a Settlement

Notice in the form approved by the Court, along with an individualized Claim Form (also in the form approved by the Court), that set forth the material settlement terms; instructions on how members of the Settlement Class may participate in the Settlement; instructions on how members of the Settlement Class may exclude themselves from, or submit objections to, the Settlement; and when and where to appear at the final approval hearing, among other important information, including the average amount of the settlement payments based on the application of the allocation formula set forth in the Settlement Agreement (assuming final approval). *See* Simpluris Decl. ¶¶ 3, 8-9. Simpluris also sent a text message with a link to the full Settlement Notice to all Class Members for whom a phone number was available. *See id.* at ¶ 10.

Prior to sending the Settlement Notices and Claim Forms, Class Counsel provided Simpluris with updated address information based on data collected from their independent investigation. *See id.* at ¶ 7. Thereafter, each of the 6,441 members of the Settlement Classes had a complete mailing address. *Id.*

On March 14, 2025, Settlement Notices were sent by Simpluris to each of the 6,441 putative members of the Settlement Classes, which included those who filed 29 U.S.C.§ 216(b) consent to join forms. *See id.* at ¶¶ 8-10. On May 13, 2025, Simpluris sent a reminder postcard (in the form preliminary approved by the Court) to the 5,013 putative members of the Settlement Classes who had not filed a fully completed Claim Form. *See id.* at ¶ 15. In addition, Simpluris established and maintained a Settlement-specific website, which has had 4,631 page views between March 14, 2025, and June 12, 2025. *See id.* at ¶¶ 11. The website allows members of the Settlement Classes to learn information about the Settlement and review relevant documents, and a Settlement-specific toll-free telephone number for members of the Settlement Classes to call to learn information about the Settlement from live Simpluris associates. *See* Simpluris Decl. ¶¶ 11-

12. Between its establishment and June 12, 2025, the toll-free number received 222 calls. *See* Simpluris Decl. ¶ 12.

As of June 12, 2025, the date by which all fully completed Claim Forms were required to have been received by Simpluris, 1,609 had been fully and timely received by Simpluris.[3] *See id.* at ¶ 16. Including the Opt-In Plaintiffs who were not required to submit claim forms to participate and seven untimely, but accepted, claim forms, the total number of Participating Class Members is 1,931 which constitutes a well-above average 29.98% participation rate. *See id.* at ¶ 16; *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 100 (E.D.N.Y. 2015)[4] ("[T]he 22 class members filing claims constitute a 20% participation rate. This participation rate is well above average in class action settlements.") (citing 2 McLaughlin on Class Actions § 6:24 (8th ed.) ("Claims-made settlements typically have a participation rate in the 10–15 percent range.")).

During the period for members of the Settlement Classes to respond to the Settlement Notice, 1,017 mailed Settlement Notices were returned to Simpluris as undeliverable. *See* Simpluris Decl. ¶ 14. Simpluris re-mailed 886 Settlement Notices through the use of United States Postal Service forwarding addresses, Accurint (a reputable research tool owned by Lexis-Nexis, and the National Change of Address database. *See id.* 49 of the re-mailed Notices were returned a second time as undeliverable. *See id.* Simpluris was unable to locate additional addresses for these 49 Class Members. Therefore, as of June 12, 2025, a total of only 49 members of the 6,441 Settlement Class Members had undeliverable Settlement Notices.[5] *Id.*

---

[3] Seven Claim Forms were fully completed but were received after the June 12, 2025 deadline. After receiving input from Counsel for EQX and Counsel for Plaintiffs, Simpluris approved these claims. *See* Simpluris Decl. ¶ 16.
[4] FLSA and NYLL wage-and-hour class settlement.
[5] The members of the Settlement Classes also had the notice emailed to them and they received text messages regarding the settlement.

In addition, as of June 12, 2025, also the date by which all requests for exclusion by Opt-In Plaintiffs were required to have been received by Simpluris from members of the Settlement Class in order to be effective, no Opt-In Plaintiffs returned requests for exclusion from the Settlement. Simpluris Decl. ¶ 17.

In addition, as of June 12, 2025, the date upon which objections were to have been made, Simpluris did not receive any objections to the Settlement from members of the Settlement Class and is not aware of any such objections having been filed with the Court. *Id.* at ¶ 18.[6] Class Counsel submits that there is no doubt that the comprehensive Settlement Notice program set forth in the Settlement Agreement, ordered in the Court's Preliminary Approval Order, and carried out by Simpluris, complied with Your Honor's Order, FED. R. CIV. P. 23, the FLSA and due process.[7]

A settlement notice must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir.1982). It must also be "understood by the average class member." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) (internal citations omitted).

Here, the Notice Form provided clear and accurate information as to the nature and principal terms of the Settlement, including the individual estimate of the amount of monetary

---

[6] A notice of the settlement was timely served under the Class Action Fairness Act, 28 U.S.C. § 1715, on the Office of the Attorney General of the United States, and the Office of the Attorney General for the States of Alabama, Arizona, California, Colorado, Connecticut, Florida, Georgia, Illinois, Kansas, Kentucky, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New York, New Jersey, North Carolina, Pennsylvania, Tennessee, Texas, Utah, Vermont, Virginia, and Washington D.C. No objections have been received from any federal or state official. This factor favors approval. *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 588-589 (N.D. Cal. Sept. 15, 2015) (When federal or state officials do not raise concerns about a class settlement, this factor favors settlement).

[7] This Court, the Second Circuit and the Supreme Court have held that "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness. There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements." *Riedel v. Acqua Ancien Bath New York LLC*, No. 14-CV-7238 (JCF), 2016 WL 3144375, at *8 (S.D.N.Y May 19, 2016); *see also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374-75 (9th Cir. 1993) (notice generally describing terms of settlement and formula for computing awards, mailed out 45 days before hearing, met requirements of Rule 23 and due process).

relief the Settlement will provide each member of the Settlement Class, as well as an explanation of the method for allocating the settlement funds to Class Members and of the claims process, the procedures and deadlines for opting-in and submitting a Claim Form, the process for Opt-ins to opt-out of the Rule 23 Settlement Classes, how to submit objections, and the consequences of taking or foregoing the various options available to members of the Settlement Classes. *See* Exhibit A-C of Ex. 1. The Notice Form also provided details on the date, time and place of the final approval hearing. *See id.*; MANUAL FOURTH at § 21.312. Pursuant to FED. R. CIV. P. 23(h), the Notice Form further sets forth the maximum amount of attorneys' fees and costs which may be sought by Class Counsel, to which no one objected. *See* Exhibit A-C of Ex. 1. Thus, the Notice approved by this Court satisfies the standard.

## IV.    Release

If the settlement is approved, all Class Members who timely submitted fully completed Claim Forms or are Opt-in Plaintiffs who did not opt out ("Participating Class Members") will release all wage-and-hour claims identified in Section 10 of the Agreement. *See* Ex. 1 ¶ 10. There shall be no release of any claims for any Class Member who is not a Participating Class Member.

## V.    Qualified Settlement Fund

If final approval is granted, pursuant to the Agreement, each Class Member who submitted a Claim Form or Opt-in Plaintiff who did not opt-out is eligible to and will receive a pro-rata share of the Maximum Settlement Amount – after deductions for the Court-approved attorneys' fees for Class Counsel of one third, costs, service awards, and claims administrator costs. *See id.* at ¶¶ 1(1.24), F(i). The Maximum Settlement Amount does not include EQX's portion of payroll taxes, which shall be additionally paid separately by EQX. *See id.* at ¶ 8(A). As discussed above, the claims administrator engaged in several layers of outreach to the potential Class Members, including providing the Notice and Claim Form via email, mail, and on the website, with a text

message informing the Class Member about the Notice and where to locate it, as well as a Reminder Notice sent via email, text message, and mail. *See* Ex. 1 ¶¶ 4(C)-(E); Simpluris Decl. ¶¶ 8-15.

## VI.    Plan of Allocation

The QSF shall be funded based on the Final Settlement Amount which is the total of: (i) all allocated settlement shares from the Net Settlement Fund to Participating Class and Collective Members; (ii) the Settlement Administrator's fees and costs; (iii) Court- approved Service Awards; and (iv) Court-approved attorneys' fees and costs for Class Counsel. *See* Ex. 1 ¶ 1(1.19). The QSF shall be funded through four payments by EQX as follows: (i) 15% of the Final Settlement Amount or $1,000,000.00, whichever is greater, within 38 days after final approval; (ii) 40% of the Final Settlement Amount on or before January 15, 2026; (iii) 22.5% of the Final Settlement Amount on or before January 15, 2027; and (iv) 22.5% of the Final Settlement Amount on or before January 15, 2028. *See id.* at ¶ 8(B).

The Agreement includes a plan of allocation based on a formula that is explicitly fair to each Class Member based on the number of weeks worked, and personal training sessions performed in excess of 24 sessions in a single week. *See id.* at ¶ F(i). Each Class Member who timely submitted a fully completed Claim Form or Opt-in Plaintiff who did not timely opt-out, upon Final Approval is now a Participating Class/Collective Members and is to receive a share of the Net Settlement Fund. *See id.*

Setting aside a portion of the Maximum Settlement Fund sufficient to pay Court-approved attorneys' fees and costs and claims administrator fees and costs approved by the Court – as described more fully herein, the claims administrator has calculated an estimated Net Settlement Amount. *See id.* at ¶ 3(C). Each Class Member was informed of the estimated amount of their *pro rata* share of the Net Settlement Amount in their Notice. *See id.* at ¶ 4(B).

As Plaintiffs' class claims seek the recovery of both wages, liquidated damages and penalties, each Settlement Payment issued to Participating Class Members is divided into two parts: 18% will be deemed payment in settlement of wage claims (from which payroll withholding and deductions will be taken), and 82% will be deemed payment in settlement of claims for liquidated damages, penalties, interest and any other non-wage amounts (from which no withholding or deductions will be taken). *See* Ex. 1 ¶ 9(A).

## VII.   Service Awards

Plaintiffs are respectfully applying to this Court for a one-time Service Award to Named Plaintiffs Monique Katz and Yekaterina Skidanenko for $15,000.00 each. *See id.* at ¶ 8(E). Plaintiffs are applying to this Court for one-time Service Award of $1,000.00 to each of the following Opt-In Plaintiffs for their participation in collective discovery that included a deposition and document production: Delaney Anderson, Adam Cannedy, Jennifer Carlson, Jennifer Cintron, Amanda Clark, Myles Cooper, Ranah Farkhondeh, Felix Ferreira, Nicholas Ferrer, Tatiana Gregory, Benjamin Guzi, Olivia Hensal, Kelly Hibbard, Ashley Iannacone, Madjena Joseph, Francis Kilinski, Harrison Lessans, Thomas Manning, Eric O'Brien, Jillian O'Neil, Joel Painson, Claudia Ramirez, Paris Ramos, Junil Rodriguez, Angel Sanchez, Eric Shipper, Dannette Stephens, Donald Tagorda, Warner Washington II, and Saba Yehia (collectively, "Participating Opt-Ins"). *See id.* These payments are to recognize their effort in assisting Class Counsel with the prosecution and settlement of their and the Class Members' claims. *See id.*; Valli Decl. ¶ 56.

## VIII.   Attorneys' Fees and Costs

Pursuant to the Agreement, Class Counsel are respectfully petitioning the Court for attorneys' fees of one-third of the Maximum Settlement Amount ($4,000,000.00) and $62,501.28 in costs. *See id.* at ¶ 8(D); Valli Decl. ¶¶ 39, 54. The attorneys' fees and costs application is herewith filed in conjunction with a Final Approval Motion with respect to the Agreement. If this

Court reduces the attorneys' fees and lawsuit costs sought for any reason, only the reduced amount will be deemed to be Class Counsel's attorneys' fees and costs, and any remaining amount shall become part of the Net Settlement Amount. *See* Ex. 1 ¶ 8(D).

## ARGUMENT

By this Motion, Plaintiffs seek Final Approval of the Settlement. Class Counsel represents that the Settlement is fair, reasonable, and adequate. *See* Valli Decl. ¶ 37. At a minimum, Class Counsel and Plaintiffs submit that the Settlement is in the best interests of the Members of the Settlement Class in light of all known facts and circumstances, including the risks and delays of litigation that are presented by EQX's defenses to the claims, the potential pre-trial and appellate issues EQX may assert, and EQX's financial condition. *See id.*

## I.    Legal Standards for Final Approval of Class Action Settlements[8]

It is well-established that "compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd*, 236 F.3d 78 (2d Cir. 2001). Settlement also spares the litigants the uncertainty, delay and expense of trial while simultaneously reducing the burden on judicial resources. *See Hernandez v. Merrill Lynch & Co., Inc.*, 2012 WL 5862749, at *2 (S.D.N.Y. Nov. 15, 2012) (endorsing settlement of wage and hour class action); *Castagna v. Madison Square Garden, L.P.*, No. 09-CV-10211

---

[8] The Settlement settles all wage and hour claims brought by Plaintiffs, both under the NYLL and the FLSA. The claims asserted under the FLSA are brought as a putative "collective action," in which putative FLSA collective members must affirmatively "opt-in" to the litigation. *See* 29 U.S.C. § 216(b). The claims asserted under the NYLL, on the other hand, are brought as a putative "opt-out" class action under the general class action provisions of Rule 23. When considering final approval of "hybrid" collective and class actions involving wage and hour claims courts have looked at the fairness, adequacy, and reasonableness of the settlement under both statutory frameworks by examining the *Grinnell* factors. *See, e.g., Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005); *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 U.S. Dist. LEXIS 23016, at *8 (S.D.N.Y. Mar. 24, 2008).

(LTS)(HP),2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement); *Diaz v. E. Locating Serv. Inc.*, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case).

Even though complex, "where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)," (*e.g.*, a hybrid action), Federal Courts routinely certify such hybrid FLSA/Rule 23 cases for settlement. "Justice is served and consistency and efficiency are achieved by having the litigation in one forum because the same set of operative facts are being applied and analyzed under both statutory frameworks." *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) (certifying a federal collective under the FLSA and state law settlement Class under Rule 23 at preliminary and final approval stages) (citing *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 89 (S.D.N.Y. 2001)); *Riedel*, 2016 WL 3144375 at *8 (certifying a federal collective under the FLSA and state law settlement class under Rule 23, and granting preliminary approval of the settlement agreement). The ultimate determination of whether a proposed class action settlement warrants approval resides in the court's discretion. *Protective Comm. For Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). As discussed more fully below, there is clear evidence that the Settlement is fair, adequate and reasonable and well within the range of possible outcomes. Thus, Final Approval should be granted.

## II.    APPROVAL UNDER FED. R. CIV. P. 23

The standard for final approval of a settlement consists of showing that the settlement is fair, reasonable, and adequate. *Wal-Mart Stores, Inc.* 396 F.3d at 116-117 (2d Cir. 2005). As set forth below, all the elements of Rule 23 are met with respect to the Settlement. Therefore, class certification for settlement purposes under Rule 23 is warranted here.

A.  Rule 23(a) Is Satisfied

To maintain a lawsuit as a class action under Rule 23 of the Federal Rules of Civil Procedure, a named plaintiff must establish each of the four threshold requirements of subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R Civ. P. 23(a). All four elements are satisfied here.

### 1.  The Class Is Sufficiently Numerous

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Impracticable does not mean impossible." *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993). Rather, it refers to the burden that would be imposed by joinder. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Noble v. 93 Univ. Place Corp.*, 224 F.R.D. 330, 338 (S.D.N.Y. 2004). Generally, a potential class of forty members is presumed sufficiently numerous. *See Consol. Rail Corp.*, 47 F.3d at 483 ("[N]umerosity is presumed at a level of 40 members. . . .").

Numerosity is not disputed as there are 6,441 Class Members. The joinder of these individuals is impracticable. *See* Simpluris Decl. ¶ 8. The more efficient use of judicial resources counsels in favor of class certification. Therefore, the numerosity requirement is met. *See Riedel*, 2016 WL 3144375 at *3 (numerosity requirement was met where parties asserted that there were approximately 130 class members).

### 2.  There Are Common Questions of Law or Fact

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The claims by each individual need not be identical, but there must be common

13

questions of fact or law. *See Port Auth. Police Benev. Ass'n, Inc. v. Port Auth. of New York and New Jersey*, 698 F.2d 150, 153-54 (2d Cir. 1983); *see also Riedel*, 2016 WL 3144375 at *3 ("[c]ommonality is established where the claims share a common issue of law or fact"). Thus, commonality is established where "the disputed issue of law or fact occupies essentially the same degree of centrality to the named plaintiffs' claims as to that of the other members of the proposed class." *Chambery*, 10 F. Supp. 3d at 420 (quoting *Dodge v. County of Orange*, 208 F.R.D. 79, 88 (S.D.N.Y. 2002)). Courts have generally construed the commonality requirement liberally, requiring only one issue be common to all class members. *See Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198-99 (S.D.N.Y. 1992).

Here, commonality is met for settlement purposes because the claims of the Named Plaintiffs and those of the Class are predicated on common issues of alleged fact and law, including but not limited to whether: (i) EQX failed to pay Plaintiffs and the Class Members for all the overtime hours they worked; (ii) EQX failed to pay Plaintiffs and the Class Members for all the non-overtime hours they worked; (iii) EQX failed to issue Plaintiffs and the Class Members accurate wage statements; and (iv) Plaintiffs and the Class Members were manual laborers as defined by NYLL § 191. *See*, *e.g.*, *Grande v. 48 Rockefeller Corp.*, No. 21-CV-1593, 2023 WL 5162418 (S.D.N.Y. Aug. 11, 2023) (commonality satisfied where plaintiffs and Class Members share common issues of fact and law, including whether defendants failed to pay proper overtime pay); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 66, 69-70 (S.D.N.Y. 2018) (same); *Prasker v. Asia Five Eight LLC*, No. 08-CV-5811 (MGC), 2010 WL 476009, at *2 (S.D.N.Y. Jan. 6, 2010) (same); *Reyes v. Buddha–Bar NYC*, No. 08-CV-02494, 2009 WL 5841177, at *2 (S.D.N.Y. May 28, 2009) (same); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-CV-4620, 2009 WL 5851465, at *3 (S.D.N.Y. Mar. 31, 2009) (same); *Castagna*, 2011 WL 2208614 at *3

(same); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (same).

### 3.    The Claims or Defenses Are Typical

Rule 23(a)(3) requires that a representative plaintiff's claims or defenses be "typical" of those other class members.[9] A representative party establishes typicality when "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Barrows v. Becerra*, 24 F.4th 116, 131 (2d Cir. 2022). Typicality does not require that the "'factual predicate of each claim be identical to that of all class members'; rather, it 'requires that the disputed issue of law or fact'" be considered equally central in both named class representative's claims as it is in the claims of the class members. *Attenborough v. Const. and Gen. Bldg. Laborers' Local 79*, 238 F.R.D. 82, 94 (S.D.N.Y.2006) (quoting *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999)).

Typicality is satisfied for settlement purposes because all Plaintiffs and Class Members worked for EQX in New York, performed the same job duties, were employed in substantially similar positions, and were subject to the same pay policy/practices, and alleged wage-and-hour violations as a result. Thus, Plaintiffs' claims are "typical" of those in the Class. Further, the typicality requirement is met because Plaintiffs' claims arise from an alleged common course of conduct by EQX in allegedly failing to pay them for overtime and straight-time hours worked in violation of state law. *See, e.g.*, *Long v. HSBC USA Inc.*, No. 14-CV-6233, 2015 WL 5444651, at *7 (S.D.N.Y. Sept. 11, 2015) (typicality requirement satisfied where class members "were all employed by defendants[] to do similar work and . . . did not receive overtime pay under the same policy"); *Hernandez*, 2013 WL 1209563 at *3 (typicality satisfied where "[p]laintiffs' [overtime]

---

[9] The commonality and typicality requirements of Rule 23(a) "tend to merge." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

claims arose from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris*, 859 F. Supp. 2d at 616 (same). Thus, for purposes of settlement, Plaintiffs contend that the case each Class Member is essentially the same (hence, commonality) and the Named Plaintiffs themselves would put on that case (hence, they contend their claims are typical).

### 4. Class Counsel and The Class Representatives Are Adequate

The final requirement of Rule 23(a) set forth in subsection (1)(4), requires that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). In the Second Circuit, the requirement of adequate representation is met when two factors are met: (1) class counsel is qualified and able to conduct the proposed litigation, and (2) the class representative must not have interests antagonistic to those of the other class members. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).

Both factors are satisfied. Plaintiffs' attorneys, Class Counsel, are experienced and competent in complex litigation, specifically including the litigation and settlement of wage and hour cases, and have and will continue to act as vigorous advocates for their clients. *See* Valli Decl. ¶¶ 35-36; Schulman Decl. ¶¶ 13-15; Aronauer Decl. ¶¶ 6-8, 10; Gonor Decl. ¶¶ 13-26. In addition, the Named Plaintiffs contend that they have no interests antagonistic to the Class and have demonstrated allegiance to the litigation of the claims and Class through their patience and active participation in the litigation and settlement process on behalf of the Class.

### B. The Prerequisites of Rule 23(b)(3) Are Satisfied

Under Rule 23(b)(3) a class action may be maintained if:

The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the

controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R Civ. P. 23(b)(3).

When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only. *See Amchem*, 521 U.S. at 618-620. A showing of manageability of trial is not required. *Id*. The test is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id*. at 623.

### 1.    *Common Issues Predominate*

Although Rule 23(b)(3) requires that common issues of law and fact predominate, it does not require that there be an absence of any individual issues. *See, e.g.*, *Noble*, 224 F.R.D. at 345. Thus, Plaintiffs are not required to prove that each "elemen[t] of [their] claim [is] susceptible to classwide proof." *Amgen, Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013) (quotations marks and citations omitted).

The Second Circuit recognizes that the need for some individualized determinations as to liability and/or damages do not defeat class certification. *See Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). To be sure, Rule 23(b)(3) does not require that all questions of law or fact be common. *See, e.g.*, *Sewell v. Bovis Lend Lease, Inc.*, No. 09-CV-6548 (RLE), 2012 WL 1320124, at *5 (S.D.N.Y. Apr. 16, 2012).

Here, all members of the Class are unified for settlement purposes, by common factual allegations—*i.e.*, that class members were subjected to the same allegedly unlawful wage and hour policies, which resulted in the non-payment of overtime and straight-time wages. The class members are also unified by a common legal theory—*i.e.*, that EQX's wage and hour policies

17

allegedly violate the FLSA and NYLL. These common issues predominate over any issues affecting only individual class members. *See*, *e.g.*, *Zivkovic*, 329 F.R.D. at 75 ("Where plaintiffs' claims arise from a common policy and rely on a common legal theory, the predominance requirement is satisfied because the need for individualized determinations of the putative class members' damages does not, without more, preclude class certifications.") (internal quotation marks omitted)

2.       *Class Settlement is Superior to other Methods*

The superiority requirement is also satisfied for purposes of settlement. Superiority analyzes whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). Rule 23(b)(3) sets forth a non-exclusive list of relevant factors, including whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in a particular forum. *See* FED. R. CIV. P. 23(b)(3).

Class adjudication of this case is superior to individual adjudication because it will conserve judicial resources. It is also more efficient for Class Members, particularly those who lack the resources to bring their claims individually. Furthermore, settling as a group gives Class Members an opportunity to obtain prompt, predictable, and certain relief, whereas individualized litigation carries with it great uncertainty, risks, and costs. Class settlement also relieves judicial burdens that would be caused by adjudication of the same issues in multiple trials. *See Beckman*, 293 F.R.D. at 473-74; *see also*, *e.g.*, *Zivkovic*, 329 F.R.D. at 76. Finally, concentrating the litigation in this Court is desirable because the wrongful conduct alleged occurred within this jurisdiction.

Accordingly, Plaintiffs contend that the Class should be granted final certification under Rule 23(b)(3) for settlement purposes.

**III.**    **The Settlement is Non-Collusive, Fair, Adequate and Reasonable**

Rule 23(e) requires court approval of a settlement of a class action to ensure that it is procedurally and substantively "fair, reasonable and adequate." FED. R. CIV. P. 23(e). To determine procedural fairness, courts examine the "negotiating process leading to the settlement." *Wal-Mart Stores, Inc.*, 396 F.3d at 116-117; *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). In doing so, courts must consider the factors set forth in Rule 23(e)(2), specifically, whether:

   (A) the class representatives and class counsel have adequately represented the class;
   (B) the proposal was negotiated at arm's length;
   (C) the relief provided for the class is adequate, taking into account:
      (i)  the costs, risks, and delay of trial and appeal;
      (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
      (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
      (iv) any agreement required to be identified under Rule 23(e)(3); and
   (D) the proposal treats class members equitably relative to each other.

As discussed above, under Rule 23, before granting final approval of a class action settlement, the Court will be asked to find that the settlement is fair, reasonable and adequate. *See, e.g.*, FED. R. CIV. P. 23(d); *Diaz v. E. Locating Serv. Inc.*, No. 10-CV-04082 (JCF), 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010). Courts examine procedural and substantive fairness considering the "strong judicial policy favoring settlements" of class action suits. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *see also Spann v. AOL Time Warner, Inc.*, 2005 WL 1330937, at *6 (S.D.N.Y. June 7, 2005) ("[P]ublic policy favors settlement, especially in the case of class actions."). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177 at *4; *see In re Top Tankers, Inc. Sec. Litig.*, No. 06-CV-13761, 2008 WL 2944620, at *3 (S.D.N.Y. July 31, 2008).

Since a collective action under the FLSA requires individuals to opt in before they are

bound (rather than opt-out in order not to be bound, as in the Rule 23 class action context), "settlement of a collective action does not implicate the same Due Process concerns as the settlement of a class action," and therefore is subject to less searching scrutiny. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014). In most cases, a settlement that meets the standards of Rule 23 will also "reflect a fair and reasonable compromise of disputed issues" under the FLSA. *Id.* The Court should "therefore focus on the standards of Rule 23" when deciding whether to approve a class settlement agreement. *Riedel*, 2016 WL 3144375 at *6.

A. Procedural Fairness

The Court should approve the settlement as non-collusive, fair, adequate, and reasonable. Court approval is required for settlements of FLSA claims. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Similarly, Rule 23(e) requires court approval of settlement of class actions. *See* FED. R. CIV. P. 23(e). There is a "strong judicial policy in favor of settlements, particularly in the class action context," and a settlement should be approved if it is "fair, adequate, and reasonable, and not a product of collusion." *Wal-Mart Stores, Inc.*, 396 F.3d at 116 (quoting *In re PaineWebber Ltd. Partnerships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998); *Joel A.*, 218 F.3d at 138. In deciding whether to approve a settlement, a court must look at both "the settlement's terms and the negotiating process leading to the settlement." *Id.*

The Settlement was not the product of collusive dealings, but, rather, was the result of vigorous litigation and multiple rounds of negotiations over three years by experienced and qualified counsel, including months of negotiations before during and after two separate mediations held years apart by two experienced FLSA and class action mediators, Ruth Raisfeld and Michael Russell respectively. Both Plaintiffs and EQX are represented by experienced and competent counsel recognized as skilled practitioners of class-action wage-and-hour litigation. *See* Valli Decl. ¶¶ 35-36; Schulman Decl. ¶¶ 13-15; Aronauer Decl. ¶¶ 6-8, 10; Gonor Decl. ¶¶ 13-26.

Class Counsel has obtained significant court-approved settlements of similar class action wage and hour cases. *See* Valli Decl. ¶¶ 35-36; Schulman Decl. ¶¶ 13-15; Aronauer Decl. ¶¶ 6-8, 10; Gonor Decl. ¶¶ 13-26. In addition, as discussed above, the Class Representatives have fairly and adequately protected the interests of all Class Members throughout the litigation, and they have no known conflicts with Class Members. No Class Member has objected to the Class Representatives role as such. Similarly, Class Counsel are highly experienced in class action wage and hour litigation and have vigorously litigated this hard-fought action, ultimately securing an excellent result for the Class. Thus, Rule 23(e)(2)(A), (B) are satisfied, and the settlement is procedurally fair. *See In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059, 2024 U.S. Dist. LEXIS 72980, at *15-17 (E.D.N.Y. Apr. 22, 2024); *Flores v. CGI Inc.*, No. 22-CV-350, 2022 U.S. Dist. LEXIS 192572, at *16-18 (S.D.N.Y. Oct. 21, 2022).

B.  Substantive Fairness

Courts in the Second Circuit evaluate the substantive fairness of a settlement under the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) and the Rule 23(e)(2)(C), (D) factors, many of which overlap with the *Grinnell* factors. *See Moses v. N.Y. Times Co.*, 79 F.4th 235, 243, 244 (2d Cir. 2020). The "*Grinnell* factors" are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463; *Moses*, 79 F.4th at 242-43.

Here, all the *Grinnell* factors and Rule 23(e)(2)(C), (D) factors demonstrate that the Settlement is fair, adequate, and reasonable, and should thus be granted final approval. First, with respect to Plaintiffs' range of possible recovery, Plaintiffs believe that the value of the Settlement

is fair and reasonable given the various challenges and risks facing Plaintiffs. Plaintiffs face substantial risks in establishing liability, damages, maintaining a Rule 23 class, and collecting a greater recovery than the amount of the settlement.

The parties dispute virtually all factual and legal issues relevant to establishing liability. While Plaintiffs contend that Class Members performed substantial amounts of uncompensated work and were not exempt from overtime requirements, EQX maintains that Class Members were not entitled to overtime pay pursuant to 7(i) of the FLSA. EQX also denies that Plaintiffs or anyone else performed unpaid off-the-clock work, and contends that if any Class Members worked off the clock, EQX lacked actual or constructive knowledge of that work and therefore cannot be liable for unpaid wages for that time. The parties also dispute whether Class Members have standing for their NYLL § 195(3) claims (*see Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024)) and whether Class Members are "manual workers" under NYLL § 190(4), such that EQX had to pay them weekly under NYLL § 191(1)(a) before it obtained a variance to pay wages at a bi-weekly cadence. In addition, while Plaintiffs believe they could establish that EQX's actions were in willful violation of the FLSA, and would thus extend the limitations period to three years, EQX has challenged such an allegation. Consequently, "the fact-intensive nature of Plaintiffs' claims and EQX's affirmative defenses presents risk," whereas, "[t]he settlement eliminates this uncertainty." *Diaz*, 2010 WL 5507912 at *5.

Even if Plaintiffs established liability, they would face substantial risks in proving their alleged damages. Since Class Members seek damages for time worked off-the-clock, there are no records of the amount of unpaid time. Thus, Plaintiffs would have to establish class-wide damages based in large part on representative testimony rather than documents, which is inherently risky. Moreover, "damages are a matter for the jury, whose determinations can never be predicted with

certainty." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. at 128; *Maley v. Dale Global Techs. Corp.*, 186 F. Supp. 2d 358, 365 (S.D.N.Y. 2002) (recognizing that a jury may award plaintiffs only a fraction of their alleged damages).

Plaintiffs also face risks in maintaining a Rule 23 class through trial. There are more than 6,400 Class Members, who worked at over 35 locations over 9 years. Thus, on a contested class certification motion EQX would argue that there are individual variations based on location, differences in managers, and individual Class Members' work patterns that would defeat commonality, typicality, and/or predominance. Although Class Counsel believes that a class would ultimately be certified, there is nonetheless the risk that no class or a smaller class would be certified. Moreover, approximately 800 Class Members signed arbitration agreements that EQX maintains would prevent them from being included in a non-settlement class. *See* Valli Decl. ¶ 31 While Plaintiffs intended to challenge the validity of these agreements if litigation continued, there is a risk that absent a settlement the individuals who signed arbitration agreements would ultimately not be included in a class.

In addition, without a settlement, the Class faced the risk of recovering less money or no money in light of representations made by EQX regarding its post-COVID-19 financials.[10] *See* Valli Decl. ¶¶ 13, 29, 38. Thus, Plaintiffs believe the Settlement is fair and reasonable. *See Diaz*, 2010 WL 5507912 at *5 (finding that settlement was within range of reasonableness given various

---

[10] To resolve the matter, Plaintiffs were willing to consider EQX's financial status as a factor in determining what would constitute a reasonable settlement, but made clear that they could not compromise Plaintiffs' recovery on the grounds of limited funds unless counsel conducted thorough due diligence to confirm that additional assets were truly not available. The parties engaged in numerous discussions about EQX's financial condition over the course of several months via phone and emails. Plaintiffs determined that it was in the best interest of all class members to reach a settlement that would allow for distribution of EQX's available assets before they were potentially encumbered by other creditors and lenders. In November 2024, for settlement purposes only and pursuant to the Confidentiality Agreement between the parties, EQX permitted Plaintiffs' counsel to inspect its financial records for the last two years, including its quarterly cash flow statements, income statements and balance sheets. *See* Valli Decl. ¶ 38. As a result of Plaintiffs' review of the financial documents made available to them, as well as Plaintiffs own research into EQX's assets, Plaintiffs are confident in EQX's representations regarding its financial condition.

challenges, risks, and costs continued litigation would entail); *Lizondro-Garcia*, 300 F.R.D. at 180

(explaining that "the [settlement] award compensates plaintiffs almost immediately and removes

the uncertainty that litigation necessarily entails"). Thus, *Grinnell* factors 4, 5, 6, 7, and 9 and Rule

23(e)(2)(C)(i) weigh in favor of approving the Settlement.

With respect to the complexity, expense, and likely duration of the litigation (*Grinnell*

factor 1 and Rule 23(e)(2)(C)(i)), this case is complex. Continued prosecution of this case – which

has already lasted more than five years – would be lengthy and expensive. If this Settlement is not

approved, the parties face an extended and costly battle regarding potential decertification of the

claims asserted under the FLSA, class certification of the claims asserted under the NYLL, and

challenges to the arbitration agreements signed by 800 Class Members. The parties would have to

conduct additional expensive discovery (including expert discovery), engage in summary

judgment motion practice, and potentially prepare for a trial that would likely be lengthy and

costly. Further, if the parties do not settle Plaintiffs' claims, it would likely take additional years

and substantial legal fees before reaching final resolution of those claims, including exhaustion of

all appeals. Thus, these factor weighs in favor of approving the Settlement. *See Diaz*, 2010 WL

5507912 at *4 (concluding that this factor weighs in favor of approving the settlement because

"[l]itigation through trial would be complex, expensive, and long"); *Riedel*, 2016 WL 3144375 at

*7 (noting that settlement would avoid additional expense and delay consequent to motion practice

and a fact-intensive trial).

The settlement was reached after extensive discovery and litigation. Plaintiffs' counsel

successfully defended a motion to dismiss and won a motion for conditional collective

certification, reviewed thousands of pages of payroll data, reviewed thousands of electronic

communications, reviewed hundreds of pages of policy-related documents, took/defended over 30

depositions, and engaged in two full-day mediations. *See* Valli Decl. ¶ 12. Through this discovery, Plaintiffs were able to evaluate the value of their claims. Thus, *Grinnell* factor 3 also weighs in favor of approving the settlement.

The reaction of the Class (*Grinnell* factor 2) also weighs strongly in favor of approval. 1,931 Class Members, or 29.98% of the total Class, are Participating Class Members who will receive payments from the settlement]. *See* Simpluris Decl. ¶ 16; *Hernandez*, 306 F.R.D. at 100. In addition, no Opt-In Plaintiff opted out and no one objected to the Settlement. *See* Simpluris Decl. ¶¶ 17-18.

The result of the Settlement is also reasonable in light of the best possible recovery (*Grinnell* factor 8). According to Plaintiffs' counsel's calculations based upon collective discovery (which EQX disputes), the Class Members' estimated unpaid wages equate to $11,738,064.00. With liquidated damages, the total damages for Plaintiffs' and the Class Members' unpaid wage claims are $23,476,128.00. The potential penalties for the NYLL § 195(3) violations total $14,556,650, while damages for NYLL § 191 violations are approximately $618,658.[11]

Even so, Class Counsel and Plaintiffs believe that the Settlement Amount is fair and reasonable, and certainly so, given the circumstances. Specifically, while in Plaintiffs' view, the recovery could possibly be greater if the Class were to fully succeed on their claims at trial and survive an appeal, there is, of course, the possibility of no recovery should EQX prevail on its defenses and the certain possibility that a judgment on the NYLL § 195 could lead to no recovery for the unsecured Class Members.

The total value of the Settlement, approximately 102% of the Class Members' estimated

---

[11] On May 9, 2025, New York's Governor signed a bill that amended NYLL § 198(1-a) limiting damages for pay frequency violations under NYLL § 191(1)(a), to lost interest on the late paid wages. *See* New York State's 2026 Budget, Article VII Bills, Part U.

back pay and 66% of their back pay after attorneys' fees, costs, and service awards, exceeds that

which is typically recovered in other approved wage and hour settlements. *See Pickard v. Onsite*

*Facility Servs., LLC*, No. 22-CV-207, 2023 U.S. Dist. LEXIS 191242, at *21 (N.D.N.Y. Oct. 25,

2023) (approving settlement equal to 16% of maximum unpaid wages); *D'Angelo v. Hunter Bus.*

*Sch., Inc.*, No. 21-CV-3334, 2023 U.S. Dist. LEXIS 131029, at *18-19 (E.D.N.Y. July 28, 2023)

(approving settlement that was 5% of best possible recovery); *Del Rio v. 257 SGPizza Corp.*, No.

19-CV-3426 (OTW), 2023 WL 4583652, at *1 (S.D.N.Y. July 18, 2023) ("Of the total settlement

amount, Plaintiff would receive . . . approximately 16% of his owed back wages, not including any

liquidated damages or penalties. Courts in this district have approved settlement amounts within

this range."); *Emeterio v. A&P Rets. Corp.*, No. 20-CV-970, 2022 U.S. Dist. LEXIS 14598, at *23-

24 (S.D.N.Y. Jan. 26, 2022) (approving settlement that was 25% of best possible recovery);

*Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18-CV-7854, 2021 U.S. Dist. LEXIS 27462, at *14

(S.D.N.Y. Feb. 12, 2021) (approving settlement that was 28% of best possible recovery); *Zorn-*

*Hill v. A2B Taxi LLC*, No. 19-CV-1058 (KMK), 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17,

2020) (approving a settlement amount equal to 12.5% of the plaintiff's best-case scenario

recovery); *Santos v. YMY Mgmt. Corp.*, No. 20-CV-1992 (JPC), 2021 WL 431451, at *1 (S.D.N.Y.

Feb. 8, 2021) (approving settlement agreement equal to 18% of Plaintiff's total alleged damages);

*Morales v. City Scrap Metal, Inc.*, No. 19-CV-6682, 2022 WL 20539979, at *3 (E.D.N.Y. Nov.

16, 2022) (approving a total settlement representing 21% of the plaintiff's estimated recovery with

one third being allocated towards attorneys' fees); *Carnero v. Bagel Mentsch, Inc.*, No. 1:21- CV-

0781, 2022 WL 3446335 (E.D.N.Y. Aug. 17, 2022) (approving a total settlement representing 29%

of the plaintiff's estimated recovery with one third being allocated towards attorneys' fees).

    As for the remaining Rule 23(e)(2) factors, the method of distributing relief—mailing

checks to all Participating Class Members—is effective and fair. Rule 23(e)(2)(C)(ii). The terms of the proposed award of attorneys' fees, including timing of payment, are reasonable. Rule 23(e)(2)(C)(iii). As discussed below, Class Counsel seeks a fee of $4,000,000.00, or one-third of the maximum settlement amount. This is in line with the percentage awards approved in this Circuit and is reasonable in light of, *inter alia*, Class Counsel's time and labor, the quality of the representation, and the magnitude, complexities, and risks of the litigation. *See infra* at 34-35. Attorneys' fees will be distributed on the same schedule as Participating Class Members' awards, and thus attorneys' fees are not privileged over Class Members' payments. *See* Ex. 1 ¶¶ 8(D)-(E).

Finally, under Rule 23(e)(2)(D), a court must consider whether the allocation of the settlement among class members, including any service awards, is fair. *Moses*, 79 F.4th at 253. The Settlement's allocation formula applies to all Class Members. The allocation formula is fair because it is allocated on a *pro rata* basis according to Class Members' week's worked and personal training sessions in excess of 24 performed in a single week. This is a reasonable method of allocation given that Class Members' unpaid wage damages (including damages for non-overtime off-the-clock work) accrued on a weekly basis, and Class Members were highly unlikely to work any unpaid overtime unless they performed at least 24 personal training sessions in a week. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) ("[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.") (internal quotation marks omitted).

The requested service awards of $15,000.00 for each Named Plaintiff and $1,000 for each Opt-In Plaintiff who was subject to collective discovery are also fair and reasonable.[12] The Second Circuit recently affirmed that service awards are permissible in class action settlements. *Moses*, 79

---

[12] There were 30 Opt-In Plaintiffs who were subjected to collective discovery. They provided invaluable information to Plaintiffs' counsel, produced documents, and were deposed.

F.4th at 245, 253-56. In fact:

> the equitable-treatment requirement protects the interests of class representatives who play an active role in the litigation – often providing the background information that forms the basis of the lawsuit, engaging in fact discovery, and devoting considerable time and effort into the settlement process – "from having absent class members free ride on their efforts.

*Moses*, 79 F.4th at 245. Service awards for "class representatives" have "an important function in promoting class action settlements." *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 355 (S.D.N.Y. 2005) (*quoting Sheppard v. Consol. Edison Co. of N.Y., Inc.*, 2002 U.S. Dist. LEXIS 16314 (S.D.N.Y. Aug. 1, 2002)). Service awards "are particularly appropriate in the employment context. . . . [where] the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers." *Frank*, 228 F.R.D. at 187. "Service awards fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Yuzary*, 2013 WL 5492998, at *12 (citing *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-CV-05669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012)).

Further, Class Counsel posits that the payment of these amounts to the Class Representative is warranted because stepping forward to have one's name on a wage and hour complaint involves a certain degree of scrutiny, especially against a large entity such as EQX. *See* Valli Decl. ¶ 56; *Raniere*, 310 F.R.D. at 220 ("It takes courage for any employee to challenge her employer's workplace practices, and this is particularly true when the employer is a powerful global financial institution."). Accordingly, "[e]ven where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members." *Guippone v. BH S&B Holdings, LLC*, 2011 U.S. Dist. LEXIS 126026, at *20 (S.D.N.Y. Oct. 28, 2011). Moreover, the Class Representatives aided in the investigation, assisted Class Counsel in obtaining a comprehensive understanding as to the

multitude of issues the Trainers faced, worked on ensuring the Complaint and amended Complaints filed appropriately documented the claims, participated in voluminous document review, were deposed, attended depositions and mediations, maintained constant contact with Class Counsel for nearly five years, and agreed to the risks associated with putting their names on the Action. Similarly, the Opt-In Plaintiffs who seek service awards completed paper discovery, were deposed, and provided important factual information to counsel. Four of these Opt-In Plaintiffs – Jennifer Carlson, Harrison Lessans, Claudia Ramirez, and Eric Shipper – joined the case prior to conditional collective certification and provided detailed declarations that assisted in winning collective certification. Several of these Opt-In Plaintiffs, including Felix Ferreira, Delaney Anderson, and Jillian O'Neil – joined this action while still employed by EQX, which also put them at risk for retaliation.

The requested Service Payments in this case total $60,000, or just 0.5 percent of the total settlement fund. Both the percentage and the amounts of the individual Service Payments are consistent with those that have been granted for class representatives who were willing to put their names forward to represent others similarly situated within this Circuit and for opt-in plaintiffs who participated in discovery. *See*, *e.g.*, *Ai Lin v. Benihana Inc.*, No. 18-CV-11226, 2020 WL 13996865, at *2-3 (S.D.N.Y. Feb. 20, 2020) (Lehrburger, J.) (approving two $17,500 service awards from $300,000 settlement); *see also Deas v. Alba Carting & Demolition Inc.*, No. 17-CV-3947, 2021 U.S. Dist. LEXIS 38803, at *9-10 (S.D.N.Y. Mar. 2, 2021) (approving nine service awards ranging from $5,000 to $15,000 and totaling $65,000 from $1.5 million settlement); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (approving a $20,000 and $15,000 service award for the named plaintiffs in a NYLL/FLSA action); *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 U.S. Dist. LEXIS 11026, at *27 (S.D.N.Y. Jan. 29, 2014) (approving five service

awards of $25,000 each from $1,050,000 settlement); *Sewell*, 2012 WL 1320124 at *15 ("The

service awards in the proposed amount[] of . . . $15,000 for Plaintiff Diangson [is] therefore

GRANTED."); *Khait v. Whirlpool Corp.*, No. 06-CV-6381, 2010 WL 2025106, at *9 (E.D.N.Y.

Jan. 20, 2010) ("The Court finds reasonable service awards of $15,000 each to Plaintiffs[.]").

Named Plaintiffs provided support to this litigation by agreeing to step forward to serve as

the representatives for the Settlement Class, and fulfilled their commitments in that regard. They

assisted Class Counsel materially with the case. *See* Valli Decl. ¶ 56. This Court has also approved

service awards for Opt-in Plaintiffs who actively participated in litigation and settlement. *See*

*Hines v. CBS Television Studios*, 15-CV-07882 (RWL), Dkt. No. 202, ¶ 31 (S.D.N.Y. Feb. 05,

2019) (approving $1,000 service award for opt-in plaintiffs who participated in settlement

negotiations and/or mediation). These modest awards are reasonable with respect to the other Class

Members, who are benefiting from the efforts of the Named and Opt-In Plaintiffs. Moreover, the

requested service awards were set forth in the Notice, and no Members of the Settlement Class

objected, further highlighting the reasonableness of the awards. *See* Exhibit A to Ex. 1. The

settlement is fair, adequate, and reasonable under the *Grinnell* factors and Rule 23(e)(2) factors.

## IV.    APPROVAL OF THE FLSA SETTLEMENT

Since a collective action under the FLSA requires individuals to opt in before they are

bound (rather than opt out in order not to be bound, as in the Rule 23 class action context),

"settlement of a collective action does not implicate the same due process concerns as the

settlement of a class action," and therefore is subject to less searching scrutiny. *Lizondro-Garcia*

*v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014). In most cases, a settlement that meets the

standards of Rule 23 will also "reflect a fair and reasonable compromise of disputed issues" under

the FLSA. *Id*. The Court should "therefore focus on the standards of Rule 23" when deciding

whether to approve, as here, a hybrid class and collective settlement agreement. *Riedel*, 2016 WL

3144375 at \*6. As this Settlement meets the requirements of Rule 23(e) as well as the *Grinnell*

Factors, it should also be approved as to the FLSA collective.

## V.    REQUESTS FOR AN AWARD OF ATTORNEY'S FEES, EXPENSES, AND ADMINISTRATION FEES SHOULD BE APPROVED

### A.  Attorneys' Fees and Expenses

In assessing a request for attorneys' fees, Rule 23(g) requires the court to consider "the

work counsel has done in identifying or investigating potential claims in the action, . . . counsel's

experience in handling class actions, other complex litigation, and claims of the type asserted in

the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will

commit to representing the class."). *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165

(S.D.N.Y. 2008) (internal quotation marks omitted); Federal Rule of Civil Procedure 23(g).

Class Counsel submit that they are entitled to reasonable attorneys' fees, costs and

expenses to compensate them for their work over nearly five years in recovering alleged unpaid

wages on behalf of the Members of the Settlement Class. Pursuant to FED. R. CIV. P. 23(h) and

54(d)(2), Class Counsel seek an award of attorneys' fees in the amount of $4,000,000.00, or one-

third of the Gross Settlement Amount. Valli Decl. ¶ 39. Class Counsel also seeks reimbursement

of $62,449.28 for expenses paid by them on behalf of the Class/Collective during the litigation.

*See id.* at ¶ 54. For the purposes of this Motion only, EQX does not oppose Class Counsel's

application for attorneys' fees, costs and expenses. The Notice advising members of the Settlement

Class of the Settlement, which was approved by the Court, provided that Class Counsel will apply

for fees in an amount not to exceed one third of the Gross Settlement Amount, expenses are not to

exceed $100,000.00, and administration costs are not to exceed $100,000.00. *See* Exhibit A to Ex.

1. Class Counsel contends that this request for one-third of the Gross Settlement Amount for

attorneys' fees and expenses is reasonable and is within the accepted range typically awarded in contingency fee common fund and FLSA cases as set forth below.

The trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *Wal-Mart Stores*, 396 F.3d at 121; *Yuzary*, 2013 WL 5492998 at *9; *Diaz*, 2010 WL 5507912 at *7. Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, in wage and hour class action lawsuits, public policy favors a common fund attorneys' fee award, *Beckman*, 293 F.R.D. at 477; *McMahon*, 2010 WL 2399328 at *7. *McDaniel v. County of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010). "The lodestar creates an unanticipated disincentive to early settlements, tempts lawyers to run up their hours and compels district courts to engage in a gimlet-eyed review of line-item fee audits." *Wal-Mart Stores*, 396 F.3d at 121.

"'An attorney who recovers a common fund for the benefit of others is entitled to 'a reasonable attorney's fee from the fund as a whole.'" *In re Tyco International MDL Litigation*, 535 F. Supp. 2d 249, 265 (D.N.H. 2007) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, (1980)); *see also Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (stating that in common fund cases "a reasonable fee is based on a percentage of the fund bestowed on the class"). Where the percentage method is used in a claims-made settlement, "[a]n allocation of fees by percentage should . . . be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *see also, e.g.*, *Kiefer v. Moran Foods, LLC*, No. 12-CV-756 (WGY), 2014 U.S. Dist. LEXIS 106924, 2014 WL 3882504, at *8 (D. Conn. Aug. 5, 2014) ("In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts have held that it is appropriate to award attorneys' fees as a percentage of the entire maximum gross settlement

fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants.") (citations omitted). "[Second] Circuit case law directs courts to focus on fairly compensating counsel for work actually performed, given that 'the entire fund, and not some portion [of it], is created through the efforts of counsel at the instigation of the entire class.'" *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41 (E.D.N.Y. 2010) (quoting *Masters*, 473 F.3d at 436).

Yet another advantage of the percentage method is that it "directly aligns the interests of the class and its counsel" because it incentivizes attorneys to create the largest common fund out of which payments to the class can be made. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (internal citations omitted).

There is no hard and fast rule mandating a certain percentage of a common fund that may reasonably be awarded as a fee. The amount of any fee must be determined on the facts of each case. "It is not the obligation of this court to set the fee at the lowest amount possible but rather to determine whether the fees sought are 'reasonable.'" *In re Volkswagen*, 784 F. Supp. 2d 35, 47 (D. Mass. 2011).

Class Counsel's request for one-third of the Gross Settlement Amount (without the additional interest) for Class Counsel's attorneys' fees, costs and expenses falls within the acceptable range for common fund cases in this Circuit, both within the wage and hour context as well as otherwise. Indeed, an attorneys' fee award of one-third of the fund "is the customary percentage in FLSA cases." *Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904 (JCF), 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) (collecting cases); *see also Park*, 2021 U.S. Dist. LEXIS 12819, at *3-4; *Bannerman*, 2020 U.S. Dist. LEXIS 12868, at *3-4; *Clem v. Keybank, N.A.*, No. 13-CV-789 (JCF), 2014 WL 2895918, at *9 (S.D.N.Y. June 20, 2014) ("Class Counsel's request

33

for 33% of the [$3,500,000] fund is reasonable and consistent with the norms of class litigation in this circuit.") (internal quotations and citations omitted); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172 (W.D.N.Y. 2011) (awarding fees of one-third of $42,000,000); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010) (awarding fees of 33% of $9,250,000 settlement).[13] Here, Class Counsel believes that all considerations support the requested amount for attorneys' fees, costs and expenses.

Though *Goldberger v. Integrated Resources, Inc.* did not involve an FLSA claim, the Second Circuit set forth the following six factors to determine the reasonableness of a fee application in that securities class action: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." 209 F.3d 43, 50 (2d Cir. 2000). Should the Court consider these factors, all support the award requested herein.

### 1.    *The time and labor expended by counsel*

Class Counsel have expended significant resources and time, nearly five years litigating this Action including, investigating the claims and EQX's defenses, assessing viable parties, meeting with and interviewing many potentially impacted individuals, collecting hundreds of pages of data from Class Members and EQX, reviewing the relevant merits and damages data, filing consents to join, succesfully defending against a motion to dismiss, successfully moving for

---

[13] *See also Rangel v. 639 Grand St. Meat & Produce Corp.*, 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by the courts in this Circuit"); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) (Stein, D.J.)("a fee that is one-third of the fund is typical" in FLSA cases); *accord Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3(E.D.N.Y. Nov. 21, 2014); *Meza v. 317 Amsterdam Corp.*, 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases).

conditional collective certification, determining damages, reviewing a voluminous over 40,000 pages of documents produced in discovery, conducting/defending over 30 depositions of parties and third parties, engaged in costly battles with respect to the litigation of the claims, including potential motions for conditional and class certification of the claims, motions for the decertification of any such claims (to the extent any were certified by the Court) and motions for summary judgment on the claims, preparing for and attending two mediations, negotiating a settlement, resolving extensive disputes pertaining to the specifics included in the Agreement, and assisting with the administration of the class before, during and after the notice period by fielding numerous inquiries of opt-ins and potential participants in the settlement process and working to ensure that deficiencies are resolved. *See* Valli Decl. ¶¶ 4, 7-26.

From 2020 to date, Class Counsel have collectively spent over 2,000 attorney, paralegal and support staff hours investigating and prosecuting this case.[14] *See* Exhibits C-D of Valli Decl.; Schulman Decl. ¶ 16; Aronauer Decl. ¶¶ 11-13; Gonor Decl. ¶¶ 10-12. These hours have an aggregate lodestar of approximately $1,087,126.30. Valli Decl. ¶ 53. Such hours are reasonable in the instant case, particularly given the size of the Class, Class Counsel's contact with the Class, the magnitude of and management of the discovery necessary to establish Plaintiffs' claims, and the length of litigation. All hours are based on contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case. Class Counsel's efforts have been without compensation to date and entitlement to payment was contingent upon achieving a successful result.

Further, after Class Counsel spends additional time on this litigation in connection with implementing and monitoring the settlement, their lodestar will increase. *Sewell*, 2012 WL

---

[14] Class Counsel has separately recorded the time spent on Katz's individual claims.

1320124 at *13; *Beckman*, 293 F.R.D. at 482. Among other things, and particularly because of the number of Class Members in this case and a settlement payout period of three years, Class Counsel will continue to answer class member questions, respond to inquiries from the claims administrator, and negotiate and possibly litigate disagreements with EQX about the administration of the settlement and distribution of the fund. This additional work makes Class Counsel's request "even more reasonable than it appears at first glance." *Beckman*, 293 F.R.D. at 482; *Reyes v. Altamarea Grp., LLC*, No. 10-CV-6451 (RLE), 2011 WL 4599822, at *8 (S.D.N.Y. Aug. 16, 2011) (in approving 33% attorney fee award in FLSA case, Court noted that "[t]he fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.").

### 2.    *The magnitude and complexities of the litigation*

The United States Supreme Court has long recognized that "FLSA claims typically involve complex mixed questions of fact and law[.] These statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Systems, Inc*., 450 U.S. 728, 743 (1981).

The claims herein had all the hallmarks of complex and extended FLSA and state law litigation. The risks of proceeding with this case have been set out above, but for emphasis include Plaintiffs having to establish that they were not properly compensated for all hours worked; Plaintiffs did not receive compliant wage statements or were timely paid under the NYLL; Plaintiffs have standing to pursue their wage statement claims; and class and collective action treatment of Plaintiffs' claims is appropriate. *See* Valli Decl. ¶¶ 4, 7-26.

This settlement involved 6,441 Class Members. As such, case and client management was a complex and time-consuming endeavor. These factors all weigh in favor of reasonableness of the requested fee.

### 3. The risk of the litigation

Class Counsel undertook to prosecute this action without any guarantee of payment and litigated on a contingent basis, especially considering this action was commenced in 2020 where gyms were dramatically affected by the COVID-19 pandemic. Class Counsel was required to make a significant investment of time and resources without any guarantee. The circumstances of this case presented numerous and substantial hurdles to a successful recovery of unpaid wages. *See supra* at 21-24. The risk of litigation and collection weigh in favor of Class Counsel's request for attorneys' fees.

### 4. The Quality of Representation

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007) (citing *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004)). This case was staffed by lawyers with decades of experience in employment law and litigation. Indeed, Class Counsel respectfully submit that the $12,000,000.00 Gross Settlement Amount was achieved, in part, because of the level of experience and reputation of counsel. *See, e.g.*, *Hines*, 15-CV-07882, Dkt. No. 202 ("Class counsel are experienced and well-qualified employment lawyers."); *Kudo v. Panda Express*, 7:09-CV-00712, Dkt. No. 308 at 5-6 (S.D.N.Y. June 26, 2015) (appointing Valli Kane & Vagnini, among others, as class counsel for settlement class recognizing how they "have succeeded in negotiating an award that has real value for the class members"); *Indergit v. Rite Aid,* 293 F.R.D. 632, 654 (S.D.N.Y. 2013) (certifying settlement class of store managers and naming Valli Kane & Vagnini,

among others, as class counsel, finding "it is clear that counsel is qualified"); *Brown et. al v. Medicis*, 13-CV-01345, Dkt. No. 52 at 4 (D.D.C., July 11, 2016) (granting final approval of $7,150,000 settlement in gender discrimination and hostile work environment case, stating that class representatives have "hired counsel experienced in litigating employment discrimination class actions" in referring to Valli Kane & Vagnini and their co-counsel when approving 35% plus reimbursement of all reasonable costs, plus expenses and an additional $150,000 payment for fees for work associated with implementing the settlement agreement); *Roberts et. al. v. TJX*, 13-CV-13142, Dkt. No. 172 at 6 (D. Mass. Sept. 30, 2016) (Judge Burroughs in approving wage and hour settlement for a portion of the complaint, in referring to Valli Kane & Vagnini and co-counsel stated, "the Court is satisfied that the terms and conditions set forth in the settlement agreement are the result of good faith, arms' length settlement negotiations between competent and experienced counsel[.]"); *Orlando v. Liberty Ashes, Inc.*, No. 15-CV-9434, at 10:18-20 (S.D.N.Y. Sept. 4, 2020) ("[I]n my entire experience with [Denise Schulman of Joseph & Kirschenbaum] in this case, and a lot of others, she's always been among the very best lawyers in this case."); *Murphy v. Lajaunie*, No. 13-CV-6503, 2018 U.S. Dist. LEXIS 221462, at \*36 (S.D.N.Y. Feb. 2, 2018) (describing Joseph & Kirschenbaum as "a reputable law firm with substantial experience litigating wage and hour class actions"); *Zivkovic*, 329 F.R.D. at 74 ("[T]he attorneys of Joseph & Kirschenbaum have substantial experience as lead or co-lead counsel in wage an hour actions in this District."); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CV-5008 (RJS), at 20:1-3 (S.D.N.Y. Dec. 22, 2015) (stating, "I think Mr. Kirschenbaum and Ms. Schulman and their firm [Joseph & Kirschenbaum] are the best in breed – of firms doing this kind of work").

Additionally, there are approximately 800 individuals who EQX purports are bound by arbitration agreements prohibiting them from participating in a class action or class action

settlement. *See* Valli Decl. ¶ 31. Plaintiffs' counsel was able to obtain relief on behalf of these individuals through negotiating to include them as part of the Settlement. Plaintiffs' counsel was also able to successfully negotiate a "claims made" class action settlement whereby anyone who fails to submit a claim form will not be subject to the Settlement's release. *See* Ex. 1 ¶ 10. Thus, even those who do not participate are protected.

EQX, in turn, were ably represented by a prominent law firm and attorneys with specific experience and well-known expertise in this type of litigation. "The quality of opposing counsel is also important in evaluating the quality of the services rendered by Plaintiffs' Class Counsel." *Maley*, 186 F. Supp. 2d at 373. Thus, this factor weighs in favor of granting the requested fee.

5.    *The requested fee in relation to the settlement*

The request by Class Counsel for an award of one-third of the Gross Settlement Amount for fees, costs and expenses is fully supported by awards in class actions involving common funds, including, specifically, wage and hour class and collective action settlements.

Contingency fees of one third in FLSA cases are routinely approved in this Circuit. Although *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182 (2nd Cir. 2008), does not address a common fund fee petition, it supports Class Counsel's request for one third of the fund because '"reasonable, paying client[s]' . . . typically pay one-third of their recoveries under private retainer agreements." *See also Reyes*, 2011 WL 4599822 at *8.

No Class Member objected to Class Counsel's request for one third of the Gross Settlement Amount. *See* Simpluris Decl. ¶ 18. Thus, Class Counsel's request for one third of the Gross Settlement Amount is reasonable and "consistent with the norms of class litigation in this circuit." *Yuzary,* 2013 WL 5492998, at *10 (internal quotation marks and citation omitted); *see also*, *e.g.*, *D'Angelo*, 2023 U.S. Dist. LEXIS 131029, at *26; *Delijanin*, 2021 U.S. Dist. LEXIS 27462, at *20; *Bannerman*, 2020 U.S. Dist. LEXIS 12868; *Jara v. Felidia Rest.*, No. 17-CV-9622, 2018 U.S.

39

Dist. LEXIS 241262, at *6 (S.D.N.Y. Dec. 17, 2018). After fees and costs are granted the settlement remains "fair, adequate and reasonable." *See Grinnell*, 495 F.2d. Thus, this significant recovery for the Class justifies awarding Class Counsel the fees and costs requested.

### 6. *Public Policy Considerations*

"[F]ee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Hernandez,* 2013 WL 1209563, at *8 (internal quotation marks and citation omitted). The FLSA and its state law analogs are remedial statutes designed to protect the wages of workers. *See A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective, which is ensuring that every employee receives "a fair day's pay for a fair day's work"), the purposes of which are served by adequately compensating attorneys who protect wage and hour rights. *McMahon*, 2010 WL 2399328, at *7; *Sand v. Greenberg*, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of these statutes. Such adequate compensation is consistent with the FLSA's purpose of eliminating "labor conditions detrimental to the maintenance of the minimum standard living" of workers through private lawsuits and "insur[ing] effective access to the judicial process" by removing the significant barrier of paying legal fees and costs out of pocket. *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co., Inc.*, 732 F.2d 495, 501-02 (6th Cir. 1984) (internal quotations omitted).

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Beckman*, 293 F.R.D. at 477; *see also Hernandez*, 2013 WL 1209563, at *8. "If not, wage and hour abuses would go without remedy because attorneys

would be unwilling to take on the risk." *Beckman*, 293 F.R.D. at 477; *see Sand* 2010 WL 69359, at *3. ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected."). Since each of the factors noted above supports the reasonableness of the fee request of Class Counsel, it should be approved by the Court.

7.    <em>Lodestar Cross-Check</em>

Following the *Goldberger* decision, the trend in the Second Circuit has been to apply the percentage method and loosely use the lodestar method as a "baseline" or as a "cross check." *Goldberger*, 209 F.3d at 50.[15] As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.[16] *Hicks v. Morgan Stanley & Co.*, 2005 U.S. Dist. LEXIS 24890, at *27 (S.D.N.Y. Oct. 19, 2005). Courts can then consider whether a multiplier is warranted based on factors such as (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *In re Boesky*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995); *see also Goldberger*, 209 F.3d at 47; *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999).

"Courts commonly award lodestar multipliers between two and six." *Sewell v. Bovis Lend Lease, Inc.*, No. 09-CV-6548 (RLE), 2012 WL 1320124, at *13 (S.D.N.Y. Apr. 16, 2012) (citations omitted). Here, Class Counsel's lodestar for the services rendered t totals $1,087,126.30. *See* Valli Decl. ¶ 53. Thus, the lodestar multiplier sought is approximately 3.68, which is well

---

[15] "Should the Court utilize the lodestar method as a cross check, the Court "is not required to wade through every billed hour, every claimed service, and charged expense, effectively conducting an audit of plaintiffs' fee petition and then issue a telephone book of minute findings." *In re Volkswagen*, 784 F. Supp. 2d at 47 (citation omitted). The lodestar is calculated by multiplying the number of hours incurred by the hourly rate for the services rendered. *In re Tyco*, 535 F. Supp. 2d at 265 n.12.

[16] Class Counsel's rates – $625.00 to $500.00 for partners, $275.00 to $350.00 for associates, and $125.00 to $190.00 for support staff – are within the range of rates approved in this Circuit. *See Rubin v. HSBC USA, NA*, 763 F. Supp. 3d 233, 2025 U.S. Dist. LEXIS 10313, at *15-16 (E.D.N.Y. 2025); *Martinenko v. 212 Steakhouse, Inc.*, No. 22-CV-518, 2024 U.S. Dist. LEXIS 231925, at *10-12 (S.D.N.Y. Dec. 23, 2024).

within the range that is granted by courts in this Circuit and elsewhere. *See*, *e.g.*, *Bekker v. Neuberger Berman Group 401k Plan Inv. Comm.*, No. 16-CV-6123, 2020 U.S. Dist. LEXIS 224680, at *8-9 (S.D.N.Y. Dec. 1, 2020) (approving 5.85 multiplier); *Pantelyat v. Bank of Am., N.A.*, No. 16-CV-8964, 2019 U.S. Dist. LEXIS 15714, at *29 (S.D.N.Y. Jan. 31, 2019) (approving 4.89 multiplier and noting that courts approve multipliers of up to 8 times the lodestar); *Zeltser v Merrill Lynch & Co., Inc.*, 13-CV-1531 (FM), 2014 WL 4816134, at *9 (S.D.N.Y. Sept. 23, 2014) (applied a lodestar of 5.1 stating "[a]pplying the lodestar method as a "cross check"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052–54 (9th Cir.2002) (listing nationwide class action settlements where multiplier ranged up to 19.6); *Sewell*, 2012 WL 1320124 at *13 ("Courts commonly award lodestar multipliers between two to six."); *Yuzary*, 2013 WL 5492998, at *11 (7.6 multiplier); *Beckman*, 293 F.D.R. (awarding a multiplier of 6.3); *Davis v. JP Morgan Chase & Co.*, No. 01-CV-6492L, *slip op.* 17 (S.D.N.Y. Oct. 11, 2011) (5.3 multiplier on one third fee of $42 million settlement; also citing other authorities).

The lodestar multiplier Class Counsel seeks is also reasonable because it will diminish over time as the final settlement payment is not set to occur until 2028. *See Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010). As set forth above, Class Counsel is often called upon to perform work after final approval hearing, including, answering class member questions, answering questions from the claims administrator, and negotiating and working with EQX's counsel on any issues that may arise in connection with administering the Settlement and distributing the QSF. Particularly in this case, Class Counsel has fielded and continues to field calls and questions from class members. *See* Valli Decl. ¶¶ 47, 53; Exhibit C of Valli Decl. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the

settlement going forward, means that the lodestar cross check multiplier will be reduced as a result, also supporting their fee request. *See Diaz*, 2010 WL 5507912, at *7 ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.").

B. Administrative Fees

The Court preliminarily appointed Simpluris as the Settlement Claims Administrator in this Action. Simpluris is an experienced administrator of class action settlements nationwide. *See* Simpluris Decl. ¶ 4. Simpluris has indicated that its final estimated administrative fees are approximately $50,586.00 which is in line with similar settlements in this District and well below the $100,000 allocated for administration as part of the Settlement. *See id.* at ¶ 19; *Flores, et al. v. K.C. 53 LLC, et al.*, No. 12-CV-8095 (S.D.N.Y. Sept. 16, 2013).. Thus, Plaintiffs respectfully request that the $50,586.00 in administration fees for Simpluris be approved.

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request that this Court grant, in its entirety, Plaintiffs' Unopposed Motion for Final Approval of Class/Collective Settlement award of Attorney fees and costs as well as Service Awards and enter the accompanying proposed Order on Final Approval of Class and Collective Action Settlement and Judgment and the relief set forth therein.

Dated:      June 20, 2025
            Garden City, New York

                                        Respectfully submitted,

                                        */s/ Alexander M. White*
                                        James A. Vagnini
                                        jvagnini@vkvlawyers.com
                                        Alexander M. White

awhite@vkvlawyers.com
**Valli Kane & Vagnini LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
T: (516) 203-7180
F: (516) 706-0248

D. Maimon Kirschenbaum, Esq.
maimon@jk-llp.com
Denise A. Schulman, Esq.
denise@jk-llp.com
**Joseph & Kirschenbaum LLP**
32 Broadway, Suite 601
New York, New York 10004
T: (212) 688-5640
F: (212) 981-9587

Jacob Aronauer, Esq.
jaronauer@aronauerlaw.com
**Law Office of Jacob Aronauer**
225 Broadway, 3rd Floor
New York, New York10007
T: (212) 323-6980
F: (212) 233-9238
jaronauer@aronauerlaw.com

Mariya Gonor, Esq.
mgonor@norris-law.com
Kimberley A. Brunner, Esq.
kbrunner@norris-law.com
Norris McLaughlin, P.A.
7 Times Square, 21st Floor
New York, New York 10036
T: (212) 808-0700
F: (908) 722-0755

Matthew James Ross
mrossbeattielaw.com
**Beattie Padovano, LLC**
200 Market Street, Suite 401
Montvale, New Jersey 076545
T: (201) 799-9736
F: (201) 573-9736

**ATTORNEYS FOR PLAINTIFFS**

44