# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  | X |
|---|---|

MONIQUE KATZ and YEKATERINA
SKIDANENKO, individually and on behalf of all
others similarly situated,

                   Plaintiffs,

               -against-

EQUINOX HOLDINGS, INC.

                  Defendant.

Civ. No.:  20-cv-9856 (DEH)(RWL)

## SETTLEMENT AGREEMENT AND RELEASE

       Plaintiffs Monique Katz and Yekaterina Skidanenko, individually and on behalf of all others similarly situated, (collectively, "Plaintiffs") and Defendant Equinox Holdings, Inc. ("Defendant") (collectively with Plaintiffs, the "Parties") enter into this Settlement Agreement and Release (the "Agreement") to resolve the wage and hour claims of Plaintiffs and class and collective members (as defined below).

## RECITALS

**A.**     WHEREAS, on November 23, 2020, Plaintiff Katz commenced this action by filing her initial Class Action Complaint, alleging that she, along with all other personal trainers who worked for Defendant during the six years prior to the filing of the Complaint, had not been paid overtime wages for all overtime hours worked, and related wage and hour violations;

**B.**     WHEREAS, on January 7, 2022, this action was consolidated with the case captioned *Skidanenko v. Equinox Holdings, Inc. et al.*, 20-CV-01550-WFK-RLM (E.D.N.Y.), wherein Plaintiff Skidanenko asserted similar claims as those asserted by Plaintiff Katz;

**C.**     WHEREAS, this Court granted conditional certification of two collectives: (i) on April 29, 2022, the Court conditionally certified a collective of all persons employed by Equinox in New York State as High-Tier Trainers (defined as Tier 3, 3+, and Tier X Trainers) since May 13, 2018, who were paid a flat rate for personal training sessions and who worked more than 40 hours allegedly without overtime compensation. Thereafter, the parties stipulated to conditional certification of a single collective, comprised of two sub-collectives, which slightly modified the definition of the first certified collective. The first sub-collective was modified to include all Tier 3, 3+ and Tier X Trainers employed by Equinox in New York between May 13, 2018, to June 26, 2022 who performed at least 18 personal training sessions in any one workweek during that period. The second sub-collective consists of all Tier 1 and Tier 2 Trainers employed by Defendant in New York

who worked at least four days in a workweek. The Court approved conditional certification of this second sub-collective from April 4, 2019, to June 26, 2022.

**D.**     WHEREAS, on October 3, 2022, notice of the collective action was sent to putative collective members, and 232 individuals submitted opt-in consents to join this action. A supplemental notice went out to all remaining putative collective members on December 8, 2022, and an additional 92 claim forms were received. 332[1] have filed opt-in consents to join this action;

**E.**     WHEREAS, the Parties participated in an initial mediation on October 18, 2021 with private mediator Ruth Raisfeld, Esq., which did not succeed. After conducting 39 depositions (inclusive of Plaintiffs and witnesses), and expansive paper and electronic discovery, on April 3, 2024, the Parties attended a second mediation, this time with private mediator Michael Russell, Esq. Although the mediation was initially unsuccessful, the Parties continued to negotiate for months at arm's length, with additional assistance from mediator Russell, and ultimately, agreed to a resolution. Upon their analysis and their evaluation of several factors, and recognizing the substantial risks of litigation, including the possibility that the claims, if not settled now, might result in a recovery less favorable to Plaintiffs, , and class and collective members, and that a recovery, if any, might not occur for several years, if collectible at all, Plaintiffs' counsel is satisfied that this Agreement is fair, reasonable, and adequate, and that the Agreement is in the best interests of Plaintiffs and class and collective members;

**F.**     WHEREAS, Defendant has denied and continues to deny all allegations made by Plaintiffs, has denied and continues to deny that personal trainers were denied overtime pay under the Fair Labor Standards Act and the New York Labor Law, that Defendant is liable or owes damages or penalties to anyone with respect to the alleged facts and causes of action subject to this Agreement, and that the claims subject to this Agreement are appropriate for class or collective treatment, except for purposes of settlement only. Yet without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the disputed issues on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of litigation of these claims; and

**G.**     NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement on the following terms and conditions:

**1.     DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

---

[1] Some of the 332 people who filed opt-in consents to join this action have been dismissed by the Court for their failure to participate in discovery and others have voluntarily filed consents to opt-out of the collective.

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

1.1.    **Agreement** means this Settlement Agreement and Release.

1.2.    **Application for Final Approval** means documents and materials to be filed with the Court under Section 6, seeking final approval of the settlement, attorneys' fees and expenses, and Service Awards.

1.3.    **Bar Date** means the date that is 90 days from the date of the initial mailing of the Notice, with time being "of the essence." The Bar Date is the date by which any Class Member or Putative Collective Member who wishes to qualify as a Participating Class or Collective Member must timely submit a Claim Form under Section 4(F), and the deadline for Class Member Objections, if any. It also means the date by which any Opt-in Plaintiff who wishes to not become a Participating Class or Collective Member must timely opt-out. Any opt-in Plaintiff who opts-out shall individually or through counsel file an opt-out form that dismisses his or her claim without prejudice.

1.4.    **Claim Form** means the form that Class Members and Putative Collective Members must return by the Bar Date to become Participating Class or Collective Members, substantially in the form set forth as Exhibit B hereto.  The Claim Form is subject to approval by the Court.  A copy of the Claim Form will be included with the Notice that is sent to Class members who are not Opt-in Plaintiffs.

1.5.    **Class Counsel** means Valli Kane & Vagnini LLP, Joseph & Kirschenbaum LLP, Norris McLaughlin, P.A., The Law Offices of Jacob Aronauer, and Beattie Padovano, LLC.

1.6.    **Class List** means a list of all Class and Collective Members, including their names, last known addresses, last known telephone numbers (to the extent such information is in Defendant's possession), last known personal email addresses (to the extent such information is in Defendant's possession), social security numbers, and dates of employment with Equinox as a personal trainer.  Class and Collective Members' social security numbers shall not be provided to Class Counsel.

1.7.    **Class and Class Members** "Class" (collectively) and/or "Class Member" (individually) means: all individuals who have worked for Defendant in New York as personal trainers in any tier level at any time from March 25, 2014 through July 31, 2024 ("Class Period"), including those who may be subject to an arbitration agreement.

1.8.    **Complaint** means the First Amended Class and Collective Action Complaint filed by Plaintiffs on May 24, 2022.

1.9.    **Collective Members** means the Opt-in Plaintiffs, as well as those Putative Collective Members who return a Claim Form by the Bar Date and who worked for Equinox in New York as a Tier 3, 3+ and Tier X personal trainer between May 13, 2018 and July 31, 2024 or as a Tier 1 or 2 personal trainer between February 5, 2019 and July 31, 2024

1.10.   **Court** means the United States District Court for the Southern District of New York.

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

**1.11.**  **Days** means calendar days.

**1.12.**  **Defendant** means Equinox Holdings, Inc.

**1.13.**  **Defendant's Counsel** means Jackson Lewis P.C.

**1.14.**  **Effective Date** means the last of the following dates: (a) if there is no appeal of the Final Approval Order, 31 days after the final approval order; or (b) if there is an appeal of the Final Approval Order, the day after all appeals are finally resolved in favor of final approval.

**1.15.**  **Eligible Workweek** means each calendar week actually worked by a Class Member during the applicable Class or FLSA Collective Period.

**1.16.**  **Employer Payroll Taxes** means all taxes and withholdings an employer must make pursuant to federal, state, and/or local law arising out of or based on the payment of employment compensation in this Litigation, including, but not limited to, FICA, FUTA, and SUTA obligations.  Defendant shall pay Employer Payroll Taxes in addition to the Maximum Settlement Amount under this Agreement.

**1.17.**  **Fairness Hearing** means the hearing before the Court relating to the Motion for Final Approval.

**1.18.**  **Final Approval Order** means the Order entered by the Court after the Fairness Hearing, approving the terms of this Agreement, authorizing distribution of Settlement Checks, Service Awards, and attorneys' fees and costs, and dismissing the Litigation with prejudice.

**1.19.**  **Final Settlement Amount** means the total of: (i) all allocated settlement shares from the Net Settlement Fund to Participating Class Members and Participating Collective Members; (ii) the Settlement Administrator's fees and costs; (iii) Court-approved Service Awards; and (iv) Court-approved attorneys' fees and costs for Class Counsel.

**1.20.**  **FLSA Collective Period** means the period from May 13, 2018 to July 31, 2024 for New York Tier 3, 3+ and Tier X personal trainers, and for Tier 1 or 2 personal trainers, the period April 4, 2019, to July 31, 2024.

**1.21.**  **Litigation** means the above-captioned action, entitled: *Katz, et al. v. Equinox Holdings, Inc.*, Case No.: 20-civ-9856 (DEH)(RWL), pending in the United States District Court for the Southern District of New York.

**1.22.**  **Maximum Settlement Amount** refers to Twelve Million Dollars ($12,000,000.00), the maximum amount Defendant has agreed to pay (other than Employer Payroll Taxes as set forth in Section 8(A) herein), subject to Section 8(B).

**1.23.**  **Named Plaintiffs** means Monique Katz and Yekaterina Skidanenko.

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

**1.24.   Net Settlement Fund** means the Maximum Settlement Amount less (1) the Settlement Administrator's fees and costs; (2) Court-approved Service Awards; and (3) Court-approved attorneys' fees and costs for Class Counsel.

**1.25.   Notice** means the Court-approved Notice of Proposed Class and Collective Action Settlement, as authorized in the Preliminary Approval Order, substantially in the form set forth as Exhibit A hereto.

**1.26.   Objector** means a Class Member who properly files an Objection to the settlement and includes no Class Member who does not complete and Claim Form and no Opt-in Plaintiff who opts out of this settlement.

**1.28.   Opt-in Plaintiffs** means every person who filed a consent to join this action and whose FLSA claims were not dismissed by the Court and who did not withdraw their consent to join as of the date this Agreement is executed. A list of these individuals is attached hereto as Exhibit D.

**1.29.   Participating Class Members** means all Class Members who timely submit Claim Forms before the Bar Date and all Opt-in Plaintiffs who do not timely opt-out. All Opt-in Plaintiffs who do not timely opt-out shall automatically be deemed Participating Class Members without having to submit a Claim Form.

**1.30.   Participating Collective Members** means all Collective Members who are Opt-in Plaintiffs and have not timely opted-out or who timely submit Claim Forms before the Bar Date and who worked for Defendant as a personal trainer during the FLSA Collective Period.

**1.31.   Parties** means Named Plaintiffs and Defendant (each a "Party").

**1.32.   Personal Training Session** means a personal training session performed by a Class Member during the applicable Class or Collective Period.

**1.33.   Preliminary Approval Order** means the Order entered by the Court: (i) certifying the Class solely to effect the Agreement; (ii) preliminarily approving the terms of this Agreement; (iii) appointing Class Counsel as defined above; (iv) directing the manner and timing of providing Notice to the Class; and (v) setting dates to carry out the terms of this Agreement, including the date of the Fairness Hearing.

**1.34.   Qualified Settlement Fund or QSF** means the account established by the Settlement Administrator for the Maximum Settlement Amount paid by Defendant. The QSF will be controlled by the Settlement Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval.

**1.35.   Released Class Claims** means any New York state and local wage and hour claims pled in the Complaint that accrued during a Participating Class Member's employment as a personal trainer for Defendant, relating back to the full extent of the applicable statutes of limitations, including any period tolled by the parties July 13, 2021 tolling agreement, and

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

the Court's July 26, 2022 Order (Dkt. No. 93), and continuing through the date the Preliminary Approval Order is entered by the Court, including, without limitations, all state claims for unpaid overtime wages, unpaid minimum wages, unpaid wages of any kind, premium pay of any kind, frequency of pay violations, Wage Theft Prevention Act violations and any related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

1.36. **Released FLSA Claims** means FLSA claims pled in the Complaint that accrued during each Participating Class or Collective Member's employment as a personal trainer for Defendant, relating back to the full extent of the applicable statutes of limitations, including any period tolled by the parties July 13, 2021 tolling agreement, and the Court's July 26, 2022 Order (Dkt. No. 93) and continuing through the date the Preliminary Approval Order is entered by the Court, including, without limitations, claims for unpaid overtime wages, unpaid minimum wages and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

1.37. **Reminder** means the text set forth in Exhibit C hereto, which the Settlement Administrator shall send via First-Class United States Mail postcard, along with email and text (to the extent such contact information is in Defendant's possession), to Class Members who have not submitted a Claim Form forty-five (45) days after the initial mailing of the Notice.

1.38. **Service Awards** means awards the Court approves to be paid to Named Plaintiffs Monique Katz and Yekaterina Skidanenko of up to Fifteen Thousand Dollars ($15,000.00) each and to Collective Action members who appeared for a deposition in this Litigation of up to One Thousand Dollars ($1,000.00) each.

1.39. **Settlement Administrator** means the qualified administrator selected under Section 3(A) to disseminate the Notice, administer the calculation, allocation, and distribution of the QSF, and perform the administrative duties set forth in Section 3(C).

1.40. **Settlement Checks** means checks issued to Participating Class and Collective Members for their share of the Net Settlement Fund, calculated in accordance with this Agreement.

1.41. **Settlement Share** shall mean each Class Member's proportionate Share of the Net Settlement Fund as determined pursuant to the formula set forth in Section 8(F)(i) herein.

## 2. APPLICATION FOR PRELIMINARY APPROVAL.

A. **Timing.** Within 21 days after the execution of this Agreement, Class Counsel shall file a motion for preliminary settlement approval ("Preliminary Approval Motion").

B. **Preliminary Approval Motion.** The Unopposed Preliminary Approval Motion shall include: (1) the proposed Notice and Claim Form, attached as Exhibits A and B; (2) a proposed Preliminary Approval Order; (3) an executed version of this Agreement; and (4) the necessary documents, memorandum, affidavits, and

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

exhibits to certify the Class for settlement purposes only, and preliminarily approving the Agreement. The Preliminary Approval Motion will seek the setting of a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

C.  **Review.** Class Counsel shall provide Defendant's Counsel with drafts of the Memorandum of Law in Support of Preliminary Approval Motion, proposed Preliminary Approval Order and any declarations or supporting documents submitted therewith at least ten business days before filing to allow Defendant sufficient time to review and make comments. The Parties agree to meet and confer in good faith if there are disputes over any of Defendant's comments to the Preliminary Approval Papers, so that the papers may be submitted as unopposed.

## 3.  SETTLEMENT ADMINISTRATOR

A.  **Retention.** The Parties have selected Simpluris Inc. to serve as Settlement Administrator.

B.  **Settlement Administration Costs.** The Settlement Administrator's costs and expenses, not to exceed $100,000.00, shall be paid from the Maximum Settlement Amount.

C.  **Responsibilities of the Settlement Administrator.** The Settlement Administrator shall be responsible for: disseminating the Notice, Claim Form, and Reminder, as provided herein; performing a skip trace up to one time and resending, within three days of receipt, any Notice and Claim Form returned without forwarding information and resending to those with new forwarding information; responding to requests or communications made by the Parties; preparing, monitoring, and maintaining a website where Class and Collective Members can review more information about the settlement and submit a Claim Form; promptly furnishing to counsel for the Parties copies of any Objections that the Settlement Administrator receives; receiving, retaining, and reviewing submitted Claim Forms; providing counsel for the Parties with copies of all submitted Claim Forms; keeping track of Objections, including maintaining the original mailing envelope in which the Objections were mailed; providing Class Counsel with a list of the names, addresses, and contact information for Class Members and Participating Class and Collective Members; distributing the Settlement Checks to Participating Class and Collective Members; preparing, sending, and/or wire transferring Class Counsel's approved attorneys' fees and costs; mailing Service Awards in accordance with this Agreement and the Final Approval Order; working with Class Counsel and Defendant's Counsel to resolve disputes raised by Class and Collective Members regarding Defendant's records and/or the calculation of Class and/or Collective Members' Net Settlement Amount under Section 8(F) below; referring to Class Counsel all inquiries by Class and Collective Members regarding matters not within

7

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

the Settlement Administrator's duties specified herein; promptly apprising counsel for the Parties of the activities of the Settlement Administrator; maintaining adequate records of its activities, including the dates of the mailing and other communications and attempted written or electronic communications with Class and Collective Members, confirming in writing to Class Counsel and Defendant's Counsel its completion of the administration of the Agreement; calculating the Net Settlement Amounts; reporting on the status of the settlement to the Parties weekly; notifying counsel for all Parties of all timely and untimely submissions; providing a compliance affidavit in connection with the application for Final Approval; locating Class and Collective Members, including calling Class and Collective Members, if necessary; establishing and administering the QSF; calculating and paying, as provided herein, all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; and such other tasks as set forth herein, or as the Parties mutually agree.

D.   **Access to the Settlement Administrator.**  The Parties will have equal access to the Settlement Administrator throughout the settlement administration period. Defendant shall provide the Settlement Administrator with the information necessary to calculate the estimated Net Settlement Amounts for Class Members and Collective Members, and both Parties shall reasonably assist the Settlement Administrator in locating Class and Collective Members.

E.   **Disputes.**  Both Parties shall have the right to review and approve all calculations of the Settlement Administrator and can raise any disputes with the calculations to the Settlement Administrator and the other Party for any necessary revisions to remain consistent with the terms of this Agreement.  Any disputes regarding the Settlement Administrator's services, including the calculation of the Net Settlement Amounts for Class Members and Collective Members, shall be addressed to the Court for a ruling.

4.   **NOTICE AND CLAIM FORMS**

A.   **Class List.**  Within 10 days of the Preliminary Approval Order, but no sooner than 45 days after the filing of the Preliminary Approval Motion, Defendant's Counsel shall provide the Settlement Administrator and Class Counsel with the Class List, except that the class list provided to Class Counsel shall not include Social Security Numbers of the Class Members and the Settlement Administrator shall not share Social Security Numbers with Class Counsel.

B.   **Notice Content.**  The Notice will include a description of the claims and this Agreement, an estimate of each Class Member's Net Settlement Amount, and detail about the opportunity to become eligible to receive a Settlement Check by filing a Claim Form, and the opportunity to object and/or appear at the Fairness Hearing,

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

as applicable.  The Notice will also advise Class Members of a website where they can review information about the settlement and submit a Claim Form.

**C.**    **Notice Distribution.**  Within 30 days of the Preliminary Approval Order or the date they receive the Class List, whichever is later, the Settlement Administrator shall send to all Class Members, via First Class United States Mail and email (to the extent such information is in Defendant's possession), the Court-approved Notice and Claim Form, enclosing a postage pre-paid return envelope with the physical mailing.  The Settlement Administrator will also send a text message (to the extent such contact information is in Defendant's possession) advising Class Members of the settlement and of a website where they can review information about the settlement and submit a Claim Forms.

**D.**    **Skip Trace and Re-mailing.**  The Settlement Administrator will use all commercially reasonable means to confirm Class Members' addresses and obtain new addresses as necessary.  If a Notice and Claim Form mailed to a Class Member is returned as undeliverable, the Settlement Administrator shall attempt to obtain the correct address of such person, including up to one skip trace, and shall attempt a re-mailing provided it obtains a more recent address, except that skip traces shall be performed no later than 90 days after the initial dissemination of Notice. The Settlement Administrator shall also mail and/or email a Notice and Claim Form to any Class Member who contacts the Settlement Administrator or Class Counsel on or before the Bar Date and requests a Notice and Claim Form. Any Class Member whose Claim Form is remailed after being returned as undeliverable shall have until the later of the Bar Date or 30 days from the date of remailing (the "Adjusted Bar Date") to return an executed Claim Form.

**E.**    **Reminder.**  The Settlement Administrator shall send the Reminder text set forth as Exhibit C hereto via First-Class United States Mail postcard, along with similar text via email and text message (to the extent such contact information is in Defendant's possession), to each Class Member who has not submitted a Claim Form forty-five (45) days after the initial mailing of the Notice.

**F.**    **Effective Claim Forms for Participating Class and Collective Members.**    Only Participating Class and Collective Members shall be eligible to receive a Settlement Check from the settlement. To be effective for purposes of becoming a Participating Class or Collective Member, a Claim Form shall be post-marked, faxed, emailed, submitted/completed online, or otherwise submitted to the Settlement Administrator by the Bar Date or Adjusted Bar Date and include a signature in the designated area (an electronic signature shall be deemed a valid signature and shall have the same force and effect as an original signature). To the extent a mailed Claim Form does not bear a post-mark, the Claim Form shall be deemed timely only if the Settlement Administrator receives it no later than three calendar days after the Bar Date or Adjusted Bar Date. Class and Collective Members who were unable to file the Claim Form by the Bar Date or Adjusted

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

Bar Date due to good cause, as mutually agreed by the Class Counsel and Defendant's Counsel, such as military service, hospitalization, or other extraordinary circumstances, shall have until seven days before the Fairness Hearing in which to return their Claim Form and become a Participating Class and Collective Member.

5.    **OBJECTIONS TO THE SETTLEMENT AND OPT-IN PLAINTIFFS OPT-OUTS.**

    **A.**    Participating Class Members who wish to present objections to the settlement or the Agreement at the Fairness Hearing must first do so in writing ("Objection"). To be considered, they must timely submit a Claim Form or not opt-out if they are an Opt-in Plaintiff and such Objection must be mailed to the Settlement Administrator by First-Class United States Mail and post-marked or otherwise submitted by the Bar Date or Adjusted Bar Date. The Objection must include all reasons for objecting to the settlement or the Agreement, and any supporting documentation. The Objection must also include the name, address, and telephone number for the Class Member making the objection (the "Objector"). The Settlement Administrator will stamp the date received on the original and send copies of each Objection and any supporting documentation, as well as a copy of the Notice and Claim Form mailed to the Objector, to Class Counsel and Defendant's Counsel by email no later than three days after receipt of the Objection. A non-Opt-in Plaintiff Class Member who wishes to object must be a Participating Class Member by filling out a claim form to be able to object. A Opt-in Plaintiff who wishes to object must not opt-out in order to be able to object.

    **B.**    An Objector has the right to appear at the Fairness Hearing either on his or her own behalf or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her Objection at the time he or she submits his or her written Objection. An Objector may withdraw his or her Objection at any time.

    **C.**    The Parties may file with the Court written responses to any filed Objections no later than three days before the Fairness Hearing.

    **D.**    Any Opt-in Plaintiff who wishes to opt-out of the settlement must be post marked, faxed, emailed, or submitted/completed online, or otherwise submitted to the Settlement Administrator by the Bar Date or Adjusted Bar Date a written, signed statement to the Settlement Administrator that states he or she is opting out of the settlement, and include his or her name, address, and telephone number, and a statement indicating his or her intention to opt-out such as: "I opt out of the Equinox New York wage and hour settlement." ("Opt-Out Statement"). To be considered, such Opt-Out Statement must be received by the Settlement Administrator (and if mailed to the Settlement Administrator by First-Class United States Mail post-marked) or otherwise submitted by the Bar Date or Adjusted Bar Date. The Settlement Administrator will stamp the date received on the original and send

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

copies of each Opt-Out Statement, as well as a copy of the Notice and Claim Form mailed to each person who opts-out, to Class Counsel and Defendant's Counsel by email no later than three days after receipt of the Opt-Out Statement. A person who submits an Opt-Out Statement may not object to the settlement and upon final approval, have their claims dismissed without prejudice.

6.    **FAIRNESS HEARING AND MOTION FOR FINAL APPROVAL**

A.    **Content.** After the Bar Date, in accordance with the schedule set by the Court in the Preliminary Approval Order and before the Fairness Hearing, Class Counsel shall file supporting documents and materials for Final Approval of the Settlement ("Final Approval Motion"). The Final Approval Motion will be deemed unopposed and shall include a compliance affidavit from the Settlement Administrator; an application for attorneys' fees, costs, and Service Awards; supporting affidavits and documents from Class Counsel regarding the fairness, adequacy, and reasonableness of the settlement or any aspect related to this Agreement, and a proposed Final Approval Order. At the Fairness Hearing and through the Final Approval Motion, Plaintiffs shall request that the Court, among other things: (1) finally certify the Classes for purposes of settlement only; (2) approve the settlement and this Agreement as fair, reasonable, adequate, and binding; (3) order the Settlement Administrator to disburse Settlement Checks to Participating Class and Collective Members; (4) order Service Awards, attorneys' fees and costs, and the Settlement Administrator's fees and costs to be paid from the QSF (5) order dismissal with prejudice of all Released Class Claims and Released FLSA claims, in accordance with this Agreement; (6) order entry of the Final Approval Order in accordance with this Agreement; and (7) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated hereby.

B.    **Review.** Class Counsel shall provide Defendant's counsel with drafts of the Memorandum of Law in Support of Final Approval Motion and the proposed Final Approval Order ("Final Approval Papers") at least seven days before filing to afford Defendant sufficient time to review and make comments. The Parties agree to meet and confer in good faith if there are disputes over any of Defendant's comments to the Final Approval Papers.

7.    **TERMINATION OF AGREEMENT**

A.    **Grounds for Settlement Termination.** If the Court declines to enter the Preliminary Approval Order or the Final Approval Order, the Parties agree to work together in an effort to resolve any issues that the Court identified in an attempt to reach a modified agreement to resubmit to the Court for approval. If the Parties cannot reach an agreement, then either Party has the right to terminate the

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

Agreement. This Agreement is not contingent upon approval by the Court of Class Counsel's application for attorneys' fees and/or the Service Awards sought, and if the Court approves the settlement payments allocated to Participating Class and Participating Collective Members as set forth in this Agreement, but not the amount of the application for attorneys' fees and/or Service Awards, the Parties will work to adjust the Agreement to the Court's satisfaction. Any attorneys' fees, costs, or service awards ultimately not approved by the Court, however, will become part of the Net Settlement Fund to be distributed to Participating Class and Collective Members. Defendant will not oppose (a) an application for attorneys' fees of up to one-third of the Maximum Settlement Amount, plus litigation costs and expenses of up to One Hundred Thousand Dollars ($100,000), to be paid out of the Maximum Settlement Amount, and/or (b) a motion for reconsideration or appeal of such application.

**B.**      **Procedures for Termination.**  To terminate this Agreement, the terminating Party shall give written notice to the other Party, through their/its counsel, via email and overnight mail.

**C.**      **Effect of Termination.**  Termination has the following effects:

**i.**      The Agreement shall be terminated as to the affected Parties and shall have no force or effect.

**ii.**      Defendant shall have no obligation to make any payments to any Party, Class or Collective Member, or Class Counsel, except for: (i) the costs and fees associated with the Settlement Administrator subsequent to the signing of this Agreement; and (ii) the costs and expenses of the Settlement Administrator associated with the mailing of a termination notice to Class and Collective Members, informing them of the settlement termination, if any.

**iii.**      If the Court grants Preliminary Approval, but not Final Approval, the Settlement Administrator will issue a Court-approved notice to Participating Collective Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Participating Class and Collective Members under the Agreement.  Such notice shall be sent by the Settlement Administrator via email and First-Class United States Mail. Defendant shall remain responsible for any Settlement Administrator costs and expenses.

**iv.**      The Parties may jointly or independently seek reconsideration of a ruling by the Court declining to enter the Preliminary Approval Order or Final Approval Order in the form submitted by the Parties, or seek approval of a renegotiated settlement.

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

    **v.**    The Litigation will resume as if no settlement had been attempted and the Agreement and all negotiations, statements, and proceedings relating thereto shall be without prejudice to the right of any of the Parties, all of whom shall be restored to their respective positions prior to the entering of this Agreement, including the Parties' previous tolling agreement. Defendant retains the right to contest whether the claims should be maintained as a class or collective action, and to contest the merits of the claims being asserted. The Preliminary Approval Order approving the settlement and certifying the Class and Collective for settlement purposes only shall be null and void and the case may be certified as a Class only if Plaintiffs are granted class certification after full briefing on a motion for such certification, or if the Parties agree otherwise.

## 8.    SETTLEMENT TERMS

**A.**    **Maximum Settlement Amount**.  Defendant agrees to pay an amount not to exceed the Maximum Settlement Amount.  Notwithstanding the prior sentence, Defendant shall pay Employer Payroll Taxes separately from, and in addition to, the Maximum Settlement Amount.

**B.**    **Funding.**  The Final Settlement Amount shall be funded by Defendant in four installment payments in accordance with the following schedule:

    **i.**    Within seven (7) days after the Effective Date, or January 15, 2025, whichever is later, Defendant shall deposit fifteen percent (15%) of the Final Settlement Amount or One Million Dollars and Zero Cents ($1,000,000.00), whichever is greater, into the QSF. The Settlement Administrator shall notify Defendant's Counsel of the total amount to be deposited into the QSF (and provide the calculations used to arrive at such amount) no later than seven (7) days after the Final Approval Order.  The Settlement Administrator will act as escrow agent and will have the authority to release the settlement funds from escrow in accordance with the terms of this Agreement.

    **ii.**    No later than January 15, 2026, so long as this is after the Effective Date, Defendant shall deposit forty percent (40%) of the Final Settlement Amount into the QSF. The Settlement Administrator shall notify Defendant's Counsel of the total amount to be deposited into the QSF ten (10) days prior to the funding deadline.

    **iii.**    No later than January 15, 2027, so long as this is after the Effective Date, Defendant shall deposit twenty-two and a half percent (22.5%) of the Final Settlement Amount into the QSF. The Settlement Administrator shall notify

13

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

Defendant's Counsel of the total amount to be deposited into the QSF ten (10) days prior to the funding deadline.

iv.    No later than January 15, 2028, so long as this is after the Effective Date, Defendant shall deposit twenty-two and a half percent (22.5%) of the Final Settlement Amount into the QSF. The Settlement Administrator shall notify Defendant's Counsel of the total amount to be deposited into the QSF ten (10) days prior to the funding deadline.

**C.**    **Unclaimed Funds.** Any portion of the Maximum Settlement Amount not distributed as per the terms hereof, including any Settlement Checks not cashed after the later of one-hundred and twenty (120) days after the mailing of the Settlement Checks for the payment described in paragraph 8.B.iv or the last reissued Settlement Check has been cashed or become void shall revert to Defendant. The Settlement Administrator shall transmit any funds remaining in the Net Settlement Fund to Defendant within seven days after the expiration of all Settlement Checks.

**D.**    **Attorneys' Fees, Expenses and Costs**

i.    At the Fairness Hearing and through the Application for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of up to one-third of the Maximum Settlement Amount, plus reimbursement of actual litigation expenses and costs of up to a maximum of one hundred thousand dollars ($100,000.00) to be paid from the QSF. Defendant will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

ii.    The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of any proceedings related to Class Counsel's application for fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval, however the Parties will work together to determine if a revised settlement agreement would satisfy the Court. Any amount ultimately not approved by the Court will become part of the Net Settlement Fund to be distributed to Participating Class and Collective Members or revert to Defendant as determined by the Court.

iii.    Payment to Class Counsel of Court-approved fees and costs from the Final Settlement Amount shall be made in proportion with the funding schedule set forth in Section 8(B), such that Class Counsel shall receive fifteen percent (15%) of its approved attorneys' fee award with the first installment payment, forty percent (40%) with the second installment payment and

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

twenty-two and a half percent (22.5%) with each of the third and fourth installment payments. Class Counsel's approved costs shall be paid entirely from the initial settlement installment payment.

### E.  Service Awards

i.    In return for services rendered to Class and Collective Members, Named Plaintiffs will apply to the Court to receive up to Fifteen Thousand Dollars ($15,000) each as Service Awards from the Maximum Settlement Amount. Collective Action Members who appeared for a deposition in this Litigation, Delaney Anderson, Adam Cannedy, Jennifer Carlson, Jennifer Cintron, Amanda Clark, Myles Cooper, Ranah Farkhondeh, Felix Ferreira, Nicholas Ferrer, Tatiana Gregory, Benjamin Guzi, Olivia Hensal, Kelly Hibbard, Ashley Iannacone, Madjena Joseph, Francis Kilinski, Harrison Lessans, Thomas Manning, Eric O'Brien, Jillian O'Neil, Joel Painson, Claudia Ramirez, Paris Ramos, Junil Rodriguez, Angel Sanchez, Eric Shipper, Dannette Stephens, Donald Tagorda, Warner Washington II, and Saba Yehia will apply to the Court to receive up to One Thousand Dollars ($1,000.00) each as Service Awards from the Maximum Settlement Amount.

ii.   The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval, Final Approval Order, or the fairness or reasonableness of this Agreement. However, if not approved, the Parties will work together to determine how to adjust the Service Awards such that the Court will approve a revised agreement. Any amount ultimately not approved by the Court will become part of the Net Settlement Fund to be distributed to Participating Class and Collective Members. Defendant will not oppose the application for Service Awards.

iii.  Payment of Court-approved Service Awards shall be made at the time of the first settlement installment payment.

### F.  Participating Class and Collective Members' Payments

i.    **Allocation**.  Each Class Member's proportionate share of the Net Settlement Fund shall be determined by the Settlement Administrator under the following formula:

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

(a)     Class Members will receive one point for each Eligible Workweek during the Class Period;

(b)     In any workweek during the Class Period in which a Class Members worked in excess of 24 Personal Training Sessions, the Class Member will receive half a point for each Personal Training Session they performed in that workweek in excess of 24 personal training sessions.

(c)     To calculate each Class Member's proportionate share:

- Add all points for Class Members together to obtain the "Denominator;"

- Divide the number of points for each Class Member by the Denominator to obtain each Class Member's "Portion of the Net Settlement Fund;"

- Multiply each Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Class Member's "Net Settlement Amount;"

- Each Participating Class Member's Net Settlement Amount will be the amount of their Settlement Checks, less applicable taxes and withholdings pursuant to Section 9(A) herein, and paid proportionally in accordance with the funding schedule set forth in Section 8(B) herein.

(d)     If an individual Class Member's proportionate share of the Net Settlement Fund as calculated above is less than twenty-five dollars ($25.00), the award shall be adjusted to twenty-five dollars ($25.00) ("True-Ups").  The individual settlement awards of Class Members which are above twenty-five dollars ($25.00) based on the calculation above shall be proportionately reduced to account for the True-Ups.

ii.     The calculation of Eligible Workweeks shall be based on Defendant's business records in accordance with this Agreement. If a Class Member disputes Defendant's records and/or the calculation of his or her Net Settlement Amount, he or she must note his or her dispute on the Claim Form or under separate cover to the Settlement Administrator and provide written documentation supporting his or her contention. Defendant's records are presumed correct unless the Class Member proves otherwise with documentary evidence. The Settlement Administrator will evaluate the

16

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

information the Class Member provides and will make the final decision about any dispute in consultation with the Parties.

**G.**    **Timing of Payments.**  The Settlement Administrator will mail Settlement Checks to all Participating Class Members within 14 days of the funding of each of the four settlement installment payments as set forth in Section 8(B) herein.

**H.**    **Check Cashing Period.**  All Settlement Checks will be valid for one hundred and twenty (120) days from the date Settlement Checks are issued by the Settlement Administrator and shall be void thereafter. Participating Class Members may request reissued Settlement Checks for any installment up to one hundred and twenty (120) days after the Settlement Checks distributing the payment described in paragraph 8.B.iv. Reissued Settlement Checks shall be valid for forty-five (45) days from the date of issue and shall be void thereafter.

## 9.    TAX CHARACTERIZATION OF SETTLEMENT PAYMENTS

**A.**    For tax purposes, eighteen percent (18%) of payments to Participating Class Members under Section 8(F) will be treated as W-2 wage payments and eighty-two percent (82%) of such payments will be treated as 1099 non-wage income as liquidated damages, statutory penalties, and interest.

**B.**    Payments treated as W-2 wages shall be made net of all applicable employment taxes, including, without limitation, federal, state, and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as liquidated damages, statutory penalties, and interest shall be made without withholding and shall be reported to the IRS and the payee, as required by law, under the payee's name and social security number on an IRS Form 1099-MISC as other income. Payment of attorneys' fees and costs under Section 8(D) shall be made without withholding. Class Counsel will receive a Form 1099 for this payment. Payment of Service Awards under Section 8(E) will be reported as deemed appropriate by the Settlement Administrator.

**C.**    The employee portion of all applicable income taxes for the wage payments and any tax responsibility for the non-wage payments shall be the sole responsibility of the Participating Class or Collective Member.

**D.**    Defendant and the Settlement Administrator shall exchange such information as is necessary for the Settlement Administrator to make proper tax withholdings and comply with its tax reporting obligations as described in this Section 9.

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

10.    **RELEASE**

    A.    **Class Release.**  By operation of the entry of the Final Approval Order, except as to such rights or claims as may be created by this Agreement, each Participating Class Member, on his or her behalf and on behalf of his or her respective, current, former and future heirs, spouses, executors, administrators, agents, and attorneys, forever and fully releases Defendant, along with its direct and indirect parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, reinsurers, professional employment organizations, representatives, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities (collectively referred to throughout the remainder of this Agreement as "Releasees") from the Released Class Claims. Non-Participating Class Members (i.e. Class Members who are not Opt-in Plaintiffs and do not timely return a Claim Form and therefore do not receive Settlement Checks), are not releasing any claims in connection with this Agreement.

    B.    **FLSA Release.**  By operation of the entry of the Final Approval Order, except as to such rights or claims as may be created by this Agreement, each Participating Collective Member, on his or her behalf and on behalf of his or her respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, forever and fully releases Defendant and Releasees from the Released FLSA Claims.  Non-Participating Class Members (i.e. Class Members who are not Opt-in Plaintiffs and do not timely return a Claim Form and therefore do not receive Settlement Checks), are not releasing any claims in connection with this Agreement.

11.    **DENIAL OF LIABILITY**

Defendant has agreed to the terms of this Agreement without in any way acknowledging any fault or liability, and with the understanding that terms have been reached because this settlement will avoid the further expenses and disruption of Defendant's business due to the pendency and expense of litigation.  Nothing in this Agreement shall be deemed or used as an admission of liability by Defendant, nor as an admission that a class or collective should be certified for any purpose other than settlement purposes.

12.    **CONFESSION OF JUDGMENT**

Defendant has made representations regarding its finances. Class Counsel and Named Plaintiffs on behalf of the Class and Collective engaged in due diligence to confirm those representations. These exchanges contributed to the Parties settlement and therefore Defendant agrees to execute a confession of judgment attached hereto as Exhibit E that shall only be filed by Plaintiffs in the event Defendant (a) files bankruptcy and/or (b) fails

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

(subject to the applicable cure rights of Defendant below) to fulfill its funding obligations set forth in Section 8(B). Before filing a confession of judgment regarding a breach of subparagraph (b) of this Section 12, Plaintiffs shall serve written notice of such breach, and Defendant shall have 15 business days after receipt of the written notice to cure the breach. If such breach is timely cured, then the Plaintiff shall not file the confession of judgment.

13.    **INTERPRETATION AND ENFORCEMENT**

13.1.  **Cooperation Between the Parties; Further Acts.**  The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

13.2.  **No Assignment.**  Class Counsel and Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the claims, or any related action.

13.3.  **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties regarding the subject matter of the Agreement shall be deemed merged into this Agreement.

13.4.  **Binding Effect.**  This Agreement shall be binding on the Parties; and Defendant's successors and/or assigns will be bound by this Agreement as well.

13.5.  **Arms' Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arms' length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless expressly stated.

13.6.  **Captions.**  The captions or headings of the Sections and the paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect on the construction or interpretation of any part of this Agreement.

13.7.  **Governing Law.**  This Agreement shall in all respects be interpreted, enforced, and governed by and under the laws of the State of New York, without regard to choice of law principles, unless the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

13.8.  **Continuing Jurisdiction.**  The Parties shall request that the Court retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

the settlement contemplated thereby. The Parties shall not petition the Court to modify the terms of the Agreement except as required to obtain Preliminary or Final Approval.

13.9    **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment. Any failure by any Party to insist on the strict performance by the other Party of any provision in this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and, such Party, notwithstanding such failure, shall have the right thereafter to insist on specific performance of any and all provisions of this Agreement.

13.10.  **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its full execution and approval by the Court. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

13.11.  **Signatures.**  This Agreement is valid and binding only if signed by the Parties and their authorized representatives.

13.12.  **Facsimile, Fax, and Email Signatures.**  Any Party may execute this Agreement by signing or causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile, email, or other electronic means to counsel for the other party. Any signature made and transmitted by facsimile, email, or other electronic means for executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding on the Party whose counsel transmits the signature page by facsimile or email.

13.13.  **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party because of draftsmanship.

---

**THIS SPACE INTENTIONALLY BLANK**

---

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

**WE AGREE TO THESE TERMS,**

DATED: _____, 2024     **EQUINOX HOLDINGS, INC.**

By: _____

Its: _____

DATED: 11/27 , 2024     _____
                        **MONIQUE KATZ**

DATED: _____, 2024     _____
                        **YEKATERINA SKIDANENKO**

4854-0310-8052, v. 6

21

*Execution Copy*

Doc ID: 1dc958a6dfd18befeef951b6b6a1b0b9b122eefa

**WE AGREE TO THESE TERMS,**

DATED: November 29, 2024    **EQUINOX HOLDINGS, INC.**

By: _____

Its: _____

DATED: _____, 2024    _____
**MONIQUE KATZ**

DATED: 11 29, 2024    _____
**YEKATERINA SKIDANENKO**

4854-0310-8052, v. 6

21

*Execution Copy*

**WE AGREE TO THESE TERMS,**

DATED: ___November 21___, 2024    **EQUINOX HOLDINGS, INC.**

By: ___*Lawrence S. Rosen*___

Its: ___Interim CLO & SVP, Dir Litigation/Risk___

DATED: _____, 2024    _____

**MONIQUE KATZ**

DATED: _____, 2024    _____

**YEKATERINA SKIDANENKO**

4854-0310-8052, v. 6

21

*Execution Copy*

# EXHIBIT A

## <u>THIS NOTICE AFFECTS YOUR LEGAL RIGHTS</u><br><u>TO PARTICIPATE IN A SETTLEMENT</u><br><u>PLEASE READ IT CAREFULLY</u>

## The United States District Court for the Southern District of New York in
### *Katz, et al. v. Equinox Holdings, Inc., S.D.N.Y. Case No. 20-CV-9856*
### *Has Preliminarily Approved This Settlement*

**TO: PERSONS EMPLOYED AS PERSONAL TRAINERS IN NEW YORK FOR EQUINOX AT ANY TIME FROM MARCH 25, 2014, TO JULY 31, 2024**

Based on information in the records of Equinox Holdings, Inc. ("EQX"), you were employed by EQX as a personal trainer in the state of New York between March 25, 2014 and July 31, 2024. By signing and returning the enclosed Claim Form, you are choosing to receive money from a settlement in the lawsuit noted above, (the "Lawsuit") and which was brought to recover wages under Federal and New York Labor Laws.

### 1.  WHAT IS THE PURPOSE OF THIS NOTICE AND WHAT IS THIS CASE ABOUT?

**This Notice is to provide you with important information about your rights and how to participate in the Preliminarily Approved Settlement of $12,000,000.**

The Lawsuit asserts claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") alleging that EQX failed to properly compensate New York personal trainers for certain overtime and non-overtime hours worked; failed to provide New York personal trainers with the wage statements required under New York law; and unlawfully paid New York personal trainers on a biweekly basis.

EQX denies these allegations in their entirety and maintains that it paid all New York personal trainers properly for all hours worked, provided appropriate wage statements, and its biweekly wage payments were lawful. The Parties have entered into this Settlement to avoid further disputes and continued litigation with the attendant uncertainty, and expense. The Court has not made any ruling on the merits of the claims in the Lawsuit, and no party has prevailed in this action. To learn more about the claims in the Amended Complaint and information about this settlement, you can go to the website: www._____.com.

### 2. WHY DID I RECEIVE THIS NOTICE AND WHO IS INCLUDED IN THE CLASS?

You have received this Notice because EQX has identified you as a possible Class Member based on its records and the Court has authorized that you be sent this Notice. In a class action one or more persons called class representatives, sue not only for themselves, but also on behalf of other individuals with similar claims. These individuals are called Class Members. The Parties have agreed to settle the Lawsuit for a class consisting of all persons employed by EQX as personal trainers in New York between March 25, 2014 and July 31, 2024, which the Court has preliminarily approved.

## 3. WHO ARE THE LAWYERS FOR THE CLASS, AND HOW WILL THEY BE PAID?

The Court has appointed Valli Kane & Vagnini LLP, Joseph & Kirschenbaum LLP, Law Office of Jacob Aronauer, Norris McLaughlin, P.A., and Beattie Padovano, LLC to represent you and the other Class Members ("Class Counsel"). You will **not** be charged separately for these lawyers. Their fees are being paid from the total settlement fund. If you want to be represented by your own lawyer, you may hire one at your own expense.

Class Counsel will ask the Court to approve payment of their litigation expenses and attorneys' fees of up to one-third of the Settlement Fund. The requested amount would pay Class Counsel for all work that they have performed in this action, including filing the complaint, investigating the facts, engaging in discovery, negotiating, and overseeing the settlement.

Valli Kane & Vagnini LLP
James A. Vagnini, Esq.
Alexander M. White, Esq.
600 Old Country Rd.
Suite 519
Garden City, NY 11530
516-203-7180
awhite@vkvlawyers.com

Joseph & Kirschenbaum LLP
D. Maimon Kirschenbaum, Esq.
Denise A. Schulman, Esq.
32 Broadway
Suite 601
New York, NY 10004
212-688-5640
denise@jk-llp.com

Law Office of Jacob Aronauer
Jacob Aronauer, Esq.
225 Broadway
3rd Floor
New York, NY 10007
212-323-6980
jaronauer@aronauerlaw.com

Norris McLaughlin, P.A.
Mariya Gonor, Esq.
7 Times Square
21st Floor
New York, NY 10036
212-808-0700
mgonor@norris-law.com

Beattie Padovano, LLC
Kimberley A. Brunner, Esq.
200 Market Street
Suite 401
Montvale, NJ 07654
201-799-9736
kbrunner@beattielaw.com

## 4. HOW CAN I COLLECT MY SHARE OF THE SETTLEMENT?

**If you did not previously file a consent to join form in this action or you withdrew or were dismissed from this action without prejudice, you must complete and submit a Claim Form so that it is postmarked or otherwise returned to the Claims Administrator by [date] in order to receive money from the Settlement.** The Claim Form is attached to this Notice. You may submit a claim form online at [insert URL], by email at [insert email], by fax or by mail, to:

[CLAIMS ADMINISTRATOR'S INFO]

If you did previously file a consent to join form in this action and are currently an Opt-In Plaintiff, you do not need to submit a Claim Form in order to receive money from the Settlement. Current Opt-In Plaintiffs will receive money from the Settlement unless they opt out as described in section 8 below.

**If you do not know whether or not you are currently an Opt-In Plaintiff, please contact Class Counsel at [insert info] or the Claims Administrator at [insert info].**

It is your responsibility to retain proof of timely submission of a Claim Form until receipt of your settlement payment.

If you move before the Settlement is fully paid, please give the Claims Administrator or Class Counsel your new address. It is your responsibility alone to provide a forwarding address to the United States Post Office and your current address to the Claims Administrator.

| **5. HOW WILL MY SHARE OF THE SETTLEMENT FUND BE CALCULATED AND WHEN WILL I GET PAID** |
| --- |

If the Court grants final approval of the Settlement, EQX will pay a maximum of $12,000,000.00 in total settlement funds. If the Court also approves the payments set forth below, the following payments and expenses will be deducted from the $12,000,000.00 gross settlement amount prior to distribution of the settlement payments to Class Members:

- Attorneys' Fees and Costs: Class Counsel will apply to the Court for attorneys' fees up to a maximum of one-third of the Settlement Fund and recovery of actual litigation expenses and costs up to a maximum of $100,000.

- Service Awards: If the Court approves such payments, the two Named Plaintiffs may receive $15,000 each for services provided in this case, and 30 Opt-In Plaintiffs who appeared for depositions in this case may receive $1,000 each.

- Settlement Administration Costs: The Claims Administrator's fees shall be paid out of the Settlement Fund and are estimated not to exceed $100,000.00.

The "Net Settlement Fund" ("NSF") is the portion of the Settlement Fund that will be allocated among all Class Members. The Net Settlement Fund is the maximum settlement amount minus Court-approved service awards, litigation costs, settlement administration costs, and the Court-approved attorneys' fee. The Net Settlement Fund will be allocated among all Class Members as follows:

- Each Class Member will receive one point for each week in which they performed work for EQX between March 25, 2014, and July 31, 2024.

- Each Class Member will receive a half point for each personal training session performed in excess of 24 that they performed in weeks between March 25, 2014, and July 31, 2024, where the Class Member performed in excess of 24 personal training session.

- The NSF will be allocated to each Class Member on a proportionate basis according to their total number of points.

- No Class Member will be allocated a settlement share that is less than $25.

- Based on EQX's records, your individual settlement share is estimated to be $____. However, the exact amount you will receive is impossible to determine at this time due to a number of factors.

- Neither Class Counsel nor EQX nor EQX's Counsel makes any representations concerning tax consequences of the Settlement or your participation in the Settlement as it pertains to your taxes,

and you are advised to seek your own personal tax advice prior to acting in response to this Notice.

- **The settlement will be distributed in four installments, scheduled to occur approximately 52 days after the Court approves the settlement and then on or around January 29, 2026, January 29, 2027, and January 29, 2028.  If your address changes before any of these payments, please contact the Claims Administrator or Class Counsel to ensure that you receive your checks.**

- Once settlement checks are issued, they will be valid for 120 days.  Class Members may request reissued checks up to 100 days after the last installment settlement checks are issued.

- Any money left over from the distribution of the Net Settlement Fund resulting from checks that were not deposited or claimed by Class Members will be returned to EQX.

- For more information about how individual settlement awards are calculated, please contact Class Counsel at [insert contact information] or the Claims Administrator [INSERT CONTACT INFORMATION] or review the Settlement Agreement on the website at [INSERT WEBSITE].

## 6. WHAT IS THE LEGAL EFFECT OF THE SETTLEMENT?

If you timely submit a Claim Form or are a current Opt-In Plaintiff and do not opt out of the Settlement, upon final approval of the Settlement you, on your own behalf and on behalf of your current, former and future heirs, spouses, executors, administrators, agents, and attorneys, shall forever and fully release EQX, along with its direct and indirect parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, reinsurers, professional employment organizations, representatives, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities from all federal, New York state and local wage and hour claims pled in the Amended Complaint that accrued during your employment as a personal trainer for EQX from the beginning of the relevant statute of limitations periods through [insert preliminary approval date], including, without limitations, all claims for unpaid overtime wages, unpaid minimum wages, unpaid wages of any kind, premium pay of any kind, frequency of pay violations (*i.e.*, under Section 191 of the New York Labor Law), Wage Theft Prevention Act violations and any related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

## 7. WHAT IF I DO NOT WANT TO PARTICIPATE IN THE SETTLEMENT?

If you did not previously file a consent to join form in this action or you previously withdrew or were dismissed from the case without prejudice, and you do not file a Claim Form then you will not participate in the Settlement If you do not participate in the Settlement then you will not receive any payment  and you will not be bound by the release of claims described in section 6 above.

If you previously filed a consent to join form and are currently an Opt-In Plaintiff in this case, you will be included in the Settlement and be bound by the terms of the Settlement including the release of claims described in section 6 above unless you opt out of the Settlement. To opt out of the Settlement you must do so by mailing a signed letter with a statement indicating your intention to opt-out such as: "I opt out of the Equinox New York wage and hour settlement" postmarked no later than _[date]_____.  You must include your name, address, and telephone number in the letter.  If you choose to opt out, send your letter to:

[CLAIMS ADMINISTRATOR]

If you opt-out of the settlement, you will not be bound by the terms of the Settlement and you will be free to pursue your own claims (if any) against EQX. However, you will not receive any payments pursuant to this Settlement and you will no longer be represented by Class Counsel. If you wish to bring an action on your own, you will need to retain an attorney or represent yourself. By opting-out you will automatically be excluded from the class – there is no discretion that will be exercised by the Court or by counsel as to the exclusion of those who properly request it. (Fed. R. Civ.P.23(c)(2)(B)(v).

## 8. WHAT IF I HAVE AN OBJECTION TO THE SETTLEMENT?

If you have not opted out of the Settlement, and if you wish to present objections to the proposed Settlement at the Fairness Hearing, you must first do so in writing. If you object to the settlement and want to appear at the Fairness Hearing, you must say so in your written objection. You are not required to submit an objection. Written objections must be postmarked no later than [date]_____ and must be sent to:

[CLAIMS ADMINISTRATOR]

Written objections must contain your name, address, and telephone number, must be signed by you (either electronically or original signature), and must include reference to the matter of *Katz et al. v. Equinox Holdings, Inc.,* Case No. 20 Civ. 9856. If you opt-out of the settlement, you may not object to the settlement. In addition, if you object to the Settlement Agreement and the Court rejects your objections, you will still be bound by the terms of the Settlement Agreement.

## 9. WHEN IS THE FAIRNESS HEARING?

A hearing before the Honorable Judge Robert W. Lehrburger will be held on _____ at _____ at the United States District Court for the Southern District of New York, 500 Pearl Street, New York, NY 10007 (the "Fairness Hearing"). The purpose of this hearing will be for the Court to determine whether the Settlement is fair, adequate, and reasonable and should be approved by the Court. The Court may take into account any comments or objections filed in accordance with the procedures described above.

You are not required to attend the Fairness Hearing. Class Counsel will answer questions the Court may have. However, you may attend at your own expense. If you timely send an objection, you don't have to come to Court to talk about it. If you exclude yourself from the settlement by opting out, you may not participate in the Fairness Hearing. You may also pay your own lawyer to attend, but it is not necessary.

## 10. HOW CAN I EXAMINE COURT RECORDS?

This Notice does not contain all of the terms of the proposed Settlement or all of the details of these proceedings. For more detailed information, you are advised to refer to the underlying documents and papers on file with the Court, some of which may also be located on the website for this settlement at [www._____.com].

Additionally, if you have the questions about this Notice or want additional information, you can contact Class Counsel at [insert info] or the Claims Administrator at the address/phone number listed above.

NO INQUIRIES SHOULD BE DIRECTED TO THE COURT.

## 11. WILL I BE RETALIATED AGAINST?

Your decision as to whether or not to submit a Claim Form and/or participate in this Settlement will in no way affect your current or future work with EQX. Consistent with its policies, EQX will not retaliate against individuals who participate in the Settlement.

# EXHIBIT B

## CLASS MEMBER CLAIM FORM AND RELEASE

*Katz, et al. v. Equinox Holdings, Inc.*, Case No. 20-CV-9856

## TO RECEIVE PAYMENT FROM THE SETTLEMENT, YOU MUST COMPLETE, SIGN AND RETURN THIS CLAIM FORM
**(UNLESS YOU PREVIOUSLY SUBMITTED A CONSENT TO JOIN FORM AND HAVE NOT WITHDRAWN IT OR BEEN DISMISSED FROM THE CASE.)**

**[CLAIM FORM ID NO.]**
**[NAME]**
**[ADDRESS]**
**[EMAIL]**

**INSTRUCTIONS: THE CLAIM FORM MUST BE POSTMARKED OR SUBMITTED BY EMAIL, FAX, OR ONLINE NO LATER THAN _____, 20__ TO THE CLAIMS ADMINISTRATOR AS FOLLOWS:**

| File online at **[insert URL]** by using the Claimant ID number on this claim form | File by mail to: <br><br> **[insert mailing address]** |
|---|---|
| File via email to: <br><br> **[insert email address]** | File by fax to: <br><br> **[insert fax number]** |

The records of Equinox Holdings, Inc. ("EQX") indicate that you were employed by EQX as a personal trainer in the state of New York between March 25, 2014 and July 31, 2024. By signing and returning this form, you are choosing to receive money from a settlement in the lawsuit noted above, and which was brought to recover wages under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

**YOUR ESTIMATED SETTLEMENT SHARE:** You understand that if the Settlement is approved by the Court, based on the information in EQX's records, you will receive a total of approximately $_____. 18% of this amount will be subject to standard payroll deductions and you will receive an IRS Form W2 for this payment). 82% of this amount will not be subject to standard payroll deductions but you may owe taxes on this amount and will receive an IRS Form 1099-MISC for this payment). You further understand that the settlement will be distributed in four installments, scheduled to occur approximately 52 days after the Court approves the settlement and then on or around January 29, 2026, January 29, 2027, and January 29, 2028. If your address changes before any of these payments, please contact the Claims Administrator or Class Counsel to ensure that you receive your checks.

**CONSENT:** By signing, dating, and returning this Claim Form I, hereby consent to opt in, and to participate in the Settlement of the Lawsuit, as a plaintiff, pursuant to Section 16(b) of the FLSA, and I authorize Class Counsel (as they are defined in the Notice) to act as attorneys on my behalf in the Lawsuit and all matters relating to the Lawsuit, including the settlement of my claims.

**CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

By signing, dating, and returning this Claim Form, I agree to the following release of wage claims I may have:

- I fully release and discharge Equinox Holdings, Inc. ("EQX") and its direct and indirect parent corporations, affiliates, subsidiaries, divisions, predecessors, insurers, reinsurers, professional employment organizations, representatives, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities from all Fair Labor Standards Act and New York state and local wage and hour claims pled in the Amended Complaint in this action that accrued during my employment as a personal trainer for EQX from the beginning of the applicable statute of limitations period to [insert date of preliminary approval] including, without limitations, all state claims for unpaid overtime wages, unpaid minimum wages, unpaid wages of any kind, premium pay of any kind, frequency of pay violations (*i.e.*, under Section 191 of the NYLL), Wage Theft Prevention Act violations and any related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

**Acknowledgements**: By signing and returning this form, I certify that I did  work as a personal trainer for EQX in the state of New York between March 25, 2014, and July 31, 2024 I have carefully reviewed the information included in this form and in the Notice. I acknowledge, agree and certify that I am submitting this Claim Form knowingly and voluntarily, with a full understanding of its consequences, and without having been promised any benefit by any party or attorney in this Action other than as described in the Notice and above. I further acknowledge that if I sign electronically, that an electronic signature shall be valid and have the same force and effect as an original hand-written signature.


_____                    _____
Date                                                                         Signature


                                                                            _____
                                                                            Name (Printed)

## CORRECTIONS OR ADDITIONAL INFORMATION

Write any name and address corrections below if any is necessary **OR** if there is no preprinted data to the left, please provide your name and address here:

_____

_____

_____

_____

Telephone number:

_____

# EXHIBIT C

If you worked for Equinox as a personal trainer in New York between March 25, 2014, and July 31, 2024, you must submit a claim form to receive payment from a class action settlement.

To date, the Claims Administrator **has not received your claim form**.

If you want to receive payment from the settlement, you must submit your claim form by [insert date].

You can submit your claim form:

online at [insert URL] by mail to [insert address] by email to [insert email] or by fax [insert fax].

If you need another notice or claim form, please contact the Claims Administrator before [insert date] at [insert phone number] or go to the website [insert website].

If you worked at Equinox as a personal trainer in the state of New York between March 25, 2014, and July 31, 2024, you may be eligible to participate in a class action settlement for alleged unpaid wages.  For full details about the lawsuit, the settlement, and how to participate in the settlement, please go to [insert URL].

# EXHIBIT D

| | |
|---|---|
| 1 | Abdu, Anaselrahman |
| 2 | Acosta, Ervin K. |
| 3 | Adams, Alyssa C. |
| 4 | Adams, Kirk D. |
| 5 | Addeo, Anthony R. |
| 6 | Akpobiyeri, Christopher |
| 7 | Alvarado, Clinton D. |
| 8 | Ammirato, Robert F. |
| 9 | Andersen, Delaney |
| 10 | Angier, Tyler D. |
| 11 | Antoine, Ashton D. |
| 12 | Astor, Myles B. |
| 13 | Ayala, Samantha-Faith |
| 14 | Baillie, David N. |
| 15 | Baker, Tawnie L. |
| 16 | Barnes, Jared |
| 17 | Beato-Concepcion, Lexis M. |
| 18 | Bermeo, Jorge E. |
| 19 | Betro, Sadie E. |
| 20 | Bhaichandeen, Mark-Brad |
| 21 | Blau, Nathaniel J. |
| 22 | Boyd, Ryan A. |
| 23 | Bradshaw, Michelle C. |
| 24 | Brady, John P. |
| 25 | Bravo-Garcia, Cristhian X. |
| 26 | Bremner, Fiona A. |
| 27 | Briedis, Andrew J. |
| 28 | Broderick, Winston |
| 29 | Brown, Allan |
| 30 | Brown, Siied R. |
| 31 | Burdeaux, Simon S. |
| 32 | Butler, Shanita |
| 33 | Canada, Carolyn M. |
| 34 | Cannedy, Adam J. |
| 35 | Caputo, Greg D. |
| 36 | Carl, Madison R. |
| 37 | Carlson, Jennifer |
| 38 | Cavataio, Kevin |
| 39 | Cerone, Nicholas A. |
| 40 | Chambers, Deborah L. |
| 41 | Chappa, Chloe |
| 42 | Cintron, Jennifer |
| 43 | Clark, Amanda |
| 44 | Clarke, Anastacia |
| 45 | Codella, John J. |
| 46 | Coffey, Ashley |
| 47 | Cogan, Gordon |

| | |
|---|---|
| 48 | Cole, Amanda |
| 49 | Coniglione, Jason |
| 50 | Connell, Tyler K. |
| 51 | Conyers, Tiraya L. |
| 52 | Cornelious, Rafael |
| 53 | Cuevas, Natalia M. |
| 54 | Davis-Ribatto, Lauren E. |
| 55 | De La Cruz, Sleyter F. |
| 56 | DeGironimo, Mia A. |
| 57 | DeJesus, Juan C. |
| 58 | Delaura, Matthew |
| 59 | Deljanin, Kemal |
| 60 | Derocher, Shawn J. |
| 61 | Desanctis, Anthony M. |
| 62 | Detsis, Hajnalka |
| 63 | Disisto, Desiderio J. |
| 64 | Dominguez-Millan, Emma G. |
| 65 | Ducos, Jorge |
| 66 | Duminuco, David |
| 67 | Duscha, Connor |
| 68 | Edwards, Samantha B. |
| 69 | Ervin, Nicholas G. |
| 70 | Estrada, Dorian I. |
| 71 | Faison, Daniel S. |
| 72 | Falco, Kaitlin A. |
| 73 | Farkhondeh, Ranah |
| 74 | Felix, Hansel R. |
| 75 | Ferreira, Felix B. |
| 76 | Ferrer, Nicholas |
| 77 | Fisher, Peter |
| 78 | Fleischer, Blake L. |
| 79 | Fletcher, Nathan |
| 80 | Foronda, Vandrea |
| 81 | Fox, Sophia H. |
| 82 | Frasca, Michael |
| 83 | Frazier, Bree T. |
| 84 | Fritsch, Billy C. |
| 85 | Gabat, Michaelangelo |
| 86 | Gaillard, John C. |
| 87 | Gammage, Christa |
| 88 | Garcia, Zane |
| 89 | Gawronski, Emma L. |
| 90 | Giacalone, Stephanie |
| 91 | Gill, Brian B. |
| 92 | Glover, Melvin A. |
| 93 | Godoy, Jorge D. |
| 94 | Gogev, Stanislav V. |

| | |
|---|---|
| 95 | Gomez, Alfredo D. |
| 96 | Gonzalez Jr., John A. |
| 97 | Gonzalez, Christopher M. |
| 98 | GONZALEZ, CRISTIAN |
| 99 | Gooden, Linton H. |
| 100 | Gregory, Samantha V. |
| 101 | Gregory, Tatiana |
| 102 | Grillo, Matthew M. |
| 103 | Grodsky, Harmony |
| 104 | Gualano, Paul C. |
| 105 | Guizado, Giancarlo M. |
| 106 | Gustoff, Megan K. |
| 107 | Guzi, Benjamin |
| 108 | Handral, James S. |
| 109 | Hare, Jonathan W. |
| 110 | Harris, Jamie L. |
| 111 | Harris, Sean L. |
| 112 | Hartfield, Kimberly R. |
| 113 | Haynes, Gary M. |
| 114 | Heller, Marc R. |
| 115 | Henry, Tiesha |
| 116 | Hensal, Olivia K. |
| 117 | Hewell, Mallory M. |
| 118 | Hibbard, Kelly L. |
| 119 | Hinds, Duvall M. |
| 120 | Ho, ChengEn |
| 121 | Holmes, Terrell D. |
| 122 | Huang, Victor |
| 123 | Hulley, Nicole |
| 124 | Hurst, Uriah |
| 125 | Iannacone III, Orazio R. |
| 126 | Iannacone, Ashley A. |
| 127 | Injeian, Arianna D. |
| 128 | Ivandic, Hana |
| 129 | Jace, Jonida |
| 130 | Jaimes, Diego A. |
| 131 | Jaramillo, Freddy |
| 132 | Jean Jacques, Jaleel R. |
| 133 | Jean-Philippe, Samuel |
| 134 | Jenkins, Nichelle L. |
| 135 | Jezyk, Steven J. |
| 136 | Jitmoud, Adam |
| 137 | Johnson, Jovaughn D. |
| 138 | Johnston, Rebekah I. |
| 139 | Jones, Christine |
| 140 | Joseph, Jimmy |

| 141 | Joseph, Madjena F. |
| 142 | Karp, Andriy |
| 143 | Katz, Monique |
| 144 | Kent, Omar R. |
| 145 | Kilinski, Francis |
| 146 | Kim, Sojeong |
| 147 | Kiriakou, Michael A. |
| 148 | Kyriacou, Christos |
| 149 | Landy, Brett H. |
| 150 | Langton, Taryn R. |
| 151 | Lantino, Michael L. |
| 152 | Lau, Brian |
| 153 | Lazin, Marko |
| 154 | Lee, Jay |
| 155 | Lefever, Samantha M. |
| 156 | Lemire, Jean-Pierre G. |
| 157 | Lerma, Jason D. |
| 158 | Lessans, Harrison |
| 159 | Leuzzi, Jennifer K. |
| 160 | Lewis, Cody R. |
| 161 | Licenziato, Josine |
| 162 | Lickwar, Michael |
| 163 | Lin, Chunfu |
| 164 | Lin, Sandy |
| 165 | Lombardi, Daniel P. |
| 166 | Lombardi, Nicholas |
| 167 | Lonergan, Michael |
| 168 | Look, Nicholas J. |
| 169 | Lopez, Noah |
| 170 | Lopez-Borrero, Kimberly J. |
| 171 | Lulashi, Robert A. |
| 172 | Luna, Antonio E. |
| 173 | Lynch, Colleen |
| 174 | Macleod, Ian M. |
| 175 | Madaran, Mario Eduard |
| 176 | Madigan, Kendra S. |
| 177 | Maggi, Danielle |
| 178 | Manasijevski, Ivana |
| 179 | Manning, Thomas R. |
| 180 | Marcotti, Nicholas J. |
| 181 | Marsh, Tristan |
| 182 | Marzullo, Kristin L. |
| 183 | McClellan, Kody G. |
| 184 | McClure, Colleen P. |
| 185 | McCue, Louis |
| 186 | McGee, Thomas F. |

| 187 | Mcleggan, Gabrielle N. |
| 188 | Mehu, Maikel |
| 189 | Merelus, Alex E. |
| 190 | Michel, Malik G. |
| 191 | Miller, Shaquille C. |
| 192 | Minetto-Perales, Stacy A. |
| 193 | Mitchell, Sanchelle M. |
| 194 | Morel, Felix E. |
| 195 | Moss, Rashaad C. |
| 196 | Muehlenbein, Danielle |
| 197 | Mullen, Genesis S. |
| 198 | Muniz (Greene), Jennifer A. |
| 199 | Muniz, Christopher |
| 200 | Nardoni, Christopher |
| 201 | Nash, Derrick L. |
| 202 | Nazario, Lara A. |
| 203 | O'Brien, Evan |
| 204 | Olivo, Eric |
| 205 | O'Neil, Jillian M. |
| 206 | Ouzounidis, Kitsa |
| 207 | Padulo, Antonella |
| 208 | Pages, Alexandre R. |
| 209 | Painson, Joel B. |
| 210 | Pena, Gabriel |
| 211 | Perez Jr., Oscar |
| 212 | Pervaz, Imran |
| 213 | Phillips, Ryan N. |
| 214 | Pizarro III, Heriberto |
| 215 | Price, Andrew T. |
| 216 | Privott-Yeiser, Johari |
| 217 | Pulido, Stephen A. |
| 218 | Ramirez, Caludia |
| 219 | Ramos, Paris |
| 220 | Rawdon, Larry |
| 221 | Reale, Elizabeth |
| 222 | Regis, Marsha |
| 223 | Reilly, Jessica |
| 224 | Reinhardt, Amalia A. |
| 225 | Roberson, Aris-Allen |
| 226 | Robison, Wesley M. |
| 227 | Rodriguez, Albert J. |
| 228 | Rodriguez, Christopher N. |
| 229 | Rodriguez, Emmanuel D. |
| 230 | Rodriguez, Joshua L. |
| 231 | Rodriguez, Junil |
| 232 | Rodriguez, Yalitza E. |

| | |
|---|---|
| 233 | Rogers, Janet L. |
| 234 | Romero, Eduardo |
| 235 | Ross, Samantha L. |
| 236 | Rossi, John P. |
| 237 | Rubino, Emanuela |
| 238 | Saccurato, Ann-marie |
| 239 | Safwat, Khaled A. |
| 240 | Sanchez, Angel |
| 241 | Sanchez, Diana C. |
| 242 | Sands, William D. |
| 243 | Santa-Donato, Brianne |
| 244 | Santanna, Arthur G. |
| 245 | Santiago, Kevin A. |
| 246 | Santin, Victoria |
| 247 | Satchell II, Ronald E. |
| 248 | Saunders, Cohl S. |
| 249 | Saythongphet, Sid |
| 250 | Schantz, Melanie A. |
| 251 | Schifano, Andrew C. |
| 252 | Schoen, Jay |
| 253 | Sclafani, Charles S. |
| 254 | Semple, Stephen R. |
| 255 | Seon, Takhyung |
| 256 | Sheppard, Charles A. |
| 257 | Shipper, Eric |
| 258 | Short, Jonathan M. |
| 259 | Sill, Jason C. |
| 260 | Silvera, Zachary |
| 261 | Simon, Steve O. |
| 262 | Singleton, Kahlil J. |
| 263 | Skidanenko, Yekaterina |
| 264 | Skorvanek, Brianna M. |
| 265 | Sloane, Jordan A. |
| 266 | Smolley, Samuel B. |
| 267 | Sobel, Jody M. |
| 268 | Somers, Emma L. |
| 269 | Sosman, Rebecca L. |
| 270 | Soto, Carlos |
| 271 | Speller, Joshua A. |
| 272 | Spellman, Tier A. |
| 273 | Sperandeo, Samantha |
| 274 | Spielberg, Josh S. |
| 275 | St Louis, Kendall E. |
| 276 | Stantini, Jacqueline A. |
| 277 | Steele, Cara |
| 278 | Stefurak, Petro |
| 279 | Stephens, D'Annette L. |

| 280 | Stewart, Rebecca |
| 281 | Suarez, Sainatee I. |
| 282 | Supron, Alexandra |
| 283 | Tadesse, Eyosyas N. |
| 284 | Tagorda, Donald J. |
| 285 | Taitt-Cooper, Myles |
| 286 | Tarjan, Ingrid |
| 287 | Tavarez, Marcus T. |
| 288 | Taylor, Michael T. |
| 289 | Thomas, Darnel V. |
| 290 | Torres, Aaron W. |
| 291 | Townsend, Kennedy E. |
| 292 | Ulley, Lisa A. |
| 293 | Unda, Colleen D. |
| 294 | Vera, Edwin |
| 295 | Wallach, Aaron |
| 296 | Wallin, Robert J. |
| 297 | Wamba, Liam L. |
| 298 | Ward, Khaleel B. |
| 299 | Washington II, Warner K. |
| 300 | Watts, Brittany A. |
| 301 | Weinberg, Eric M. |
| 302 | Weinstein, Samantha |
| 303 | Whang, Searyan E. |
| 304 | White, Elias |
| 305 | Williams, Brandon |
| 306 | Williams, Prince E. |
| 307 | Wilson, Astrid |
| 308 | Wilson, Isaiah J. |
| 309 | Wood, Kathleen |
| 310 | Yehia, Saba |
| 311 | Yoshida, Michael M. |
| 312 | Yu, Benjamin |
| 313 | Yu, Kenneth C. |
| 314 | Zambrano, Hugo M. |
| 315 | Zerbe, Robin E. |

# EXHIBIT E

Executed

Confession of

Judgment

Forthcoming