UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MONIQUE KATZ and YEKATERINA SKIDANENKO, individually and on behalf of all others similarly situated,

                     Plaintiffs,

     v.

EQUINOX HOLDINGS, INC.,

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Case No.:
1:20-CV-09856 (DEH)(RWL)

[proposed]
**ORDER**

On December 3, 2024, this Court entered an Order preliminarily approving the Parties' class and collective settlement, conditionally certifying the classes, appointing (a) Class Counsel, (b) Class Representatives, (c) Simpluris as Claims Administrtator ("Simpluris") and authorizing notice to all Class Members. *See* Dkt. No. 218. The preliminarily approved class consists of persons employed as Personal Trainers by Defendant Equinox Holdings, Inc. ("Defendant") in New York from March 25, 2014, through July 31, 2024, who Plaintiffs claim were denied overtime and straight-time wages. On June 20, 2025, Plaintiff Monique Katz and Yekaterina Skidanenko (collectively, "Plaintiffs") filed their Motion for Final Approval of Class/Collective Settlement (the "Motion"). *See* Dkt. No. 226. No member of the proposed class, has opted out, opposed, or objected to the settlement.

Upon review and consideration of the Motion and its supporting documents,[1] having heard from the Parties at the Fairness Hearing held on June 25, 2025, and having evaluated the proposed settlement under the requirements of Rule 23(e) it is **HEREBY ORDERED, ADJUDGED** and

---

[1] Unless otherwise noted, capitalized terms in this Order have the same meaning as defined in the Agreement.

1

**DECREED** as follows:

1.  For purposes of settlement, the Court concludes that all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3) have been met.

2.  Federal Rule of Civil Procedure 23(a)(l) is satisfied because there are 6,441 Class Members and, thus, joinder is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) ("[N]umerosity is presumed at a level of 40 members[.]").

3.  The proposed class also satisfies the commonality requirement of Federal Rule of Civil Procedure 23(a)(2). Among the Plaintiffs and the Class Members, there are common issues of fact and law, including whether Defendant had a policy or practice of failing to properly pay them overtime wages in violation of state wage and hour laws and straight-time wages in violation of state law. *See Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 615-16 (S.D.N.Y. 2012) (commonality satisfied where, among other allegations, plaintiffs claimed that defendant had a policy of not paying all class members overtime pay).

4.  Federal Rule of Civil Procedure 23(a)(3), typicality, is satisfied because Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of the Class Members' claims as set forth in the Second Amended Complaint. *See Hernandez v. Merrill Lynch & Co., Inc.,* No. 11 Civ. 8472, 2013 WL 1209563, at *3 (S.D. N.Y. Mar. 21, 2013) (typicality satisfied where "[p]laintiffs' [overtime] claims arose from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris,* 859 F. Supp. 2d at 616 (same).

5.  Federal Rule of Civil Procedure 23(a)(4) is satisfied because there is no evidence that the Plaintiffs' and the Class Members' interests are at odds. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F2d 285, 291 (2d Cir. 1992); *Beckman v. KeyBank, N.A.,* 293 F.R.D.

2

467, 473 (S.D.N.Y. April 29, 2013) (finding adequacy requirement met where there was no evidence that plaintiffs' and class members' interests were at odds); *accord Diaz v. Eastern. Locating Service Inc.,* No. 10-CV-4082, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010).

6. In addition, the adequacy requirement of Rule 23(a)(4) is satisfied. Plaintiffs' attorneys have "extensive knowledge in litigating wage and hour collective and class actions such as this, are familiar with the complex factual and legal questions at issue in this Litigation, and have and will continue to adequately represent the Plaintiffs and members of the Settlement Class in a comprehensive and vigorous manner." *Kudo v. Panda Express* 7:09-cv-00712 (S.D.N.Y. June 26, 2015), Dkt. No. 309: 3; *see Hines v. CBS Television Studios*, 15-CV-07882 (RWL), Dkt. No. 202 (S.D.N.Y. Feb. 05, 2019) ("Class counsel are experienced and well-qualified employment lawyers."); *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 74 (S.D.N.Y. 2018) ("[T]he attorneys of Joseph & Kirschenbaum have substantial experience as lead or co-lead counsel in wage an hour actions in this District.").

7. Rule 23(b)(3) is also satisfied. Plaintiffs' common factual allegations and legal theory—that Defendant violated federal and state wage and hour laws by failing to properly pay them for overtime and straight-time hours—predominate over any factual or legal variations among Class Members. *See Torres v. Gristede's Corp.,* No. 04-CV-3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay[,]" and "[t]his issue predominates over any individual calculations of overtime wages").

8. Class adjudication and settlement of this case is superior to individual adjudication because it will conserve judicial resources and is more efficient for class members, particularly those who lack the resources to bring their claims individually. *See Beckman,* 293 F.R.D. at 473.

Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction.

## APPROVAL OF THE SETTLEMENT

10. The Court hereby grants the Motion for Final Approval and finally approves the Settlement as set forth in the Settlement Agreement.

11. Rule 23(e) requires court approval for a class action settlement to ensure that it is procedurally and substantively "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e). To determine procedural fairness, courts examine the "negotiating process leading to the settlement." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005); *D'Amato v. Deutsche Bank,* 236 F.3d 78, 85 (2d Cir. 2001).

12. Courts examine procedural and substantive fairness in light of the "strong judicial policy in favor of settlement" of class action suits. *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks omitted). "The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (internal quotation marks and citation omitted); *see also D'Amato,* 236 F.3d at 85. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Coils. Holding Corp. Sec. Litig.*, No. 05-CV-10240, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).

### *Procedural Fairness*

9. The proposed settlement is procedurally fair because it was reached through

4

vigorous, arm's-length negotiations over four years of litigation. *See Toure v. Amerigroup Corp.*, No. 10-CV-5391, 2012 WL 3240461, at *3 (E.D.N.Y. Aug. 6, 2012) (finding settlement to be "procedurally fair, reasonable, adequate, and not a product of collusion" after plaintiffs "conducted a thorough investigation . . . [and] enlisted the services of an experienced employment [law] mediator"); *Diaz*, 2010 WL 5507912, at *4.

10. Class Counsel conducted thorough investigations and evaluated the claims and defenses, engaged in substantial discovery that included over 30 depositions, prepared and participated in two mediations, evaluation, and negotiation, and ultimately reached a settlement after over a year of negotiations between the Parties. *See* June 20, 2025 Declaration of Robert J. Valli, Jr. ("Valli Decl.") ¶ 12.

11. At the conclusion of the negotiations, the Parties had reached an agreement in principle. During the next several months, the Parties negotiated the remaining terms of the Settlement Agreement. *See* Valli Decl. ¶ 26.

12. These arm's-length negotiations involved counsel and two mediators well-versed in wage and hour law, thereby "rais[ing] a presumption that the settlement they achieved meets the requirements of due process." *See Wal-Mart Stores,* 396 F.3d at 116; *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08-CV-8713, 2010 WL 2399328, at *4 (S.D.N.Y. Mar. 3, 2010).

### *Substantive Fairness*

13. To determine substantive fairness, courts determine whether the Settlement's terms are fair, adequate, and reasonable according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

14. The Settlement is substantively fair. All of the factors set forth in *Grinnell,* which provides the analytical framework for evaluating the substantive fairness of a class action settlement, weigh in favor of final approval.

15. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See* 495 F.2d at 463.

16. The remaining litigation through trial would be complex, expensive, and long. Therefore, the first *Grinnell* factor weighs in favor of final approval.

17. The second *Grinnell* factor is also met, in that the Class's reaction to the Settlement is very positive. Pursuant to the Preliminary Approval Order, the Notice was sent by first-class mail to each respective Class Member at their last known address (with re-mailing of any returned Notice for which new addresses could be located). *See* June 20, 2025 Declaration of Arron Weisel ("Simpluris Decl.") ¶ 5. Additionally, for those individuals for whom Defendant had email addresses they were sent the Notice via email and for those for whom cell phone numbers were available, text messages were sent to inform them of the Notice. *See id.* at ¶¶ 5, 10. The Notice sent to Class Members included an explanation of the basis for the Settlement and each Class Member's awards, information about how to participate in the Settlement, as well as their right to object to or exclude themselves from the Settlement with an explanation on how to do so. Finally, there was also a website maintained for all Class Members to access the Notice and submit the

claim form. *See id.* at ¶ 11.

18. Halfway through the notice period, there was a reminder postcard and text message (if cell phone numbers were available) sent to any Class Member who had not yet submitted a Claim Form. *See* Simpluris Decl. at ¶ 15. Thus, the Court finds that the Notice fairly and adequately advised Class Members of the terms of the Settlement, as well as the right to opt out of or to object to the settlement, and to appear at the fairness hearing conducted on June 25, 2025. Class Members were provided with the best notice practicable under the circumstances.

19. The Court further finds that the Notice and its distribution comported with all constitutional requirements, including those of due process.

20. No Class Member opted out of or objected to the Settlement. *See In re Elec. Books Antitrust Litig.,* 639 F. App'x 724, 727 (2d Cir. 2016) ("As to factor two, [the Court] concluded that the class implicitly approved the settlement, observing that "[t]here have been under the circumstances few exclusions and few objections."); Moreover, approximately 30% of Class Members returned the Claim Form, which represents a substantial response from the Settlement Class. *See* Simpluris Decl. ¶ 16. This overwhelmingly favorable response demonstrates that the Class approves of the Settlement, which further supports final approval. *See Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 100 (E.D.N.Y. 2015) 4 ("[T]he 22 class members filing claims constitute a 20% participation rate. This participation rate is well above average in class action settlements.") (*citing* 2 McLaughlin on Class Actions § 6:24 (8th ed.) ("Claims-made settlements typically have a participation rate in the 10–15 percent range."); *Acevedo v Workfit Med. LLC,* 187 F Supp 3d 370, 380 (W.D.N.Y. 2016) (Court finds approximately 21% of eligible class members opting into the settlement to be a high participation rate for a "claims made" settlement agreement"); Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law*

*Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 291–94 (2008) (surveying 21 opt-in FLSA cases and finding the average participation rate to be 15.71%).

21. The third *Grinnell* factor weighs in favor of final approval in that the Parties have completed enough discovery to recommend settlement. When evaluating the level of discovery completed, "[t]he pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating." *Prasker v. Asia Five Eight LLC*, 08-CV-5811 (MGC), 2010 WL 476009 at *5 (S.D.N.Y. Jan. 6, 2010); *Mills v. Capital One, N.A.*, No. 14-CV-1937 (HBP), 2015 WL 5730008, at *5 (S.D.N.Y. Sept. 30, 2015). The Parties engaged in lengthy discovery that included over 30 depositions and the exchanging of over 40,000 pages of documents to allow the Parties to assess the claims and calculate damages in advance of negotiations.

22. The risk of establishing liability and damages further weighs in favor of final approval. "Litigation inherently involves risks." *Clem v. Keybank, N.A.*, No. 13-CV-789 (JCF), 2014 WL 2895918, at *6 (S.D.N.Y. June 20, 2014). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03-CV-8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). Here, Plaintiffs faced numerous risks as to both liability and damages, including overcoming Defendant's defenses regarding pay practices and whether they violated applicable law at all, as well as the determinative rate of pay. The proposed settlement eliminates this uncertainty. The fourth and fifth *Grinnell* factors therefore weigh in favor of final approval.

23. The risk of obtaining collective and class certification and maintaining both through trial is also present. Contested collective and class certification motions would likely require extensive briefing, including motions for class certification, collective decertification, and

summary judgment, a lengthy trial, and any appeals. Settlement eliminates the risk, expense, and delay inherent in the litigation process. The sixth *Grinnell* factor weighs in favor of final approval.

24. Even if Defendant could withstand a greater judgment, Defendant's ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9)). Thus, the seventh (and ninth) *Grinnell* factor weighs in favor of settlement or is at best neutral and does not preclude the Court from granting final approval.

25. The substantial amount of the Settlement weighs in favor of final approval. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particularized sum." *Frank,* 228 F.R.D. at 186 (quoting *In re Austrian,* 80 F. Supp. 2d at 178). "Instead, there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion."' *Id.* (quoting *Newman v. Stein,* 464 F.2d 689,693 (2d Cir. 1972)). Here, the total settlement fund equates to the value of 102% of the Class's estimated back pay before payment of attorneys' fees, service awards, and costs. *See Hyun v Ippudo USA Holdings*, 2016 WL 1222347 at 2 (S.D.N.Y. Mar. 24, 2016) (Court approves class members receiving approximately 51% of their back wages as fair and reasonable, "based on the immediacy of payment with a cash settlement and the litigation risks associated with proceeding to trial"). Thus, the eighth and ninth *Grinnell* factors strongly weigh in favor of final approval.

26. Last, under Rule 23(e)(2)(D), a court must consider whether the allocation of the settlement among class members, including any service awards, is fair.

27. The allocation formula used is based on the number of weeks worked and personal

9

training sessions performed in excess of 24 in a single week. The Court finds that this is a reasonable method of allocation given that Class Members' unpaid wage damages accrued on a weekly basis and the unlikeliness of overtime hours absent the performance of at least 25 personal training sessions in a week. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) ("[A]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel.") (internal quotation marks omitted).

28. The requested service awards of $15,000.00 for each Named Plaintiff and $1,000 for each Opt-In Plaintiff who was subject to collective discovery ($60,000 total or 5% of the Maximum Settlement Amount) are also fair and reasonable. *See Ai Lin v. Benihana Inc.*, No. 18-CV-11226, 2020 WL 13996865, at *2-3 (S.D.N.Y. Feb. 20, 2020) (Lehrburger, J.) (approving two $17,500 service awards from $300,000 settlement); *Hines v. CBS Television Studios*, 15-CV-07882 (RWL), Dkt. No. 202, ¶ 31 (S.D.N.Y. Feb. 05, 2019); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015).

29. Service awards "are particularly appropriate in the employment context. . . . [where] the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2015); *see Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 355 (S.D.N.Y. 2005) (Service awards for "class representatives" have "an important function in promoting class action settlements.").

30. Here, Plaintiffs aided in the investigation, assisted Class Counsel in obtaining a comprehensive understanding as to the multitude of issues the Trainers faced, worked on ensuring the Complaint and amended Complaints filed appropriately documented the claims, participated in voluminous document review, were deposed, attended depositions and mediations, maintained

constant contact with Class Counsel for nearly five years, and agreed to the risks associated with putting their names on the Action. *See* Valli Decl. ¶ 56.

31. Similarly, the Opt-In Plaintiffs who seek service awards completed paper discovery, were deposed, and provided important factual information to counsel. Four of these Opt-In Plaintiffs – Jennifer Carlson, Harrison Lessans, Claudia Ramirez, and Eric Shipper – joined the case prior to conditional collective certification and provided detailed declarations that assisted in the collective certification motion being granted. Several of these Opt-In Plaintiffs, including Felix Ferreira, Delaney Anderson, and Jillian O'Neil – joined this action while still employed by EQX, which also put them at risk for retaliation. *See id.*

32. The Court hereby grants Plaintiffs' Motion for Final Approval and approves the Settlement as set forth in the Settlement Agreement.

## APPROVAL OF THE FLSA SETTLEMENT

33. The Court hereby approves the FLSA settlement as well. Because a collective action under the FLSA requires individuals to opt in before they are bound (rather than opt out in order not to be bound, as in the Rule 23 class action context), "settlement of a collective action does not implicate the same Due Process concerns as the settlement of a class action," and therefore is subject to less searching scrutiny. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014). In most cases, a settlement that meets the standards of Rule 23 will also "reflect a fair and reasonable compromise of disputed issues" under the FLSA. *Id*. The Court should "therefore focus on the standards of Rule 23" when deciding whether to approve a class settlement agreement. *Riedel v. Acqua Ancien Bath New York LLC*, No. 14-CV-7238 (JCF), 2016 WL 3144375, at *6 (S.D.N.Y. May 19, 2016).

34. As this Settlement is fair and reasonable under all of the factors used to assess a

settlement under Rule 23, including the *Grinnell* factors, the Settlement is also fair and reasonable for purposes of the FLSA.

35. Here, anyone who had opted into the suit was given the opportunity via the Notice process to opt-out of the Settlement. No one chose to opt-out of the settlement.

**AWARD OF ATTORNEYS' FEES AND COSTS, ADMINISTRATION FEES, AND SERVICE AWARDS**

36. In assessing a request for attorneys' fees Rule 23(g) requires the court to consider "the work counsel has done in identifying or investigating potential claims in the action, . . . counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, . . . counsel's knowledge of the applicable law, and . . . the resources counsel will commit to representing the class."). *See Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (internal quotation marks omitted); Federal Rule of Civil Procedure 23(g).

37. The Court finds that Class Counsel are experienced and well-qualified employment lawyers.

38. The work that Class Counsel has performed in litigating for nearly five years and settling this case demonstrates their commitment to the Class and to representing the Class's interests. Class Counsel has committed substantial resources, time, and attention to prosecuting this case.

39. Courts in this Circuit often use the percentage of the fund method in assessing fee requests in common fund cases like this one. *Wal-Mart Stores*, 396 F.3d at 121; *Yuzary,* 2013 WL 5492998, at *9; *Diaz,* 2010 WL 5507912, at *7. Although the Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method, in wage and hour class action lawsuits, public policy and a number of recent decisions favor a common fund attorneys' fee award. *Beckman*, 293 F.R.D. 477; *McMahon,* 2010 WL 2399328, at *7. *McDaniel*

12

*v. County of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010).

40.     Additionally, no Class Member objected to Class Counsel's request for one-third of the Maximum Settlement Amount, which provides support for Class Counsel's fee request. *See* Simpluris Decl. ¶¶ 17-18.

41.     All of the factors in *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 48-49 (2d Cir. 2000) weigh in favor of the requested fee award.

42.     Further, courts in the Second Circuit routinely grant attorneys' fees of one-third in wage and hour cases. *See Garcia v. Atlantico Bakery Corp.*, No. 13 CIV. 1904 (JCF), 2016 WL 3636659 (S.D.N.Y. June 29, 2016) ("1/3 of the total award is the customary contingency percentage in FLSA cases.") (citing *Torres v. Gristede's Operating Corp.* 519 Fed. Appx. 1, 5 (2d Cir. 2013)); *see also Clem v. Keybank, N.A.*, No. 13-CV-789 (JCF), 2014 WL 2895918, at *9 (S.D.N.Y. June 20, 2014) ("Class Counsel's request for 33% of the [$3,500,000] fund is reasonable and consistent with the norms of class litigation in this circuit.") (internal quotations and citations omitted); *Davis v. JP Morgan Chase & Co.*, No. 01-CV-6492L, *slip op* (S.D.N.Y. Oct. 11, 2011) (one-third of $42 million settlement fund in FLSA and state wage and hour case); *Febus v. Guardian First Funding Group, LLC*, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012) (Stein, D.J.) ("A fee that is one-third of the fund is typical" in FLSA cases.").

43.     Applying the lodestar method as a "cross-check," the Court finds that the fee that Class Counsel seeks is reasonable under that analysis as well. "Courts commonly award lodestar multipliers between two and six." *Sewell v. Bovis Lend Lease, Inc.*, 09-CV-6548 (RLE), 2012 WL 1320124, at *13 (S.D.N.Y. April 16, 2012 (citations omitted).  Here, Class Counsel is seeking a lodestar multiplier of approximately 3.68.  This is well within the range of multipliers that have been granted by courts in this Circuit and elsewhere.

44.     The lodestar multiplier Class Counsel seeks is also reasonable because it will diminish over time. *Parker v. Jekyll & Hyde Entm't Holdings, LLC*, No. 08-CV-7670 (BSJ)(JCF), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010). In wage and hour cases, Class Counsel is often called upon to perform work after the preliminary and even final approval hearing. *See Parker v. Jekyll & Hyde Entm't Holdings, LLC*, 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010). This is certainly true in this instance as the payments to the Class are spread out over approximately three (3) year period in which Class Counsel will undoubtedly be working with Particpating Class Members to answer questions, note address changes, etc. The fact that Class Counsel's fee award will not only compensate them for time and effort already expended but also for the time that they will be required to spend administering the Settlement going forward also supports their fee request. *See Diaz*, 2010 WL 5507912, at *7.

45.     Class Counsel's costs of $62,501.28 are also reasonable for nearly five years of litigation and for the extensive discovery that occurred. Thus, Class Counsel's fee request for $4,000,000.00 or one-third of the Maximum Settlement Amount and $62,501.28 for costs is reasonable and "consistent with the norms of class litigation in this circuit." *Yuzary*, 2013 WL 5492998, at *10 (citation omitted). Accordingly, Plaintiffs' request that Class Counsel be awarded one-third of the Maximum Settlement Amount and $62,501.28 for costs is granted and shall be paid from the QSF.

## ADMINISTRATION FEES

46.     On December 3, 2024, the Court preliminary appointed Simpluris, Inc. ("Simpluris") as the Settlement Claims Administrator in this action. *See* Dkt. No. 218.

47.     The Court confirms Simpluris as the Settlement Claims Administrator and finds the administration costs up to and including $58,856.00 are reasonable, especially in light of the fact

that after the first payment there are three additional payments made over a period of three (3) years. Plaintiffs' request for Simpluris claims administration costs to be awarded and paid from the QSF is granted.

## CONCLUSION

The Court Orders that:

- The terms of this Settlement are fair, reasonable, and adequate as well as in the best interests of the Settlement Class.[2]

- Monique Katz and Yekaterina Skidanenko are appointed as representatives of the Settlement Class;

- Valli Kane & Vagnini, LLP, Joseph & Kirschenbaum LLP, Law Office of Jacob Aronauer, and Norris McLaughlin, P.A. are appointed as Class Counsel to represent the Settlement Class under Fed. R. Civ. P. 23 and Section 216 (b) of the FLSA;

- The Service Payments requested are approved;

- Class Counsel's request for Attorneys' Fees and Costs to be paid from the QSF is approved;

- The request for administration costs to be paid from the QSF is approved;

- Defendant shall fund the Settlement in accordance with the terms of the Settlement Agreement; The "Effective Date" of the settlement shall be 31 days after the date of this Order if no party appeals this Order. If a party appeals this Order, the "Effective Date" of the settlement shall be the day after all appeals are finally resolved in favor of final approval.

---

[2] The terms of the Settlement meet the December 2018 amendment to Rule 23, in that the Court has reviewed and determined that (1) class counsel and representatives are adequate; (2) the proposed settlement was negotiated at arms' length; (3) the relief provided in considering the costs, risks and delay of trial and/or appeal; the effectiveness of the proposed method of distributing relief, the proposed award of attorneys' fees and any agreement required to be identified under Rule 23 (e)(3) is more than adequate; and (4) the class members are treated equitably relative to each other. Additionally, the class notice included electronic mail where possible, which comports with the amendment.

- Defendant shall pay all employer payroll taxes for the Particpating Class Members separate from the Maximum Settlement Amount Final Settlement Amount

- Within 21 days of the Effective Date, the claims administrator shall begin to distribute the Final Settlement Amount by making the following payments:

- Paying service awards to Class Representatives Monique Katz and Yeketerina Skidanenko in the amount of $15,000.00 as set in the Settlement Agreement;

- Paying service awards to Participating Opt-Ins Delaney Anderson, Adam Cannedy, Jennifer Carlson, Jennifer Cintron, Amanda Clark, Myles Cooper, Ranah Farkhondeh, Felix Ferreira, Nicholas Ferrer, Tatiana Gregory, Benjamin Guzi, Olivia Hensal, Kelly Hibbard, Ashley Iannacone, Madjena Joseph, Francis Kilinski, Harrison Lessans, Thomas Manning, Eric O'Brien, Jillian O'Neil, Joel Painson, Claudia Ramirez, Paris Ramos, Junil Rodriguez, Angel Sanchez, Eric Shipper, Dannette Stephens, Donald Tagorda, Warner Washington II, and Saba Yehia in the amount of $1,000.00 each for a total of $30,000.00 as set in the Settlement Agreement.;

- Paying Class Counsel $4,000,000.00 or one-third of the Maximum Settlement Amount as set in the Settlement Agreement;

- Paying the remainder of the Final Settlement Amount to the Particpating Class Members as allocated and set forth in the Settlment Agreement.

- The Court retains jurisdiction over this action for the purpose of enforcing the Final Settlement Amount and overseeing the distribution of the Final Settlement Amount. The Parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

- Upon the Effective Date, this litigation shall be dismissed with prejudice, and all Particpating Class Members shall be permanently enjoined from pursuing and/or seeking to reopen

claims that have been released pursuant to the Settlement Agreement.

It is so ORDERED this _____day of _____, 2025.

_____
Honorable Robert W. Lehrburger
United States Magistrate Judge